IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAVIENT SOLUTIONS, LLC, | ) |
| | ) |
| Navient, | ) |
| | ) |
| v. | ) 19-cv-461 (LMB/TCB) |
| | ) |
| THE LAW OFFICES OF JEFFREY LOHMAN, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I. BACKGROUND

On December 13, 2020, Navient Solutions, LLC ("plaintiff" or "Navient") filed its Second Amended Complaint in this civil action. [See Dkt. 100]. Although "no substantive changes" were made "with respect to the existing [d]efendants," "nine individual [d]efendants and one corporate [d]efendant" were added, all of whom "operated the financing and marketing arms" of the alleged scheme to defraud Navient.[1] [Dkt. 77]. Id. The new corporate defendant is GST Factoring, Inc. ("defendant" or "GST"), a Texas-based corporation which Navient alleges "operated as a factoring company to sweep and distribute proceeds from duped borrowers."[2] Id.

---

[1] Navient generally alleges a scheme in which all of the defendants conspired together to defraud Navient out of millions of dollars in outstanding student loan debt, and to manufacture federal lawsuits and arbitration claims against Navient for purported violations of the Telephone Consumer Protection Act. [See Dkt. 100].

[2] Navient alleges that GST "had a central role in the [s]cheme." [Dkt. 100]. Specifically, "GST connected attorneys with . . . a network of affiliated marketers to recruit borrowers into the [s]cheme through a pattern of deceptive marketing practices." Id. Two such attorneys were Amanda Johanson and David Mize. Id. "When a new client was recruited by an [a]ffiliate, [the affiliate] would have the [client] sign an automatic deposit agreement." Id. Once made, the client's payments would "be swept by GST, which would then pay" both the affiliate and the attorneys, including Johanson and Mize. Id.

GST has since filed three counterclaims against Navient alleging tortious interference with contractual relations under Virginia law, civil RICO violations under 18 U.S.C. § 1962(c), and business conspiracy under Va. Code Ann. § 18.2-499. [See Dkt. 146]. Navient's motion to dismiss those counterclaims is now before the Court. [See Dkt. 168].

GST alleges that that it is a Texas-based corporation which, among other things, purchases accounts receivable from attorneys who provide legal representation to student loan debtors.[3] To date, GST has purchased accounts receivable from four such attorneys, including Johanson and Mize, through contracts called "factoring agreements." These factoring agreements provide in part that payments the debtor owed to the attorney "would . . . become the property of GST," although the attorney would also "retain[] certain rights and interests in those payments."[4]

In its counterclaims, GST alleges that sometime in 2015, Navient learned that attorneys such as Johanson and Mize were providing legal services to debtors in actions brought against Navient. Navient, together with unnamed individuals referred to as "Does 1 through 10," subsequently engaged in a course of conduct designed to cause the debtors to terminate their attorney-client agreements with the attorneys and to discourage other debtors from engaging the attorneys in the first place. This course of conduct included falsely representing, in telephone calls with the debtors, that the attorneys "did not possess . . . valid license[s] to practice law," were "scammers," and were not providing or would not provide "legitimate valuable legal services" to them. Navient employee Patrick Chaing directed this course of conduct, which GST refers to as the "Navient Disinformation Campaign." "The purpose of the Navient Disinformation Campaign was to: (a) discourage [debtors] from engaging counsel; (b) terminate

---

[3] Unless otherwise indicated, the facts included in this section are drawn from GST's counterclaims. [See Dkt. 146].

[4] GST did not attach any of the alleged factoring agreements to its counterclaims.

2

existing [debtor] relationships with counsel; and/or (c) damage the reputation, business, and law practices of [the attorneys] so that such attorneys could not, or chose not to, continue representing [debtors]."

GST alleges that, as a result of Navient's efforts, many debtors terminated their attorney-client agreements with the attorneys, stopped paying for legal services the attorneys had rendered to them, or filed complaints with various state bar authorities. Other debtors also decided not to hire the attorneys in the first place. Johanson, whom GST portrays as emblematic of the other attorneys, ultimately "suffered a physical and mental breakdown" which "rendered her unable to continue her practice of law" and culminated in "the destruction of her law practice." In this way, GST alleges that Navient's efforts "destroyed and/or substantially reduced the value of the accounts receivable that GST had acquired" in its factoring agreements.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a complaint "must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). "Therefore, in order for a . . . complaint to survive dismissal for failure to state a claim, the plaintiff must allege facts sufficient to state all of the elements of [his or] her claim." Lucas v. Henrico Cty. Sch. Bd., 822 F. Supp. 2d 589, 600 (E.D. Va. 2011). "Plaintiffs cannot satisfy this standard with complaints containing labels and conclusions or a formulaic recitation of the elements of a cause of action." Id. "Instead, [plaintiffs] must allege facts sufficient to . . . stat[e] a claim that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. In evaluating a motion to dismiss under Rule 12(b)(6), "a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff." Id.

## B. Analysis

Each of GST's counterclaims will be addressed in turn, and for the reasons discussed below, Navient's motion to dismiss will be granted and all of GST's counterclaims will be dismissed.

### 1. Tortious Interference with Contractual Relations

"In Virginia, the elements of a claim for tortious interference with contractual relations are . . . (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." Schaecher v. Bouffault, 772 S.E.2d 589, 602 (Va. 2015). If such a claim "involves only a . . . business expectancy" as opposed to a contractual relationship, a plaintiff must also "allege and prove . . . that the defendant employed improper methods," i.e., "means that are illegal or independently tortious, such as violations of statues, regulations, or common-law rules." Dunlap v. Cottman Transmission Sys., LLC, 754 S.E.2d 313, 318 (Va. 2014). "The tortious interference cause of action is historically rooted in the principle that the common law right of contract necessarily brought with it, as a corollary, a right to seek recompense against those who interfered with a valid contract." Id.

Navient raises several arguments in support of its assertion that GST's tortious interference counterclaim should be dismissed. At the outset, Navient argues that GST can only allege tortious interference with a contractual relationship or business expectancy to which GST was or would have been a party, i.e., the factoring agreements. Navient then argues (1) that the

4

factoring agreements are void under the law of several states, including Virginia, because they call for the performance of unethical conduct, (2) that GST has failed to allege breach or termination of the factoring agreements, and (3) that GST has failed to allege a competitive relationship with Navient with respect to the factoring agreements, which Navient characterizes as a fifth, unstated element of a tortious interference counterclaim. GST largely responds with conclusory assertions that it has sufficiently alleged its tortious interference counterclaim. See, e.g., GST's Brief in Opposition, at 6 ("A plain review of the Counterclaim shows recitations of factual allegations that easily satisfy the pleading requirements over the first 60 paragraphs. And the Court can see that paragraphs 71 to 72 of the Counterclaim set forth factual allegations in support of all elements of tortious interference with contract."). Navient has the better arguments.

With regard to the first element, GST has alleged the existence of a contractual relationship or business expectancy. Specifically, GST has alleged the existence of both contractual relationships between GST and the attorneys, i.e., the factoring agreements, and contractual relationships between the attorneys and the debtors, i.e., the attorney-client agreements. Although Navient argues that GST can only allege tortious interference with the factoring agreements because those are the only contractual relationships or business expectancies to which GST was or would have been a party, this argument is directly foreclosed by Virginia Supreme Court precedent. Specifically, in Durrette Bradshaw, P.C. v. MRC Consulting, L.C.,[5] the Virginia Supreme Court explained that "if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for his example, his employers or suppliers," can bring a tortious interference claim against A if "A intend[ed] to affect them." 670 S.E.2d 704, 706 (Va. 2009) (quoting Restatement (Second) of Torts § 766,

---

[5] Neither party cited Durrette Bradshaw in its briefs.

cmt. p). Therefore, GST can, if it has alleged the requisite intent as part of the third element, bring a tortious interference counterclaim on the basis of the attorney-client agreements in addition to the factoring agreements; however, GST has not alleged the requisite intent, i.e., that Navient interfered with the attorney-client agreements "for the purpose of interfering" with GST's factoring agreements. Id.

Although GST's counterclaim includes boilerplate language that Navient "knew and intended" that its actions would interfere with the factoring agreements, that language is directly contradicted by GST's other allegations. For example, as previously discussed, GST alleges that "[t]he purpose of the Navient Disinformation Campaign was to: (a) discourage [debtors] from engaging counsel; (b) terminate existing [debtor] relationships with counsel; and/or (c) damage the reputation, business, and law practices of [the attorneys] so that such attorneys could not, or chose not to, continue representing [debtors]." GST's subsequent, conclusory assertion to the contrary is an example of the "unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement" that "are not entitled to the presumption of truth." Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Accordingly, GST has not properly alleged tortious interference with the attorney-client agreements. Similarly, GST also has not properly alleged tortious interference with the factoring agreements because it has not alleged that any such agreements were ever breached or terminated; rather, GST alleges only that Navient "injured the businesses, reputations, and law practices" of the attorneys, which in turn "destroyed and/or substantially reduced the value of the accounts receivable that GST had acquired" from them. Because GST has failed to allege the intentional breach or termination of the agreements at issue, its tortious interference counterclaim will be dismissed.

## 2. RICO

"The Supreme Court has explained that a civil RICO claim [under 18 U.S.C. § 1962(c)] has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011). These elements are "demanding" because "Congress contemplated that only a party engaging in widespread fraud would be subject to RICO's serious consequences." Goodrow v. Friedman & MacFayden, P.A., 2012 WL 6725617, at *9 (E.D. Va. Dec. 27, 2012). Additionally, if a RICO claim is based on alleged fraudulent activity, a plaintiff must also meet "the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires particularity for claims of fraud." Navient Solutions, LLC v. Krohn & Moss, Ltd., 2018 WL 6790654, at *6 (E.D. Va. July 26, 2018).

Navient raises several arguments in support of its assertion that GST's RICO counterclaim should be dismissed. Navient's arguments include (1) that defamation disguised as wire fraud does not constitute a predicate act of racketeering, and (2) that even if defamation disguised as wire fraud can constitute a predicate act of racketeering, GST has not alleged such fraud with particularity. GST argues the opposite—that defamation characterized as wire fraud can be the basis of a RICO claim and that Navient has alleged such defamation, i.e., "the Navient Disinformation Campaign," with sufficient particularity. Navient has the better arguments.

Although the Fourth Circuit has not yet held as much, other courts have recognized that "it is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." Kimberlin v. Nat'l Bloggers Club, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015) (collecting cases); see also Hourani v. Mirtchev, 796 F.3d 1, 10 n.3 (D.C. Cir. 2015) ("The complaint also alleges defamation and conspiracy to defame under D.C.

7

law, but those are not predicate acts of racketeering under RICO."). Accordingly, courts have frequently rejected RICO claims based on wire fraud allegations when those allegations are merely "an attempt to spin" a defamation claim into a RICO claim or are "at best [a] thinly-clothed" defamation claim. Kimberlin, 2015 WL 1242763, at *9; Kim v. Lee, 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005).

Here, GST does not dispute that it is alleging defamatory conduct as the basis for its RICO counterclaim; nor could it given that it has alleged that Navient's racketeering activity "includes multiple instances of wire fraud by using . . . means of interstate communication to make false and/or libelous statements" about the attorneys to the debtors. Instead, GST argues that "established case law allows RICO claims premised on defamatory remarks;" however, none of the cases which GST cites actually supports that assertion, and none calls into question the more recent, unequivocal statement to the contrary in Kimberlin. Because GST has failed to allege a pattern of racketeering activity, its RICO counterclaim will be dismissed.[6]

### 3. Business Conspiracy

"To recover in an action under [Va. Code Ann. § 18.2-499], a plaintiff must establish: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring [the] plaintiff in his business; and (2) resulting damage to [the] plaintiff." Dunlap, 754 S.E.2d at 317.

---

[6] Even if defamation disguised as wire fraud could constitute a predicate act of racketeering for a RICO claim, GST has not alleged such defamation with the requisite particularity. "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999); see also Baker v. Elam, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012). "Mere allegations of fraud by hindsight will not satisfy the requirements of Rule 9(b)." Harrison, 176 F.3d at 784. Here, GST has at best alleged that the defamatory statements were made some time after 2015 in phone calls to debtors which were placed at the direction of Navient employee Patrick Chaing. Such barebones allegations do not satisfy the requirements of Rule 9(b).

"It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff." Id. "Rather, a plaintiff must establish . . . only that the conspirators acted with legal malice, i.e., intentionally, purposely, and without lawful justification." Id. Allegations of business conspiracy under § 18.2-499 are also subject to the heightened pleading requirements of Rule 9(b) discussed above; "mere conclusory language" is insufficient. See, e.g., Gov't Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004).

As relevant here, "Virginia law makes clear that . . . a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." NorthStar Aviation, LLC v. Alberto, 332 F. Supp. 3d 1007, 1017 (E.D. Va. 2018); see also Marmott v. Md. Lumber Co., 807 F.2d 1180, 1184 (4th Cir. 1986). Additionally, it is "[well] settled that Virginia courts take a fairly broad view of scope of employment, . . . hold[ing] that even intentional torts may be within the scope of employment." Bittingham v. United States, 972 F. Supp. 1014, 1017 (E.D. Va. 1997). "[T]he proper focus is the context in which the intentional tort occurred;" "if the employee commits the intentional tort while performing a service for the employer, then the tort is within the scope of the employee's work[,] [o]therwise it is not." Id.

Here, GST alleges that Navient conspired either with its own employee Patrick Chaing or with "Does 1 through 10 (who are not employees or direct agents of Navient)" in carrying out the "Navient Disinformation Campaign." Neither allegation is sufficient to state a business conspiracy claim. First, GST's few allegations regarding Chaing plainly concern his performance of services for Navient. Accordingly, even though GST has alleged that Chaing committed an international tort, it has not alleged that Chaing was acting outside the scope of his employment

9

when he did so. Therefore, a conspiracy between Navient and Chaing is "a legal impossibility." NorthStar, 332 F. Supp. 3d at 1017.

Second, GST's allegations regarding "Does 1 through 10" are particularly conclusory. Not only are these individuals not named, but GST's counterclaim provides no identifying information about them whatsoever beyond the bare and suspect assertion that they are not Navient employees. This does not meet the heightened pleading requirements of Rule 9(b). See AWP, Inc. v. Commonwealth Excavating, Inc., 2013 WL 3830500, at *3 (E.D. Va. July 24, 2013) (explaining that "the circumstances to be pled with particularity under Rule 9(b) [include] . . . the identity of the person" or persons at issue). It is also another example of the "unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement" that "are not entitled to the presumption of truth." Wikimedia, 857 F.3d at 208. Because GST has failed to allege the existence of a conspiracy between two or more people, its counterclaim for business conspiracy will be dismissed.

III. CONCLUSION

For the reasons stated above, Navient's Motion to Dismiss GST Factoring, Inc.'s Counterclaims [Dkt. 168] will be granted, and GST's counterclaims will be dismissed, by an Order to be issued with this Memorandum Opinion.

Entered this 2 day of April, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

10