# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

NAVIENT SOLUTIONS, LLC,  )
  )
      Plaintiff,  )
  )
v.  )   1:19-cv-461 (LMB/TCB)
  )
THE LAW OFFICES OF JEFFREY LOHMAN,  )
  et al.,  )
  )
      Defendants.  )

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss ("Motion") plaintiff Navient Solutions, LLC's ("plaintiff" or "Navient") Second Amended Complaint filed by defendants Bill Carlson ("Carlson"), R.J. Marshall ("Marshall"), and Manny Kashto ("Kashto,") (collectively "the defendants"), who argue that the complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff has filed a brief in opposition, and defendants have filed a reply brief. Because oral argument will not assist the decisional process, the Motion will be resolved on the papers submitted. For the following reasons, the Motion will be denied.

## I. BACKGROUND

On December 13, 2020, plaintiff filed its Second Amended Complaint ("Complaint"), in which it alleges that numerous defendants conspired together to defraud it out of millions of dollars in outstanding student loan debt. [See Dkt. 100]. The conspiracy allegedly included manufacturing federal lawsuits and arbitration claims against plaintiff for purported violations of the Telephone Consumer Protection Act ("TCPA"). Id. Although "no substantive changes" were made "with respect to the existing [d]efendants," the Complaint added "nine individual

[d]efendants and one corporate [d]efendant," all of whom were described as having "operated the financing and marketing arms" of the alleged scheme. [See Dkt. 77]. Specifically, Carlson was described as having "own[ed] and/or control[led] some or all of the affiliate marketing companies," and Marshall and Kashto were described as having "operate[ed] affiliate marketing companies," including Go2Finance and DocuPrep.[1] Id.

Plaintiff is a Virginia-based limited liability company which is one of the largest loan servicers in the United States. Complaint ("Compl.") ¶ 11. Carlson is a California resident who allegedly served as "a principal of a network of debt counseling companies," including Go2Finance and DocuPrep. Id. ¶ 27. Marshall and Kashto are California residents who allegedly served as "operator[s] of . . . Go2Finance and DocuPrep." Id. ¶ 25–26. Throughout the Complaint, Go2Finance and DocuPrep, along with approximately 18 other companies, are often referred to as the "Affiliates" or the "debt counseling companies," and defendants, along with 8 other individuals and 2 companies, are often referred to as the "Debt Counseling Defendants." Id. ¶¶ 4, 33.

In short, plaintiff alleges that the scheme to defraud was "often initiated by" the Affiliates, who "recruited consumers into the [s]cheme" by "sen[ding] letters and flyers to [them] that misleadingly appeared to be from a government entity [and] offer[ed] assistance in reducing [their] student loan debts." Id. ¶¶ 4, 58. Although these mailers "promised consumers assistance in negotiating down their student loan debt," the Affiliates "never intended to do so;" rather, "they only intended to manufacture TCPA claims against [plaintiff]." Id. ¶ 59. "In some instances, the Affiliates called the consumers directly" to recruit them into the scheme. Id. ¶ 60. "These solicitations often contain[ed] relatively accurate information about consumers' student

---

[1] Go2Finance and DocuPrep are not defendants in this action.

loans," which the Affiliates obtained after the Debt Counseling Defendants "access[ed] credit reports or . . . purchas[ed] the information through various channels." Id. ¶ 73.

The Complaint further alleges that "[r]egardless of how first contact was made, the Affiliates would eventually speak with the borrowers and attempt to persuade them to sign an engagement letter" with one of several attorneys who are also defendants in this action. Id. ¶ 60. "During the course of those calls, the Affiliates would routinely make misrepresentations to the borrowers concerning the scope, efficacy, and risks inherent in the debt relief program being offered." Id. For instance, borrowers were told "that there was a nationwide network of attorneys involved," "that the program had a 100% success rate," and "that their payments would be used to pay their student loan debts," all of which plaintiff alleges was "false." Id. "When a new client was recruited by an Affiliate," the Affiliate would have the client "sign an automatic deposit agreement" to make payments; "[m]any borrowers were told that their payments would be used to pay their student loan debts," which plaintiff alleges "was also false." Id. ¶¶ 60–61. Rather than transmitting the payments to plaintiff, all of the defendants would "split" the payments amongst themselves. Id. at ¶ 61. This would put the loans in default and trigger plaintiff's debt collection procedures, including contacting the borrowers. Id. ¶ 41. Ultimately, the attorneys would file federal lawsuits and arbitration claims against plaintiff on behalf of the clients whom the Affiliates and the Debt Counseling Defendants had "recruited . . . into the [s]cheme," alleging violations of the TCPA based on how plaintiff was contacting them. Id. ¶¶ 78–79. There were "approximately 20" Affiliates involved in the scheme in this way, and they were "largely under [the] common control" of Carlson. Id. ¶¶ 66–67. Two of the Affiliates utilized the "fictional or 'doing business as' names" of Go2Finance and DocuPrep. Id. ¶ 68. Go2Finance

employed "as many as 25 people marketing on behalf of the [s]cheme." Id. DocuPrep employed "as many as 70 people marketing on behalf of the [s]cheme." Id.

The Complaint asserts four claims against defendants. Count 1 alleges a RICO violation under 18 U.S.C. § 1962(c) whereby "[d]efendants . . . Marshall, Kashto, [and] Carlson," along with others, "engaged in a pattern of racketeering activity," including "multiple related instances of mail fraud." Id. ¶ 305. "Specifically, [d]efendants . . . Marshall, Kashto, [and] Carlson," along with others, "directly or through their affiliate marketing companies, sent fraudulent mailings to consumers that misrepresented the nature of the Affiliates' services and misleadingly appeared to be from the federal government in order to recruit these consumers into the [s]cheme." Id. "Similarly, [d]efendants . . . Marshall, Kashto, [and] Carlson," along with others, "directly or through their affiliate marketing companies, misled consumers through false statements as to the scope, efficacy, and risk entailed in the program offered to consumers." Id.

Count 2 alleges a similar RICO violation under 18 U.S.C. § 1962(c) whereby "[d]efendants . . . Marshall, Kashto, [and] Carlson," along with others, "engaged in a pattern of racketeering activity," including "multiple related instances of wire fraud." Id. ¶ 325. "Specifically, in order to recruit consumers into the [s]cheme, [d]efendants . . . Marshall, Kashto, [and] Carlson," along with others, "directly or through their affiliate marketing companies, engaged in email and telephone communications in which [they] misrepresented the nature of their services and misleadingly stated that they would negotiate with [plaintiff] regarding consumers' private student loans, that the program was 100% effective, and that the consumers' credit would not be harmed." Id. In Count 3, plaintiff alleges a RICO violation under 18 U.S.C. § 1962(d) whereby all of the defendants "conspired" to violate 18 U.S.C. § 1962(c) in the manner described in Counts 1 and 2. Id. ¶ 339.

Lastly, Count 5[2] alleges tortious interference with contractual relations in violation of Virginia law whereby the "Debt Counseling Defendants interfered with [consumers'] repayment obligations by inducing [them] to terminate any pre-scheduled or automatic payments to [plaintiff], and instead route payments to the [a]ttorney [d]efendants." Id. ¶ 354. As a result of this alleged interference, plaintiff "was denied payments that it was owed on valid and outstanding student loans," including by being forced to "write off or write down all or part of outstanding student loans." Id. ¶¶ 357–58. Accordingly, the relief plaintiff seeks includes "[c]ompensatory damages for . . . lost loan value or revenues." Id. at 70.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(2), "the Court may dismiss a case for lack of personal jurisdiction." Selke v. Germanwings GmbH, 261 F. Supp. 3d 645, 561 (E.D. Va. 2017). "When a court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of a sufficient jurisdictional basis to survive the challenge." Id. "In such circumstances, a court must view all the relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences for the existence of jurisdiction." Id. at 651–52.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint "must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). "Therefore, in order for a . . . complaint to survive dismissal for failure to state a claim, the plaintiff must allege facts sufficient to state all of the elements of [his or] her claim." Lucas v. Henrico Cty. Sch. Bd., 822

---

[2] Count 4 is asserted only against the attorney defendants. [See Dkt. 100].

F. Supp. 2d 589, 600 (E.D. Va. 2011). "Plaintiffs cannot satisfy this standard with complaints containing labels and conclusions or a formulaic recitation of the elements of a cause of action." Id. "Instead, [plaintiffs] must allege facts sufficient to . . . stat[e] a claim that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss under Rule 12(b)(6), "a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff." Id.

## B. Analysis

Defendants' motion to dismiss is a quintessential example of a scattershot pleading. Defendants raise at least 9 distinct arguments, many of which are supported by little if any relevant case law. For the reasons set forth below, none of defendants' arguments are meritorious.[3]

### 1. Personal Jurisdiction

Defendants, all of whom are California residents, argue that the Court lacks personal jurisdiction over them. In accordance with Federal Rule of Civil Procedure 4(k)(1)(C), "[w]here a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment." Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 443–44 (4th Cir. 2015). "To make out a Fifth Amendment challenge to personal jurisdiction," a defendant must show "that the district court's

---

[3] At the outset, in its Brief in Opposition, plaintiff occasionally cites to the Declaration of David Mize, which it submitted earlier in this litigation in connection with a motion to compel. [Dkt. 95-1]. The Court will not consider this document in resolving defendants' motion to dismiss because it was neither attached to nor incorporated into plaintiff's Second Amended Complaint. See, e.g., Leichling v. Honeywell Int'l, Inc., 842 F.3d 848, 851 (4th Cir. 2016).

assertion of personal jurisdiction over them would result in such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy evidenced by a nationwide service of process provision." Id. "Normally, when a defendant is a United States resident, it is highly unusual . . . that inconvenience will rise to the level of a constitutional concern." Id.

Here, plaintiff asserts, and defendants do not challenge, that they have been validly served pursuant to the RICO Act's nationwide service of process provision. See 18 U.S.C. § 1965(d); see also ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626–27 (4th Cir. 1997). Plaintiff also asserts, and defendants do not challenge, that they are United States residents. See Compl. ¶¶ 25–27. With regard to inconvenience or unfairness, defendants argue only that being California residents creates "extreme hardship" which has recently been "exacerbated" by the current global pandemic. Defendants' Reply Brief at 20. Such conclusory statements fail to demonstrate that this is one of the highly unusual cases in which inconvenience rises to a level of constitutional concern. Defendants also argue that they lack sufficient minimum contacts with Virginia to be subject to personal jurisdiction here; "[t]hat standard, however, is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision." Trustees of the Plumbers & Pipefitters, 791 F.3d at 443–44. Accordingly, defendants have not satisfied their "heavy burden" to show that this court lacks personal jurisdiction over them. Id.

## 2. Noerr-Pennington Immunity

Defendants argue that plaintiff has failed to state a claim upon which relief can be granted because it alleges that it was harmed only by non-frivolous TCPA litigation and arbitration claims which constitute protected petitioning activity under the Noerr-Pennington doctrine. The Noerr-Pennington doctrine "safeguards the First Amendment right to petition the

7

government for a redress of grievances . . . by immunizing citizens from the liability that may attend the exercise of that right." Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 362 (4th Cir. 2013). "However, the First Amendment offers no protection when petitioning activity . . . is a mere sham to cover [up] an attempt to violate federal law." Id.

"[T]he Noerr- Pennington doctrine is an affirmative defense," and a motion to dismiss "cannot reach the merits of an affirmative defense [unless] all facts necessary to the affirmative defense clearly appear on the face of the complaint." Id. at 359–60. Courts have routinely declined to address the Noerr-Pennington doctrine at the motion to dismiss stage, particularly where the sham litigation exception may be involved. See id.; see also Leading Tech. Composites, Inc. v. MV2, LLC., 2019 WL 4962312, at *4 (D. Md. Oct. 8, 2019); Saxton v. Town of Irmo Police Dep't, 2015 WL 13733740, at *5 (D.S.C. Dec. 23, 2015); I-Minerals USA, Inc. v. Zielke, 2015 WL 5457840, at *4 (W.D.N.C. Sept. 16, 2015). Defendants make no argument that supports departure from this established practice. Accordingly, defendants' reliance on the Noerr-Pennington doctrine at this stage is rejected.

### 3. Proximate Causation

Defendants argue that plaintiff has failed to state a claim upon which relief can be granted because it has failed to allege proximate causation. Specifically, they argue that any chain of causation between their alleged actions and plaintiff's alleged harm is too attenuated as matter of law. Defendants do not make clear whether this argument applies to plaintiff's RICO claims, its tortious interference claim, or both; accordingly, both will be addressed.

Under federal law, "the general proposition [is] that proximate cause is an issue of fact often suited for trial." Nat'l Org. for Marriage, Inc. v. United States, 24 F. Supp. 3d 518, 531

(E.D. Va. 2014); see also Sec. Pac. Equip. Leasing, Inc. v. Earthworm Tractor Co., 1990 WL 96757, at *4 (S.D.N.Y. July 3, 1990) (explaining, in the context of a RICO claim based on predicate acts of mail and wire fraud, that "[t]he question of proximate cause is a question of fact to be decided by a jury"). Similarly, under Virginia law, "[i]ssues of . . . proximate causation ordinarily are questions of fact for the jury's determination," and "[a] court decides [such] issues only when reasonable persons could not differ." Dorman v State Indus., Inc., 787 S.E.2d 132, 138 (Va. 2016).

Here, plaintiff alleges that defendants, directly or indirectly through their affiliate companies, recruited consumers into a fraudulent debt-relief program which deprived plaintiff of payments to which it was entitled and forced plaintiff to expend vast amounts of money defending itself in litigation and arbitration proceedings. See Compl. ¶¶ 305, 311, 325, 333, 354, 357–58. Defendants appear to argue that other individuals or entities, such as the attorney defendants, constituted intervening causes which severed the chain of causation between their alleged actions and plaintiff's alleged harm; however, that is a question of fact to be determined by a jury. Accordingly, plaintiff has sufficiently alleged proximate causation in support of both its RICO claims and its tortious interference claim.

### 4. Lost or Written Off Loan Value

Defendants argue that plaintiff has failed to state a claim that would entitle it to lost or written off loan value because it alleges that it was the servicer as opposed to the owner of the loans at issue. "[A] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to claims, not to requests for a certain type of damages that are merely the relief demanded as part of a claim;" rather, such a motion is "more appropriately considered as a motion to strike pursuant to Federal Rule of Civil Procedure 12(f)." Pucci v. Carnival Corp., 146 F. Supp. 3d

9

1281, 1293 (S.D. Fla. 2015). Therefore, the Court "exercises its discretion to consider [this] portion of the motion to dismiss as a motion to strike on the same grounds." Id. This accords with the relief defendants seek—an order striking plaintiff's request for lost or written off loan value from its Complaint.

"Rule 12(f) permits the court . . . to strike from any pleading any insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc., 904 F. Supp. 500, 504 (E.D. Va. 1995). Here, defendants have failed to identify anything remotely redundant, immaterial, impertinent, or scandalous about plaintiff's request for lost or written off loan value. Plaintiff alleges that, as a result of defendants' actions, it had to write off or otherwise discharge large portions of otherwise valid debts and thereby lost out on various payments to which it was entitled as the loan servicer. See Compl. ¶¶ 156, 176, 199, 227, 245, 264, 293, 358. That lost revenue is plainly an injury for which plaintiff can seek redress. Accordingly, plaintiff's request for lost or written off loan value will not be stricken from its Complaint.

### 5. Tortious Inference with Contractual Relations

Defendants argue that plaintiff has failed to state a tortious interference claim upon which relief can be granted because it has not alleged that it was a party to the only contracts at issue, i.e., the promissory notes executed by the lenders and the borrowers. This argument is unpersuasive for two reasons. First, it is factually incorrect; plaintiff alleges that "[it] and/or its affiliates had entered into valid promissory notes with each and every client of the [s]cheme" and that these promissory notes "memorialized a valid and binding agreement to repay a student loan that had been disbursed." Compl. ¶¶ 351–52. Second, it is legally incorrect; plaintiff need not be a party to the contracts at issue to bring a tortious interference claim based on them. The Virginia

Supreme Court has explained that "if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employers or suppliers," can bring a tortious interference claim against A if "A intend[ed] to affect them." Durrette Bradshaw, P.C. v. MRC Consulting, L.C., 670 S.E.2d 704, 706 (Va. 2009) (quoting Restatement (Second) of Torts § 766, cmt. p). Here, the Complaint is replete with plausible allegations that the alleged scheme was specifically targeted at plaintiff. See, e.g., Compl. ¶¶ 2, 6, 7, 8, 10.

Defendants also argue that plaintiff has failed to state a cognizable tortious interference claim because it has not specified the contracts at issue and has not pleaded the alleged fraud regarding those contracts with particularity, in violation of Federal Rule of Civil Procedure 9(b). This argument is unpersuasive because the Complaint identifies eight specific individuals all of whose loans it serviced and most of whom at some point stopped making payments on those loans, see, e.g., Compl. ¶¶ 135, 143, 157, 165, 177, 187, 201, 211, 216, 228, 231, 246, 253, 265, 271, and also alleges that these individuals "exemplify the [s]cheme" to defraud it, id. ¶ 134. This specificity distinguishes plaintiff's Complaint from the one found deficient in the only on-point case cited by defendants. See Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 500–01 (E.D. Va. 2003) ("[The plaintiff] neither identified with which of its customer contracts [the defendant] meddled, . . . nor does it provide any support for its contention that this interference . . . induced or caused a breach of [any such contracts]."). Accordingly, plaintiff's tortious interference with contractual relations claim will go forward.

### 6. Information and Belief Pleading

"[T]he preamble 'on information and belief'" is "a device frequently used by lawyers to signal that they rely on second-hand information to make a good-faith allegation of fact." Raub v. Bowen, 960 F. Supp. 2d 602, 615 (E.D. Va. 2013). Defendants argue that plaintiff has

impermissibly utilized "information and belief" pleading throughout the Complaint. Specifically, defendants argue that plaintiff has alleged fraud on information and belief, in violation of Federal Rule of Civil Procedure 9(b).

"A plaintiff is generally permitted to plead facts based 'on information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant." Ridenour v. Multi-Color Corp., 147 F. Supp. 3d 452, 456 (E.D. Va. 2015) (collecting cases). This general rule also applies in the Rule 9(b) context. See, e.g., ZAO Odessky Konjatschnyi Kawos v. SIA Baltmark Invest., 2013 WL 5945677, at *6 (E.D. Va. Nov. 6, 2013); Degraw v. Wike, 2011 WL 3268578, at *2 (E.D. Va. May 9, 2011); Activevideo Networks, Inc. v. Verizon Commc'ns, Inc., 2011 WL 13113382, at *5 (E.D. Va. Mar. 1, 2011). Here, plaintiff asserts, and defendants do not challenge, other than in a single conclusory statement to the contrary, that the necessary evidence of the alleged scheme is largely controlled by all of the defendants. Therefore, plaintiff is permitted to plead facts based on information and belief.

The only on-point case cited by defendants is consistent with this conclusion. In Carter v. Va. Dep't of Game & Inland Fisheries, the court recognized the general rule and its applicability in the Rule 9(b) context. 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018). Although the court subsequently held that the plaintiffs' complaint impermissibly alleged "element after element of several claims" based on "a series of facts alleged only on information and belief," the complaint involved multiple plaintiffs none of whom "specifie[d] the theory of race discrimination under which she proceed[ed]," "instead invok[ing] talismanic phrases from what might be variant theories of discrimination." Id. at *7, *9. The complaint thus "fail[e]d to give [the defendant] fair notice of each plaintiff's claims and the grounds upon which they rest[ed]." Id. at *9. Here, in contrast, the Complaint clearly specifies the theories of liability under which plaintiff is

proceeding and provides defendants fair notice of the grounds on which those theories rest. Accordingly, plaintiff's use of "information and belief" pleading does not warrant dismissal of the Complaint.[4]

### 7. **Group Pleading**

Group pleading is pleading which attributes allegations to "a subset of defendants" rather than to "a particular defendant." J.A. v Miranda, 2017 WL 3840026, at *3 (D. Md. Sept. 1, 2017). Defendants argue that plaintiff has impermissibly utilized group pleading throughout the Complaint. Specifically, they argue that plaintiff has alleged fraud through group pleading, in violation of Federal Rule of Civil Procedure 9(b), emphasizing that the Complaint includes few allegations specific to them and instead groups them together with other individuals and companies referred to as the "Debt Counseling Defendants."

"[T]he group pleading presumption . . . is not a prohibition on forms of pleading; rather, it serves as a presumption that may be invoked in favor of a plaintiff." Dunn v. Borta, 369 F.3d 421, 434 (4th Cir. 2004). It "allows a plaintiff to rely on a presumption that statements in company-generated documents represent the collective work of those individuals directly involved in the company's daily management." Id. Therefore, although the Fourth Circuit "[has] never addressed the issue of whether the group pleading presumption should be recognized," even if it were, it would only operate to plaintiff's benefit. Id.; see also In re Trex Co., Inc. Sec.

---

[4] To the extent that some of the cases cited in this section also require, in the Rule 9(b) context, that the complaint set forth facts on which any asserted belief is reasonably founded, plaintiff has set forth sufficient facts here. "[A] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019). Although plaintiff's Complaint is not always a model of clarity, it alleges a complex and sweeping scheme to defraud, and in doing so both provides defendants with fair notice of the claims against them and relies on significant pre-discovery evidence to support those claims.

Litig., 212 F. Supp. 2d 596, 605 (W.D. Va. 2002) (explaining that the group pleading doctrine "relaxes Rule 9(b)'s pleading requirements in cases of corporate fraud"). Accordingly, plaintiff's use of group pleading, which only occurs following plaintiff's identification of each specific defendant and their role in the alleged scheme, does not warrant dismissal. See, e.g., CSX Transp., Inc. v. Gilkison, 2015 WL 1598081, at *3, *12 (N.D.W. Va. May 3, 2012) (rejecting the defendants' argument that the plaintiff had engaged in "improper group pleading" such that it "failed to allege a fundamental element of a RICO violation" because the plaintiff sufficiently "identifie[d] the individual defendants and differentiate[d] between their conduct").

### 8. Individual-Specific Allegations

Defendants similarly and summarily argue that plaintiff has failed to state a claim upon which relief can be granted because it does not allege purportedly necessary facts that are specific to each individual. For instance, defendants argue that plaintiff has not alleged that they knowingly engaged in any prohibited conduct. This argument is unpersuasive because "Rule 9(b) . . . specifically instructs that malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Xia Bi v. McAuliffe, 927 F.3d 177, 185 (4th Cir. 2019). Here, plaintiff generally alleges that all of the defendants knowingly participated in the scheme to defraud it. See, e.g., Compl. ¶¶ 3, 340.

Defendants also appear to argue that plaintiff has not alleged a basis on which they can be held liable for actions attributed to their affiliate companies, such as alter-ego liability; however, defendants only make four cursory and conclusory references to alter-ego liability in their briefs, and each reference is entirely unaccompanied by any relevant explanation, such as an explanation of the elements of alter-ego liability, or any citation to relevant legal authority. See, e.g., Defendants' Brief in Support at 2 ("[P]laintiff does not allege that the three defendants are

the alter ego of the Affiliates[] [or] why any corporate veil should be pierced . . . ."). "The court has no obligation to fashion arguments for a party or to further develop a party's argument when it is wholly conclusory, unexplained, and unadorned with citation to legal authority." Clayton v. Nationwide Mut. Ins. Co., 260 F. Supp. 3d 514, 521 (D.S.C. 2017). "As a general rule, parties may not outsource their legal research to the court or otherwise foist upon it the necessary legwork to flesh out a legal claim or defense because, by permitting a party to do so, the court edges into the impermissible advocatory role of argument-creator." Id. Here, "[b]ecause [defendants] fail[ed] to develop [their] argument," it will not be considered. Id.

### 9. RICO

Lastly, defendants argue that even if their first eight arguments are unpersuasive, plaintiff has still failed to state a RICO claim upon which relief can be granted. "The Supreme Court has explained that a civil RICO claim [under 18 U.S.C. § 1962(c)] has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011). Defendants specifically argue that plaintiff has not alleged engagement in a pattern of racketeering activity or the existence of an enterprise. Neither argument is persuasive.

With regard to engagement in a pattern of racketeering activity, "[t]o prove a pattern of racketeering activity, the evidence must show that the racketeering predicates are related, and that they amount to or pose a threat of continued [racketeering] activity." United States v. Pinson, 860 F.3d 152, 161 (4th Cir. 2017). "Racketeering acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. "To constitute or threaten continued [racketeering] activity, racketeering acts may either be close-ended, i.e., a

15

closed period of repeated conduct, or open-ended, i.e., naturally projecting into the future with a threat of repetition." Id.

Here, plaintiff has plainly alleged that defendants engaged in a pattern of mail and wire fraud whereby they, directly or through their affiliate marketing companies, recruited student loan debtors into the scheme by making false statements as to the scope, efficacy, and risk entailed in the debt-relief program they purported to offer. See, e.g., Compl. ¶¶ 305, 325. These alleged acts were related in that they had the same or very similar purposes, results, participants, victims, and methods of commission. See, e.g., id. ¶¶ 2–10. The Complaint also alleges that these acts were open-ended in that defendants "continue to market and profit from the [s]cheme" to this day. Id. ¶ 134.

With regard to the existence of an enterprise, "a RICO enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." Pinson, 860 F.3d at 161. "It includes not only legal entities but also any union or group of individuals associated in fact." Id. "An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue their enterprise's purpose." Id.

The Complaint has plainly alleged the existence of an association-in-fact enterprise of which defendants were a part by describing that the purpose of the scheme was to defraud plaintiff through manufactured TCPA litigation and arbitration claims, that defendants were part of the marketing arm of the scheme, as opposed to the legal arm, and that the scheme has been ongoing since at least 2015. See, e.g., Compl. ¶¶ 4, 58–59, 134. Although defendants portray themselves as "outsiders to the enterprise," that claim does not appear to be correct, at least as the enterprise has been alleged. Defendants' Brief in Support at 25.

Defendants' only arguments to the contrary merely reiterate their view that plaintiff has impermissibly used both "information and belief" pleading as well as group pleading throughout the Complaint. As previously discussed, those arguments are without merit. The Complaint has adequately alleged claims upon which relief can be granted. Defendants' concern about the lack of evidence of their involvement in the scheme can be addressed after discovery has been completed.

### III. CONCLUSION

For the reasons set forth above, defendants' Motion to Dismiss plaintiff's Second Amended Complaint will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 14th day of April, 2020.

Alexandria, Virginia

/s/ Leonie M. Brinkema
United States District Judge