# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

NAVIENT SOLUTIONS, LLC

        Plaintiff,

   v.

THE LAW OFFICES OF JEFFREY
LOHMAN, P.C., *et al.*,

        Defendants.

CIVIL ACTION No.1:19-cv-00461

**NAVIENT SOLUTIONS, LLC'S OPPOSITION TO DEFENDANTS THE LAW OFFICE OF JEFFREY LOHMAN, JEFFREY LOHMAN, JEREMY BRANCH, ALYSON DYKES, AND IBRAHIM MUHTASEB'S JOINT MOTION TO COMPEL NAVIENT SOLUTIONS, LLC'S PRODUCTION OF PRIVILEGED COMMUNICATIONS**

Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun V (*pro hac vice*)
Whitney A. Fore (Va. Bar No. 87526)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
wfore@ifrahlaw.com

*Counsel for Plaintiff Navient Solutions, LLC*

May 20, 2020

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 6

I.   NSL Has Not Placed Its Attorney-Client Communications "At Issue" Or Otherwise Actively
or Constructively Waived the Attorney-Client Privilege. ........................................................ 6

   A.   NSL Has Not Taken Affirmative Steps in the Litigation to Place the Advice of its
Attorneys "At Issue." ........................................................................................................... 7

   B.   Alleging That NSL Was Injured "By Reason Of" The Scheme Is Insufficient to Put NSL's
Attorney-Client Communications "At Issue." ................................................................... 13

   C.   Denying the Lohman Defendants Access to NSL's Privileged Communications Does Not
Deprive Them of Information Vital to Their Defense. ....................................................... 17

II.   Compelling NSL's In-House and Outside Counsel to Appear at Deposition is Duplicative
and Harassing.......................................................................................................................... 17

   A.   The Information the Lohman Defendants Seek from NSL's In-House and Outside Counsel
is Available from NSL's Other Witnesses........................................................................... 18

   B.   Even if Depositions of NSL's In-House and Outside Counsel Are Allowed, The
Information Sought is Privileged. ..................................................................................... 19

CONCLUSION........................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Balto. Scrap Corp. v. David J. Joseph Co.*,
No. L-96-827, 1996 WL 720785 (D. Md. Nov. 20, 1996) ................................................... 9, 10

*Billings v. Stonewall Jackson Hospital*,
635 F. Supp. 2d 442 (W.D. Va. 2009) ................................................................................ 6

*Blue Lake Forest Prods., Inc. v. United States*,
75 Fed. Cl. 779 (2007) ........................................................................................................ 11

*Botkin v. Donegal Mut. Ins. Co.*,
No. 5:10cv00077, 2011 WL 2447939 (W.D. Va. June 15, 2011) ...................................... 9, 10

*Boughton v. Cotter Corp.*,
65 F.3d 823 (10th Cir. 1995) .............................................................................................. 8

*Carr v. Double T Diner*,
272 F.R.D. 431 (D. Md. 2010) ............................................................................................ 19

*Chisolm v. TranSouth Fin. Corp.*,
194 F.R.D. 538 (E.D. Va. 2000) ......................................................................................... 16

*Cincinnati Ins. Co. v. Zurich Ins. Co.*,
198 F.R.D. 81 (W.D.N.C. 2000) ......................................................................................... 9

*Clearwater v. Indep. Sch. Dist. Number 166*,
No. Civ. 97–838, 1998 WL 315358 (D. Minn. Mar. 27, 1998) ......................................... 13

*Conkling v. Turner*,
883 F.2d 431 (5th Cir. 1989) .............................................................................................. 13

*Cook v. Hayden*,
31 S.E.2d 625 (Va. 1944) .................................................................................................... 16

*Crowe v. Smith*,
848 F. Supp. 1258 (W.D. La. 1994) .................................................................................... 15

*CSX Transp., Inc. v. Gilkison*,
No. 5:05cv202, 2012 WL 1598081 (N.D. W. Va., May 3, 2012) ....................................... 15

*CSX Transp., Inc. v. Gilkison*,
406 F. App'x 723 (4th Cir. 2010) ........................................................................................ 15

*CSX Transp., Inc. v. Peirce*,
974 F. Supp. 2d 927 (N.D. W. Va. 2013) ........................................................................... 15

*E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*,
No. WMN-08-0984, 2010 WL 2572809 (D. Md. June 22, 2010) ...................................... 19

*Elat v. Emandopngoubene*,
No. PWG-11-2931, 2013 WL 1146205 (D. Md. Mar. 18, 2013) ....................................... 6, 9

*Ford Motor Co. v. Nat'l Indem. Co.*,
No. 3:12CV839, 2013 WL 3831438 (E.D. Va. July 23, 2013) ........................................... 18

*GAB Bus. Servs., Inc. v. Syndicate 627*,
809 F.2d 755 (11th Cir. 1987) ............................................................................................ 12

*Hearn v. Rhay*,
68 F.R.D. 574 (E.D. Wash. 1975) ....................................................................................... 11

*Hiss v. Friedberg*,
112 S.E.2d 871 (Va. 1960) .................................................................................................. 15

*In re Sealed Case*,
676 F.2d 793 (D.C. Cir. 1982) ............................................................................................ 9

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
    797 F. Supp. 363 (D.N.J. 1992) ........................................................ 10

*N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*,
    117 F.R.D. 83 (M.D.N.C. 1987) ...................................................... 19

*Rambus, Inc. v. Infineon Technologies AG*,
    164 F. Supp. 2d 743 (E.D. Va. 2001) ............................................... 15

*Reif v. CAN*,
    248 F.R.D. 448 (E.D. Pa. 2008) ........................................................ 8

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) ................................................ 6, 7, 9, 10

*Roboserve, Inc. v. Kato Kagaku Co., Ltd.*,
    78 F.3d 266, 274 (7th Cir. 1996) ..................................................... 15

*Shaheen v. WellPoint Cos., Inc.*,
    490 F. App'x 552 (4th Cir. 2012) ...................................................... 6

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ......................................................... 18

*Smith v. Scottsdale Ins. Co.*,
    40 F. Supp. 3d 704 (N.D. W. Va. 2014) ............................................ 9

*Spark v. MBNA Corp.*,
    178 F.R.D. 431 (D. Del. 1998) ......................................................... 16

*Stalling v. Union Pac. R.R. Co.*,
    No. 01 C 1056, 2004 WL 783056 (N.D. Ill. Jan. 23, 2004) ............ 18, 20

*Tax-Right, LLC v. SICPA Prod. Sec., LLC*,
    No. 3:12cv657, 2013 WL 3791487 (E.D. Va. July 18, 2013) ............ 11

*Todd v. Sykes*,
    33 S.E. 517 (Va. 1899) .................................................................... 16

*Union Co., IA v. Piper Jaffray & Co., Inc.*,
    248 F.R.D. 217 (S.D. Ia. 2008) ........................................................ 11

*United States v. Jones*,
    696 F.2d 1069 (4th Cir. 1982) ........................................................... 9

**Statutes**
26 U.S.C. § 7434 ........................................................................................ 14

**Other Authorities**
22 Am. Jur. 2d Damages § 617 ................................................................... 15

4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts*
    (2d ed. Supp. 2002) ....................................................................... 14

Jacob L. Todres, Torts, *Tax Reporting, and Preemption: Is There Tort Liability for Incorrect*
    *Information Reports?*, 28 J. Corp. L. 259 (2003) .............................. 14

**Rules**
Fed. R. Civ. P. 26 ................................................................................. 17, 19

Fed. R. Civ. P. 30 ...................................................................................... 19

## INTRODUCTION

Plaintiff Navient Solutions, LLC, ("NSL") opposes the Defendants The Law Office of Jeffrey Lohman, P.C., Jeffrey Lohman, Jeremy Branch, Alyson Dykes, and Ibrahim Muhtaseb's (collectively, the "Lohman Defendants'") Motion to Compel Navient Solutions, LLC's Production of Privileged Communications.  The motion appears to be retaliatory and has no basis.

The Lohman Defendants filed their motion only after this Court's and the District Court's crime/fraud rulings, Dkts. 126, 187, 219, ostensibly to gain information about why NSL settled underlying TCPA matters to support a causation argument.  As the Lohman Defendants well know, however, NSL could not simply ignore these lawsuits and had no choice but to respond to them by either litigating or settling.  In any case, NSL previously agreed to produce a second Rule 30(b)(6) witness – Troy Standish – NSL's Senior Vice President of NSL's Asset Management and Servicing Operations who is responsible for providing settlement authority in TCPA cases.  Rather than take Mr. Standish's deposition, the Lohman Defendants have pushed it off twice and now demand all of NSL's privileged communications as well as needless attorney depositions.  They are not entitled to such relief because NSL has not waived the attorney client privilege or otherwise placed its privileged communications "at issue" in this case.  Further, the Lohman Defendants are not entitled to depose NSL's in-house and outside counsel because compelling these individuals to appear at deposition is duplicative, harassing, and unnecessary.

## BACKGROUND

NSL's Second Amended Complaint details a Scheme pursuant to which borrowers were recruited through a fraudulent marketing program and then referred to former-Defendant David Mize or other attorneys for debt relief representation.  Knowing that he had no way to resolve a majority of the cases, Mize entered into an of-counsel agreement with the Defendant The Law Offices of Jeffrey Lohman, P.C., to create TCPA cases and the conspirators all made efforts to

1

induce clients to cease making payments on their loans, attempt to revoke consent for calls, and attempt to induce calls from NSL that they would characterize as "violations." The Lohman Defendants then made further misrepresentations and omissions by filing complaints without authorization. The claim manufacturing process was intended to maximize the number of calls.

On September 27, 2019, the Defendants Law Offices of Jeffrey Lohman, P.C., and Jeffrey Lohman served requests for production of documents relating to, *inter alia*, NSL's claimed damages, requesting that NSL:

> "Produce all documents that refer to or relate to your damage claims in the above-captioned action . . ., including but not limited to the retainer agreements representing the attorneys [sic] fees sought by Plaintiff as Compensatory damages";

> "Produce all documents that refer, relate to, or concern the [TCPA] 'lawsuits and proceedings' . . .";

> "Produce all documents that refer, relate to, or concern any 'settlements' or 'payments' referred to in [NSL's Complaint]";

> "Produce all documents that refer, relate to, or concern any "debt" referred to in [NSL's Complaint]"; and

> "Produce all documents that refer, relate to, or concern any injury caused "by reason of" the RICO violations alleged in [NSL's Complaint.]"

*See* Dkt. 228-8. NSL objected to each request on the basis that it sought information that included "documents protected by the attorney client privilege, the work product doctrine, or both." *Id.* Nevertheless, NSL also produced thousands of non-privileged, responsive documents relating to its defenses and settlements of the underlying TCPA matters, including a damages chart that was most recently updated on April 27, 2020. Declaration of George Calhoun ("Calhoun Decl."), attached hereto, ¶ 5; Dkt. 228-3.

Similarly, on September 27, 2019, Defendant The Law Offices of Jeffrey Lohman, P.C., issued interrogatories asking NSL to, *inter alia*:

"Describe in detail all of Navient's damages, whether caused 'by reason' of a RICO violation or other wrongful conduct . . ."; and

"List the damages sustained 'by reason of' Defendants alleged RICO violation[.]"

*See* Dkt. 228-9.  In response to each interrogatory referenced above, NSL referred the Lohman Defendants to its document production, "which contains or will contain a spreadsheet showing the calculation of total damages."  *Id.*

On November 19, 2019, the Lohman Defendants served a Rule 30(b)(6) notice of deposition requesting that an NSL representative appear to testify about, *inter alia*:

"Knowledge and identification of all documents relating to the belief, understanding or conclusions that federal lawsuits and arbitration proceedings brought under the TCPA from January 2015 to present were manufactured.  This includes knowledge and identification of the legal conclusions forming this belief or understanding";

"Knowledge and identification of all purported documents and communications that NSL relied upon to discharge or write-off student loans from January 2015 to present.  This includes before and/or during the filing of federal lawsuits or arbitration proceedings";

"Knowledge and identification of all documents, communications, policies, procedures, rules, and practices NSL relied upon to settle TCPA case[s] from January 2015 to the present"; and

"Knowledge and identification of every false and misleading statement that NSL relied upon in connection with TCPA matters between January 2015 to the present."

*See* Dkt. 228-10, Schedule A.

On December 11, 2019, NSL produced Andrew Reinhart as its 30(b)(6) representative.  *See* Dkt. 228-11.  Mr. Reinhart is a senior account analyst for NSL.  *Id.* at 8.  When consumers bring lawsuits against NSL, including lawsuits brought by the Lohman Defendants, Mr. Reinhart's role is to "gather the [relevant account] documents" and provide them to NSL's in-house counsel along with "our analysis of the facts."  *Id.* at 14–15, 34–35.  During his deposition, Mr. Reinhart stated that he did not know some of the facts relating to NSL's reliance on Defendants'

misrepresentations or omissions, nor did he know exactly when NSL became aware of the Scheme[1] and how Defendants' fraud caused NSL's damages.  *Id.* at 52–53, 115, 128, 194–95.  He was instructed not to answer questions concerning communications with in-house counsel.  *Id.* at 52.

On January 17, 2020, counsel for Defendants The Law Offices of Jeffrey Lohman, P.C., Jeffrey Lohman, and Jeremy Branch emailed NSL's counsel to request a "deposition of NSL's in-house counsel who was responsible for settling the claims that constitute its damages claim." Calhoun Decl. ¶ 12 & Ex. A.  On January 21, 2020, NSL's counsel responded via email stating, "[w]ith respect to the NSL in house attorneys, can you let me know what topics you intend to cover specifically and what if anything you contend is not covered by the attorney client privilege or why it is not applicable?  That will assist in determining whether we voluntarily make one or more of them available."  *Id.* ¶ 13 & Ex. B.  On January 23, 2020, counsel for Defendants The Law Offices of Jeffrey Lohman, P.C., Jeffrey Lohman, and Jeremy Branch emailed NSL's counsel to provide the intended deposition topics and the rationale for why the attorney-client privilege is inapplicable.  *Id.*  The parties then discussed a possible stipulation that might resolve Defendants' issues, but no agreement was reached.

On January 29, 2020, Defendants The Law Offices of Jeffrey Lohman, P.C., Jeffrey Lohman, and Jeremy Branch served an interrogatory on NSL asking for the identity(ies) of NSL personnel who "reasonably relied on the Attorney Defendants' misrepresentations."  *See* Dkt. 228-12. On February 13, 2020, NSL objected to the interrogatory on the basis that it sought "information protected from disclosure by the attorney-client privilege, deliberative process privilege, and/or attorney work product doctrine."  *Id.*  On February 28, 2020, NSL responded to

---

[1] Capitalized terms not defined herein are ascribed their meaning as set forth in the Second Amended Complaint.

the interrogatory by stating that "NSL relied on those misrepresentation[s] and omissions as a corporate entity," so no one person could be said to have relied on a particular representation or omission.  *See* Dkt. 228-13 at 3.  NSL, however, identified Mr. Standish in response to this interrogatory.  *Id*.

On April 17, 2020, NSL provided the Lohman Defendants with NSL's revised damages calculations, listing damages claimed in each of the underlying TCPA cases.  Calhoun Decl. ¶ 20; Dkt. 228-3.  On April 21, 2020, the Lohman Defendants requested various documents relating to NSL's updated damage calculations, including "documents that substantiate NSL's damages relating to Legal Fees / Expenses . . .."  Calhoun Decl. ¶ 21.[2]  The Lohman Defendants then requested all privileged communications relating to the issue of any causal link between the Scheme and NSL's damages, arguing that NSL had waived any privilege associated with the communications by placing them "at issue."  *Id.*  On April 27, 2020, NSL agreed to produce its attorney invoices, subject to the redaction of privileged material.  *Id.* ¶ 22.  NSL did not agree to produce any other attorney-client communications.  *Id.*  Between April 27, 2020, and May 11, 2020, the parties continued to meet and confer concerning the Lohman Defendants' additional discovery demands, including their request for attorney communications and testimony.  *Id.* ¶ 23.  Ultimately, NSL stated it would not produce any privileged communications (other than redacted invoices) and would not consent to the deposition of its attorneys regarding privileged communications or work product.  *Id.*

Despite having had the opportunity to depose Mr. Standish since he was first identified on

---

[2] NSL previously provided copies of fee payments, screenshots of its accounting system showing such payments, and screenshots of its computer system showing loan write offs – all of which support NSL's damages claims.  The Lohman Defendants, however, also wanted copies of NSL's actual outside counsel invoices.  *Id.*

February 28, 2020 (and despite litigating this case quite actively in the interim), the Lohman Defendants delayed doing so for nearly three months. *Id.* ¶ 24. Further, the Lohman Defendants raised the issue of privilege waiver only after this Court and the District Court ordered the Lohman Defendants to produce all documents they had withheld under their own assertion of attorney-client privilege. *Id.* ¶ 25.

## ARGUMENT

**I.      NSL Has Not Placed Its Attorney-Client Communications "At Issue" Or Otherwise Actively or Constructively Waived the Attorney-Client Privilege.**

At-issue waiver is a narrowly limited exception to the attorney-client privilege that does not apply to the facts presented here. *Billings v. Stonewall Jackson Hospital*, 635 F. Supp. 2d 442, 446 (W.D. Va. 2009). "Advice is not in issue merely because it is relevant . . .. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Thus, as the Fourth Circuit has held, where a party has "never asserted advice of counsel as an affirmative defense" or "indicated that [it] relied on advice of counsel . . . the 'at issue' doctrine does not apply." *Shaheen v. WellPoint Cos., Inc.*, 490 F. App'x 552, 557 (4th Cir. 2012) (citing *Rhone*, 32 F.3d at 863; *Billings*, 635 F. Supp. 2d at 446 ("[Defendant] does not assert the defense of advice of counsel in this case; thus, the narrow 'at issue' exception does not apply.")). *See also Elat v. Emandopngoubene*, No. PWG-11-2931, 2013 WL 1146205, at *6 (D. Md. Mar. 18, 2013) (adopting *Rhone* and holding that the plaintiff had not waived the attorney-client privilege because she had not relied on communications with her counsel as part of her claims).

As the Third Circuit has emphasized, relevance alone is not the standard for determining whether privilege has been waived:

6

> [Waiver occurs when] the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner.  The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

*Rhone*, 32 F.3d at 863.  Indeed, the Lohman Defendants concede this point, as they must.  *See* Dkt. 228 at 12.  Despite the Lohman Defendants' arguments that NSL's privileged communications might be relevant, they have failed to show that NSL has placed those communications "at issue."

**A.      NSL Has Not Taken Affirmative Steps in the Litigation to Place the Advice of its Attorneys "At Issue."**

The Lohman Defendants contend that NSL has waived any privilege relating to, *inter alia*: (1) when it learned of the Defendants' Scheme; (2) how its knowledge of the Scheme impacted its decision to settle each TCPA claim; (3) what representations it relied upon when settling each TCPA claim; and (4) whether NSL entered into each settlement regardless of its knowledge of the Scheme.  NSL has not taken any affirmative steps to place its privileged communications or work product at issue on these topics.  The Lohman Defendants also have less burdensome and intrusive ways to obtain discovery on these issues (and in many cases have already done so).

As to the first contention, the Lohman Defendants seek to learn information concerning when NSL learned of the Defendants' Scheme, a topic that is not itself privileged.  Mr. Reinhart testified about his knowledge and Mr. Standish also can testify on this subject.  NSL has not relied on any privileged communication relating to this topic.  In addition, it is no secret that NSL has filed briefs in some of the underlying TCPA cases arguing bad faith and/or unclean hands based on the conduct of the plaintiffs and the Lohman firm.[3]  NSL has not argued that it did not know

---

[3] Generally, NSL does not dispute that it suspected some elements of the Scheme as early as 2017. Indeed, it raised an unclean hands defense in some arbitration briefs submitted in that time frame.

about at least some elements of the Scheme since some point in 2017.  NSL has no issue with Defendants asking Mr. Standish questions as to when NSL learned about or suspected the Scheme. The Lohman Defendants do not need NSL's privileged communications to obtain discovery on this subject.  As such, the Lohman Defendants have or will have the information they seek without the need for NSL's privileged documents and/or deposing NSL's in-house or outside counsel.

Regarding the Lohman Defendants' second contention—how NSL's knowledge of the Scheme impacted its settlement decisions—they never even questioned Mr. Reinhart on this topic. *See* Dkt. 228-11.  For the Lohman Defendants to now contend that NSL is withholding information that is "vital" to their defense is disingenuous at best.  They had the opportunity to obtain discovery on this topic through less intrusive means than seeking production of privileged documents, but have not done so.[4]  Moreover, NSL has not introduced or sought to rely on any privileged communications relating to this topic.  The Lohman Defendants are free to question Mr. Standish on these issues, obviating the need to seek compulsion of NSL's privileged documents or the depositions of NSL's in-house and outside counsel.

As to the Lohman Defendants' third and fourth contentions—what representations NSL relied upon and whether NSL settled cases regardless of such knowledge—not only has NSL not put its privileged communications at issue, but also the Lohman Defendants' arguments reveal that

---

To the extent Defendants want to know the dates of NSL's knowledge about the Scheme, an interrogatory would be the proper way of obtaining that information rather than testing a witnesses' memory about individual cases.

[4] Failure to ask relevant questions during 30(b)(6) depositions does not provide a basis to assume that NSL's in-house and outside counsel may possess the answers to questions not asked.  *See Boughton v. Cotter Corp.*, 65 F.3d 823, 830–31 (10th Cir. 1995) (finding information sought from counsel could have been obtained from previously-deposed witnesses and stating "it is certainly not too much to expect the plaintiffs to make a reasonable effort to seek information from the sources they chose to pursue."); *Reif v. CAN*, 248 F.R.D. 448, 453–54 (E.D. Pa. 2008) ("The depositions, thus far, have failed to demonstrate the deponents lack the information, especially when the pertinent questions have not been asked.").

they misconstrue NSL's actual contentions.  As discussed below in Section I.B, NSL was forced to defend the underlying TCPA cases that were filed only because of the Defendants' fraudulent Scheme.  NSL has not—and will not—rely on privileged communications to prove its case.

In addition, principles of fairness that underlie the "at issue" exception do not support the relief the Lohman Defendants seek here.  The notion of fairness animates the implied-waiver doctrine by eliminating the risk that a party will attempt to use the advice of its attorneys as both a sword and shield.  *See Elat*, 2013 WL 1146205 at *6; *Botkin v. Donegal Mut. Ins. Co.*, No. 5:10cv00077, 2011 WL 2447939, at *6 (W.D. Va. June 15, 2011) (holding that insurer's denial of coverage based on attorney's opinion did not place attorney-client communications "at issue" where insurer did not rely on the contents of counsel's opinion to support its claim).  *See also United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982) ("Selective disclosure for tactical purposes waives the privilege." (citing *In re Sealed Case*, 676 F.2d 793, 808–09 (D.C. Cir. 1982))).  In determining whether a party has impliedly waived the attorney-client privilege, the principal inquiry focuses on whether the proponent of the privilege is relying on privileged communications to prove his or her case.  *See Balto. Scrap Corp. v. David J. Joseph Co.*, No. L-96-827, 1996 WL 720785, at *26 (D. Md. Nov. 20, 1996)); *Cincinnati Ins. Co. v. Zurich Ins. Co.*, 198 F.R.D. 81, 88 (W.D.N.C. 2000) ("While it is true that [plaintiff] has placed [counsel's] knowledge and opinions at issue, [it] has not so implicated the contents of *confidential communications* to mandate their production." (emphasis in original)); *Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 724 (N.D. W. Va. 2014) ("It is the *actual content* of the privileged communication that must be at issue for the privilege to give way, and, clearly, the underlying defense attorneys' advice has not been placed at issue in this case." (emphasis added)); *Rhone*, 32 F.3d at 863 ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by

disclosing or describing an attorney client communication." (citing *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992)).

NSL has not waived the attorney-client privilege in this case because it has not sought to plead or prove its claims using privileged communications with its in-house or outside counsel. Indeed, the Second Amended Complaint does not allege or describe the contents of any privileged communications in support of NSL's claims. NSL specifically alleges that the Attorney Defendants made false representations to *NSL* and that *NSL* relied upon them to its detriment. To the extent the Lohman Defendants are entitled to further discovery on the issue of reliance/causation, they should not be permitted discovery of attorney-client communications, even if this Court determines that the facts to be disclosed are vital, highly probative, directly relevant or go to the heart of the case. *See Botkin*, 2011 WL 2447939 at *6 (quoting *Rhone*, 32 F.3d at 864).

In addition, NSL has made Mr. Standish available for deposition to answer any questions on reliance/causation and has produced thousands of pages of non-privileged documents in response to related discovery requests. NSL's attorney-client communications are not so integral to the issues in dispute that the Lohman Defendants will be precluded from establishing their defenses if their motion is denied, and they should not be permitted to fish through NSL's attorney-client communications in hopes of finding something useful for their defense or obtaining some strategic advantage against NSL in any future or ongoing TCPA cases. *See Balto. Scrap Corp.*, 1996 WL 720785 at *26.

Furthermore, there is nothing unfair about NSL asserting privilege to shield attorney-client communications from discovery when NSL is not using those same communications to prosecute its claims. NSL is not "disclosing favorable communications while asserting privilege as to less

10

favorable ones." *See Tax-Right, LLC v. SICPA Prod. Sec., LLC*, No. 3:12cv657, 2013 WL 3791487, at *4 (E.D. Va. July 18, 2013). Accordingly, NSL has not waived the attorney-client privilege, and the Lohman Defendants' motion should be denied.

The Lohman Defendants rely on several cases in support of their waiver argument. None of the cases is binding on this Court, three pre-date *Rhone*, and all are distinguishable. *See* Dkt. 228 at 16–18. First, the Lohman Defendants argue implied waiver based on *Union Co., IA v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217 (S.D. Ia. 2008). In that case, Union County (the "County") filed a state-court action against financial advisor Piper Jaffray & Co. ("Piper") alleging that it failed to apprise the County of material information and risks associated with the County's issuance of bonds to finance the construction of a new soybean-crushing plant. *Id.* at 218. Piper sought discovery of records concerning the professional advice the County received on the bond transactions, including records purportedly covered by the County's attorney-client privilege. Applying the test announced in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975), the court found that the County had waived the privilege when it filed suit against Piper. *Id.* at 218.

That holding does not dictate that the same result should follow here for several reasons. As an initial matter, *Union County* was a diversity case decided under Iowa's laws on attorney-client privilege. *Id.* at 219–20. By contrast, this case is a federal-question case, which requires application of federal common law. Additionally, *Union County* involved a public entity expressly complaining that Piper gave inadequate financial advice on its bond program. *Id.* at 218, 220–21. The court found an implied waiver because "the very core of Union County's allegations" was "that it relied on Piper's advice to its detriment, an allegation the truth of which may only be assessed by examination of [that advice]." *Id.* at 223 (citing *Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 783–84 (2007)). In contrast to *Union County*, NSL has not premised its

11

claims against Defendants on any professional advice it received, so there is no basis for finding that NSL effectively waived any privilege by filing this case.

The holding from *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755 (11th Cir. 1987), is no more persuasive. In that case, the Eleventh Circuit reversed a jury verdict in favor of insurance company Syndicate 627 ("627") on its indemnitee claim against claims adjuster GAB Business Services ("GAB"). The court also remanded for further proceedings, noting that 627 had not proved an essential element of its claim—namely, that amounts it paid to settle an underlying coverage dispute between the insurer and insureds represented the insurer's actual or potential liability. *Id.* at 761–62. In the court's view, issues of actual or potential liability on the underlying claim would *require* 627 to rely on attorney-client communications because the relevant information was available from no other source. *Id.* And if 627 were going to use attorney-client communications as a sword for purposes of establishing its indemnitee claim, the court would not allow it to shield those same communications based on the attorney-client privilege or attorney work product doctrine. *See id.* at 762 ("If 627 introduces evidence as to the strength of [the insured's] case—as 627 must to prevail—it cannot hide behind the shield of privilege to prevent GAB from effectively challenging such evidence.").

The holding in *GAB Business Services* is inapposite due, in part, to differences in the availability of non-privileged evidence to support the claims in dispute. In *GAB Business Services*, the parties had already gone to trial so it was apparent from the record that 627 failed to proffer any non-privileged information to support an essential element of its claim. To prevail on remand, 627 would have to rely on the privileged information, which meant that GAB should be permitted access to the same information. In this case, NSL has already produced thousands of pages of non-privileged documents relevant to causation. Moreover, NSL has offered to make Mr. Standish

12

available for deposition on that topic.  Thus, there is no basis for a finding that NSL cannot establish causation without relying on privileged communications and, therefore, no finding that the Lohman Defendants should have access to NSL's privileged communications.

The Lohman Defendants also rely on *Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989). *Conkling* involved a RICO plaintiff who sought to overcome a statute-of-limitations defense by stating under oath that he first had reason to know the basis of his claim when his attorney informed him of the relevant facts on a specific date.  *Id.* at 432–33.  Such use of the attorney-client communication as a sword to avoid the statute-of-limitations defense triggered a corresponding waiver of privilege over the same communication: "[T]he attorney-client privilege is waived when a [party] 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."  *Id.* at 434.  The holding does not apply where, as here, NSL has not relied on a privileged communication to advance its case.  *See also Clearwater v. Indep. Sch. Dist. Number 166*, No. Civ. 97–838, 1998 WL 315358 (D. Minn. Mar. 27, 1998) (holding that an employment-discrimination plaintiff who disclaimed validity of a "Last Chance" agreement necessitated by her misconduct could not assert that she was duped by her attorney to sign the agreement, while also asserting privilege over her communications with that attorney).

### B.    Alleging That NSL Was Injured "By Reason Of" The Scheme Is Insufficient to Put NSL's Attorney-Client Communications "At Issue."

The Lohman Defendants contend that NSL could not have relied on Defendants' misrepresentations in the underlying TCPA cases because NSL knew about the Scheme, and that therefore they are entitled to access attorney-client communications to show such knowledge.  Dkt. 228 at 19–20.  This argument is misplaced because NSL's knowledge of the Scheme is irrelevant to proving reliance/causation, nor is NSL seeking to rely on any privileged information to offer

13

such proof.  Specifically, NSL is not arguing that it was unaware of the Scheme throughout the relevant time period.  NSL's position is that, regardless of its knowledge of the Scheme, it would not have had to defend against the underlying TCPA lawsuits *but for* the Scheme.  Accordingly, while the Lohman Defendants contributed to the Scheme in multiple ways, including through specific misrepresentations and omissions concerning their authority to bring cases and file discovery responses, it was the very existence of the cases — generated through the Scheme — that forced reliance by NSL.

In his deposition, Mr. Reinhart succinctly stated NSL's case for causation as to the Attorney Defendants:

> Whether the right hand knows what the left hand is doing, it doesn't matter because they were involved with this enterprise.  Just because they didn't pen cease and desist letter or they didn't have anything to do with marketing information, that's irrelevant.  They're still involved in the enterprise because they still ultimately benefited from it by filing the fraudulent lawsuits against us *which forced us to either settle or litigate them.*

Reinhart Dep. Tr. at 83:16-25 (emphasis added).  As soon as the Lohman Defendants filed lawsuits that had been fraudulently manufactured—or that the Lohman Defendants did not have permission to file—NSL was damaged because it was forced to incur fees to investigate, litigate, and resolve the cases.  The harm to NSL is much like the harm suffered by innocent taxpayers when a third party files a false return that imposes tax liability upon them.[5]

This case really involves "forced reliance."  That is, the Defendants' misrepresentations and omissions resulted in fraudulent lawsuits that required NSL's action—*i.e.*, defense of the cases.  Courts have recognized this sort of forced reliance in other cases.  In the RICO context,

---

[5] *See* 26 U.S.C. § 7434(a); Jacob L. Todres, Torts, *Tax Reporting, and Preemption: Is There Tort Liability for Incorrect Information Reports?*, 28 J. Corp. L. 259, 281 (2003) (quoting 4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* 111-33 (2d ed. Supp. 2002)).

courts have held that a plaintiff may recover for costs spent in defending fraudulently created lawsuits. *Crowe v. Smith*, 848 F. Supp. 1258, 1264 (W.D. La. 1994) (holding that an attorney and alleged principal in a fraudulent scheme that involved filing lawsuits could be found liable under RICO). *See also CSX Transp., Inc. v. Peirce*, 974 F. Supp. 2d 927 (N.D. W. Va. 2013) (upholding RICO verdict based on the predicate crime of mail fraud against law firm that allegedly inundated a railroad and other entities with lawsuits). Indeed, in *CSX Transp., Inc. v. Gilkison*, No. 5:05cv202, 2012 WL 1598081 (N.D. W. Va., May 3, 2012), the court expressly considered the sort of reliance argument advanced by the Lohman Defendants and rejected it. *Id.* at * 9 (discussing lawyers' failure to disclose in connection with filing lawsuits and holding that "any challenge to the legal sufficiency of CSXT's alleged reliance on the false representations made by or caused to be made by the lawyer defendants is without merit."). Indeed, the Fourth Circuit described this sort of reliance as "obvious." *CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 734 (4th Cir. 2010).

Similarly, courts have held that a plaintiff may recover attorneys' fees as damages where the defendants' acts force a response by the plaintiff. *See Rambus, Inc. v. Infineon Technologies AG*, 164 F. Supp. 2d 743 (E.D. Va. 2001) (allowing attorneys' fees from prior action as damages); *Hiss v. Friedberg*, 112 S.E.2d 871, 875 (Va. 1960) (permitting fees in prior actions as an element of the injury caused by the defendant's conduct.); *Roboserve, Inc. v. Kato Kagaku Co., Ltd*., 78 F.3d 266, 274 (7th Cir. 1996), *cert. denied*, 519 U.S. 928 (1996) (applying this rule in a fraud case and concluding that the plaintiff could recover its "out-of-pocket" expenses, including attorneys' fees expended in reliance on defendant's misrepresentation.). *See also* 22 Am. Jur. 2d Damages § 617 ("[A]n exception to the general rule exists if the wrongful action of the defendant has placed the plaintiff in such a position that it is necessary to incur legal expenses to protect his

15

interest.").  When a defendant's fraudulent misrepresentations force a party to prosecute or defend other litigation, the resulting attorneys' fees and damages stemming from those actions are recoverable.

Reliance can also be inferred from circumstantial evidence—such as NSL's defending lawsuits filed by the Attorney Defendants—rather than proven directly.  *See Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 560 n.24 (E.D. Va. 2000) ("'A transaction may itself and by itself furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of the defendant and even the evidence of witnesses.'" (quoting *Cook v. Hayden*, 31 S.E.2d 625, 627 (Va. 1944) (quoting *Todd v. Sykes*, 33 S.E. 517, 519 (Va. 1899)))); *Cook*, 31 S.E.2d at 627 (holding that, in analyzing reliance under common law fraud, "[c]ircumstantial evidence is not only sufficient, but in most cases is the only proof that can be adduced").

Similarly, a court "may presume reliance 'where it is logical to do so.'"  *Spark v. MBNA Corp.*, 178 F.R.D. 431, 435 (D. Del. 1998) (concluding in a RICO case against card issuer that "it is fair to assume that most individuals who opened up credit card accounts after receiving the offer from MBNA did so because of the advertisement, and specifically because of the low APR. . . . Thus, the court finds that it is 'logical' to presume reliance in this case").  *See also Chisolm*, 194 F.R.D. at 561–62 (holding that reliance on financing company's fraudulent mailings would be presumed for RICO claim because consumers made payments in reliance on the fraudulent invoices).

In sum, NSL has not, nor does it need to, introduce attorney-client privileged communications to prove reliance.  The Lohman Defendants' contention that NSL has placed its attorney-client communications at issue simply because reliance is an element of one of its claims

16

is without merit.[6]

> **C.    Denying the Lohman Defendants Access to NSL's Privileged Communications Does Not Deprive Them of Information Vital to Their Defense.**

The Lohman Defendants' argument that NSL's privileged communications are "vital" to their defense should be rejected.  If the Lohman Defendants seek discovery about when NSL learned of the Scheme, they are free to ask Mr. Standish, and NSL has already produced non-privileged documents on this subject.  But the Lohman Defendants should not be given permission to access thousands of privileged documents in dozens of case files.  As set forth above, NSL has not and will not introduce privileged documents or communications on these subjects.  Nor are any such privileged communications necessary for the Defendants to show that NSL had knowledge of the Scheme when defending the underlying TCPA cases.

## II.    Compelling NSL's In-House and Outside Counsel to Appear at Deposition is Duplicative and Harassing.

Federal Rule of Civil Procedure 26 protects against "annoyance, embarrassment, oppression, or undue burden or expense" by allowing motions for protective orders.  Fed. R. Civ. P. 26(c)(1).  Rule 26(b)(2) specifically requires a court "to limit discovery if it determines that the discovery sought is obtainable from other sources, that is those that are more convenient and less burdensome."  Fed. R. Civ. P. 26(b)(2).  For the reasons stated herein, this Court should issue a protective order barring the Lohman Defendants from deposing NSL's in-house and outside counsel.

---

[6] The Lohman Defendants also argue that NSL's privileged communications are relevant to the issue of whether the proximate cause of NSL's damages was the Defendants' predicate acts of mail/wire fraud or whether NSL's damages were proximately caused by its own alleged violations of the TCPA.  Dkt. 228 at 20–22.  In essence, the Lohman Defendants argue that if NSL had not violated the TCPA, it would have no damages.  *Id.*  Even if discoverable, NSL's privileged communications are not relevant to this issue.  The Lohman Defendants are free to argue that NSL violated the TCPA without resort to NSL's privileged communications.

The Lohman Defendants have already conducted a deposition of NSL's corporate representative, Mr. Reinhart, via Federal Rule of Civil Procedure 30(b)(6).  They have not yet deposed Mr. Standish, who has been offered to testify as to certain topics as to which additional information was sought after Mr. Reinhart's deposition.  As a consequence, it is premature for the Lohman Defendants to (1) claim that any person, including NSL's in-house and outside counsel, has unique knowledge that would justify imposing the burden of additional deposition discovery, or (2) test the limits of privileges and immunities, before they have plumbed a single alternative.

NSL's 30(b)(6) witnesses, as well as documents produced in discovery, are sufficient for the Lohman Defendants to obtain information on NSL's decision-making in TCPA-related litigation without deposing NSL's in-house or outside counsel.  Moreover, most questions that might be asked of counsel would draw objections based on privileges and immunities, and counsel would have no unique knowledge that cannot be obtained by less intrusive means, such as deposing NSL's proffered 30(b)(6) witnesses and reviewing documents already produced.

### A.   The Information the Lohman Defendants Seek from NSL's In-House and Outside Counsel is Available from NSL's Other Witnesses.

Absent a showing that information relevant to the case is not available through other, less intrusive means than to depose NSL's in-house and outside counsel, this Court should issue a protective order.   *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (before deposing counsel, other methods, such as written interrogatories or depositions of non-counsel should first be employed); *Ford Motor Co. v. Nat'l Indem. Co.*, No. 3:12CV839, 2013 WL 3831438, at *2 (E.D. Va. July 23, 2013) (collecting cases where Fourth Circuit courts have followed *Shelton* and holding that the *Shelton* rule applies regarding whether a party entitled to depose opposing party's counsel).  *See also Stalling v. Union Pac. R.R. Co.*, No. 01 C 1056, 2004 WL 783056, at *2 (N.D. Ill. Jan. 23, 2004) ("If there are other available sources, the party seeking

18

discovery should explore them first . . .. [O]ther methods, such as written interrogatories, requests for production, or requests for admission, which do not involve the same dangers as an oral deposition of opposing counsel, should be employed." (quotations omitted)).

The Lohman Defendants' counsel has stated that his clients believe that NSL's in-house and outside counsel have information concerning the settlement of TCPA cases. Calhoun Decl., Ex. B. The depositions of NSL's in-house or outside counsel are wholly unnecessary, however, in light of the previously scheduled deposition of Mr. Standish, who is both a corporate representative and the person with actual authority regarding NSL's TCPA settlements. Therefore, any deposition testimony by NSL's in-house or outside counsel would be unnecessarily duplicative and would result in countless privilege objections and/or lack of knowledge.

### B.   Even if Depositions of NSL's In-House and Outside Counsel Are Allowed, The Information Sought is Privileged.

The Federal Rules of Civil Procedure do not prevent the deposition of another party's lawyer, so long as the deposition seeks relevant, non-privileged information. *See* Fed. R. Civ. P. 26(b)(3) and 30(a). "Nevertheless, courts view skeptically efforts to depose an opposing party's attorney, especially when the subject matter of the deposition may be intertwined with potentially privileged information, and such depositions are typically permitted only when the information sought is not available from another source." *Carr v. Double T Diner*, 272 F.R.D. 431, 435 (D. Md. 2010) (citing *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN-08-0984, 2010 WL 2572809, at *2–4 (D. Md. June 22, 2010); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987)).

Here, the only relevant information NSL's in-house and outside counsel *may* possess is protected from disclosure by the attorney-client privilege and the attorney-work product doctrine, because they at all times acted in their capacity as NSL's counsel. Where counsel has no personal

19

knowledge of the issues in the case, but instead learns relevant information solely through a privileged process, it is inappropriate to seek counsel's deposition. *Stalling*, 2004 WL 783056, at *1. Because the only information NSL's in-house and outside counsel may possess was obtained solely in order to provide legal advice to NSL, and because NSL has not put this privileged information at issue in the case, the information is not discoverable, and the Lohman Defendants should not be permitted to depose counsel.

## CONCLUSION

For the foregoing reasons, the Court should deny the Lohman Defendants' motion to compel and should issue a protective order as to noticing the deposition of NSL's in-house and outside counsel.

DATED: May 20, 2020

Respectfully submitted,

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun V (*pro hac vice*)
Whitney A. Fore (Va. Bar No. 87526)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
wfore@ifrahlaw.com

*Counsel for Plaintiff Navient Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2020, I will electronically file Navient Solutions, LLC's

Opposition To Defendants The Law Office Of Jeffrey Lohman, Jeffrey Lohman, Jeremy Branch,

Alyson Dykes, And Ibrahim Muhtaseb's Joint Motion To Compel Navient Solutions, LLC's

Production Of Privileged Communications using the Court's CM/ECF system, which will send a

notification of such filing (NEF) to the following counsel of record for all parties who have

appeared in this action:[7]

Thomas F. Urban, II
Fletcher, Heald & Hildreth, PLC
1300 N. 17th Street, Suite 1100
Arlington, VA 22209
(703) 812-0462
urban@fhhlaw.com
*Counsel for Defendants Jeffrey Lohman, The Law Offices of Jeffrey Lohman, and Jeremy Branch*

Jeffrey E. Grell
Grell Feist PLC
825 Nicollet Mall, Suite 625
Minneapolis, MN 55402
(612) 353-5530
jgrell@grellfeist.com
*Counsel for Defendants Jeffrey Lohman, The Law Offices of Jeffrey Lohman, and Jeremy Branch*

Nicholas Gehrig
Redmon Peyton & Braswell LLP
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
ngehrig@rpb-law.com
*Counsel for Defendants Alyson Dykes and Ibrahim Muhtaseb*

---

[7] A courtesy copy will be delivered to chambers within twenty-four hours in accordance with the Alexandria Division's chambers-copy rules.

21

Mikhael D. Charnoff
Perry Charnoff PLLC
1010 N. Glebe Road, Suite 310
Arlington, VA 22201
(703) 291-6650
mike@perrycharnoff.com
*Counsel for Defendants GST Factoring, Inc., Gregory Trimarche, and Rick Graff*

Bernard Joseph DiMuro
Miles Jarrad Wright
DiMuroGinsberg PC
1101 King Street, Suite 610
Alexandria, VA 22314-2956
(713) 684-4333
bdimuro@dimuro.com
mjwright@dimuro.com
*Counsel for Defendants Bill Carlson, Manny Kashto, and RJ Marshal*

Robert Lee Vaughn , Jr.
Omyx Law, PLC
8000 Towers Crescent Drive, Suite 1300
Vienna, VA 22182
(703) 689-2100
rvaughn@oconnorandvaughn.com
*Counsel for Defendant Wes Sabri*

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin

22