**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| NAVIENT SOLUTIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>THE LAW OFFICES OF JEFFREY<br>LOHMAN, et al.,<br><br>        Defendants. | Civil Action No. 1:19-cv-00461 |

<u>**STIPULATED UNDISPUTED FACTS**</u>

Plaintiff Navient Solutions, LLC ("Navient") and Defendants The Law Offices of Jeffrey Lohman ("LOJL") Jeffrey Lohman ("Lohman"), and Jeremy Branch ("Branch")[1], Gregory Trimarche ("Trimarche"), Rick Graff ("Graff"), GST Factoring, Inc. ("GST"), and Bill Carlson ("Carlson") hereby stipulate to the following undisputed facts.[2]

**I.      The Parties.**

1.      Plaintiff NSL is a Delaware limited liability company in the business of servicing student loans with its principal place of business in Herndon, Virginia. NSL's sole member is Navient Corporation, a Delaware corporation. NSL was formerly known as "Navient Solutions, Inc." and, before that, "Sallie Mae, Inc."

2.      NSL is a "person" within the meaning of 18 U.S.C. § 1964(c).

3.      LOJL is a California corporation that was incorporated by Lohman on March 16,

---

[1] LOJL, Lohman, Branch, Dykes and Muhtaseb are collectively referred to herein as the "Lohman Defendants."
[2] Defendants Kashto and Marshall have refused to stipulate to any facts.

2016.

4.      Lohman is a natural person domiciled in the state of California and is a principal of LOJL.  Lohman is the sole principal of LOJL. Since its incorporation, Lohman has managed the affairs of LOJL and has managed or provided support in all lawsuits brought by the attorneys of LOJL against NSL under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5.      Branch is a natural person domiciled in the state of California and is an employee of LOJL.  Branch is an attorney employed by LOJL. Lohman hired Branch on January 9, 2017. Branch represented LOJL clients in TCPA matters against NSL.  Branch continues to be employed by LOJL.

6.      Dykes is a natural person domiciled in the state of California.  Dykes was an attorney employed by LOJL from December 2017 until May 2019. During her employment with LOJL, Dykes represented LOJL clients in TCPA matters against NSL.

7.      Muhtaseb is a natural person domiciled in the state of California. Muhtaseb was an attorney employed by LOJL from January 2016 until January 2018. During his employment with LOJL, Muhtaseb represented LOJL clients in TCPA matters against NSL.

8.      Trimarche is a natural person domiciled in the state of California.

9.      Graff is a natural person domiciled in the state of Texas.

10.      GST is a Delaware corporation with its principal place of business in Texas.

11.      Trimarche, Graff, and Herbert Sievers ("Sievers") are principals of GST.

12.      Marshall is a natural person domiciled in the state of California and was an operator of third party Go2Finance, LLC ("Go2Finance").

13.      Kashto is a natural person domiciled in the state of California and was an operator of third party Go2Finance.

14.     Carlson is a natural person domiciled in the state of California.

15.     Go2Finance and DocuPrep, were commonly controlled by an ownership and management group comprising of some combination of Marshall, Kashto, and David Sklar also operated non-parties Go2Finance and/or DocuPrep.   These parties, along with Sabri and Carlson, are referred to herein as the "Marketing Defendants."  Consumer debt consulting companies that entered into affiliate agreements with GST are referred to herein as the "Affiliates."

16.     David Mize ("Mize") is the principal of David Mize Law, PLLC ("David Mize Law") and is an attorney.

17.     Scott Freda ("Freda") is the owner / principal of Champion Marketing Solutions, LLC d/b/a CMS ("CMS").  Mize hired CMS to perform administrative work associated with the clients referred to Mize by the Affiliates.

18.     Student Processing Relief is an Affiliate run by Direct SPC and Wes Sabri. Direct SPC had the same corporate parent as DocuPrep, which was owned or managed by Sklar.

19.     Defendants are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

## II.     NSL and the TCPA.

20.     NSL is one of the largest servicers of student loans in the United States, servicing a multi-billion-dollar portfolio in outstanding student loans for over twelve million customers, including a mix of loans owned by the federal government, privately owned loans guaranteed by the federal government, and wholly private loans.

21.     Privately-owned loans serviced by NSL—whether or not those loans are guaranteed by the federal government—are owned by various trusts or other entities for which NSL is the servicer and authorized agent.

22.     Copies of NSL's servicing agreements are attached collectively as **Exhibit 1**.

23.     Copies of NSL's trust agreements are attached collectively as **Exhibit 2**.

24.     NSL's telephone contact with its customers is subject to regulation by various state and federal laws, including the federal TCPA.

25.     The TCPA was enacted by Congress in 1991 with the purpose of "balanc[ing]" "individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade . . . in a way that protects the privacy of individuals and permits legitimate telemarketing practices." TCPA Pub. L. No. 102-243 § 2(9), 105 Stat. 2394 (1991).

26.     The TCPA restricts the manner in which NSL and other companies can call customers using an automatic telephone dialing system ("ATDS"). Companies (including NSL) cannot place calls to a customer's cell phone using an ATDS unless the callee has expressly consented to receive calls from NSL on his or her cell phone.

27.     In order to deter improper autodialing practices, the TCPA provides for $500 statutory damages for every call that violates the statute.  If violations are willful or knowing, a court may increase the damages to up to $1,500 per violation.

28.     NSL may continue to contact customers using forms of communication not regulated by the TCPA, such as manual dialing, calling land lines, U.S. mail, and email, even if the customer has purported to withdraw their consent to be contacted on their cell phone using automated dialing methods.

29.     NSL claims that none of its telephony systems are ATDS, but the definition of an ATDS subject to the TCPA has been the subject of significant litigation in the federal courts and arbitrators have not always agreed with NSL.

30.     In each TCPA claim brought by the Lohman Defendants, NSL had the opportunity to litigate whether it placed calls to consumers' cell phones using an ATDS after the consumer had

purported to revoke his/her consent to receive such calls. In some cases, the arbitrator agreed with NSL and concluded that its telephony was not ATDS; in other cases, the arbitrator rejected NSL's argument that its telephony was not ATDS.

31.     NSL could avoid any TCPA issues by, *inter alia*, not calling consumer cell phones with an ATDS, by calling consumer land lines, by sending emails to consumers, or by sending materials through the U.S. mail to consumers. If NSL did not call consumer cell phones, there could be no valid basis for a TCPA claim.

32.     Attached hereto as **Exhibit 3** is a true and accurate copy of an NSL document entitled "Autodialers and Artificial or Prerecorded Voice Messages Policy," dated June 14, 2019.

33.     Attached hereto as **Exhibit 4** is a true and accurate copy of an NSL document entitled "First Party Collection Practices Policy," dated November 9, 2018.

34.     Attached hereto as **Exhibit 5** is a true and accurate copy of an NSL document entitled "Private Credit Collections," dated August 26, 2019.

35.     Attached hereto as **Exhibit 6** is a true and accurate copy of an NSL document entitled "Credit Risk Management," dated September 25, 2019.

36.     Attached hereto as **Exhibit 7** is a true and accurate copy of an NSL document entitled "Risk and Compliance," dated February 17, 2015.

37.     Attached hereto as **Exhibit 8** is a true and accurate copy of an NSL document entitled "PCC Pre-Default TCAP Execution Procedure," dated January 27, 2015.

38.     Attached hereto as **Exhibit 9** is a true and accurate copy of a letter from SallieMae to Mize, dated April 28, 2016.

III.    **GST Defendants.** [3]

39.    GST was incorporated on April 21, 2015, in Delaware.

40.    From January 1, 2015, to the present, GST's three principals have been Trimarche, Graff, and Sievers.

41.    In early 2015, Graff and Sievers first discussed forming a business to create a new debt relief business to that would service customers with private student loans who were discovered by federal student loan debt relief companies.

42.    Sievers brought Trimarche into the group at about the same time.

43.    Sievers and Graff were chiefly responsible for recruiting various companies purporting to offer consumer debt consulting services (the "Affiliates") and attorneys to partner with GST.

44.    In addition, Graff was responsible for overseeing and maintaining GST's electronic payment processing and bookkeeping.

45.    Trimarche did not have experience in consumer law.

46.    At about the same time that Graff, Trimarche and Sievers formed GST, Graff had discussions with Scott Freda about having his company, Champion Marketing Solutions, LLC d/b/a CMS ("CMS"), provide customer service for the attorneys recruited into the program.

47.    GST entered into client referral agreement with Affiliates whereby such companies referred potential clients to the student debt relief attorneys with whom GST did business (*i.e.*, Mize, Slaughter and Johanson).

48.    Those Affiliates included, among others, the following:

- 4th Junction, LLC, d/b/a Advantage Student Loan Consolidation a/k/a

---

[3] The term "GST Defendants" refers to GST, Trimarche, and Graff.

Advantage Student Loans ("Advantage"), an Affiliate;

- Certified Doc Prep Services LP, an Affiliate;

- Clarity Solutions Center, LLC, an Affiliate;

- Consumer Advocacy Center, Inc. a/k/a Premier Student Loan Center, an Affiliate;

- Consumer Financial Resources, LLC, an Affiliate;

- Docu Prep Center Inc., an Affiliate;

- Elsinore Lakes, Inc., an Affiliate;

- Go2Finance, an Affiliate;

- Loki Investments, Inc., an Affiliate;

- Marketizeit, LLC, an Affiliate;

- MMSR, LLC, a consulting company owned by Mize;

- Prime Ad Enterprises, an Affiliate;

- South Bay Investment Group, Inc., an Affiliate;

- SPC, LLC, a/k/a Student Processing Center, an Affiliate;

- Student Loan Resolve, an Affiliate;

- Student Loan Resource Center, an Affiliate;

- Student Loan Solutions LLC, an Affiliate;

- True Count Staffing, Inc., an Affiliate; and

- US Student Loan Help LLC d/b/a Student Loan Resource Center, an Affiliate.

49.    In total, GST paid referral fees to approximately 34 different Affiliate companies as identified on **Exhibit 10** (GST Payments).

50.    A copy of GST's referral agreement with Elsinore Lakes Inc. d/b/a Go2Finance is

attached as **Exhibit 11** (GST008247) and GST's referral agreements with DocuPrep Center is attached as **Exhibit 12** (GST000120, GST002179).  GST had a similar contract with each Affiliate.

51.     The terms of the contractual arrangements with Affiliates generally can be summarized as follows: the Affiliate would assist GST in acquiring factored accounts, which were understood to be clients of law firms and that Affiliate would receive 30–35% of the net proceeds received by GST.  *See, e.g.*, **Exhibit 13** at 1 (GST000323); **Exhibit 14** at 1 (GST000571); **Exhibit 12** at 1 (GST002179); **Exhibit 15** at 1 (GST002351).  The attorneys with whom GST did business provided copies of their standard attorney-client engagement agreements to the Affiliates, frequently asked questions, and/or other descriptions of their legal services to the Affiliates.

52.     GST understood that the Affiliates are or were in the business of providing certain services to federal student loan debtors, and that GST had a referral relationship with certain Affiliates as to private student loan debtors.

53.     GST entered into factoring agreements with several attorneys (including Amanda Johanson, Mize, Jacob Slaughter, and Daniel Ruggiero) (referred to as "Factoring Attorneys") under which GST purported to purchase accounts receivable from those attorneys. None of the Lohman Defendants entered into any factoring agreement with GST and are not within the definition of "Factoring Attorneys" as that phrase is used herein.

54.     When interacting with their own clients or potential clients (*i.e.*, student loan debtors to whom the Affiliates were considering providing debt relief services), if the Affiliates determined that such clients were private student loan debtors, the Affiliates would inform those debtors of the services offered by the Factoring Attorneys.

55.    Trimarche referred to private student loan debtors as an "ancillary catch":

This was – there's a fishing term, ancillary catch.· We [(*i.e.*, the GST Defendants)] were dealing with the affiliates' ancillary catch.· They were out there doing their business in the world, and they were coming across private student loan debtors that they couldn't  help, and they were simply getting information from that potential client, giving information to that client, not having any contractual relationship with that party at all, and then just handing the law firm a package of information, and then the law firm would decide whether or not to take the client.

56.    GST, through Trimarche and Sievers, recruited Johanson, Mize, and Slaughter to partner with GST.

57.    The Parties reference and incorporate hereto as examples GST's factoring agreement with Mize as **Exhibit 16** (GST002196) and GST's factoring agreement with Slaughter as **Exhibit 17** (GST0010062).

58.    The Factoring Attorneys were retained to provide legal services to student loan debtors.

59.    Graff and CMS exchanged emails addressing co-signer issues involving NSL, Sallie Mae and AES.  **Exhibit 18** (GST000595).

60.    When a CMS employee made a change to the scripting, Trimarche described the program in which "counsel will try to reduce or eliminate student loan debt by attacking the validity of the loans, the legality of the creditor's debt collection practices, and related legal strategies." **Exhibit 19** (GST-1163).  Trimarche testified that he had no idea what those strategies might be.

61.    When a client was referred to GST and the Factoring Attorneys, neither GST nor the Factoring Attorneys had  knowledge of how loans were to be resolved.

62.    GST and the Factoring Attorneys issued refunds to dissatisfied clients in order to have "no unhappy clients."

IV.     **Marketing Defendants**

A.     **Bill Carlson**

63.     Since January 1, 2015, Carlson personally or through an associated entity had an ownership role in the following entities involved in the student loan marketing arena and worked with GST.  Specifically:

- Carlson is the sole owner of Confirm Inc, a holding company.

- Confirm Inc. had a 15.5% ownership interest in Go2Finance.

- Confirm Inc. had a 25% ownership interest in DirectSPC.
- 
- Confirm Inc. owns 25% of Globus Holding, a holding company that had a referral agreement with the GST Defendants.

- Globus Holding has an ownership interest in Advantage.

- Through an associated entity, Carlson owned a percentage of Student Loan Processing Center, LLC ("SLPC").

64.     Globus Holding was owned equally by Confirm Inc., Oranje Enterprises, LLC, Shipment First, LLC, and Firmus Holdings, LLC.

65.     SLPC had a referral agreement with Sunset Marketing Group LLC d/b/a Acceptance Financial ("Acceptance"), discussed below, to provide document preparation services for federal student loan debtors, and at one point employed Kashto.

66.     On or around June 18, 2015, Globus Holding entered into an Affiliate Referral agreement with GST.  **Exhibit 20** (GST000338).

67.     On or around September 2, 2015, Globus Holdings entered into an Exclusive Affiliate Management Agreement with GST.  **Exhibit 21** (GST002678).

68.     Pursuant to those agreements, Globus Holding, agreed to refer Affiliates to GST that could then choose to refer private student loan debtor leads to GST.

69.     If GST accepted a lead referred by one of the Affiliates, such as Advantage, GoSLRC, Go2Finance, Certified DocuPrep, DirectSPC, or DocuPrep, GST would pay referral fees of 5% of the payments from the leads generated by those companies to Globus Golding.  **Exhibit 21** at 2 (GST002678).  The relevant Affiliate would also receive referral payments.

70.     Globus Holding received referral payments until February 2019.

**B.     RJ Marshall and Manny Kashto**

71.     The ultimate owner of Confirm Inc. was Carlson.  The ultimate owner of Firmus Holdings LLC was Demirtshian.  The ultimate owner of Oranje Enterprises LLC was Roosen.  The ultimate owner of Shipment First LLC was Shubash.

72.     Pursuant to their agreement with GST, **Exhibit 11** (GST008247), Go2Finance marketed for an attorney program to deal with private student loan debt.

**C.     Affiliates, Generally**

73.     Mize testified that the Affiliates would pay to access records containing the borrowers' loan records.

74.     Copies of some of the promotional materials used by certain Affiliates are attached as **Exhibit 22** (GST002557) (bearing a governmental-looking seal); **Exhibits 23** (LOJL036946) & **24** (LOJL103520) (advertising "New Laws for Discounting Federal Student Loans"); **Exhibit 25** (LOJL046370–71) (advertising "a new law that has been passed regarding federal student loans including TOTAL FORGIVENESS in some circumstances"); and **26** (LOJL022576) (advertising "laws that may reduce your debt and in many cases total discharge of debt").

75.     Some of the Affiliates made calls to student loan borrowers to discuss their student loans.

76.     Some of the Affiliates assisted student loan borrowers in signing up for federal loan

programs.

77.     Some of the Affiliates had access to the CRM software used by CMS and Mize.

78.     Certain materials provided or read to borrowers advise that if borrowers were paying their loans that it would "remove one leveraging tool that the attorney will use against your lender." *See* **Exhibit 27** (RM_000301); **Exhibit 28** (GST000496).

79.     **Exhibit 29** (GST002413) is a true and accuate copy of a September 7, 2016 email exchange among Scott Freda, RJ Marshal, Manny Kashto, Andrew Roosen and CMS employee Laci Norman.

80.     **Exhibit 30** (GST007547) is a true and accurate copy of a June 7, 2016 email chain among Mike Miles of CMS, RJ Marshall, Manny Kashto, and Rick Graff.

## V.     <u>CMS</u>

81.     CMS managed the Factoring Attorneys' databases of documents and client information and acted as a call center for law firms.  CMS was responsible for collecting clients' loan documents and information, putting that information into the database for the Factoring Attorney to review, and answering the phones for the Factoring Attorney when the clients called.

82.     When an Affiliate referred a potential client to CMS, CMS would send to the client the Factoring Attorney's "welcome packet," which included a welcome letter, a budget worksheet, and a call log for the borrower to record purported calls from creditors.  **Exhibit 31** (LOJL102022–33); **Exhibit 32** (GST-1138).

83.     Among other things, the welcome package letter instructed new clients that:

> Your role is to assist CMS and the law firm in effectively representing your case. Such a role includes providing timely information requested by CMS, and documenting any form of contact you experienced with a debt collector. Such documentation is critical for the law firm to effectively argue your case. It is imperative that you send this Communication Log to us each week in order to

document unauthorized communications from your creditors. This is vital to a successful resolution of your case.

84.     CMS would tell clients to request their promissory notes and loan documents from NSL. **Exhibit 33** (LOJL085875–77).

85.     CMS handled revocation calls for clients of Mize and Slaughter for at least a period of time in 2016. CMS instructed clients to follow a script in order to revoke consent.

86.     If a client was receiving calls from creditors, CMS would instruct them to send regular e-mails to CMS listing any calls that they believed they may have received from NSL or any other creditor. **Exhibit 34** (LOJL023072).

87.     After a client revoked consent for NSL to call him or her on their cell phone, CMS instructed him or her to not contact NSL again. **Exhibit 34** (LOJL023072).

88.     The Affiliates, CMS, or Mize told clients that if the client chose to stop making payments on his or her loans, the lenders may be incentivized to negotiate the debt.

89.     In some cases, the clients were led by CMS to believe that their payments to the Factoring Attorneys would be paid to the lenders (*e.g.*, NSL).

90.     CMS used a script for handling the revocation calls.

91.     In or about May 2017, Mize learned that a plaintiff named Krystle Mantolino filed a civil RICO case against Johanson and CMS. Graff told Mize that Freda insisted GST pay his legal fees in that matter. GST already was paying Johanson's fees.

92.     On or about May 29, 2018, Mize wrote to Freda concerning winding down his business with CMS. Specifically, Mize proposed that the fees he was paying to CMS be reduced as the number of cases dropped below certain benchmarks.

93.     On or about June 20, 2018, a plaintiff named Luke Harris sued Johanson and CMS for various civil claims, including alleged violations of the civil RICO statute.

94.     On or about July 11, 2018, in a similar complaint, a plaintiff named Kyle Leonard sued Johanson and CMS for various civil claims, including alleged violations of the RICO statute.

## VI.     **David Mize**

95.     In or about the fall of 2015, Trimarche called Mize with a possible opportunity to provide services to borrowers struggling with student loan and other debt.

96.     That opportunity was described to Mize as working with GST, who had an existing group of marketing affiliates who could refer Mize clients in need of student loan debt relief services.

97.     From late 2015 to summer 2017, Mize accepted referrals from Affiliates consisting of almost exclusively prospective clients with private student loan debt, whether current or delinquent.  Mize would not take federal student loan debt issues or state student loan debt issues, because he was unable to provide assistance to those borrowers.

98.     GST had a network of approximately 20 Affiliates with whom Mize worked.  The Affiliates that Mize worked with the most were: Go2Finance and DocuPrep.

99.     Mize used DebtPay Pro ("DPP") as a CRM program to manage records of client matters.

100.     DocuPrep, Go2Finance, and the other Affiliates had access to Mize's DPP platform and would enter customer leads there.  GST paid $55 a month to DPP for each user working on Mize's behalf at the Affiliates.  Mize sold the revenue from each new client to GST.  GST, in turn, paid 30% of the revenue to David Mize Law, PLLC, ("Mize Law") or on Mize's behalf, which included 10% being paid to CMS, and Mize's monthly DPP fees.  Mize retained a net amount of approximately 15%, while GST and the Affiliates split the remaining 70%.

101.     Prior to Mize's agreeing to work with GST and the Affiliates, Mize understood that they were working with other Factoring Attorneys, including Johanson.  Although Mize was not aware at the time, Johanson engaged in conduct resulting in discipline by the State Bar of California in or about July 2017 in connection with her debt relief business.  Specifically, Johanson was forced to surrender her bar license.

102.     Mize hired CMS as a vendor to provide customer service.  CMS had provided this same service to Johanson.  CMS used the @jlgportal.com email address for all of its employees because they had set it up when working with Johanson's law firm, Johanson Law Group.

103.     Under the model proposed by GST, Affiliates would recruit borrowers and then put them in touch with CMS.  Initially, the Affiliates had a copy of Mize's engagement agreement and, unbeknownst to Mize, would have them sign it.  They then put the client in contact with CMS who would vet the matter based on Mize's criteria.  Mize would reject matters if the client had any of the following: (1) a garnishment, (2) currently in school, (3) federal student loans, (4) bank/lender cross-collateralization (5) state issued loans, or (6) bankruptcy.

104.     Mize would get a trigger notice through DPP informing Mize that a client had been submitted for approval and Mize would make a final determination whether to work with such client.  For example, if it was federal loans or the person had no ability to make any payments, Mize knew that any negotiation would likely be futile.  Mize would not speak personally to clients before they were signed up and submitted through DPP.

105.     Mize did not have direct contractual relationships with the Affiliates.

106.     When Mize began receiving referrals from the Affiliates, he gave the Affiliates access to his representation agreement for information purposes.

107.    Over time, Mize came to be aware of some problematic statements by the Affiliates. Go2Finance recorded all of their calls.  For example, after receiving complaints from consumers, Mize e-mailed Go2Finance's Roosen and demanded copies of one particular recording. Go2Finance told some consumers that the "attorney network . . . [he worked with] had a 100% success ratio" and would totally "wipe out" the debt.

108.    Those statements were not true.  Mize was the only attorney for whom the Affiliates were marketing for private student loan relief and Mize did not have a 100% success rate.  Over the latter half of 2017, Mize came to be aware that this sort of marketing was more the norm than not.

109.    The program as described to Mize by the GST Defendants was focused on the client referrals that they could generate and that it was a nice overlap with what they and Mize were already doing.  At the time, Mize was representing consumers that had been sued by lenders.

110.    Mize's regular practice was to send a cease and desist letter once a client was signed up through CMS.  Mize received a copy of the cease and desist letter used by Johanson either from her or through Trimarche.  Mize then adapted it slightly and authorized CMS to send the letter every time they signed up a new client and Mize accepted the matter in DPP.  Once Mize accepted the matter in DPP, CMS employee Debbie Hepler would send the letter directly from CMS' offices in Texas.

111.    Mize stopped accepting referrals from the above-referenced Affiliates in the summer of 2017 when the bar complaints against him were filed.

**VII.    Lohman Defendants**

112.    Lohman is the founder and principal attorney at LOJL.  Lohman created the firm on March 16, 2016.

113.    Branch is an associate attorney with LOJL.  LOJL and Branch entered into an employment agreement on or about January 16, 2016.  Branch is a salaried employee of LOJL and is eligible for bonuses equal to 5–10% of the fees earned.

114.    Dykes is a former associate attorney of LOJL.  On or about November 18, 2017, Dykes entered into an employment agreement for an attorney position with LOJL.  Dykes' employment ended on May 24, 2019.  During the time of Dykes' employment, she was a salaried employee eligible for bonuses equal to 10% of the fees earned.

115.    Muhtaseb is a former associate attorney of LOJL.  On or about January 16, 2016, Muhtaseb entered into an employment agreement for an attorney position with LOJL.  Muhtaseb's employment ended on January 19, 2018.  During the time of Muhtaseb's employment, he was a salaried employee eligible for bonuses equal to 5–10% of the fees earned.

116.    LOJL received client referrals from other attorneys, including Mize and Slaughter. These attorneys referred clients identified as having potential TCPA claims to LOJL.

117.    Lohman initially called Mize in or around February 2016 regarding the possibility of Mize Law partnering with LOJL regarding representation of clients with potential TCPA claims. Mize did not have prior experience litigating TCPA cases, but based on his conversations with Lohman, Mize became aware that Lohman had TCPA experience.

118.    They then had a meeting in early March 2016 and reached an agreement whereby Mize would refer Lohman clients he believed had a potential TCPA case and Mize and Lohman would share fees from those suits.  *See* **Exhibit 35** (NSL055670); **Exhibit 36** (LOJL031057).

119.    Shortly after the initial meeting between Lohman and Mize, Mize sent an email to Lohman in which Mize explained that he had approximately 100 Navient clients as of March 15, 2016.  **Exhibit 36** (LOJL031057).

120.    A copy of an email drafted by Mize and Lohman is attached as **Exhibit 37** (NSL052117).

121.    A copy of an email drafted by Mize and Lohman is attached as **Exhibit 38** (NSL052116).

122.    A copy of an "of counsel" agreement between Mize Law and LOJL dated April 12, 2016 is attached as **Exhibit 39** (NSL053898).

123.    A copy of April 11, 2016 correspondence concerning access to LOJL's leadtrac system is attached as **Exhibit 40** (NSL052115).

124.    As of April 11, 2016, Mize was referring potential TCPA matters to the LOJL.

125.    Attached as **Exhibit 41** (NSL054390) is an April 25, 2016 email between Lohman and Mize.

126.    Attached as **Exhibit 42** (LOJL031309) is a May 25, 2016, email from Mize to Lohman.

127.    Attached as **Exhibit 43** (NSL054346–47) is an email chain between Mize and Lohman and  Mize Law's employee Melissa Jordan.

128.    LOJL no longer engages in referral relationships with Mize.

129.    LOJL received and continues to receive referrals from the sources listed in the LOJL Interrogatory responses, attached as **Exhibit 44** at 13–14 (LOJL Interrogatory Resp.).

130.    Some of these referrals resulted in the Lohman Defendants filing lawsuits or arbitrations against NSL.

131.    The Lohman Defendants would not file suit unless the client received at least 40 calls after revocation.

132.     LOJL customer service representatives are trained on the general provisions of the TCPA.

133.     Attached as **Exhibit 45** (LOJL031150) is an email dated May 6, 2016 from Lohman to LOJL employee Brittany H█████.

134.     Attached as Exhibit **46** (LOJL031151) is a May 12, 2016 email from H████ to Lohman**.**

135.     Attached as **Exhibit 47** (LOJL122445–47) is an April 25, 2017 email from LOJL to TCPA claimant E██ A██.

136.     The Lohman Defendants have counseled clients on how to revoke consent under the TCPA.

137.     Certain employees of LOJL participated in some of their clients' calls to NSL.

138.     Attached as **Exhibit 48** (LOJL034996) is a copy of an email from Lohman to Slaughter and Mize.

139.     If employees of LOJL assisted clients with revoking their consent for NSL to use an ATDS when calling their cell phones, employees of LOJL or the Lohman Defendants instructed them not to answer any more calls from NSL or to log into their online NSL accounts.

140.     Attached as **Exhibit 49** (LOJL033654) is a May 5, 2017 email exchange between Lohman and Mize.

141.     Attached as **Exhibit 50** (LOJL084997) is a June 1, 2016 email from Mize to LOJL employee Brittany H█████.

142.     Attached as **Exhibit 51** (LOJL111006) is a February 15, 2018 email exchange between E██ Arndst and Dykes.

143.     Attached as **Exhibit 52** (LOJL117500) is a May 5, 2016 email from Marvin Millora

to Lohman.

144.    Branch, Dykes, and Muhtaseb handled the day-to-day management of TCPA cases including meeting court and/or arbitration deadlines, conducting discovery, conferences, and client meetings and engaging in motion practice.

145.    Lohman assigned cases to Branch, Dykes, and Muhtaseb using a case management software.  The software included a tab labeled "New File" which the assigned associate attorney would access.  After accessing the file, the assigned associate attorney would begin to draft Complaints or Arbitration Initiation pages.

146.    Lohman would review and edit Branch's, Dykes', and Muhtaseb's motions and discovery responses. In addition, Lohman would occasionally accompany Branch, Dykes, and/or Muhtaseb at depositions and arbitration or federal hearings.  Lohman also gave input to Branch, Dykes, and Muhtaseb on legal and settlement strategies.

## VIII.    TCPA Claims Referred to NSL's Complaint.

A.     C███ S███.

147.    On or about October 20, 2015, NSL received a cease and desist letter from Mize, which (among other things) requested that NSL direct future communications with C███ S███ to Mize, advised that C███ S███'s debt was disputed, and requested validation of C███ S███'s debt.

148.    An arbitration demand was filed on C███ S███'s behalf against NSL on or around January 26, 2017.  The demand alleged that NSL had violated the TCPA.

149.    NSL, represented by Attorney Jason L. Santos, took C███ S███'s deposition on January 4, 2018.  At her deposition, C███ S███ was represented by Muhtaseb.

150.    On or about June 13, 2018, NSL entered into a settlement agreement with C███ S███.

**B.** **D███ D████.**

151. On or about January 19, 2016, D███ D████ spoke with an NSL call-center agent and stated that she wished for NSL to cease calling her cell phone.

152. An arbitration demand was filed on D███ D████'s behalf against NSL on or about October 3, 2016. The demand alleged that NSL had violated the TCPA.

153. NSL, represented by Attorney Benjamin Noren, took D███ D████'s deposition on August 28, 2018. At her deposition, D████ D███ was represented by Dykes.

154. On or about December 12, 2018, NSL entered into a settlement agreement with D███ D████.

**C.** **E█ A███.**

155. On or about June 22, 2016, E█ A███ spoke with an NSL call-center agent and stated that she wished for NSL to cease calling her cell phone.

156. An arbitration demand was filed on E█ A███' behalf against NSL on or about July 19, 2017. The demand alleged that NSL had violated the TCPA.

157. NSL, represented by Attorney Benjamin Noren, took E█ A███' deposition on February 26, 2018. At her deposition, E██ A███ was represented by Lohman.

158. On or about April 6, 2018, NSL filed a pre-arbitration letter brief opposing E█ A███' claims. A true and accurate copy of which is attached hereto as **Exhibit 53.**

159. On or about June 11, 2018, NSL filed another pre-arbitration letter brief opposing E█ A███' claims. A true and accurate copy of which is attached hereto as **Exhibit 54**.

160. On or about July 6, 2018, NSL entered into a settlement agreement with E█ A███.

**D.** **S⬛⬛ H⬛⬛.**

161.    On April 28, 2017, a complaint was filed on S⬛⬛ H⬛⬛'s behalf against NSL in the U.S. District Court for the Northern District of Indiana, Case No. 1:17-cv-00186-WCL-SLC (the "H⬛⬛ Action"). The complaint alleged that NSL had violated the TCPA.

162.    On June 14, 2017, Muhtaseb filed a notice of appearance on behalf of S⬛⬛ H⬛⬛ in the H⬛⬛ Action.

163.    On June 19, 2017, NSL answered S⬛⬛ H⬛⬛'s complaint in the H⬛⬛ Action. NSL alleged, among other things, that S⬛⬛ H⬛⬛'s claims were "barred by the doctrine[] of … unclean hands."

164.    On July 14, 2017, counsel for NSL and Muhtaseb jointly filed a notice of voluntary dismissal of the H⬛⬛ Action without prejudice.

**E.** **L⬛ L⬛.**

165.    On or about June 1, 2016, L⬛ L⬛ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling his cell phone.

166.    An arbitration demand was filed on L⬛ L⬛'s behalf against NSL on or about October 17, 2016.  The demand alleged that NSL had violated the TCPA.

167.    NSL, represented by Attorney Jason L. Santos, took L⬛ L⬛'s deposition on December 8, 2017.  At his deposition, L⬛ L⬛ was represented by Muhtaseb.

168.    On or about April 20, 2018, NSL entered into a settlement agreement with L⬛ L⬛.

**F.** **J⬛⬛ S⬛.**

169.    On or about December 8, 2016, J⬛⬛ S⬛ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling his cell phone.

170.    An arbitration demand was filed on J███ S██'s behalf against NSL on or about February 15, 2017.  The demand alleged that NSL had violated the TCPA.

171.    NSL, represented by Attorney West A. Holden, took J███ S██'s deposition on December 22, 2017.  At his deposition, J███ S██ was represented by Branch.

172.    On or about August 21, 2018, NSL entered into a settlement agreement with J███ S██.

**G.    K███ W███.**

173.    In or around March 2017, K███ W███ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling his cell phone.

174.    An arbitration demand was filed K███ W███'s behalf against NSL on or about July 1, 2017.  The demand alleged that NSL had violated the TCPA.

175.    NSL, represented by Attorney Benjamin Noren, took K███ W███'s deposition on February 12, 2018.  At his deposition, K███ W███ was represented by Dykes.

176.    On or about June 6, 2018, NSL filed a pre-arbitration letter brief opposing K███ W███'s claims. A true and accurate copy of which is attached hereto as **Exhibit 55**.

177.    On or about July 16, 2018, NSL entered into a settlement agreement with K███ W███.

**H.    A███ C███.**

178.    On or about May 16, 2016, A███ C███ spoke with an NSL call-center agent and stated that she wished for NSL to cease calling his cell phone.

179.    An arbitration demand was filed on A███ C███'s behalf against NSL on or about January 24, 2017.  The demand alleged that NSL had violated the TCPA.

180.    NSL, represented by Attorney Taylor T. Haywood, took A███ C███'s

deposition on August 18, 2017.  At her deposition, A███ C███ was represented by Lohman and Branch.

181.    On or about December 1, 2017, NSL filed a pre-arbitration letter brief opposing A███ C███'s claims. A true and accurate copy of which is attached hereto as **Exhibit 56**.

182.    Attached hereto as **Exhibit 57** is a true and accurate copy of an email chain dated December 6-7, 2017 regarding settlement of A███ C███'s claims between counsel for NSL, Dennis N. Lueck, Jr., and Lohman and Branch.

183.    On or about March 19, 2018, NSL entered into a settlement agreement with A███ C███.

## IX.    Other TCPA Claims.

### A.    E███ A███

184.    On or about January 20, 2017, an arbitration demand was filed on E███ A███'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

185.    On or about August 8, 2017, NSL and LOJL/Branch agreed to voluntarily dismiss the case.

### B.    T███ A███.

186.    On or about October 13, 2016, T███ A███ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling her cell phone.

187.    On March 31, 2017, a complaint was filed on T███ A███'s behalf against NSL in the U.S. District Court for the Central District of California, Case No. 2:17-cv-02514-ODW-JC (the "A███ Action"). The complaint alleged that NSL had violated the TCPA.

188.    On May 23. 2017, NSL filed an answer in the A███ Action, asserting (among other things) that A███'s claims were "barred in whole or in party by the doctrine of unclean

hands."

189.     On or about April 25, 2018, NSL entered into a settlement agreement with T████ A████.

**C.     D████ A███.**

191.     On or about August 21, 2017, an arbitration demand was filed on D███ A███'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

192.     On or about June 5, 2018, a complaint was filed on D███ A██'s behalf in the United States District Court for the Western District of Texas. The complaint alleged that NSL had violated the TCPA.

193.     NSL, represented by Attorney Jordan S. O'Donnell, took D███ A██'s deposition on February 19, 2019.  At his deposition, D███ A██ was represented by James Sellers, an attorney employed by LOJL.

194.     On or about May 20, 2019, NSL and LOJL/Muhtaseb agreed to voluntarily dismiss the case.

**D.     K██████ A███.**

195.     On or about November 18, 2016, an arbitration demand was filed on K█████ A███'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

196.     On or about April 14, 2018, NSL and LOJL agreed to voluntarily dismiss the demand.

**E.     J█████ A███.**

197.     On or about August 2, 2016, J█████ A███ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling her cell phone.

198.     On March 31, 2017, a complaint was filed on J█████ A███'s behalf against NSL

in the U.S. District Court for the Northern District of California, Case No. 4:17-cv-01833-SBA (the "A███ Action"). The complaint alleged that NSL had violated the TCPA.

199.    On May 26. 2017, NSL filed an answer in the A███ Action, asserting (among other things) that A███'s claims were "barred in whole or in party by the doctrine of unclean hands."

200.    On or about March 13, 2018, NSL entered into a settlement agreement with J███ A███.

**F.    J███ B███.**

201.    On or about October 31, 2016, an arbitration demand was filed on J███ B███'s behalf against NSL. The demand alleged that NSL violated the TCPA.

202.    On or about March 5, 2018, NSL and LOJL/Muhtaseb agreed to voluntarily dismiss the case.

**G.    C███ B███.**

203.    On or about June 2, 2016, an arbitration demand was filed on C███ B███'s behalf against NSL. The demand alleged that NSL violated the TCPA.

204.    NSL, represented by Attorney Ashley M. Brettingen, took C███ B███'s deposition on March 20, 2018.  At her deposition, C███ Baldon was represented by Dykes.

205.    On or about May 23, 2018, NSL filed a pre-arbitration letter brief opposing C███ B███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 58**.

206.    On May 30, 2018, an arbitration hearing was held concerning C███ B███'s claim that NSL violated the TCPA. Dykes represented C███ B███ at the hearing.

207.    On or about July 6, 2018, NSL filed a post-arbitration letter brief opposing C███a

B█████'s claims that NSL violated the TCPA. A true and accurate copy of this brief is attached hereto as **Exhibit 59.**

208.    On August 9, 2018, an arbitration award was issued in C█████ B█████'s action in favor of NSL. A true and accurate copy of the award is attached hereto as **Exhibit 60**.

209.    On or about February 1, 2019, NSL filed a brief opposing C█████ B█████'s appeal of the arbitration award. A true and accurate copy of which is attached hereto as **Exhibit 61**.

210.    On or about September 4, 2019, the appeal was resolved in favor of NSL.

**H.    M█████ B█████.**

211.    LOJL filed an arbitration demand on M█████ B█████'s behalf against NSL. The demand alleged that NSL violated the TCPA.

212.    On or about August 24, 2018, NSL entered into a settlement with M█████ B█████ and the matter was dismissed.

**I.    K██ B█████.**

213.    On or about November 3, 2017, K██ B█████ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling his cell phone.

214.    On July 30, 2018, a complaint was filed on K██ B█████'s behalf against NSL in the U.S. District Court for the District of Colorado, Case No. 1:18-cv-01920 (the "B████ Action"). The complaint alleged that NSL had violated the TCPA.

215.    On September 11, 2018, NSL filed an answer in the B████ Action, asserting (among other things) that B█████'s claims were "barred by the doctrine[] of … unclean hands."

216.    NSL, represented by Attorney Jordan S. O'Donnell, took K██ B█████'s deposition on February 21, 2019.  At his deposition, K██ B█████ was represented by Branch.

217.    On or about March 13, 2019, NSL entered into a settlement agreement with K███ B███ .

**J.     C██████ B███**

218.    On or about September 25, 2017, an arbitration demand was filed on C██████ B███'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

219.    On or about March 14, 2018, NSL and LOJL/Muhtaseb agreed to voluntarily dismiss the case.

**K.     D███ C█████.**

220.    An arbitration demand against NSL was filed on D████ C██████'s behalf on or about October 17, 2016.  The demand alleged that NSL had violated the TCPA.

221.    On or about September 1, 2017, NSL entered into a settlement agreement with D████ C██████.

**L.     A███ C█████.**

222.    An arbitration demand was filed on A████ C█████'s behalf against NSL on or about November 18, 2016.  The demand alleged that NSL had violated the TCPA.

223.    On or about February 8, 2017, NSL entered into a settlement agreement with A███ C█████.

**M.     M█████ C███████.**

224.    An arbitration demand was filed on M████ C██████'s behalf against NSL on or about January 24, 2017.  The demand alleged that NSL had violated the TCPA.

225.    NSL, represented by Attorney Jordan S. O'Donnell, took M████ C██████'s deposition on October 31. 2017.   At his deposition, M████ C██████ was represented by Muhtaseb.

226.   On or about November 2, 2017, NSL filed a pre-arbitration letter brief opposing M████ C██████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 62**.

227.   On or about December 12, 2017, NSL entered into a settlement agreement with M████ C██████.

**N.   C███████ C███████.**

228.   An arbitration demand was filed on C██████ C████████' behalf against NSL on or about February 15, 2017.  The demand alleged that NSL had violated the TCPA.

229.   NSL, represented by Attorney Matthew W. Lindsey, took C██████ C████████' deposition on September 6, 2017.  At her deposition, C██████ C██████ was represented by Muhtaseb.

230.   On or about March 13, 2018, NSL entered into a settlement agreement with C██████ C██████.

**O.   C████████ D████.**

231.   An arbitration demand was filed on C████████ D████' behalf against NSL on or about October 18, 2018.  The demand alleged that NSL had violated the TCPA.

232.   On or about May 9, 2019, NSL entered into a settlement agreement with C████████ D████.

**P.   C████ D███.**

233.   On or about September 11, 2017, C████ D███ spoke with an NSL call-center agent and stated that she wished for NSL to cease calling her cell phone.

234.   On July 27, 2018, a complaint was filed on C████ D███' behalf against NSL in the U.S. District Court for the Central District of California, Case No. 2:18-cv-06506-DSF-JPR

(the "D███ Action"). The complaint alleged that NSL had violated the TCPA.

235.    On September 11. 2018, NSL filed an answer in the D███ Action, asserting (among other things) that D███' claims were "barred by the doctrine[] of … unclean hands."

236.    On or about April 17, 2020, NSL filed a brief opposing C███ D███' claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 63**.

237.    On or about June 1, 2020, NSL entered into a settlement agreement with C███ D███.

**Q.    S███ D████████.**

238.    On or about September 30, 2016, S███ D█████ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling his cell phone.

239.    An arbitration demand was filed on S███ D█████'s behalf on or about February 21, 2017 alleging that NSL violated the TCPA.

240.    NSL, represented by Attorney Taylor T. Haywood, took S███ D███████'s deposition on August 11, 2017.   At his deposition, S███ D█████ was represented by Branch.

241.    On or about October 5, 2017, NSL filed a post-arbitration brief opposing S███ D███████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 64.**

242.    On or about November 6, 2017, NSL filed a supplemental post-arbitration brief opposing S███ D████████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 65**.

243.    On November 9, 2017, an arbitration award was issued in S███ D███████'s action against NSL finding, among other things, that NSL violated the TCPA by using an ATDS

to call S███  D████████ after he revoked consent to receive ATDS-generated calls from NSL. A true and accurate copy of the award is attached hereto as **Exhibit 66**.

> **R.**     J██████ █E████  B██.

244.    An arbitration demand was filed on J██████ █E████  B██'s behalf against NSL on or about April 20, 2018.  The demand alleged that NSL had violated the TCPA.

245.    NSL, represented by Attorney Bonnie L. Martin, took J██████ Evans' deposition on February 6, 2019.  At her deposition, J██████ E████ was represented by Dykes.

246.    On or about April 24, 2019, NSL entered into a settlement agreement J██████ E████  B██.

> **S.**     A██████  F███.

247.    An arbitration demand was filed on A██████  F███'s behalf against NSL on or about September 20, 2017.  The demand alleged that NSL had violated the TCPA.

248.    NSL, represented by Attorney Jordan O'Donnell, took A██████  F███'s deposition on March 13, 2018.  At her deposition, A██████  F███ was represented by Branch.

249.    On or about May 11, 2018, NSL filed a post-arbitration brief opposing A██████  F███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 67**.

250.    On or about June 20, 2018, NSL entered into a settlement agreement with A██████  F███.

> **T.**     T██████  F████.

251.    An arbitration demand was filed on T██████  F████'s behalf against NSL on or about October 23, 2016.  The demand alleged that NSL had violated the TCPA.



252.   On or about March 5, 2018, NSL entered into a settlement agreement with T██ F███.

**U.      P████ G██████.**

253.   On or about September 26, 2017, an arbitration demand was filed on P██ G█████'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

254.   On or about April 30, 2018, NSL and LOJL/Muhtaseb agreed to voluntarily dismiss the case.

**V.      M██ G█████.**

255.   On or about September 25, 2017, an arbitration demand was filed on M█ G█████'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

256.   On or about November 1, 2017, NSL and LOJL/Branch agreed to voluntarily dismiss the case.

**W.      B████ G████.**

257.   An arbitration demand was filed on A████ and B████ G█████' behalf against NSL on or about January 24, 2017.  The demand alleged that NSL had violated the TCPA.

258.   NSL, represented by Attorney Taylor T. Haywood, took A███ G█████' deposition on July 27, 2017.  At his deposition, A████ G█████ was represented by Muhtaseb and Branch.

259.   NSL, represented by Attorney Taylor T. Haywood, took B███ G█████' deposition on July 28, 2017.  At her deposition, B████ G█████ was represented by Muhtaseb and Branch.

260.   On or about January 8, 2018, NSL entered into a settlement agreement with A███ and B████ G█████.

**X.   M███ G███.**

261.   An arbitration demand was filed on M███ G███'s behalf against NSL on or about December 11, 2017.  The demand alleged that NSL had violated the TCPA.

262.   On or about February 15, 2019, NSL entered into a settlement agreement with M███ G███.

**Y.   M███ G███.**

263.   An arbitration demand was filed on M███ G███'s behalf against NSL on or about January 25, 2017.  The demand alleged that NSL had violated the TCPA.

264.   On or about January 19, 2018, NSL entered into a settlement agreement with M███ G███.

**Z.   I██ H███.**

265.   On or about September 1, 2016, I██ H███ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling her cell phone.

266.   An arbitration demand was filed on I██ H███'s behalf against NSL on or about February 14, 2017.  The demand alleged that NSL had violated the TCPA.

267.   On or about August 22, 2017, NSL filed a pre-arbitration letter brief opposing I██ H███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 68**.

268.   On August 24, 2017 an arbitration hearing was held regarding Ms. H███'s claim that NSL had violated the TCPA.

269.   On February 5, 2018, NSL entered into a settlement agreement with I██ H███.

**AA.    M███ ████.**

270.    An arbitration demand was filed on M███ ███'s behalf against NSL on or about February 1, 2017.  The demand alleged that NSL had violated the TCPA.

271.    NSL, represented by Attorney Benjamin Noren, took M███ ███'s deposition on November 7, 2017.  At his deposition, M███ ███ was represented by Muhtaseb.

272.    On or about November 15, 2017, NSL filed a pre-arbitration letter brief opposing M███ ███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 69**.

273.    M███ ███'s claims were heard by the arbitrator on November 21, 2017.

274.    On or about December 15, 2017, NSL filed a post-arbitration letter brief opposing M███ ███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto **Exhibit 70**.

275.    On or about January 26, 2018, NSL filed a post-arbitration letter brief opposing M███ ███'s claim for attorneys' fees. A true and accurate copy of which is attached hereto as **Exhibit 71**.

276.    On February 26, 2018, an arbitration award was issued in M███ ███'s action against NSL.

277.    On or about January 31, 2019, NSL filed an appellate brief seeking to vacate M███ ███'s arbitration award. A true and accurate copy of NSL's brief is attached hereto as **Exhibit 72**.

278.    On June 19, 2019, an interim award was issued by the arbitration panel hearing NSL's appeal of the award received by M███ ███ on February 25, 2018. A true and accurate copy of the interim award of the arbitration panel is attached hereto as **Exhibit 73**.  After M███



█████ prevailed on the appeal to the arbitration panel, NSL moved to have the arbitration award vacated in U.S. District Court. NSL's motion was denied.

**BB.**   E████ █████.

279.   An arbitration demand was filed on E████ █████'s behalf against NSL on or about January 20, 2017.  The demand alleged that NSL had violated the TCPA.

280.   On or about January 9, 2018, NSL entered into a settlement agreement with E███ █████.

**CC.**   D███ █████.

281.   An arbitration demand was filed on D███ █████'s behalf against NSL on or about January 23, 2019.  The demand alleged that NSL had violated the TCPA.

282.   On or about September 20, 2019, NSL entered into a settlement agreement with D███ █████.

**DD.**   A███ J████.

283.   An arbitration demand on A███ J████' behalf against NSL on or about September 21, 2017.  The demand alleged that NSL had violated the TCPA.

284.   NSL, represented by Attorney Tyler A. Carie, took A███ J████' deposition on March 6, 2018.  At her deposition, A███ J████ was represented by Dykes.

285.   On or about June 14, 2018, NSL filed a pre-arbitration letter brief opposing A███ J████' claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 74**.

286.   A███ J████' claims were heard by the arbitrator on June 21, 2018.

287.   On or about July 31, 2018, NSL filed a post-arbitration letter brief opposing A███ J████' claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto

as **Exhibit 75**.

288.    On or about December 4, 2019, NSL entered into a settlement agreement with
A████ J████.

**EE.    C████ J██████.**

289.    On or about April 7, 2017, a complaint was filed on C████ J██████'s behalf against
NSL. The complaint alleged that NSL had violated the TCPA.

290.    On or about August 30, 2017, NSL and LOJL/Branch agreed to voluntarily dismiss
the case.

**FF.    T██ J████.**

291.    An arbitration demand was filed on T██ J████'s behalf against NSL on or about
April 2, 2018.  The demand alleged that NSL had violated the TCPA.

292.    On or about April 30, 2019, NSL entered into a settlement agreement with T█
J███.

**GG.    S████████ K████████.**

293.    On or about June 22, 2016, S████████ K████████ spoke with an NSL call-center
agent and stated that he wished for NSL to cease calling her cell phone.

294.    On March 30, 2017, a complaint was filed on S████████ K████████'s behalf
against NSL in the U.S. District Court for the Southern District of New York, Case No. 1:17-cv-
02327-PKC (the "K██████ Action"). The complaint alleged that NSL had violated the TCPA.

295.    On May 3. 2017, NSL filed an answer in the K██████ Action, asserting (among
other things) that K██████'s claims were "barred by the doctrine[] of … unclean hands."

296.    NSL, represented by Attorneys Benjamin Noren and Dennis N. Lueck, took
S████████ K██████'s deposition on October 4, 2017.   At his deposition, S████████

36

K█████ was represented by Branch.

297.   NSL, represented by Attorney Lisa M. Simonetti, took Lohman's deposition in the K█████ Action on November 6, 2017.  At his deposition, Lohman was represented by Branch.

298.   On November 22, 2017, S█████ K█████ filed a motion to dismiss or in the alternative stay the K█████ Action to compel arbitration.

299.   On January 3, 2018, NSL informed the court that it did not oppose S█████ K█████'s motion to compel arbitration and consented to stay the K█████ Action while the arbitrability of the dispute was resolved by an arbitrator.

300.   On January 5, 2018, the court stayed the K█████ Action.

301.   On or about September 28, 2018, NSL and LOJL/Branch agreed to voluntarily dismiss the case or otherwise did not pursue an arbitration.

**HH.    T███ K██.**

302.   An arbitration demand was filed on T███ K██'s behalf against NSL on or about October 18, 2018.  The demand alleged that NSL had violated the TCPA.

303.   On or about December 23, 2019, NSL entered into a settlement agreement with T███ K██.

**II.    Y███ K██.**

304.   On or about January 27, 2017, an arbitration demand was filed on Y███ K██'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

305.   On or about April 6, 2017, a complaint was filed on Y███ K██'s behalf against NSL. The complaint alleged that NSL had violated the TCPA.

306.   On or about February 23, 2017, NSL and LOJL agreed to voluntarily dismiss the case.

**JJ.   K███ K███.**

307.   On or about September 13, 2017, K███ K███ spoke with an NSL call-center agent and stated that she wished for NSL to cease calling her cell phone.

308.   On July 31, 2018, a complaint was filed on K███ K███'s behalf against NSL in the U.S. District Court for the Southern District of Ohio, Case No. ████████████ (the "K███ Action"). The complaint alleged that NSL had violated the TCPA.

309.   On September 26, 2018, NSL filed an answer in the K███ Action, asserting (among other things) that K███'s claims were "barred by the doctrine[] of … unclean hands."

310.   NSL, represented by Attorney Jordan S. O'Donnell, took K███ K███'s deposition on May 14, 2019.  At her deposition, K███ K███ was represented by Branch.

311.   On or about August 20, 2019, NSL entered into a settlement agreement with K███ K███.

**KK.   J███ L██.**

312.   An arbitration demand was filed on J███ L██'s behalf against NSL on or about October 18, 2016.  The demand alleged that NSL had violated the TCPA.

313.   On or about February 8, 2018, NSL entered into a settlement agreement with J███ L██.

**LL.   D███ L██.**

314.   An arbitration demand was filed on D███ L██'s behalf against NSL on or about January 20, 2017.  The demand alleged that NSL had violated the TCPA.

315.   On or about June 12, 2018, NSL filed a pre-arbitration letter brief opposing D███ L██' claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 76**.

316.   An arbitration hearing regarding D███ L███' claims was held on June 19, 2018.

317.   On or about July 13, 2018, NSL filed a post-arbitration letter brief opposing D███ L███' claims that NSL violated the TCPA. A true and accurate copy of this brief is attached hereto as **Exhibit 77**.

318.   On or about August 2, 2018, an arbitrator issued an award in favor of NSL.

**MM.   H███ L███**

319.   On or about June 6, 2016, H███ L███ spoke with an NSL call-center agent and stated that she wished for NSL to cease calling her cell phone.

320.   An arbitration demand was filed on H███ L███' behalf against NSL on or about January 5, 2017.  The demand alleged that NSL had violated the TCPA.

321.   NSL, represented by Attorney Jordan S. O'Donnell, took H███ L███' deposition on November 28, 2017.  At her deposition, H███ L███ was represented by Branch.

322.   On or about November 30, 2017, NSL filed a pre-arbitration letter brief opposing H███ L███' claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 78**.

323.   On or about January 2, 2018, NSL filed a post-arbitration letter brief opposing H███ L███' claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 79**.

324.   On January 9, 2018, an arbitration award was issued in H███ L███' action against NSL. A true and accurate copy of the award is attached hereto as **Exhibit 80**.

325.   On or about June 21, 2018, NSL filed an appellate letter brief seeking to vacate H███ L███' arbitration award. A true and accurate copy of NSL's letter brief is attached hereto as **Exhibit 81**.

326.    On or about August 1, 2018, NSL entered into a settlement agreement with H█████ L███.

**NN.    B█████ █████ L███.**

327.    An arbitration demand was filed on B█████ █████ L███'s behalf against NSL on or about September 20, 2017.  The demand alleged that NSL had violated the TCPA.

328.    NSL, represented by Attorney Jordan S. O'Donnell, took B█████ █████ L███'s deposition on May 9, 2018.  At her deposition, B█████ █████ L███ was represented by Branch.

329.    On or about May 24, 2018, NSL filed a pre-arbitration letter brief opposing B█████ █████ L███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 82**.

330.    On or about August 30, 2018, NSL entered into a settlement agreement with B█████ █████ L███.

**OO.    F███ L█████.**

331.    An arbitration demand was filed on F███ L█████'s behalf against NSL on or about January 25, 2017.  The demand alleged that NSL had violated the TCPA.

332.    NSL, represented by Attorney West A. Holden, took F███ L█████'s deposition on December 18, 2017.  At his deposition, F███ L█████ was represented by Branch.

333.    On or about January 26, 2018, NSL filed a pre-arbitration letter brief opposing F███ L█████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 83**.

334.    On or about April 9, 2018, NSL entered into a settlement agreement with F███ L█████.

**PP.  A███  M███.**

335.    An arbitration demand was filed on A███  M███'s behalf against NSL on or about November 14, 2018.  The demand alleged that NSL had violated the TCPA.

336.    On or about April 24, 2019, NSL entered into a settlement agreement with A███ M███.

**QQ.  B███  M███.**

337.    On or about January 23, 2017, an arbitration demand was filed on B███  M███'s behalf against NSL.  The demand alleged that NSL had violated the TCPA.

338.    NSL, represented by Attorney Benjamin Noren, took B███  M███'s deposition on October 25, 2017.  At her deposition, B███  M███ was represented by Branch.

339.    On or about October 31, 2017, NSL filed a pre-arbitration letter brief opposing B███  M███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 84**.

340.    On or about November 21, 2017, NSL filed a post-arbitration letter brief opposing B███  M███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 85**.

341.    On or about December 6, 2017, an arbitrator entered an award in favor of NSL.

**RR.  J██  M██████.**

342.    On or about October 6, 2016, J██  M██████ spoke with an NSL call-center agent and stated that he wished for NSL to cease calling his cell phone.

343.    On or about January 20, 2017, an arbitration demand was filed on J██  M██████'s behalf against NSL.  The demand alleged that NSL had violated the TCPA.

344.    NSL, represented by Attorney Taylor Haywood, took J██  M██████'s deposition

on July 13, 2017.  At his deposition, J█ M████ was represented by Muhtaseb.

345.    On or about September 22, 2017, NSL filed a post-arbitration letter brief opposing J█ M██████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 86**.

346.    On October 2, 2017, an arbitration award was issued in J█ M██████'s action against NSL. A true and accurate copy of the award is attached hereto as **Exhibit 87**.

**SS.    J███████ M████.**

347.    An arbitration demand was filed on J███████ M████'s behalf against NSL on or about January 20, 2017.  The demand alleged that NSL had violated the TCPA.

348.    On or about March 12, 2018, NSL entered into a settlement agreement with J██████ M████.

**TT.    M████ M████.**

349.    On or about October 31, 2016, an arbitration demand was filed on M████ M████'s behalf against NSL.  The demand alleged that NSL had violated the TCPA.

350.    NSL, represented by Attorney Ashley M. Brettingen, took M████ M████'s deposition on November 21, 2017.  At his deposition, M████ M████ was represented by Branch.

351.    On or about December 7, 2017, NSL filed a pre-arbitration letter brief opposing M████ M████'s claims that NSL violated the TCPA. A true and accurate copy of this brief is attached hereto as **Exhibit 88**.

352.    In or around December 2017, NSL and LOJL/Branch agreed to voluntarily dismiss the case.

**UU.    B██ M████.**

353.    On or about January 23, 2017, an arbitration demand was filed on B██ M████'s

behalf against NSL.  The demand alleged that NSL had violated the TCPA.

354.   NSL, represented by Attorney Taylor T. Haywood, took B███ M████'s deposition on June 16, 2017.  At his deposition, B███ M████ was represented by Branch, Muhtaseb and Lohman.

355.   On or about September 7, 2017, NSL filed a pre-arbitration letter brief opposing B███ M████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 89**.

356.   On or about October 10, 2017, an arbitration award was entered for NSL. B███ M████ appealed the award.  The award was affirmed on appeal.

**VV.   J███ M████.**

357.   On or about September 18, 2017, an arbitration demand was filed on J███ M████' behalf against NSL. The demand alleged that NSL had violated the TCPA.

358.   On or about May 17, 2018, NSL and LOJL/Branch agreed to voluntarily dismiss the case.

**WW.   M█████ M█████.**

359.   An arbitration demand was filed on M█████ M█████'s behalf against NSL on or about September 25, 2017.  The demand alleged that NSL had violated the TCPA.

360.   NSL, represented by Attorney West A. Holden, took M█████ M█████'s deposition on April 20, 2018.  At his deposition, M█████ M█████ was represented by Dykes.

361.   On or about October 2, 2018, NSL entered into a settlement agreement with M█████ M█████.

**XX.   K██████ M████.**

362.   An arbitration demand was filed on K████ M████' behalf against NSL on or about November 17, 2016.  The demand alleged that NSL had violated the TCPA.

363.   NSL, represented by Attorneys Jordan S. O'Donnell and Robyn L. Stein, took K████ M████'s deposition on April 3, 2018.  At her deposition, K████ M████ was represented by Dykes.

364.   On or about May 1, 2018, NSL entered into a settlement agreement with K████ M████.

**YY.   P████ N████.**

365.   An arbitration demand was filed on P████ N████s behalf against NSL on or about January 3, 2017.  The demand alleged that NSL had violated the TCPA.

366.   On or about November 3, 2017, NSL filed a letter with the arbitrator regarding discovery in P████ N████s action.  A true and accurate copy of the letter is attached hereto as **Exhibit 91**.

367.   NSL, represented by Attorney Benjamin Noren, took P████ N████s deposition on November 17, 2017.  At his deposition, P████ N████ was represented by Muhtaseb.

368.   On or about January 17, 2018, NSL filed a pre-arbitration letter brief opposing P████oli's claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 91**.  The letter brief is misdated January 17, 2017.

369.   On or about May 2, 2018, NSL entered into a settlement agreement with P████oli.

**ZZ.   T██ N████.**

370.   On or about September 25, 2017, an arbitration demand was filed on T██ N████'s

behalf against NSL. The demand alleged that NSL had violated the TCPA.

371.    On or about March 26, 2018, NSL and LOJL/Muhtaseb agreed to voluntarily dismiss the case.

**AAA.   P███ O███.**

372.    An arbitration demand was filed on P███ O███'s behalf against NSL on or about October 20, 2016.  The demand alleged that NSL had violated the TCPA.

373.    On or about June 28, 2018, NSL entered into a settlement agreement with P███ O███.

**BBB.   S███ P██.**

374.    An arbitration demand was filed on Shilpa Patel's behalf against NSL. The demand alleged that NSL had violated the TCPA.

375.    On or about February 27, 2017, NSL and LOJL agreed to voluntarily dismiss the case.

**CCC.   J███ P██.**

376.    An arbitration demand was filed on J███ P██'s behalf against NSL on or about October 12, 2016.  The demand alleged that NSL had violated the TCPA.

377.    NSL, represented by Attorney Jordan S. O'Donnell, took J███ P██'s deposition on January 5, 2018.  At her deposition, J███ P██ was represented by Muhtaseb.

378.    On or about July 30, 2018, NSL entered into a settlement agreement with J███ P██.

**DDD.   E███ R███.**

379.    An arbitration demand was filed on E███ R███' behalf against NSL on or about January 19, 2017.  The demand alleged that NSL had violated the TCPA.

380.     NSL, represented by Attorney West A. Holden, took █████ R████'s deposition on March 2, 2018.  At her deposition, █████ R███ was represented by Dykes.

381.     On or about March 13, 2018, NSL filed a pre-arbitration letter brief opposing █████ R████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 92**.  The letter brief is misdated March 13, 2017.

382.     Attached hereto as **Exhibit 93** is a true and accurate copy of an email string between counsel for NSL, Dennis N. Lueck, Jr., and Lohman regarding █████ R████'s claims against NSL.

383.     On or about June 13, 2018, NSL entered into a settlement agreement with █████ R████.

**EEE.   J███ R████████.**

384.     On or about January 31, 2017, an arbitration demand was filed on J██ R████████'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

385.     On or about May 9, 2017, NSL and LOJL agreed to voluntarily dismiss the case.

**FFF.   W████ R████.**

386.     An arbitration demand was filed on W████ R████' behalf against NSL on or about January 27, 2017.  The demand alleged that NSL had violated the TCPA.

387.     On or about May 17, 2018, NSL entered into a settlement agreement with W████ R████.

**GGG.   R████ S████.**

388.     An arbitration demand was filed on R████ S████'s behalf against NSL on or about November 17, 2016.  The demand alleged that NSL had violated the TCPA.

389.     On May 2, 2018, a complaint was filed on R███ S████'s behalf against NSL in

the U.S. District Court for the Central District of California, Case No. 8:18-cv-00763-JVS-KES (the "S█████ Action"). The complaint alleged that NSL had violated the TCPA.

390.    On May 25, 2018, NSL filed an answer in the S█████ Action, asserting (among other things) that S█████'s claims were "barred by the doctrine[] of … unclean hands."

391.    NSL, represented by Attorney Ashley M. Brettingen, took R████ S█████'s deposition on April 26, 2019.  At his deposition, R████ S█████ was represented by Branch.

392.    On or about June 14, 2019, NSL filed a pre-arbitration letter brief opposing R████ S█████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 95**.

393.    On or about August 9, 2019, NSL entered into a settlement agreement with R████ S█████.

**HHH.   G█████ S█████.**

394.    An arbitration demand was filed on G█████ S█████'s behalf against NSL on or about July 3, 2017.  The demand alleged that NSL had violated the TCPA.

395.    NSL, represented by Attorney Tyler Carle, took G█████ S█████'s deposition on March 22, 2018.  At her deposition, G█████ S█████ was represented by Branch.

396.    On or about May 22, 2018, NSL entered into a settlement agreement with G█████ S█████.

**III.   S█████ S████.**

397.    An arbitration demand was filed on S█████ S█████'s behalf against NSL on or about January 23, 2017.  The demand alleged that NSL had violated the TCPA.

398.    On or about February 19, 2018, NSL entered into a settlement agreement with S█████ S████.

**JJJ.   V███ S██.**

399.    An arbitration demand was filed on V███ S██'s behalf against NSL on or about January 20, 2017.  The demand alleged that NSL had violated the TCPA.

400.    On or about January 5, 2018, NSL entered into a settlement agreement with V███ S██.

**KKK.  B██ & M████ S████.**

401.    An arbitration demand was filed on B██ S████ and M████ S████'s behalf against NSL on or about October 20, 2016.  The demand alleged that NSL had violated the TCPA.

402.    NSL, represented by Attorney Jordan S. O'Donnell, took B██ and M██ S████'s depositions on December 4, 2018.  At their depositions, the S████ were represented by Branch.

403.    On or about February 18, 2019, NSL entered into a settlement agreement with B██ and M████ S████.

**LLL.   A████ S███.**

404.    On January 23, 2019, a complaint was filed on A████ S███'s behalf against NSL in the U.S. District Court for the Central District of California, Case No. ████████████ (the "S███ Action"). The complaint alleged that NSL had violated the TCPA.

405.    On February 19, 2019, NSL filed an answer in the S███ Action, asserting (among other things) that S███'s claims were "barred in whole or in part by the doctrine of unclean hands."

406.    On June 11, 2019, S███ and NSL filed a stipulation and request to stay the S███ Action pending arbitration. The court granted that request on June 12, 2019.

407.    On or about February 3, 2020, NSL entered into a settlement agreement with

A███ S███.

**MMM.** **D███ S███.**

408.    An arbitration demand was filed on D███ S███'s behalf against NSL on or about January 5, 2017.  The demand alleged that NSL had violated the TCPA.

409.    NSL, represented by Attorneys Michael P. Schuette and Dayle M. Van Hoose, took D███ S███'s deposition on July 18, 2017.  At her deposition, D███ S███ was represented by Branch.

410.    On or about January 31, 2018, NSL entered into a settlement agreement with D███ S███.

**NNN.  D███ S███.**

411.    An arbitration demand was filed on D███ S███'s behalf against NSl on or about February 15, 2017.  The demand alleged that NSL had violated the TCPA.

412.    NSL, represented by Attorney West A. Holden, took D███ S███'s deposition on October 30, 2017.  At his deposition, D███ S███ was represented by Muhtaseb.

413.    On or about February 6, 2018, NSL filed a pre-arbitration letter brief opposing D███ S███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 95**.

414.    On or about June 4, 2018, NSL filed another pre-arbitration letter brief opposing D███ S███'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 96.**

415.    On June 8, 2018, an arbitration hearing was held in D███ S███'s action against NSL.

416.    On or about June 18, 2018, NSL filed a post-arbitration letter brief opposing D███

S███████'s claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 97**.

417.    On July 5, 2018, the arbitrator issued an arbitration award in D███ S██████'s action against NSL. A true and correct copy of that award is attached hereto as **Exhibit 98**.

418.    On or about September 20, 2018, NSL entered into a settlement agreement with D███ S██████.

**OOO. J███ T█████.**

419.    On or about February 15, 2017, an arbitration demand was filed on J███ T██████' behalf against NSL. The demand alleged that NSL had violated the TCPA.

420.    NSL and LOJL/Branch agreed to voluntarily dismiss the case.

**PPP.   C███ T█████.**

421.    On or about January 26, 2017, an arbitration demand was filed on C███ T█████'s behalf against NSL. The demand alleged that NSL had violated the TCPA.

422.    On or about September 27, 2017, NSL and LOJL agreed to voluntarily dismiss the case.

**QQQ. L████ W████.**

423.    On or about November 17, 2016, an arbitration demand was filed on L███ W████'s behalf against NSL.  The demand alleged that NSL had violated the TCPA.

424.    NSL, represented by Attorney Ashley M. Brettingen, took L███ W████'s deposition on January 24, 2018.  At her deposition, L████ W████ was represented by Muhtaseb.

425.    On February 8, 2018, an evidentiary hearing was held in L███ W████'s action against NSL.

426.    On or about March 7, 2018, NSL filed a post-arbitration letter brief opposing L████

W███ 's claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 99**.

427.    On May 31, 2018, the arbitrator issued an arbitration award in L███ W███ 's action granting W███ damages under the California Rosenthal Act, finding for NSL on the TCPA claim, and finding for NSL on its counterclaim on the promissory note. A true and correct copy of that award is attached hereto as **Exhibit 100**.

**RRR.  L███ W███.**

428.    An arbitration demand was filed on L███ W███ 's behalf against NSL on or about January 3, 2017.  The demand alleged that NSL had violated the TCPA.

429.    On or about March 6, 2019, NSL entered into a settlement agreement L███ W███.

**SSS.  K██ W████.**

430.    An arbitration demand was filed on K██ W████ 's behalf against NSL on or about June 4, 2018.  The demand alleged that NSL had violated the TCPA.

431.    NSL, represented by Attorney Jordan S. O'Donnell, took K██ W████ 's deposition on December 19, 2018.  At her deposition, K██ W████ was represented by Carlos C. Alsina-Batista, an LOJL attorney.

432.    On or about February 1, 2019, NSL filed a pre-arbitration letter brief opposing K██ W████ 's claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 101**.

433.    On or about February 19, 2019, NSL filed another pre-arbitration letter brief opposing K██ W████ 's claims that NSL violated the TCPA. A true and accurate copy of which is attached hereto as **Exhibit 102**.

434.    On or about April 9, 2019, NSL entered into a settlement agreement K██

W█████.

> **TTT.  K████ W███████.**

435.     An arbitration demand was filed on K████ W████████'s behalf against NSL on or about January 23, 2017.  The demand alleged that NSL had violated the TCPA.

436.     NSL, represented by Attorney Ashley M. Brettingen, took K████ W████████'s deposition on October 31, 2017.   At her deposition, K████ W████████ was represented by Branch.

437.     On or about January 17, 2018, NSL entered into a settlement agreement K████ W███████.

## X.   Underlying TCPA Litigation, Generally.

438.     True and accurate copies of the settlement agreements between the various plaintiffs and NSL are attached as **Exhibits 103** through **155** respectively.

439.     NSL retained the lawyers that represented NSL at every deposition of a LOJL client. In the TCPA actions at issue in this matter, NSL retained and was represented primarily by lawyers at either Ackerman LLP or Hinshaw & Culberston LLP.  NSL's lead counsel in the TCPA matters at issue was Dennis Lueck, who was (at various times) a partner at either Ackerman LLP or Hinshaw & Culberston LLP and who supervised the work of various other attorneys, including but not limited to: Matthew W. Lindsey, Taylor T. Haywood, Jason L. Santos, Tyler A. Carle, Robyn L. Stein, Ashley M. Brettingen, Jordan S. O'Donnell, West A. Holden, and Benjamin Noren. If a deposition was taken in a case, NSL was at least constructively aware of the TCPA claimant's deposition testimony at the time NSL settled the TCPA case.

440.     NSL engages in a cost-benefit analysis when deciding whether to settle a claim and weighs many factors when deciding whether to settle a claim. In each case settled by NSL, NSL

decided it was in its business interest to settle the case. When NSL chose to settle TCPA cases with the Lohman Defendants, NSL was aware of many elements of what NSL characterizes as the Lohman Defendants' alleged scheme to defraud.

441.    Neither NSL nor any TCPA claimant represented by the Lohman Defendants has moved to rescind or revoke or has in any way disavowed the settlement agreements entered into by the parties in the underlying TCPA litigation initiated by the Lohman Defendants. NSL has received the bargained for benefit of all settlement agreements into which it entered.

442.    Other than the ▮▮▮ case, NSL has never sought to vacate any final judgment or arbitration award in any TCPA claim brought by the Lohman Defendants. ▮▮▮ prevailed over NSL's attempts to vacate the judgment he was awarded.

443.    NSL seeks to recover only its own damages in this action. NSL does not seek to recover damages sustained by any other party, including the individual TCPA claimants represented by the Lohman Defendants.

444.    The Parties agree that Exhibits 103-155 are authentic documents.  Certain of the Defendants are unwilling to stipulate to the authenticity of the remaining exhibits so the parties have no agreement as to the authenticity of the remaining exhibits.

October 20, 2020                              Respectfully submitted,

                                             /s/ Jeffrey R. Hamlin
                                             Jeffrey R. Hamlin (Va. Bar No. 46932)
                                             George R. Calhoun V (*pro hac vice*)
                                             Whitney A. Fore (Va. Bar No. 87526)
                                             IFRAH PLLC
                                             1717 Pennsylvania Avenue NW
                                             Suite 650
                                             Washington, DC 20006-2004
                                             (202) 524-4140 – Tel.
                                             (202) 524-4141 – Fax
                                             jhamlin@ifrahlaw.com
                                             george@ifrahlaw.com
                                             wfore@ifrahlaw.com

                                             *Counsel for Plaintiff Navient Solutions, LLC*

                                             /s/ Thomas F. Urban II
                                             Thomas F. Urban II, Virginia Bar No. 40540
                                             FLETCHER, HEALD & HILDRETH, PLC
                                             1300 N. 17th Street, Suite 1100
                                             Arlington, Virginia 22209
                                             (703) 861-5235 – Tel.
                                             urban@fhhlaw.com

                                             Jeffrey E. Grell (*pro hac vice*)
                                             GRELL FEIST PLC
                                             825 Nicollet Mall, Suite 625
                                             Minneapolis, MN 55402
                                             (612) 353-5530 -Tel.
                                             jgrell@grellfeist.com

                                             *Counsel for The Law Offices of Jeffrey*
                                             *Lohman, P.C., Jeffrey Lohman, and Jeremy Branch*

                                             /s/ Mikhael D. Charnoff
                                             Mikhael D. Charnoff
                                             PERRY CHARNOFF PLLC
                                             1010 N. Glebe Road
                                             Suite 310
                                             Arlington, VA 22201
                                             Main:  (703) 291-6650
                                             Fax:   (703) 563-6692

                                             *Counsel for GST Factoring, Inc., Rick Graff, and*

*Gregory Trimarche*

/s/ Stefan Savic (pro hac vice)
Stefan Savic
Shipkevich PLLC
165 Broadway, Suite 2300
New York, New York 10006
Telephone:  (646) 867-0098
Facsimile: (888) 568-5815
ssavic@shipkevich.com

*Counsel for William Carlson*