UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAVIENT SOLUTIONS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>THE LAW OFFICES OF JEFFREY LOHMAN, et al.,<br><br>                Defendants. | Civil Action No. 1:19-cv-00461 |

**PLAINTIFF NAVIENT SOLUTIONS, LLC'S OPPOSITION TO THE LOHMAN DEFENDANTS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, MOTION FOR CERTIFCATION OF AN INTERLOCUTORY APPEAL**

At a telephonic hearing on December 1, 2020, this Court announced that it had reviewed the voluminous record in this case[1] and would be denying NSL's motion for partial summary judgment and the Lohman Defendants' cross-motion for summary judgment.[2] The Court said the "evidence in this case is all over the place,"[3] but sufficient to sustain or deny NSL's RICO claims.[4] One "key question" surfaced from the Court's review of the record: whether NSL could prove causation on its RICO claim.[5] The Court questioned whether the Defendants could be held liable for losses that NSL incurred defending against claims brought under the Telephone Consumer

---

[1] Tr. of Motions Hr'g 4:6–13, Dec. 1, 2020 (Dkt. 396).
[2] *Id.* at 13:3–6.
[3] *Id.* at 12:11–13.
[4] *Id.* at 12:15–19; *see also id.* at 13:4-6 ("I'm finding that there's sufficient material facts at issue in this case such that the case can't be resolved on summary judgment."); *id.* at 13:16–18 ("[T]here's enough evidence on both sides that I think at this point summary judgment is not appropriate.").
[5] *Id.* at 4:9–13.

Protection Act ("TCPA") if those claims arose from telephone calls that NSL made in violation of the Act.[6]

The Court anticipated that an appeal pending before the Supreme Court might answer the question. As noted from the bench, the Supreme Court's 2020–2021 term included a dispute over the types of telephone systems prohibited under the TCPA, and a decision in that case (to be published no later than June 30, 2021) might make a "huge material difference" in this case.[7] That decision—*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2020) ("*Facebook*")—was issued on April 1, 2021, and held that the TCPA's prohibition on the use of autodialers does not reach telephony systems that do not store or produce telephone numbers using a random or sequential number generator.[8] Because NSL's telephone calls at issue in the underlying TCPA actions were not made using a system that could store or produce telephone numbers using a random or sequential number generator, NSL's calls did not violate the TCPA and, thus, cannot defeat causation on the RICO claims.

In response to *Facebook*, the Lohman Defendants filed their two-part motion, the first part of which makes a nonsensical request for the Court to reverse its denial of summary judgment based on a binding decision that purportedly "has no bearing on this action." In the second part of the motion, they ask the court to certify an interlocutory appeal on their affirmative defenses that NSL's claims are barred by the *Noerr-Pennington* doctrine, accord and satisfaction, and collateral estoppel.

---

[6] *Id.* at 6:15–16 ("[I]f, in fact, [NSL] was violating the statute, then how in the world can you argue that you're entitled to any damages?").
[7] *Id.* at 12:23–13:6.
[8] 141 S. Ct. at 1169.

The Lohman Defendants' motion for reconsideration must be denied because it is little more than a request for the Court to change its mind. Indeed, the Lohman Defendants do not present—as they must—an intervening change in controlling law; new, material evidence that was previously unavailable to them; or clear error in the Court's order denying summary judgment. Additionally, the Lohman Defendants' motion to certify must be denied because they have not established (i) a controlling question of law that, if resolved, would dispose of the entire case; (ii) substantial grounds for difference of opinion as to that question; and (iii) that an immediate appeal from the order denying summary judgment would materially advance the ultimate termination of litigation.

## LEGAL STANDARD

A motion for reconsideration must be denied if the movant does not show (i) an intervening change in controlling law; (ii) new, material evidence that was not previously available, or (iii) clear error in the prior decision, which requires correction in the interest of justice. *See Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005). "When a motion for reconsideration raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind, relief is not authorized." *Bunn v. Arlington Cnty.*, No. 1:04–CV–628, 2004 WL 3247146, at *1 (E.D. Va. Aug. 27, 2004) (Brinkema, J.) (unpublished) (citing *Pritchard v. Wal-Mart Stores*, 2001 WL 101473, at *1 (4th Cir. Feb. 7, 2001) (unpublished)). A motion for reconsideration "'is not a license for a losing party's attorney to get a second bite at the apple.'" *Id.* (quoting *Shields v. Shelter*, 120 F.R.D. 123, 125–26 (D. Colo. 1998)).

Section 1292(b) of title 28 of the U.S. Code provides a district judge may certify for appeal an order that is not otherwise appealable under § 1292 if the judge finds that the order involves a controlling question of law as to which there is substantial grounds for difference of opinion and

3

that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

## ARGUMENT

In their motion, the Lohman Defendants assert that this Court should reconsider its order denying summary judgment based on *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2020) ("*Facebook*"), an intervening Supreme Court decision that—per the movants—has no bearing on this case. *See*, *e.g.*, Dkt. 401 at 1 ("[T]he Supreme Court's clarification in *Facebook* . . . does not apply to this dispute and is not material to the resolution of the parties' cross-motions for summary judgment"); *id.* at 6 ("Neither the definition of an [automatic telephone dialing system ("ATDS")] nor the outcome of the *Facebook* case has ever been material to the resolution of the present action."); *id.* ("[T]he Supreme Court's decision in *Facebook* simply has no bearing on this action."). Given that the Lohman Defendants expressly disclaim any reliance on *Facebook*, their motion is fatally flawed and must be denied because they cite no intervening change in controlling law based on which the Court should disturb its order denying summary judgment. Nor have they presented a shred of new, material evidence that was previously unavailable to them or identified any clear error in the Court's decision denying their summary judgment motion.

Moreover, the Lohman Defendants' motion for certification of an interlocutory appeal should be denied due to genuine disputes of material fact concerning the applicability of *Noerr-Pennington* immunity, accord and satisfaction, and collateral estoppel. The parties are scheduled to go to trial in roughly two and a half months, *see* Order (Dkt. 395) (ordering jury trial to begin on Monday, August 9, 2021). A hearing on the Lohman Defendants' instant motion is scheduled for June 11, 2021. An order certifying an interlocutory appeal on or after that date will not

4

materially advance the ultimate termination of the litigation, but will further delay justice for NSL and contradict the strong policy preference against piecemeal appeals.

I. **The Lohman Defendants' Motion for Reconsideration Fails to Argue an Intervening Change of Controlling Law, New Evidence That Was Previously Unavailable, or Clear Error by the District Court.**

The Lohman Defendants ask this Court to reconsider its order denying summary judgment but do not (and cannot) satisfy the basic legal requirements for reconsideration. Indeed, they cannot argue for reconsideration based on an intervening change of controlling law because the only intervening decision they reference—*Facebook, Inc. v. Duguid*—is one they deem immaterial to this case. *See* Defs.' Mem. at 9 ("Neither the definition of an ATDS nor the outcome of the *Facebook* case has ever been material to the resolution of the present action."). In *Facebook*, the Supreme Court held that the TCPA's prohibition on autodialers applies only to telephone equipment that uses a random or sequential number generator to store or produce telephone numbers. 141 S. Ct. at 1163 (holding that the TCPA's "autodialer definition excludes equipment [such as modern cell phones and automated text messaging] that does not 'us[e] a random or sequential number generator.'" *Id.* at 1170–71 (quoting 47 U.S.C. § 227(a)(1)(A))).

Evidence in the underlying TCPA actions shows that NSL's calls were made on a system that does not store or produce telephone numbers using a random or sequential number generator. The calls, therefore, were not made in violation of the TCPA and cannot be the "but for" cause of NSL's alleged damages. Rather, it was Defendants' fraud that caused the damages NSL suffered in the form of attorney's fees, settlement payments, and lost revenue on loans held by borrowers that Defendants counseled into default.[9]

---

[9] Because the Lohman Defendants' argument raises no new issues of law or fact, NSL incorporates its briefing on the merits from the underlying summary judgment briefing on the issue of causation and does not repeat it here.

5

Post-*Facebook*, the Lohman Defendants argue that the Supreme Court's decision is immaterial and that NSL's prior conduct in the underlying TCPA cases should be evaluated based on then-existing law, not on the *Facebook* criteria of what constitutes an ATDS. But that argument sidesteps a defense the Lohman Defendants have advanced throughout these proceedings: that NSL's TCPA violations caused its own damages. Indeed, in their summary judgment papers, the Lohman Defendants argued that "NSL would not have suffered any of the damages claimed in this litigation 'but for' its failure to implement effective TCPA compliance protocols[.]" Dkt. 361 at 14. The premise for that argument is that NSL used an ATDS to contact consumers. *See id.* at 17 ("NSL Utilized an ATDS."). But the Supreme Court's holding in *Facebook* guts that defense by making clear that the TCPA's definition of an "autodialer" does not extend to the types of telephone equipment NSL used to make calls in the underlying TCPA cases. As such, the *Facebook* decision completely forecloses the Lohman Defendants' ability to argue that NSL's alleged violations of the TCPA are responsible for the damages caused by Defendants' scheme to defraud. These damages include not only amounts NSL paid to defend against and settle the conspirators' ginned-up TCPA claims, but losses associated with missed payments that would not have occurred but for Defendants' "debt counseling" services.

Instead of acknowledging that *Facebook* confirms NSL's long-standing position that it did not violate the TCPA in the underlying cases, the Lohman Defendants now argue that the decision is immaterial.[10] In doing so, they vaguely attempt to recharacterize their prior arguments. Under *Facebook*, the Lohman Defendants can no longer argue that NSL's actual violation of the TCPA caused its damages, so they now seek to argue that NSL's "apparent" violation of the TCPA caused

---

[10] If the Court were to grant the Lohman Defendants' motion for reconsideration, it would be compelled under *Facebook* to reverse its order denying NSL's summary judgment, not the Lohman Defendants' cross-motion for summary judgment.

its damages. Dkt. 401 at 10. The Lohman Defendants' new theory is insufficient for reconsideration, which requires at least one of the following: an intervening change in controlling law, new evidence that was not previously available, or clear error. The Lohman Defendants are not entitled to reconsideration simply to recast a legal argument that could have been raised in its summary judgment briefs or at oral argument.

Having contended that *Facebook* does not constitute an intervening change in controlling law, the Lohman Defendants' motion for reconsideration instead rises and falls on whether it presents new evidence that was previously unavailable or identifies clear error by the district court.[11] The motion does neither.

The Lohman Defendants do not present any new evidence supporting reconsideration of the Court's denial of their summary judgment motion, but posit that additional discovery is needed to determine whether NSL used an "autodialer," as defined in the TCPA, when making the underlying calls. Dkt. 401 at 9 n.5. To the extent the Lohman Defendants intend to persist in arguing that NSL's damages were caused by its violations or apparent violations of the TCPA, they must do so based on record evidence in the underlying actions or in testimony adduced at trial. Discovery is closed and the Lohman Defendants have shown no basis to reopen it now, especially given their firm position that "the Supreme Court's decision in *Facebook* simply has no bearing on this action." Dkt. 401 at 6.

Indeed, there is no evidence whatsoever that NSL used an autodialer in violation of the TCPA. Defendants have offered none, and the evidence in the underlying actions confirms that NSL's systems did not store or produce telephone numbers using a random or sequential number

---

[11] *Facebook* confirmed prior decisions from the Third, Seventh, and Eleventh Circuits and reinforced NSL's position that its telephony equipment does not constitute an ATDS. To the extent it is considered a change in law, it supports judgment in favor of NSL, not the Lohman Defendants.

7

generator. The discovery in this case further establishes the opposite: NSL's telephony equipment does not qualify as an "autodialer" as the term is construed in *Facebook*.

The evidentiary record from the arbitration proceedings contains no proof that NSL called borrowers using an "autodialer" (and, thus, in violation of the TCPA). Relatively few of the arbitration cases were litigated to judgment. Of those few, five arbitrators concluded that NSL had *not* violated the TCPA and three arbitrators found that NSL had.[12] In all of those cases and several others, the Lohman Defendants relied on the same expert testimony of Randall A. Snyder. Though he purported to analyze the systems then in use by NSL, Snyder relied instead on his examination of "out-of-the-box" documents to conclude that NSL used an autodialer under the TCPA. Indeed, in the exact same paragraph of every report, Snyder stated that he relied on his "understanding that the Federal Communications Commission ("FCC") ha[d] issued regulations that [ ] define an ATDS as including the capacity to dial telephone numbers from a provided list or database of telephone numbers without human intervention." *See*, *e.g.*, Declaration of George R. Calhoun ("Calhoun Decl."), Ex. 1, Declaration of Randall A. Snyder in *S███* v. *NSL*, NSL025116–83, at NSL025120 ¶ 9.[13] Snyder's capacity-based interpretation is now foreclosed by the *Facebook* holding.

Unlike the Lohman Defendants' expert, NSL's expert, Ray Horak, submitted a report in an underlying case that addressed the correct legal standard and based his conclusions not on a review of documents but on an in-person visit to an NSL call center. *See* Calhoun Decl., Ex. 8, Expert Report of Ray Horak in *H███* v. *NSL*, LOJL04050–04099. Horak's report describes the

---

[12] Two other arbitrators also concluded that NSL did not violate the TCPA in actions that are not part of the claimed damages in this case.
[13] This statement is repeated verbatim in Paragraph 9 of each of the additional Snyder reports attached hereto as exemplar exhibits. *See also* Calhoun Decl. Exs. 2–7.

dialers NSL agents used to make outbound customer calls, Noble and Interactive Intelligence ("ININ"), as well as the platform used to initiate outbound calls (Artiva). *Id.* at LOJL04063 ¶ 51. Importantly, Horak reported that none of NSL's systems randomly or sequentially generated numbers to call, and no randomly or sequentially generated numbers were dialed.[14] The evidence presented in the underlying arbitrations—and produced in discovery in this case—consistently precludes an argument that NSL used an ATDS given the Supreme Court's recent guidance affirming Horak's ATDS opinion.

The Lohman Defendants' motion for reconsideration should be denied because they have proffered no new, material evidence that was previously unavailable or clear error in this Court's decision denying summary judgment. The record supports only a finding that NSL did not use an ATDS when making the TPCA calls at issue. NSL's lawful calls could not have caused its damages as a matter of law.

## II.    The Lohman Defendants' Motion for Certification of an Interlocutory Appeal Should Be Denied.

As an alternative to reconsideration and a grant of their motion for summary judgment, the Lohman Defendants request certification of an interlocutory appeal under 28 U.S.C. § 1292(b). *See* Dkt. 401 at 10. They do so on grounds that their summary judgment briefs present purely legal questions, the resolution of which would dispose of the litigation. *See* Dkt. 401 at 11. Specifically, the Lohman Defendants request certification of an appeal that would decide the relevance of *Noerr-Pennington* immunity, accord and satisfaction, and collateral estoppel. *Id.* The motion

---

[14] If the Defendants persist at trial with the argument that the underlying TCPA actions are premised on NSL's TCPA violations, NSL will be prepared to proffer testimony from Vice President of Dialer and Process Automation, Joshua Dries, that NSL's systems neither have the capacity to, and do not, use random or sequential telephone number generation in any manner and that NSL relies instead on curated customer lists to determine potential contacts. *See* Declaration of Joshua Dries.

should be denied because, under Fourth Circuit precedent, denials of summary judgment are interlocutory orders not subject to appeal. Moreover, the Lohman Defendants have not (i) shown that a decision on *Noerr-Pennington* immunity, accord and satisfaction, or collateral estoppel would be dispositive as to the entire litigation, (ii) shown that the Fourth Circuit could decide the appeal quickly and cleanly without having to study the evidentiary record, or (iii) proffered any reasons this Court should not exercise its discretion by denying certification—something the Court may do even when the movant establishes all three criteria.

Fourth Circuit law is well settled: with limited exceptions that do not apply here,[15] denials of summary judgment are interlocutory orders not subject to appellate review. *Hicks v. Ferreyra*, 965 F.3d 302, 308 (4th Cir. 2020) (citing *Williams v. Strickland*, 917 F.3d 763, 767 (4th Cir. 2019) (holding that appellate courts cannot review a district court's order denying summary judgment)). The district court's decision not to certify an interlocutory appeal is final and unreviewable. *See In re Pisgah Contractors, Inc.*, 117 F.3d 133, 137 (4th Cir. 1997).

Section 1292(b) is an "exception to the firm final judgment rule governing federal courts." *Trout v. Garrett*, 891 F.2d 332, 335 (D.C. Cir. 1989) (citing 28 U.S.C. § 1291). That firm rule "embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon*, 418 U.S. 683, 690 (1974); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 45 (1995) (the rule "is designed to prevent parties from interrupting litigation by pursuing piecemeal appeals").

---

[15] Denials of summary judgment as to qualified immunity may be appealed immediately under the collateral order doctrine, *Hicks*, 965 F.3d at 308 (citing *Williams*, 917 F.3d at 767). Courts of Appeal can also review an order denying summary judgment when it is appealed with an order granting a cross-motion for summary judgment; if the facts are undisputed, the court may direct an award of summary judgment to the party whose motion was denied. *Bauer v. Lynch*, 812 F.3d 340, 128 Fair Empl. Prac. Cas. (BNA) 978, 99 Empl. Prac. Dec. (CCH) ¶ 45470 (4th Cir. 2016).

Interlocutory appeals under 28 U.S.C. § 1292(b) are a "rarely allowed" departure from the firm final judgment rule. *Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009). Therefore, the use of interlocutory appeals under § 1292(b), like other exceptions to this rule, must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (*quoting Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). "Permitting piecemeal, prejudgment appeals," the Supreme Court has admonished, "undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Id.* (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981)). Only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal citation and quotations omitted).

Section 1292(b) is not intended "to be a 'vehicle to provide early review of difficult rulings in hard cases.'" *Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, 2011 U.S. Dist. LEXIS 16533, *8 (D.N.J. Feb. 17, 2011). To justify an interlocutory appeal under 28 U.S.C. § 1292(b), a party must show that:

> (1) the order to be appealed involves a controlling question of law;
>
> (2) about which there is substantial ground for difference of opinion; and
>
> (3) an immediate appeal of that question may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1292(b). "The moving party bears the burden of establishing all three elements." *U.S. House of Representatives v. Burwell*, No. 14-1967, 2015 WL 13699275, at *1 (D.D.C. Oct. 19, 2015) (citing *Nat'l Cmty. Reinvestment Coal.,* 597 F. Supp. 2d at 121). However, "[e]ven if the

11

moving party satisfies all three requirements, the Court may deny certification because the decision to grant a section 1292(b) certification for interlocutory appeal is 'wholly within the discretion of the [district court].'" *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)); *see also Nat'l Cmty. Reinvestment Coal.*, 597 F. Supp. 2d at 122.

The Lohman Defendants' motion for certification fails under all three criteria. First, the order does not involve a "controlling question of law." A "controlling question of law" is "a narrow question of pure law whose resolution will be *completely* dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *LaFleur v. Dollar Tree Stores, Inc.*, Civil Action No. 2:12-cv-00363, 2014 WL 2121721, at *1 (E.D. Va. May 20, 2014) (emphasis added) (quoting with approval *Fannin v. CSXTransp., Inc.*, No. 88-8120, 1989 WL 42583, at *5 (4th Cir. Apr. 26, 1989)). The term "question of law" refers "'to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'" *Id.* (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010)). "'[A] pure question of law [is] something the court of appeals could decide quickly and cleanly without having to study the record[.]'" *Id.* (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d at 626). Questions that require the court to hunt through the record are not appropriate for interlocutory appeal. *Id.*

In bringing their motion, the Lohman Defendants bear the burden of showing that the order denying their summary judgment motion involves a "controlling question of law." But they altogether fail to explain what question of statutory, constitutional, regulatory or common law would—if resolved on appeal—completely dispose of this case. Rather, the Lohman Defendants assert in conclusory fashion that application of *Noerr-Pennington* immunity, accord and satisfaction, and collateral estoppel involves "questions of 'pure law' whose resolution would completely dispose of the litigation." Dkt. 401 at 11. They are wrong on both counts.

Generally, application of all three defenses to the underlying facts involves a question of fact or mixed questions of fact and law, not a narrow question of pure law. Specifically, whether the NSL's claims are barred under *Noerr-Pennington* is a mixed question of law and fact. *See Escrow Disbursement Ins. Agency, Inc. v. Am. Title Ins. Co.*, 550 F. Supp. 1192, 1199 (S.D. Fla. 1982) ("[A]pplicability of the Noerr-Pennington doctrine to the acts alleged by the Plaintiffs is . . . a mixed question of law and fact, unsuitable for resolution on a motion to dismiss). And a finding on that question necessarily requires a finding as to whether the sham-litigation exception precludes application of the *Noerr-Pennington* bar. *See, e.g.*, *Rock River Communc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343 (9th Cir. 2014) (citing with approval *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253–54 (9th Cir. 1982) (holding that whether the sham exception to the *Noerr-Pennington* doctrine applies is a question of fact, and summary judgment on the defense is not appropriate where the facts are disputed)).

The Lohman Defendants cannot show a "controlling question of law" based on the *Noerr-Pennington* doctrine because the Fourth Circuit cannot dispose of the issue, much less the entire case, absent resolution of the parties' primary factual dispute—namely, whether the underlying TCPA actions constitute sham litigation. *Compare* Dkt. 361 (Mem. Support Lohman Defs.' Mot. Summ. J.) at 43 ("The Lohman Defendants did not bring sham TCPA claims.") *with* Dkt. 384 (NSL's Opp'n to Lohman Defs.' Cross-Mot. Summ. J.) at 31 ("The Lohman Defendants' litigation activities easily meet th[e] test [for multi-claim sham litigation].").

Further, application of the *Noerr-Pennington* doctrine is not a "controlling question of law" for purposes of certification because the doctrine cannot bar NSL's claims to the extent they are based on non-litigation activity. As Magistrate Judge Buchanan observed, the *Noerr-Pennington* doctrine applies to petitioning activity; it does not apply to non-litigation activity, *see* Dkt. 187 at

19–20, such as the Lohman Defendants' initiation of lawsuits on behalf of purported clients who had not yet authorized the suits, *see id.*

Similarly, the Lohman Defendants' accord-and-satisfaction defense cannot constitute a "controlling question of law" because whether the parties reached or intended an accord and satisfaction are questions of fact. *See Geeslin v. Knight Bros., Inc.*, 554 F.2d 865 (8th Cir. 1977) ("Whether an accord and satisfaction was reached usually presents a question of fact."); *BLB Aviation S.C., LLC v. Jet Linx Aviation Corp.*, No. 8:10CV42, 2011 WL 2560144 (D. Neb. June 28, 2011) (unpublished) (holding that intent "is the key element of accord and satisfaction and is a question of fact.") ((internal quotation marks omitted).

Here, the parties' summary judgment briefs demonstrated that a material factual dispute exists as to both issues. *Compare* Dkt. 361 (Mem. Supp. Lohman Defs.' Mot. Summ. J.) at 44 ("NSL cannot reasonably argue that the release language of the [underlying TCPA] settlement agreements [between NSL and the Lohman Defendants' clients] was only intended to apply to the clients, and not the Lohman Defendants.") *with* Dkt. 384 (NSL's Opp'n to Lohman Defs.' Cross-Mot. Summ. J.) at 33 ("NSL's damages are not precluded by the doctrine of accord and satisfaction because the parties to the underlying arbitration settlements did not discuss, much less agree to settle, claims that NSL may have had against the Lohman Defendants or other Defendants in this case."). The Fourth Circuit cannot dispose of this case by issuing an interlocutory decision on accord and satisfaction because this Court has not yet made findings as to whether the parties reached and intended to reach an accord and satisfaction.

Finally, the Lohman Defendants cannot make the showing required for certification because the availability of defensive collateral estoppel presents a mixed question of law and fact. *See United States v. Sandoz Pharm. Corp.*, 894 F.2d 825, 826 (6th Cir. 1990) ("The availability of

14

collateral estoppel is a mixed question of law and fact . . . ."); *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir. 1986) (same). The parties dispute related factual questions, including whether the underlying TCPA cases between the Lohman Defendants' clients and NSL (which pertained to the clients' and NSL's past conduct) presented issues identical to those being litigated in this action by NSL against the Lohman Defendants (regarding the attorneys' past conduct). *Compare* Dkt. 388 (Sealed Reply Supp. of Lohman Defs.' Cross-Mot. Summ. J.) at 28 ("NSL's claim that 'the attorneys' conduct was not at issue' in the TCPA cases is belied by a cursory review of the briefs filed by NSL in the TPCA cases and Lohman's deposition, taken in a TCPA case.") *with* Dkt. 384 (NSL's Opp'n to Lohman Defs.' Cross-Mot. Summ. J.) at 36 ("The attorneys' conduct was not at issue in the[ arbitration] proceedings. It follows that the limited discovery in those proceedings went to the borrowers' conduct, not counsel's.").

Likewise, the motion for certification fails because the Lohman Defendants do not meet their burden of showing there is substantial ground for a difference of opinion as to the controlling law. As argued above, the Lohman Defendants' motion does not identify a single issue that qualifies as a controlling of question of law; it follows that they could not have shown there is substantial ground for a difference of opinion on the question as required under the second prong of § 1292(b). Paradigmatic examples of unclear controlling law sufficient to support an interlocutory appeal are (i) when a district court faces a question on which courts of appeal are split and on which there is no binding authority in the controlling circuit; (ii) when a case raises a complicated question of foreign law, and (iii) when the question presented is difficult, novel, and of first impression. *Job v. Simply Wireless, Inc.*, Case No. 1:15-cv-676, 2016 WL 8229037, at *1 (E.D. Va. Jan. 19, 2016) (unpublished) (citing *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). The Lohman Defendants have not proffered evidence or argument to establish an

unclear question of law, much less that this case is comparable to at least one of the paradigmatic examples. As such, their motion must be dismissed.

Finally, the Lohman Defendants' motion fails because they do not—and cannot—establish that an interlocutory appeal from the order may materially advance the ultimate termination of the litigation. In their supporting brief, the Lohman Defendants contend that their summary judgment motions "present several questions of 'pure law' whose resolution would completely dispose of the litigation." Defs.' Mem. at 11. But, as explained above, in reality neither statement is accurate. The Lohman Defendants state further that "an immediate appeal of [their *Noerr-Pennington*, accord and satisfaction, and collateral estoppel defenses], and the Fourth Circuit's determination that anyone [sic] of them bars the Lohman Defendants' liability would enable the Court to avoid (in whole or in part) the exceptionally cumbersome and time-consuming trial that is otherwise inevitable." *Id.* at 11. This contention is disingenuous. For example, the Lohman Defendants previously asked for court-ordered mediation, but then refused to make a single offer over the course of an all-day session (through which several other parties were able to settle). If they were truly concerned with avoiding an "exceptionally cumbersome" trial, they would have seemingly put forth more effort on this front. Instead, their new-found interest in judicial economy appears to be merely lip-service. This case is scheduled for trial in August. Trial is much more likely to lead to a timely resolution than piecemeal appeals, which will multiply costs and lead to further delays.

To the extent the Lohman Defendants' above-quoted statements imply that the Court may grant certification to avoid some, but not all, trial expenses, they have mischaracterized applicable law. The first criterion for certification requires a "controlling question of law." Under Fourth Circuit law, a "controlling question of law" is one that disposes of the *entire* case when resolved.

It would be logically impossible for the Lohman Defendants to establish a "controlling question of law" that supports certification but leaves part of the case to be resolved at trial.

**III.     The Lohman Defendants Have Vexatiously Multiplied This Litigation.**

This Court has previously warned the Lohman Defendants concerning their propensity to raise frivolous arguments and multiply litigation:

> [T]he legal bases for arguments advanced by LOJL, as well as by some of the other defendants in this action, have often been threadbare at best. For instance, many of the defendants in this action, including LOJL, have repeatedly sought to invoke the Noerr-Pennington doctrine despite its clear inapplicability at this stage of the litigation. Given the seriousness of the misconduct which plaintiff has alleged, an in particular the alleged abuse of legal process, all of the defendants are henceforth on notice that the Court will not hesitate to impose sanctions for the assertion of any frivolous arguments.

Dkt. 218 at 19. The present motion for reconsideration is yet another instance of such behavior.

The Lohman Defendants have multiplied this litigation through scorched-earth tactics at every opportunity. Their latest filing is no different. Despite contending that there is no change of law or fact, they filed a motion for reconsideration asking for a "do over" and for the certification of an interlocutory appeal. Yet, they totally ignore the holding of the Supreme Court that this Court acknowledged as potentially having a profound impact on this litigation. All that this has accomplished is to require additional briefing and needless expense. The Lohman Defendants have challenged every decision by Magistrate Buchanan (one of which was treated as a motion for reconsideration) and have now filed three motions to reconsider (Dkts. 136, 166, 286, 400), in none of which they even attempted to meet the legal standard for reconsideration.

Pursuant to Rule 11 and 28 U.S.C. § 1927, the Court should direct the Lohman Defendants and their counsel to pay NSL's costs in responding to the present motion for reconsideration.

Dated: May 26, 2020                                            Respectfully submitted,

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun V (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com

*Counsel for Navient Solutions, LLC*