**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

NAVIENT SOLUTIONS, LLC,

          Plaintiff,

v.

THE LAW OFFICES OF JEFFREY
LOHMAN, et al.,

          Defendants.

Civil Action No. 1:19-cv-00461

**REPLY MEMORANDUM IN SUPPORT OF THE LOHMAN DEFENDANTS' MOTION**
**FOR RECONSIDERATION OF SUMMARY JUDGMENT AND,**
**<u>IN THE ALTERNATIVE, FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   NOT EVEN THE SUPREME COURT CAN CHANGE HISTORICAL
FACTS, AND THE *FACEBOOK* DECISION DOES NOT CHANGE THE
HISTORICAL FACT THAT THE ISSUE OF WHAT CONSTITUTED
AN ATDS WAS UNSETTLED AT THE TIME NSL CHOSE TO
SETTLE THE UNDERLYING TCPA CASES, AND NSL CANNOT
SUSTAIN ITS BURDEN TO PROVE THAT IT WOULD HAVE
PREVAILED ON ANY OF THE SETTLED TCPA CASES . . . . . . . . . . . . . . . . . . . . . . 5

II.   EVEN IF THE *FACEBOOK* DECISION DID REWRITE HISTORICAL FACTS
AND WAS APPLIED RETROACTIVELY – WHICH IT CANNOT BE – NSL
NEVER DISCLOSED ANY EXPERT OPINION REGARDING WHETHER
ITS SYSTEM CONSTITUTED AN ATDS, AND THUS, NSL CANNOT
SUSTAIN ITS BURDEN OF PROOF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. IF THE COURT DENIES SUMMARY JUDGMENT, AN INTERLOCUTORY
APPEAL CAN BE CERTIFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. THE LOHMAN DEFENDANTS' MOTION FOR RECONSIDERATION IS NOT
SANCTIONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **TABLE OF AUTHORITIES**

*Cases*

*A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183 (4th Cir. 2002). . . . . . 9

*Affinity Living Group LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634 (4th Cir. 2020). . . . . . . 2

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003). . . . . . . . . . . . . . . 3-4, 13

*Benedict v. Hankook Tire Co. Ltd.*, 2018 WL 1655358 (E.D. Va. Apr. 5, 2018) . . . . . . . . . . . 3-4

*Bogart v. Chapell*, 396 F.3d 548 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bunn v. Arlington Co.*, 2004 WL 3247146 (E.D. Va. Aug. 27, 2004), *aff'd*,
      120 Fed. Appx. 479 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cordoba v. DIRECTTV, LLC*, 942 F.3d 1259 (11th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cyberlock Consulting, Inc. v. Information Experts, Inc.*, 939 F. Supp.2d 572 (E.D. Va. 2013). . 11

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) . . . . . . 9-10, 13

*Evans v. Trinity Indus., Inc.*, 148 F. Supp.3d 542 (E.D. Va. 2015) . . . . . . . . . . . . . . . . . . . . . . . 3

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-9

*Fannin v. CSX Transp., Inc.*, 1989 WL 42583 (4th Cir. April 26, 1989) . . . . . . . . . . . . . . . . . . . 9

*Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Hughes v. Immediate Response Tech., LLC*, 2015 WL 2157424 (E.D. Va. May 6, 2015),
      *aff'd*, 671 Fed. Appx. 109 (4th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*JTH Tax, Inc. v. Alme*, 984 F3d 284 (4th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*KitBar Enterprises, LLC v. Liberty Ins. Underwriters, Inc.*,
      297 F. Supp.3d 614 (E.D. Va. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Netscape Comm. Corp. v. ValueClick, Inc.*, 704 F. Supp.2d 544 (E.D. Va. 2010) . . . . . . . . . . . 4

*Pritchard v. Wal Mart Stores, Inc.*, 2001 WL 101473 (4th Cir. Feb. 7, 2001) . . . . . . . . . . . . . . . . 2

*Shields v. Shetler*, 120 F.R.D. 123 (D. Colo. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United Mine Wkrs. of Am. v. Pennington*, 381 U.S. 657 (1965). . . . . . . . . . . . . . . . . . . . 9-10, 13

***Rules & Statutes***

28 U.S.C. § 1927. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 26(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 13

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4

The Law Offices of Jeffrey Lohman, P.C. ("LOJL"), Jeffrey Lohman ("Lohman"), and Jeremy Branch[1] submit the following reply memorandum in support of their motion for reconsideration of summary judgment and, in the alternative, for certification of an interlocutory appeal. (*ECF 400*.) The opposing brief of Navient Solutions, LLC ("NSL") cites and relies upon an erroneous standard of review applicable to motions to amend or alter judgments under Rule 59(e). The Lohman Defendants request that this Court reconsider an interlocutory order that denies summary judgment. Such motions are governed by the more liberal standards of Rule 54(b), not the strict standards of Rule 59(e).

As a matter of common sense, the Supreme Court's decision *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) does not alter the historical fact that the definition of what constituted an automatic telephone dialing system ("ATDS") under the Telephone Consumer Protection Act ("TCPA") was highly disputed between February 2017 and June 2020, the time during which NSL decided to settle the underlying TCPA claims. In this action, NSL essentially seeks to undo those settlements. The fact that the definition of an ATDS was unresolved when NSL chose to settle the underlying TCPA claims is undisputed. NSL's decision to settle those disputed claims is the cause of its own injury. NSL can only speculate what the result of those settled cases would have been had they not been settled and, thus, cannot sustain its burden to prove causation. NSL does not dispute that the legal standard announced in *Facebook* does not apply retroactively. The *Facebook* decision is totally immaterial to this action. Even if *Facebook* did apply – which it does not – NSL never identified an expert who could testify as to whether its

---

[1] As used herein, "Lohman Defendants" refers to LOJL, Lohman, Branch, Alyson Dykes and Ibrahim Muhtaseb. Dykes and Muhtaseb were named defendants but have settled their claims. Nonetheless, they are members of the purported RICO enterprise. (ECF 331 at 22.)

telephone system was an ATDS and, thus, still cannot satisfy its burden of proof under *Facebook*.

Further, this Court should not give any weight to NSL's disingenuous arguments in opposition to the Lohman Defendants' request for certification of an interlocutory appeal and in support of NSL's request for sanctions.

## **LEGAL STANDARD**

The standard of review relied upon by NSL in its opposition to the Lohman Defendants' motion for reconsideration is erroneous. NSL asserts that a motion for reconsideration must be denied unless the movant shows: (i) an intervening change in controlling law; (ii) new, material evidence that was not previously available, or (iii) clear error in the prior decision, which requires corrections in the interest of justice. (*ECF 406* at 3 (citing *Bogart v. Chapell*, 396 F.3d 548, 555 (4ᵗʰ Cir. 2005).) In *Bogart*, however, the court was considering a motion to alter or amend a final judgment pursuant to Rule 59(e). *Id.* at 554 (noting that the plaintiff in *Bogart* filed a Rule 59(e) motion to alter or amend the court's order of final judgment after the plaintiff's claims were dismissed pursuant to the defendants' summary judgment motion).[2] A final judgment or decision "disposes of all claims and ends the litigation on the merits." *Affinity Living Group LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634, 637 (4ᵗʰ Cir. 2020). In this case, the Court's summary judgment order did not dispose of any claims, is not a "judgment," and is not

---

[2] The other authority relied upon by NSL is inapplicable for the same reason. *See Bunn v. Arlington Co.*, 2004 WL 3247146, *1 (E.D. Va. Aug. 27, 2004), *aff'd*, 120 Fed. Appx. 479 (4ᵗʰ Cir. 2005) (denying Rule 59(e) motion to alter or amend the judgment; the motion was brought after the court dismissed the complaint and entered judgment for the defendant); *Pritchard v. Wal Mart Stores, Inc.*, 2001 WL 101473, *1 (4ᵗʰ Cir. Feb. 7, 2001) (affirming the district court's denial of a Rule 59(e) motion that was brought by the plaintiff after the district court "grant[ed] summary judgment to the Defendant"); *Shields v. Shetler*, 120 F.R.D. 123, 125-126 (D. Colo. 1988) (denying a Rule 59(e) motion that was brought by the plaintiff after the court "dismissed the complaint and the action").

subject to the standards applicable to motions to alter or amend a judgment pursuant to Rule 59(e). (*ECF 395.*)

Rather than end the litigation, the Court's summary judgment order denied all motions and set forth various pretrial deadlines. (*Id.*)  As NSL concedes in its brief, "under Fourth Circuit precedent, denials of summary judgment are interlocutory orders…." (*ECF 406* at 10.) Reconsideration of interlocutory orders are governed by Rule 54(b) and "interlocutory orders are not subject to the strict standards applicable to [Rule 59(e)] motions for reconsideration of a final judgment." *JTH Tax, Inc. v. Alme*, 984 F3d 284, 289 n.2 (4th Cir. 2021). Rule 54(b) states:

> … any order or other decision, however designated, that … does not end the action as to any of the claims or parties … ***may be revised at any time*** before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

(Emphasis added.) Thus, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). Said power is committed to the discretion of the district court. *Id.* (quoted by *Hughes v. Immediate Response Tech., LLC*, 2015 WL 2157424, *7 (E.D. Va. May 6, 2015) (Brinkema, J.), *aff'd*, 671 Fed. Appx. 109 (4th Cir. 2016)). A Rule 54(b) motion for reconsideration may be granted where "the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Benedict v. Hankook Tire Co. Ltd.*, 2018 WL 1655358, *3 (E.D. Va. Apr. 5, 2018) (quoting *Evans v. Trinity Indus., Inc.*, 148 F. Supp.3d 542, 544 (E.D. Va. 2015)).

Pursuant to this standard, the Court should reconsider its denial of the Lohman Defendants' motion for summary judgment. The Court's decision was based on its belief that the

Supreme Court's review of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), which was pending at the time of the Court's order on the summary judgment motions, may "have a huge material difference … on the outcome of this case." (*ECF 396* at 13.) The impact of the Supreme Court's review of *Deguid v. Facebook* and its clarification of what constitutes a "random or sequential number generator" under the TCPA were "outside the adversarial issues presented to the Court by the parties." *Benedict*, 2018 WL 1655358 at \*3. As the Lohman Defendants argued in support of their motion for reconsideration: "… the Ninth Circuit's opinion in *Facebook* was not cited once by either the Lohman Defendants or NSL in the 170-pages of briefs submitted in support of or in opposition to the parties' summary judgment motions…. Moreover, the phrase 'random or sequential number generator' does not appear anywhere in the parties' summary judgment briefs." (*ECF 401* at 6 (citing ECF 331, 361, 384, 388).)[3] In the alternative, the Court's reconsideration is warranted because the Court's apprehension of *Facebook*'s impact on this case was in error. *Benedict*, 2018 WL 1655358 at \*3. The purpose of a Rule 54(b) motion for reconsideration is to advance the "ultimate responsibility of the federal courts," which "is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515; *see also Netscape Comm. Corp. v. ValueClick, Inc.*, 704 F. Supp.2d 544, 547 (E.D. Va. 2010).

---

[3] NSL's failure to once cite, refer to, or argue the definition of ATDS in its summary judgment briefs belies its current claim that *Facebook* could have had "a profound impact on this litigation." (*ECF 406* at 17.) If that were true, surely someone would have mentioned the appeal in one of the many briefs that were filed. Nobody mentioned it because *Facebook* was and remains immaterial to the causation issue that is in dispute.

## ARGUMENT

I. NOT EVEN THE SUPREME COURT CAN CHANGE HISTORICAL FACTS, AND THE *FACEBOOK* DECISION DOES NOT CHANGE THE HISTORICAL FACT THAT THE ISSUE OF WHAT CONSTITUTED AN ATDS WAS UNSETTLED AT THE TIME NSL CHOSE TO SETTLE THE UNDERLYING TCPA CASES, AND NSL CANNOT SUSTAIN ITS BURDEN TO PROVE THAT IT WOULD HAVE PREVAILED ON ANY OF THE SETTLED TCPA CASES.

When people say "hindsight is 20/20," the common-sense implication is that an outcome is obvious only *after* the outcome has been attained, but an outcome is impossible to predict before it is attained. NSL's opposition to the Lohman Defendants' motion for reconsideration turns common-sense on its head. NSL argues that despite the historical fact that the definition of an ATDS was unsettled when it decided to settle the underlying TCPA cases, it now gets the full benefit of hindsight -- as if it had stayed 82 of the 83 of the underlying TCPA cases, appealed one underlying TCPA case all the way to the Supreme Court, obtained the result in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), and then gone back and reopened the 82 stayed-TCPA cases, which would then have applied the clarified definition of an ATDS.

NSL, however, did not choose to litigate the definition of an ATDS all the way to the Supreme Court – Facebook did. Rather than litigate all the way to the Supreme Court, NSL chose to settle its TCPA cases. As a result, NSL is bound by the consequences of that choice. In particular, NSL's choice to settle precludes it from rewriting history.

The question of what constituted an ATDS at the time the underlying TCPA cases were resolved is a *question of historical fact*.  With regard to *that fact*, NSL indisputably admits that, when the underlying TCPA claims were being litigated and resolved, "[t]he definition of an ATDS subject to the TCPA [was] the subject of significant litigation in federal courts," that the Lohman Defendants "[took] advantage of unsettled legal issues," and that NSL's decision to settle the TCPA claims "depend[ed] on unsettled legal issues." (ECF 100 at ¶ 46, 106, 48.)

During the hearing on summary judgment, NSL's counsel admitted ***the fact*** that *Facebook* would "clarify the scope or definition of auto-dialer under the TCPA." (*ECF* 396 at 7.) ***The fact*** that the circuit courts were split on their definition of what constituted an ATDS caused the Supreme Court to grant certiorari in *Facebook*. 141 S. Ct. at 1168-69 (citing conflicting circuit court cases). ***In fact,*** that split in the circuits was not resolved until the Supreme Court issued its decision in *Facebook* on April 1, 2021.

In its brief, NSL essentially asked this Court to ignore ***historical fact*** and to apply *Facebook* as if it was decided before any of the underlying TCPA claims were resolved. In its very brief opposing the Lohman Defendants' motion for summary judgment, however, NSL admits the historical fact that during the underlying TCPA arbitrations "three arbitrators found that NSL had" used an ATDS and violated the TCPA. (*ECF 406* at 8.) These three arbitrations were decided against NSL because the arbitrators did not have the benefit of hindsight, were not clairvoyant, and could not predict the outcome of *Facebook* years before it was decided by the Supreme Court. Likewise, in its brief, NSL discusses the competing expert testimony that was proffered at arbitration regarding the issue of what constituted an ATDS. (*Id.* at 8-9.) The expert testimony of Mr. Snyder and Mr. Horak was necessary because *Facebook* had not yet been decided and the issue of what constituted an ATDS was ***unresolved***.  NSL now argues that *Facebook* renders moot the historical fact that this disputed expert testimony was proffered at the arbitrations and necessarily factored into the arbitrators' decisions on the merits and NSL's decision to settle the cases. The absurdity of NSL's argument is best established by the argument itself:

> The evidence presented in the underlying arbitrations – and produced in discovery in this case – consistently precludes an argument that NSL used an ATDS given the Supreme Court's ***<u>recent guidance</u>*** affirming [the opinion of NSL's ATDS expert].

(*Id.* at 9 (emphasis added).) Thus, in its brief, NSL admits that the question of what constitutes an ATDS was not resolved until the Supreme Court's "recent guidance," i.e., until *Facebook* was decided on April 1, 2021. The *Facebook* decision did not exist between February 2017 and June 2020, when NSL settled the underlying TCPA cases and incurred its alleged damages. (*ECF 333*, Ex. A.)  Accordingly, *Facebook* is necessarily immaterial to the facts that caused NSL to settle the underlying TCPA cases.[4]

Like any plaintiff, NSL bears the burden to prove causation. *See Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258, 267-268 (1992) (holding that a RICO plaintiff must not only prove that they were "factually injured"; the RICO violation must also be the proximate cause of injury); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating that the party invoking federal jurisdiction bears the burden to establish standing); *Cordoba v. DIRECTTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (stating that "a controversy is not justiciable when a plaintiff independently caused his own injury"). NSL does not claim that it was fraudulently induced to enter into any settlement agreement with the Lohman Defendants; NSL admits that it was aware of the Lohman Defendants' alleged "scheme to manufacture" TCPA claims when it chose to settle the underlying cases. (*ECF 401-1*, Ex. A (Standish Dep.) at 176:13-20.) Rather than litigate the TCPA claims, NSL chose to settle them. Given NSL's choice to settle, and given that the definition of an ATDS was unresolved at that time, NSL cannot

---

[4] The legal standard announced in *Facebook* is immaterial to NSL's claims against the Lohman Defendants. NSL does not dispute that none of the underlying 83 TCPA cases, which serve as the basis for its damage claim, remains "open on direct review." (*ECF 401* at 5.)  Nor does NSL dispute the absence of any TCPA claim from its current complaint against the Lohman Defendants, or any party. (*Id.*) Nor does NSL mention *Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86 (1993), let alone dispute its holding that *Facebook* applies only to TCPA cases "still open and on direct review." *Id.* at 97. Accordingly, NSL does not and cannot assert the applicability of any TCPA legal standard announced by the Supreme Court in *Facebook*.

possibly bear its burden to prove that it would have necessarily defeated the TCPA claims brought by the Lohman Defendants in the absence of NSL's decision to settle. NSL can only speculate on what the result of the settled TCPA cases would have been. NSL's choice to settle the TCPA claims was the independent or "but for" cause of its injury. (*ECF 387* at 8-9, 22-24; *ECF 361* at 21-28 (discussing NSL's decision to settle the TCPA claims and other independent business decisions made by NSL that caused its injuries).[5]) Accordingly, the Court should reconsider and grant the Lohman Defendants' motion for summary judgment.

II. EVEN IF THE *FACEBOOK* DECISION DID REWRITE HISTORICAL FACTS AND WAS APPLIED RETROACTIVELY – WHICH IT CANNOT BE – NSL NEVER DISCLOSED ANY EXPERT OPINION REGARDING WHETHER ITS SYSTEM CONSTITUTED AN ATDS, AND THUS, NSL CANNOT SUSTAIN ITS BURDEN OF PROOF.

As noted, NSL bears the burden to prove causation. *Holmes*, 503 U.S. at 267-268. Even if *Facebook* applied retroactively, which it does not (*Harper*, 509 U.S. at 97), NSL never identified any expert that it intended to call at trial to support the argument that its "telephony equipment does not qualify as an 'autodialer' as that term is construed **under Facebook**." (*ECF 406* at 8 (emphasis added).)  In its brief, NSL relies on the opinion of Ray Horak, who served as NSL's expert witness on the ATDS issue in some of the underlying TCPA cases. (*Id.* at 8-9.) If NSL was going to rely on Mr. Horak's expert opinion *in this case*, however, NSL was required to disclose him as an expert *in this case.* Fed. R. Civ. P. 26(a)(2). NSL *never* identified Mr. Horak or anyone else as an expert with regard to the issue of what constitutes an ATDS. The deadline for identifying experts in this case expired almost a year ago. (*ECF 41*.) NSL never identified any expert witnesses to testify in support of its case in chief. The only expert witness identified

---

[5] To the extent an underlying TCPA claim was litigated, NSL is bound by that result. (*Id.* at § VII; *ECF 361* at 14-19.)

by NSL was a rebuttal expert witness "concerning the reasonableness of fees and costs which [NSL] seeks to recover as damages in this case." (*ECF 379-1*, Ex. 40 (attaching the Expert Report of Phillip Harvey).) As NSL concedes in its brief, "[d]iscovery is closed." (*ECF 406* at 7.) Given that NSL did not disclose any ATDS expert during discovery and did not oppose the Lohman Defendants' motion for summary judgment with admissible expert testimony on the issue of whether its telephone dialing system is an ATDS, NSL cannot possibly sustain its burden to prove causation even if *Facebook* applies – which it does not.

### III. IF THE COURT DENIES SUMMARY JUDGMENT, AN INTERLOCUTORY APPEAL CAN BE CERTIFIED.

There is no disagreement that an interlocutory appeal under 18 U.S.C. § 1292(b) "is not to be granted lightly." *Fannin v. CSX Transp., Inc.*, 1989 WL 42583, *2 (4th Cir. April 26, 1989). It is an extraordinary remedy. *Id.* Nonetheless, NSL's arguments in opposition to certification of an interlocutory appeal are disingenuous. If the Lohman Defendants' motion for summary judgment is denied, an interlocutory appeal can be certified.

First, NSL claims that *Noerr-Pennington*[6] immunity does not present a controlling question of law because there is a factual dispute as to whether the Lohman Defendants' TCPA claims constituted sham litigation. (*ECF 406.*) As a matter of controlling law, however, successful litigation cannot be characterized as a sham. *See A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183, 191 (4th Cir. 2002). If the underlying TCPA claims had not been successful, NSL's entire damage claim in this case would not exist. (*ECF 333*, Ex. A.) Accordingly, NSL has not and cannot deny the Lohman Defendants' success with regard to the underlying TCPA litigation for to do so would completely undermine its damage claim in

---

[6] *See United Mine Wkrs. of Am. v. Pennington*, 381 U.S. 657, 670 (1965) and *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).

this litigation. NSL cannot effectively oppose a motion for summary judgment by making baseless claims that a factual dispute exists.

Second, NSL claims that Magistrate Judge Buchanan has already "observed" that *Noerr-Pennington* immunity cannot shield the Lohman Defendants from non-litigation activity, such as the Lohman Defendants' initiation of lawsuits without client authorization. (*ECF 406* at 13-14 (citing *ECF 187* at 19-20); *see also ECF 384* at 32.) Magistrate Judge Buchanan, however, noted that the Lohman Defendants had asserted *Noerr-Pennington* immunity as an affirmative defense and "expressly decline[d] to rule on this potentially dispositive defense …." (*ECF 187* at 20 n.11.) Magistrate Judge Buchanan's order on NSL's motion to compel bears zero preclusive weight on the Lohman Defendants' motion for summary judgment. NSL has also not rebutted the Lohman Defendants' arguments that as a matter of law the clients, *inter alia*, authorized the filing of TCPA claims when they entered into representation agreements with the Lohman Defendants or the clients subsequently ratified the filing of the TCPA claims by accepting the benefits of the litigation. (*ECF 361* at 31-34.) These arguments were never even presented in response to NSL's motion to compel the production of privileged documents, which was the motion that Magistrate Judge Buchanan was addressing. (*ECF 136* at 18-24; *ECF 166* at 11-12.)

Third, NSL claims that accord and satisfaction does not present a controlling question of law because the parties dispute whether the settlement agreements "only intended to apply to the clients, and not the Lohman Defendants." (*ECF 406* at 14.) Again, NSL cannot survive summary judgment by making arguments that are not supported by the evidence or – in this case – contradicted by NSL's own documents. There is no dispute that NSL's settlement agreements with the TCPA claimants explicitly state that they are "binding upon" and "inure to the benefit of" the "the Parties hereto and their respective … attorneys…." (*ECF 324* at ¶¶ 428, 444

(stipulating to the authenticity of the settlement agreements) and Exs. 103-155 (¶ 15); *ECF 360-1* at ¶ 84; *ECF 361* at 43-45; *ECF 388* at 26-27.) Where the contractual language is clear, a court may not invite or accept the submission of extrinsic evidence, "find" an ambiguity that appears in that extrinsic evidence, and resolve the "found" ambiguity by resort to that extrinsic evidence. *Cyberlock Consulting, Inc. v. Information Experts, Inc.*, 939 F. Supp.2d 572, 579 (E.D. Va. 2013).

Fourth, with regard to collateral estoppel, NSL claims that the issues litigated in the underlying TCPA cases were not identical to those at issue before this Court. (*ECF 406* at 14-15.) In particular, NSL argues that the TCPA claims did not consider the attorneys' past conduct. (*Id.* at 15.) NSL's argument completely misrepresents the record. NSL repeatedly asserted that because the Lohman Defendants and others had "manufactured" the TCPA claims, the TCPA claims were barred by the doctrine of unclean hands. (*ECF 324* at ¶¶ 163, 188, 199, 215, 235, 295, 309, 390, 404; *ECF 360-1* at ¶¶ 57 (quoting *ECF 228-16* (arbitrator found that NSL had not established the affirmative defense of unclean hands)), 77, 98-99, 105-107.) NSL asserted its "unclean hands" defense in every arbitration that resulted in an award to the Lohman Defendants' clients. (*ECF 360-1* at ¶ 73.) No arbitrator ever found in favor of NSL's "unclean hands" defense and sometimes expressly rejected such claims. (*Id.* at ¶ 74.) Unlike the Lohman Defendants' evidence that the attorney's past conduct was litigated in the underlying TCPA lawsuits, NSL does not cite any evidence in support of its argument to the contrary. (*ECF 406* at 14-15.)

Fifth, the Lohman Defendants and NSL agree that there is no "substantial ground for difference of opinion as to controlling law." (*ECF 406* at 15.) The Lohman Defendants assert, however, that the controlling law is clear, and pursuant to the legal arguments set forth in the

parties' briefs, the Lohman Defendants are entitled to summary judgment dismissing all of NSL's claims. If the Court's order identifies controlling legal authority that contradicts the arguments that have been briefed and denies the Lohman Defendants' motion for summary judgment, then an interlocutory appeal would be appropriate to identify the conflict identified in the Court's order.

Finally, NSL claims that the Lohman Defendants are not interested in the expeditious and efficient resolution of this matter because "the Lohman Defendants previously asked for court-ordered mediation, but then refused to make a single offer over the course of an all-day session (through which several other parties were able to settle)." (*ECF 406* at 16.) NSL is either intentionally trying to mislead the Court or is suffering from an extreme case of amnesia. ***Two of the Lohman Defendants settled at the court-ordered mediation***. (*ECF* 401 at 1 (noting that Dykes and Muhtaseb are two "Lohman Defendants" who have settled their claims); ECF *323* (Stipulation of Dismissal of Alyson Dykes and Ibrahim Mutaseb with Prejudice); *ECF 339* (Order of Dismissal).) Like all arguments presented in NSL's opposition to the Lohman Defendants motion for reconsideration, this argument is equally divorced from reality and not relevant to the consideration of the Lohman Defendants' request for an interlocutory appeal.

## IV. THE LOHMAN DEFENDANTS' MOTION FOR RECONSIDERATION IS NOT SANCTIONABLE.

Sanctions under 28 U.S.C. § 1927[7] require a showing of bad faith, among other things. *KitBar Enterprises, LLC v. Liberty Ins. Underwriters, Inc.*, 297 F. Supp.3d 614, 617 (E.D. Va.

---

[7] NSL also cites Rule 11 in support of its request for sanctions, but NSL did provide notice of any Rule 11 motion and has not submitted any proof that it complied with Rule 11's 21-day safe-harbor provision. Fed. R. Civ. P. 11(c)(2). Rule 11 does not allow a court to impose monetary sanctions unless the court has issued a show-cause order, which it has not done. Fed. R. Civ. P. 11(c)(5)(B).

2018). The Lohman Defendants' motion for reconsideration was not brought in bad faith. Rather, it was brought in response to the Court's express suggestion. During the summary judgment hearing, the Court stated:

> If the Supreme Court's ruling comes out even before June 30, that gives you all time to absorb it and possibly to re-brief the issue of causality, because I think that that in my view is a critical issue for the issue of damages.

(ECF 396 at 15.) NSL fails to explain how the Lohman Defendants or their counsel acted in bad faith by merely "re-brief[ing] the issue of causality" as the Court suggested.

Moreover, in its order compelling production of the Lohman Defendants' privileged documents, the Court advised the parties not to further assert *Noerr-Pennington* immunity "at this stage of the litigation," i.e., in opposition to discovery motions. (*ECF 406* at 17 (quoting *ECF 218* at 19).) Neither the Court nor the magistrate judge ever suggested that *Noerr-Pennington* immunity was not an appropriate defense to be briefed on summary judgment. (*ECF 218* at 19; *ECF 187* at 20 n.11.)[8] The Lohman Defendants' motion for reconsideration was brought to ensure that Court was fully briefed on the Supreme Court's decision in *Facebook* and whether that decision impacted the issue of causality. The motion was brought in good faith and to achieve the purpose of a Rule 54(b) motion for reconsideration, i.e., to make certain that the Court reached "the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515.

Finally, the Lohman Defendants' motion for reconsideration is also limited to discussing the impact of *Facebook* on the causation issues presented by the parties' motions for summary

---

[8] The Lohman Defendants' memorandum in support of its motion to reconsideration also refers to *Noerr-Pennington* immunity in only one sentence: "For example, Noerr-Pennington immunity, the doctrine of accord and satisfaction, and collateral estoppel all involve pure questions of law. (ECF 361 at 41-45; ECF 388 at 24-28.)" (*ECF 401* at 11.) Because the Lohman Defendants did not make any new arguments about *Noerr-Pennington* immunity but merely referred to the previously briefed arguments, they did not "multiply litigation."

judgment, which were briefed in the Fall of 2020. (*ECF 401* at 1-10; *see also ECF 330, 360, 384, 388*.)  The Lohman Defendants did not multiply proceedings by briefing the impact of a case that was decided on April 1, 2021, long after the summary judgment briefs were filed. The alternative request for certification of an interlocutory appeal had never been made before and was not duplicative or multiplying. (*ECF 410* at 10-11.)

If anyone is guilty of multiplying proceedings, it is NSL. NSL has repeatedly stated its intention to retry 80+ TCPA cases under the guise of a fictitious RICO claim that was never supported by the evidence or the law. NSL already had the opportunity to fully litigate these 80+ TCPA cases, and either litigated those cases or chose to settle them. NSL's effort to relitigate those 80+ cases is a travesty. The only party who has engaged in sanctionable conduct is NSL, but the Lohman Defendants do not request sanctions. The Lohman Defendants merely request that the Court put NSL's charade to rest before it needlessly consumes more of the Court's, the jury's, and the Lohman Defendants' time and resources.

## <u>CONCLUSION</u>

For all of the forgoing reasons and for all of the reasons stated in the Lohman Defendants' earlier briefs (*ECF 361, 388, 401*), which are expressly incorporated herein, the Lohman Defendants' motion for summary judgment on all claims (*ECF 360*) should be granted.

DATED:  June 1, 2021                          Respectfully submitted,


/s/ Thomas F. Urban II
Thomas F. Urban II, VSB No. 40540
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA 22209
(703) 861-5235 FAX (703) 812-0486
Urban@fhhlaw.com

Jeffrey E. Grell (pro hac vice)
GRELL FEIST PLC
825 Nicollet Mall, Suite 625
Minneapolis, MN 55402
(612) 353-5530 -Tel.
jgrell@grellfeist.com

*Counsel for The Law Offices of Jeffrey Lohman,
P.C., Jeffrey Lohman, and Jeremy Branch*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2021, I electronically filed the Reply Memorandum in

Support of the Lohman Defendants' Motion for Reconsideration of Summary Judgment and, in the

alternative, for Certification of Interlocutory Appeal, which will send a notification of such filing

(NEF) to the following counsel of record:

Jeffrey R. Hamlin
George R. Calhoun V
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006-2004
jhamlin@ifrahlaw.com
george@ifrahlaw.com

*Counsel for Plaintiff Navient Solutions, LLC*

/s/ Thomas F. Urban II