**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

---

NAVIENT SOLUTIONS, LLC,

            Plaintiff,

v.

THE LAW OFFICES OF JEFFREY
LOHMAN, et al.,

            Defendants.

Civil Action No. 1:19-cv-00461

---

**PLAINTIFF NAVIENT SOLUTIONS, LLC'S OBJECTIONS TO DEFENDANTS'**
**PROPOSED JURY INSTRUCTIONS**

On July 30, 2021, the parties filed Joint Proposed Jury Instructions, which included both instructions to which the parties agreed and, in instances of disagreement, separate instruction proposals by each party. Navient Solutions, LLC ("NSL"), by and through its undersigned counsel, hereby objects for the following reasons to Defendants' proposed jury instructions.

**I.**      **OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

      **A.**      **Objection No. 1: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 22, "Introduction to Lohman Defendants' Defenses."**

***Plaintiff's Proposed Jury Instruction No. 22:[1]***

*This matter involves claims by Navient Solutions, LLC, which I will refer to as "Navient," that the Defendants committed fraud in violation of a federal law as well as state law. These claims are set out in five separate counts in Navient's complaint.*

*Count 1 asserts that Defendants Jeffrey Lohman, and Jeremy Branch participated in a pattern of racketeering activity in violation of RICO by using the mail and wires to send demand letters to Navient on behalf of clients whom they did not represent; letters to Navient stating an intent to negotiate their purported clients' debt with Navient, when they had no such intention; and letters to Navient*

---

[1] For ease of review, this document omits the footnote citations included in the parties' Joint Proposed Jury Instructions. The proposed instructions are otherwise taken verbatim from the Joint Proposed Jury Instructions.

*in which they stated they were attempting to verify a disputed debt when no valid basis for disputing the debt existed; and by counseling their clients to provide false testimony in depositions. Navient also claims that Lohman and Branch used the resources of the Law Offices of Jeffrey Lohman to carry out this pattern of racketeering activity.*

*Count 2 asserts that all of the Defendants participated in a pattern of racketeering activity in violation of RICO by using the mail and wires. Navient claims that Defendants contacted student loan holders, misrepresented the nature of their services and misleadingly stated that they would negotiate with Navient regarding their student loans, and told consumers they their debt relief program was 100-percent effective and that their credit would not be harmed. Navient further claims that Graff and Trimarche utilized the resources of GST Factoring to carry out the pattern of racketeering activity. In addition, Navient claims that Defendants Jeffrey Lohman and Jeremy Branch participated in the same pattern of racketeering by signing, causing to be signed, sending, and/or causing to be sent fraudulent communications and discovery filings that induced Navient to settle various legal claims and/or deceived adjudicators regarding the facts of pending legal cases; and that Branch and Lohman induced their clients to make false statements via telephone to Navient customer service agents, counseled their clients to provide false testimony during their depositions, and filed legal actions without their clients' authorization, while falsely representing that they had such authorization. Navient further claims that Lohman and Branch utilized the resources of the Law Offices of Jeffrey Lohman to carry out the pattern of racketeering activity. Navient also claims that all of the Defendants used the wires to collect sums from consumers that otherwise would have been paid to Navient.*

*Count 3 asserts that all of the Defendants conspired to violate RICO by conducting or participating by agreeing together to violate RICO in the manner described above.*

*Count 4 asserts that Defendants Jeffrey Lohman, Jeremy Branch, and the Law Offices of Jeffrey Lohman engaged in fraud under the laws of Virginia by falsely representing in various demand letters sent to Navient that they represented certain clients when no such representation existed, that they intended to negotiate their clients' debts when they had no such intention, and that they were seeking to verify disputed debts when no grounds for dispute existed, and by making various false representations in communications and other legal papers that induced Navient to settle certain legal claims and/or deceived adjudicators on the facts of pending cases.*

*Count 5 asserts that all of the Defendants engaged in tortious interference with contract or business expectancy by inducing student loan holders—including ones who were not behind on their payments—to stop making payments, go into default, and trigger telephone calls from Navient that arguably violated a law against automatic calls.*

Defendants propose omitting this instruction. However, if the Court adopts Plaintiff's proposal, Defendants' Proposed Jury Instruction No. 22 states:

*In response to Plaintiff's Claims, the Lohman Defendants contend that they had no knowledge of activities of GST Factoring, Graff, or Trimarche. The Lohman Defendants received no money from and paid no money to GST Factoring, Graff, or Trimarche. The Lohman Defendants were referred potential clients from David Mize who were experiencing harassing phone calls from Navient. The Lohman Defendants subsequently agreed to represent some of those clients and brought claims under the Telephone Consumer Protection Act ("TCPA") on behalf of those clients against Navient. All of the TCPA claims brought by the Lohman Defendants were diligently researched. The Lohman Defendants brought the claims only if they were authorized to do so by the clients and only if there was a good-faith basis for the claims under then-existing law. The Lohman Defendants litigated these claims as any lawyer would. Throughout the underlying TCPA litigation, Navient asserted that the TCPA claims were "manufactured" by the Lohman Defendants but never claimed that the TCPA claims were frivolous or without merit.*

*The TCPA claims that serve as the basis for Navient's damage claim in this matter were all eventually resolved. Many were dismissed pursuant to agreements that were voluntarily reached by Navient and the Lohman Defendants' clients. Many were settled pursuit to agreements entered into between Navient and the Lohman Defendants' clients. To the extent that claims were resolved through adjudication, some of the TCPA claims were decided in favor of the Lohman Defendants' clients, some were decided in favor of Navient. Regardless of its voluntarily agreements to dismiss or settle these cases, and regardless of the conclusions reached by the various adjudications, Navient now seeks to hold the Lohman Defendants' liable for the amount of money paid by Navient to resolve those TCPA claims.*

*The Lohman Defendants contend that all of their TCPA claims were brought with the intent to hold Navient liable for its violations of the TCPA, as the Lohman Defendants interpreted the then-existing legal standards, and were not brought with the intention to defraud Navient or tortiously interfere with any contract. The Lohman Defendants further contend, among other things, that Navient's claims are barred by the right to petition the courts, as secured by First Amendment, are barred by the parties' prior settlement agreements, are barred by the prior decisions of adjudicators, and/or were waived by Navient.*

First, the Court should include Plaintiff's Proposed Instruction No. 22. "[I]nstructions help jurors focus on their duties and responsibilities, the parties' factual contentions, and the parties' theories of the case." 3 O'Malley, Grenig and Lee, Fed. Jury Prac. & Instr. § 100:01 (6th ed.) (*hereinafter* "O'Malley 6th ed."). Plaintiff NSL's Proposed Jury Instruction No. 22 states, in a factual manner, Plaintiff's allegations in this case. After hearing 21 instructions concerning its role in civil litigation, the jury will benefit from a factual recounting of Plaintiff's claims as they are asserted

in the Second Amended Complaint. To help the jury prepare for instructions on Plaintiff's five causes of action, the Court should adopt in full Plaintiff's Proposed Jury Instruction No. 22. Plaintiff further submits that its proposed instruction is supported by O'Malley 6th ed., §§ 101:03, 123:01, 127:01, 161:01.

Similarly, Plaintiff does not oppose a factual account of Defendants' theory of the case. However, Defendants' Proposed Jury Instruction No. 22 clearly advances Defendants' cases rather than describing it. For example, Defendants' proposal states, "The Lohman Defendants brought [the underlying TCPA claims] only if they were authorized to do so by the clients and only if there was a good-faith basis for the claims under then-existing law." Joint Proposed Jury Instructions at 28. But those are factual questions for the jury to decide. Rather than explaining their defenses in an objective manner, Defendants' advance a subjective narrative in the guise of a factual accounting. "Each instruction should be objective and free of argument." O'Malley 6th ed., § 100:04. Plaintiff's proposed language meets that standard; Defendants' does not.

   **B.     Objection No. 2: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 26, "Definition of 'Enterprise.'"**

*Plaintiff's Proposed Jury Instruction No. 26:*

> *For purposes of the RICO statute, an "enterprise" includes any individual, partnership, corporation, association, or other legal entity. An enterprise may also be any group of individuals associated in fact although not a legal entity. Proof that an entity has a legal existence, such as a corporation or a partnership, satisfies the definition of an enterprise. Navient has alleged an association-in-fact enterprise. A group otherwise qualifies as an association-in-fact if it possesses the following three characteristics:*
> *First, that the members of the group share a common purpose;*
> *Second, that the members of the group have some relation with one another; and*
> *Third, that the group possesses sufficient longevity to permit the members to pursue the enterprise's purpose.*
> *The existence of an enterprise is an element distinct from the pattern of racketeering activity, and proof of one does not necessarily establish proof of the*

*other. However, the evidence used to prove the pattern of racketeering activity and the evidence used to prove an enterprise may coalesce.*

*An enterprise "affects interstate or foreign commerce" if the enterprise either engages in or pursues activities affecting commerce between the states or between the states and foreign countries. Proof of a minimal effect on interstate commerce will sustain the Plaintiff's burden.*

### Defendants' Proposed Jury Instruction No. 26:

*A section 1962(c) claim is not against a RICO enterprise, but against a RICO defendant(s). For purposes of section 1962(c), the enterprise is the vehicle used by the defendant(s) to carry out the acts of racketeering.*

*Navient claims that Defendants formed an association-in-fact enterprise. Accordingly, Navient must prove by a preponderance of the evidence that:*

1. *Defendants shared a common purpose, which means a common venture, undertaking or project. The common purpose must enrich all members of the group. If the fruits of the venture enrich only some members of the enterprise, then there is no common purpose.*
2. *That Defendants were related to each other, and*
3. *That Defendants, as a group, possessed sufficient longevity to pursue their common purpose.*

*The existence of an enterprise is an element distinct from the pattern of racketeering activity, and proof of one does not necessarily establish proof of the other. However, the evidence used to prove the pattern of racketeering activity and the evidence used to prove an enterprise may coalesce.*

*An enterprise "affects interstate or foreign commerce" if the enterprise either engages in or pursues activities affecting commerce between the states or between the states and foreign countries. Proof of a minimal effect on interstate commerce will sustain the plaintiff's burden.*

The parties have agreed to a majority of the substance of an instruction governing the definition of the term "enterprise," as used in RICO. However, Plaintiff objects to language that Defendants seek to add concerning the need for "enrich[ing] all members" of an alleged RICO enterprise.

The parties both propose instructing the jury that, to be liable for conducting a RICO enterprise, Defendants must be shown to have "shared a common purpose." Joint Proposed Jury Instructions at 33-34. Defendants would further instruct, "The common purpose must enrich all members of the group. If the fruits of the venture enrich only some members of the enterprise, then

there is no common purpose." *Id.* at 34 (citing *United States v. Pinson*, 860 F.3d 152, 162 (4th Cir. 2017)).

But Defendants' reading of *Pinson* is misplaced. In that case, the Fourth Circuit identified two separate conspiracies, rather than one integrated RICO enterprise. The Court wrote, "The purpose of each venture . . . was to enrich its members, yet any fruits of these ventures accrued only to members of each venture. Any illicit profits did not carry over to the members of the other ventures." *Pinson*, 860 F.3d at 162. Taking that into account, the Court concluded that no RICO enterprise existed. Critically, though, the Court also noted that the various groups in question "involved different memberships, methods, and motives." *Id.* And, as NSL argued in its opposition to Defendants' motions for summary judgment, the "unifying purpose" in the present case is different from the unifying purpose in *Pinson*: Whereas the conspirators in that case merely sought to enrich themselves, Defendants here sought to create and maintain a pipeline of student-debtors that members of the enterprise could exploit at NSL's expense. *See* NSL Opp'n at 23.

Because Defendants' Proposed Jury Instruction No. 26 overemphasizes a legal principle that is not applicable in this case—and because the parties' proposed instructions otherwise adequately explain the definition of the term "enterprise" in this context—the Court should decline to adopt Defendants' proposal.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: O'Malley 5th ed., §§ 161:41, 161:42; *Boyle v. United States*, 556 U.S. 938, 946-47 (2009); and *United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004).

C.    **Objection No. 3: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 28, "Definition of 'To Participate in the Conduct of the Enterprise's Affairs.'"**

*Plaintiff's Proposed Jury Instruction No. 28:*

> *To "participate in the conduct of the enterprise's affairs" requires that a person has conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. To participate, directly or indirectly, in the conduct of the enterprise's affairs, the Defendant must participate in the operation or management of the enterprise itself. A person also participates in the operation of the affairs of the enterprise if he or she has some part in directing those affairs. RICO liability is not limited to those with primary responsibility for the enterprise's affairs or to those with a formal position in the enterprise. An enterprise may be "operated" not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management.*

*Defendants' Proposed Jury Instruction No. 28:*

> *To "participate in the conduct of the enterprise's affairs" requires that a person has conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. To participate, directly or indirectly, in the conduct of the enterprise's affairs, the defendant must participate in the operation or management of the enterprise itself. A person also participates in the operation of the affairs of the enterprise if he or she has some part in directing those affairs. RICO liability is not limited to those with primary responsibility for the enterprise's affairs or to those with a formal position in the enterprise.  An enterprise may be "operated" not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management.*
>
> *The operation or management test is, however, extremely rigorous. A defendant, however, can only be liable under section 1962(c) if he was managing or operating the overall group. A defendant does not operate or manage an enterprise by simply providing goods and services that ultimately benefit the enterprise.*
>
> *RICO does not penalize parallel, uncoordinated fraud. The plaintiff must prove that the fraud was coordinated conduct performed on behalf of the enterprise.*
>
> *Moreover, when an attorney furnishes a client with ordinary professional assistance, the attorney will not normally rise to the level of operating or managing the enterprise. Lawyers do not become racketeers by acting like lawyers.*

Under 18 U.S.C. § 1962(c), RICO makes it improper "to conduct or participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." Plaintiff's Proposed

Instruction No. 28 provides a concise, accurate definition of the term "to participate in the conduct of [an] enterprise's affairs" under RICO, drawing directly on the RICO instructions provided by the Northern District of West Virginia in *CSX Transp., Inc. v. Peirce*, No. 5:05-cv-202, a closely analogous case involving civil RICO claims against attorneys who had engaged in a series of fraudulent litigation activities.

Defendants' proposal seeks to expand on Plaintiff's proposed definition by instructing the jury that "operation or management" of the enterprise—which the parties agree is a component of the term's definition—involves an "extremely rigorous" test. Joint Proposed Jury Instructions at 38. But the Fourth Circuit has never adopted such language, which appears instead in decisions issued in the Southern District of New York. Instead of applying a test never used in this Circuit, the Court should issue the portion of the instruction that both parties have proposed, which relies on the sound precedent of the Supreme Court's decision in *Reves v. Ernst & Young*, 507 U.S. 170 (1993).

Defendants also seek to append onto this instruction a paragraph concerning the propriety of attorneys providing "ordinary professional assistance," even to RICO enterprises. Joint Proposed Jury Instructions at 38. But Defendants' proposed language would misdirect the jury with respect to the Lohman Defendants' role in the alleged RICO enterprise. Because attorneys *are* advisors, Defendants' proposed language is likely to confuse jurors regarding the line between "ordinary professional assistance" and conduct that violates RICO. Numerous courts, including within this Circuit, have held attorneys accountable when they have participated in a RICO enterprise. For example, in a recent decision from the Southern District of New York, the court found that an attorney who fabricated evidence "to induce [Defendants] to settle [a prior] case and to do so at a higher figure than otherwise might have been available" was liable for RICO civil

penalties. *Chevron v. Donziger*, 974 F. Supp. 2d 362, 590 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017). The Western District of Louisiana has similarly concluded that an attorney can be liable under RICO when he or she is a "principal planner and actor in the purported scheme" and where his "letter-writing and filing of lawsuits" are "part and parcel" of the scheme. *Crowe v. Smith*, 848 F. Supp. 1258, 1264 (W.D. La. 1994). And in the closely analogous case of *CSX Transp.*, the Northern District of West Virginia denied the defendant lawyers' motion to dismiss where they were alleged to have "deprive[d] [the plaintiff] of access to meaningful discovery" in litigation. *CSX Transp., Inc. v. Peirce*, No. 5:05-cv-202, 2012 WL 1598081 at *10 (W.D. W.Va. May 3, 2012).

These decisions have repeatedly demonstrated that an attorney's profession does not shield him or her from RICO liability. And given that neither party has suggested in this case that the Lohman Defendants merely provided legal advice to a RICO enterprise, an instruction regarding the provision of "ordinary professional assistance" would be unnecessary and confusing. Accordingly, the Court should adopt Plaintiff's Proposed Instruction No. 28 and reject Defendants' misleading proposal.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: O'Malley 5th ed., § 161:43; *United States v. Johnson*, 430 F.3d 383, 391 (6th Cir. 2005); and *Barky v. Metro Kitchen & Bath, Inc*., 587 F. Supp. 2d 976, 988-89 (N.D. Ill. 2008).

### D.   Objection No. 4: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 31, "Elements of Mail Fraud."

***Plaintiff's Proposed Jury Instruction No. 31:***

In order to establish that mail fraud has been committed for purposes of this case, Navient must show by a preponderance of the evidence that:

First: Defendants willfully and knowingly participated in a scheme to defraud Navient;

Second: Defendants did so with an intent to defraud; and

Third: Defendants either mailed something or caused it to be mailed in furtherance of their scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even if the actual use of the mails was accomplished by someone other than Defendants.

There is no requirement that each Defendant personally used the mails in furtherance of the scheme, nor is there any requirement that the mailing itself contain false information. It is enough if the Defendant knows that in the execution of the scheme letters are likely to be mailed, and if in fact they are mailed.

Each separate use of the mails in furtherance of a scheme or plan to defraud is a separate predicate act of mail fraud.

The crime of mail fraud can include the fraudulent filing of a lawsuit, as well as the filing of subsequent documents pursuant to that lawsuit. The use of the mails need not in and of itself be fraudulent to constitute an offense under the mail fraud statute. In the case of the fraudulent filing of a lawsuit, the placing in the mail of a complaint and its accompanying papers is a sufficient connection with the mail system to constitute a violation of the mail fraud statute.

***Defendants' Proposed Jury Instruction No. 31:***

In order to establish that mail fraud has been committed for purposes of this case, Navient must show by a preponderance of the evidence that:

First: Defendants willfully and knowingly participated in a scheme to defraud Navient;

Second: Defendants did so with an intent to defraud; and

Third: Defendants either mailed something or caused it to be mailed in furtherance of their scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even if the actual use of the mails was accomplished by someone other than Defendants.

There is no requirement that each Defendant personally used the mails in furtherance of the scheme. It is enough if the Defendant knows that in the execution of the scheme letters are likely to be mailed, and if in fact they are mailed.

There is not any requirement that the mailing itself contain false information. Even a victim's or third-party's use of the mails violates the statute if it furthers or facilitates the scheme to defraud and was "caused" by the defendant.

*Each separate use of the mails in furtherance of a scheme or plan to defraud is a separate predicate act of mail fraud.*

The parties' proposed instructions concerning the elements of mail fraud are materially similar. However, Defendants propose limiting this instruction by omitting any reference to the fraudulent filing of a lawsuit as constituting mail fraud. The relatively unusual nature of the RICO enterprise alleged in the present case, though, merits a clear explanation that the initiation of fraudulent legal proceedings can constitute mail fraud, as the Fourth Circuit has confirmed. *See, e.g.*, *United States v. Murr*, 681 F.2d 246 (4th Cir. 1982) (affirming a mail fraud conviction for the filing of false legal petitions under § 1983). To eliminate doubt concerning whether initiating false legal proceedings can constitute mail fraud, the Court should adopt Plaintiff's Proposed Jury Instruction No. 31 in full.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: 18 U.S.C. § 1341; *Pereira v. United States*, 347 U.S. 1, 7-9 (1954); *United States v. Draiman*, 784 F.2d 248, 251 (7th Cir. 1986); *United States v. Mackay*, 491 F.2d 616, 619 (10th Cir. 1973); *U.S. v. Perkal*, 530 F.2d 604, 606-607 (4th Cir. 1976), *cert. denied*, 429 U.S. 821 (1976); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008); O'Malley 5th ed., §§ 161:24, 161:55, 161:57; and *CSX Transp.*, 2012 WL 1598081.

### E.   Objection No. 5: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 33, "Elements of Wire Fraud."

***Plaintiff's Proposed Jury Instruction No. 33:***

> *In order to establish that wire fraud has been committed for purposes of this case, Navient must show by a preponderance of the evidence that:*
> *First: Defendants willfully and knowingly participated in a scheme to defraud Navient;*
> *Second: Defendants did so with an intent to defraud; and*
> *Third: The use of the interstate wires was closely related to the scheme in that Defendants either used the wires directly or caused them to be used in furtherance of their scheme. To "cause" the wires to be used is to do an act with*

*knowledge that the use of wires will follow in the ordinary course of business or where such use can reasonably be foreseen, even if the actual use of the wires was accomplished by someone other than Defendants. It is not necessary that the use of the wires be the exclusive means of accomplishing the fraud.*

*Interstate telephone calls or radio communications are an essential element of the predicate act of wire fraud. Each separate use of such facilities in furtherance of a scheme or plan to defraud is a separate predicate act of wire fraud. Thus, initiating telephone calls to Navient, or triggering calls from Navient to loan holders, can satisfy this element if it furthers a scheme or plan to defraud.*

*The crime of wire fraud can include the fraudulent filing of a lawsuit, as well as the filing of subsequent documents pursuant to that lawsuit. The crime of wire fraud can also include an attorney's scheme to mislead a Defendant by falsely portraying the extent of its potential exposure and the likelihood of an adverse result in a manner designed to induce the Defendant to settle a case and to do so at a higher figure than otherwise might have been available. The use of the wires need not in and of itself be fraudulent to constitute an offense under the wire fraud statute. In the case of the fraudulent filing of a lawsuit, the use of the wires to file a complaint and its accompanying papers is a sufficient connection with the interstate wires to constitute a violation of the wire fraud statute.*

### Defendants' Proposed Jury Instruction No. 33:

*In order to establish that wire fraud has been committed for purposes of this case, Navient must show by a preponderance of the evidence that:*

*First: Defendants willfully and knowingly participated in a scheme to defraud Navient;*

*Second: Defendants did so with an intent to defraud; and*

*Third: Defendants either used or caused the use of the interstate wires in furtherance of their scheme. To "cause" the use of the interstate wires is to do an act with knowledge that the use of the interstate wires will follow in the ordinary course of business or where such use can reasonably be foreseen, even if the actual use of the interstate wires was accomplished by someone other than Defendants.*

*There is no requirement that each Defendant personally used the interstate wires in furtherance of the scheme. It is enough if the Defendant knows that, in the execution of the scheme, the interstate wires are likely to be used and, in fact, are used.*

*There is not any requirement that the wire transmission itself contain false information. Even a victim's or third-party's use of the interstate wires violates the statute if it furthers or facilitates the scheme to defraud and was "caused" by the defendant.*

*Each separate use of the interstate wires in furtherance of a scheme or plan to defraud is a separate predicate act of wire fraud.*

Plaintiff objects to Defendants' Proposed Jury Instruction No. 33 (regarding wire fraud)

for the same reasons as it objects to Defendants' Proposed Jury Instruction No. 31 (regarding mail

fraud). Because the filing of fraudulent legal proceedings can constitute wire fraud under Fourth Circuit precedent, the Court should adopt Plaintiff's Proposed Jury Instruction No. 33 in full.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: 18 U.S.C. § 1343; *Pereira*, 347 U.S. at 7-9; *United States v. Calandrella*, 605 F.2d 236, 253 (6th Cir. 1979); O'Malley 5th ed., §§ 161:26, 161:55, 161:57; and *Donziger*, 974 F. Supp. 2d at 590.

     **F.**     **Objection No. 6: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 35, "Elements of Witness Tampering."**

*Plaintiff's Proposed Jury Instruction No. 35:*

> *In order to establish that witness tampering has been committed for purposes of this case, Navient must show by a preponderance of the evidence that:*
> *First: Defendants corruptly persuaded or attempted to corruptly persuade another person;*
> *Second: Defendants acted knowingly; and*
> *Third: Defendants acted with intent to influence, delay, or prevent the testimony of any person in an official proceeding.*
> *The phrase "corruptly" means motivated by an improper purpose.*
> *The phrase "with intent to influence, delay, or prevent testimony" means to act for the purpose of causing a person to change his or her testimony or information in any way or to withhold testimony or information, permanently or only for a period of time.*
> *An "official proceeding" means a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a federal grand jury.*
> *The crime of witness tampering can include writing out potential questions and proposed answers for clients to provide in testimony.*

*Defendants' Proposed Jury Instruction No. 35:*

> *In order to establish that witness tampering has been committed for purposes of this case, Navient must show by a preponderance of the evidence that:*
> *First: Defendants corruptly persuaded or attempted to corruptly persuade another person;*
> *Second: Defendants acted knowingly; and*
> *Third: Defendants acted with intent to influence, delay, or prevent the testimony of any person in an official proceeding.*
> *The phrase "corruptly" means wrongful, immoral, depraved or evil.*
> *An "official proceeding" means a proceeding before a judge or court of the*

> *United States, a United States magistrate, a bankruptcy judge, or a federal grand jury. An arbitration proceeding is not an "official proceeding."*
>
> *Finally, there must be a nexus between the obstructive act and the particular official proceeding. A defendant must believe that his actions are likely to affect a particular existing or foreseeable official proceeding.*
>
> *Bad faith litigation tactics alone do not constitute witness tampering.*

Plaintiff objects to Defendants' Proposed Jury Instruction No. 35 because it seeks to instruct the jury as to matters that are irrelevant to the present case. Specifically, Defendants request that the Court instruct the jury, "Bad faith litigation tactics alone do not constitute witness tampering." Joint Proposed Jury Instructions at 51 (citing *Snow Ingredients, Inc. v. Snowizard, Inc.*, 833 F.3d 512, 523-25 (5th Cir. 2016)). Critically, *Snow Ingredients* involved wholly different circumstances from those present in this case. In that case, the Fifth Circuit made its observation regarding "bad faith litigation tactics" after the plaintiff's civil RICO claim was dismissed for failure to adequately plead witness tampering or any other predicate offense. *Snow Ingredients*, 833 F.3d at 524. But given that the Court has already denied Defendants' motions for summary judgment on NSL's RICO claims, the Court should limit its instruction on witness tampering to the elements of that offense, rather than introducing a standard that might be relevant had NSL's pleadings been deficient.

Furthermore, if the Court adopts either party's proposed instruction concerning the elements of witness tampering, it will already have described the requisite standards Plaintiff must meet to demonstrate that Defendants committed witness tampering, and an additional instruction regarding "bad faith litigation tactics" would be redundant. For these reasons, the Court should reject Defendants' Proposed Jury Instruction No. 35.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: 18 U.S.C. § 1512; *United States v. Johnson*, 553 F. Supp. 2d 582 (E.D. Va.

2008); O'Malley 5th ed., § 49.05; *Crutchfield v. Wainwright*, 803 F.2d 1103, 1110 (11th Cir.

1986); and *In re Cendant Corp. Securities Litig*., 343 F.3d 658, 668 n.8 (3d Cir. 2003).

### G.   Objection No. 7: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 39, "False Statements."

***Plaintiff's Proposed Jury Instruction No. 39:***

A statement or representation is "false" or "fraudulent" within the meaning of the mail fraud statute if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact, with intent to defraud.

A fact, falsehood, or representation is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage or not to engage in a particular transaction. However, whether a fact, falsehood, or representation is "material" does not depend on whether the person was actually deceived.

It is not necessary that Navient prove:

1.   All of the details concerning the precise nature and purpose of the scheme, or
2.   That the material fact was itself false or fraudulent, or
3.   That the alleged scheme actually succeeded in defrauding anyone, or
4.   That the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.

What must be shown by a preponderance of the evidence is that Defendants knowingly and willfully devised or intended to devise a scheme to defraud substantially the same as the one alleged by Navient. Within the meaning of the mail and wire fraud statutes, "to defraud" means to use dishonest methods or schemes and usually signifies the deprivation of something of value by trick, deceit, chicanery, or overreaching. In other words, Navient must prove by a preponderance of the evidence that a Defendant or Defendants specifically intended to deprive Navient of something of value through misrepresentation or similar dishonest conduct, which indeed did cause Navient harm.

***Defendants' Proposed Jury Instruction No. 39:***

A statement or representation is "false" or "fraudulent" within the meaning of the mail _and wire_ fraud statute_s_ if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact, with intent to defraud.

> *A fact, falsehood, or representation is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage or not to engage in a particular transaction. However, whether a fact, falsehood, or representation is "material" does not depend on whether the person was actually deceived.*
>
> *What must be shown by a preponderance of the evidence is that Defendants knowingly and willfully devised or intended to devise a scheme to defraud substantially the same as the one alleged by Navient. Within the meaning of the mail and wire fraud statutes, "to defraud" means to use dishonest methods or schemes and usually signifies the deprivation of something of value by trick, deceit, chicanery, or overreaching. In other words, Navient must prove by a preponderance of the evidence that a defendant or defendants specific intended to deprive Navient of something of value through misrepresentation or similar dishonest conduct, which indeed did cause Navient harm.*

The parties' proposed instructions concerning false statements are similar. However, Plaintiff objects to Defendants' Instruction No. 39 insofar as it omits relevant, legally sound guidance regarding what Plaintiff NSL need not prove regarding false statements under the federal mail and wire fraud statutes. In particular, Plaintiff proposes explaining that it is not necessary for Navient to prove all of the details concerning the precise nature and purpose of the alleged scheme, that the material fact to which the false statement relates was itself false, that the alleged scheme actually succeeded in defrauding anyone, or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud. Joint Proposed Jury Instructions at 55. Plaintiff's instruction draws directly on language suggested in O'Malley 6th ed., §§ 161:54, 161:57, 161:59, and the *CSX Transp.* Court issued an identical instruction in a case involving similar allegations. This Court should therefore adopt Plaintiff's Proposed Jury Instruction No. 39 in full.

### H.     Objection No. 8: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 40, "Litigation Activities."

*Defendants' Proposed Jury Instruction No. 40:*

> *Frivolous, fraudulent, or baseless litigation activities – without more – are not acts of racketeering. Obstructive, abusive, and fraudulent litigations tactics*

16

> *should be dealt with during the course of the litigation in which they arose; they do not justify a subsequent RICO claim. Likewise, an attorney's performance of unauthorized work is at worst a violation of the rules of professional responsibility but is not an act of racketeering. Even if an attorney makes incorrect allegations in a pleading, that litigation conduct does not constitute a scheme to defraud. A scheme to defraud requires corrupt activity like bribing witnesses or parties.*

Plaintiff proposes omitting this instruction, as it functions more as a merits brief than a jury instruction. Defendants' proposal, through suggestion and innuendo to the jury, sets forth several of Defendants' arguments on the merits of this case. The Lohman Defendants view their conduct as amounting, at worst, to "[f]rivolous, fraudulent, or baseless litigation activities." Joint Proposed Jury Instructions at 58. But several issues with Defendants' proposed instruction render it deficient and therefore improper to put before the jury.

First, Defendants' proposal would communicate to the jury that *fraudulent litigation activities* are *not fraudulent* for the purposes of RICO. As discussed above, numerous courts have held attorneys liable under RICO for engaging in fraud in the context of litigation. *See, e.g.*, *Donziger*, 974 F.Supp.2d at 595. Second, Defendants would have the Court tell the jury that "[a] scheme to defraud requires corrupt activity like bribing witnesses or parties." *Id.* But the parties have already proposed to define "corrupt" conduct in a similar manner; providing the jury with one inapplicable example will do nothing but confuse the jury and distract it from the clear definitions offered, for example, in the parties' proposals for Instruction No. 35 on the "Elements of Witness Tampering."

I.   **Objection No. 9: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 41, "Formality in Forming an Attorney-Client Relationship."**

*Defendants' Proposed Jury Instruction No. 41:*

> *Formality is not an essential element of employment of an attorney. The contract may be express or implied, and it is sufficient that the advice and assistance of the attorney is sought and received, in matters pertinent to his profession.*

Plaintiff NSL proposes omitting Defendants' Proposed Jury Instruction No. 41 because it misstates the law that applied to the Lohman Defendants' relationships with clients. Defendants propose that the Court instruct the jury, "Formality is not an essential element of employment of an attorney. The contract may be express or implied, and it is sufficient that the advice and assistance of the attorney is sought and received, in matters pertinent to his profession." For that proposed instruction, Defendants draw on a 1951 decision of the Supreme Court of Virginia—despite the fact that the Lohman Defendants were located in California. Under California law, an attorney is required to enter into a written fee contract or engagement agreement when he or she is to be paid on contingency or where fees and costs are expected to exceed $1,000. Cal Bus. & Prof. Code §§ 6147, 6148. The relevant provisions explicitly require that attorney-client contracts in those instances be "in writing." *Id.* Accordingly, Defendants' Proposed Jury Instruction No. 41 provides a standard that does not apply in this case and does not match the requirements that applied to the Lohman Defendants during the period in question. The Court should therefore reject it.

**J.      Objection No. 10: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 42, "Ratification."**

*Defendants' Proposed Jury Instruction No. 42:*

> *A party may ratify a contract by any conduct indicating assent to the contract. If a contract is ratified, the ratification relates back to the execution of the contract and renders it obligatory from its inception.*

Plaintiff proposes omitting this proposal, because it follows from Proposed Jury Instruction No. 41 and is deficient for the same reasons. To the extent Defendants seek to argue that later ratification of an attorney-client fee contract or engagement agreement cures any prior deficiency, that argument is plainly contrary to the text of the applicable California statutes. As stated, California attorneys are required by law to enter into such agreements in writing; later assent to a contract does not satisfy that requirement. *See id.*

**K.      Objection No. 11: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 43, "Intentional Default."**

*Defendants' Proposed Jury Instruction No. 43:*

> *A debtor, such as a borrower whose loans is serviced by NSL, may choose, at his/her sole discretion, to pay his/her unsecured creditors and secured creditors contemporaneously. A debtor may opt to satisfy his/her secured creditors first. That way the debtor may be in a better position to keep certain property, e.g., his home or car.*

Plaintiff proposes omitting this instruction. Defendants' Proposed Jury Instruction No. 43 is a factual argument that offers no guidance as to the law applicable to this case. Furthermore, the proposal introduces a distinction—secured versus unsecured creditors—that has no bearing on the present case and will only serve to confuse the jury. The Court should decline to include this language in its instructions to the jury.

**L.      Objection No. 12: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 44, "Unanimity on Racketeering Acts."**

*Defendants' Proposed Jury Instruction No. 44:*

> *Plaintiff alleges that Defendants committed acts of racketeering. With regard to each defendant, the plaintiff satisfies its burden if it proves by a preponderance of the evidence that at least two of the alleged racketeering acts sufficiently related to constitute a pattern were committed by the defendant within the prescribed time.*
> *However, you may not find that the plaintiff has established this element unless you all agree that at least two particular racketeering acts were committed by the defendant. It is not enough if some of you think that only racketeering acts A and B were committed by the defendant, and the rest of you think that only acts C and D were committed by the defendant. There must be at least two specific racketeering acts that you unanimously find by a preponderance of the evidence were committed by the defendant in order to satisfy this element.*

Plaintiff proposes omitting this instruction. In particular, Plaintiff objects to Defendants' Proposed Jury Instruction No. 44 insofar as it would instruct the jury as to how to assess alleged racketeering acts before explaining what constitutes a "pattern of racketeering activity," which Joint Proposed Jury Instruction No. 45 addresses.

Plaintiff also objects to Defendants' Proposed Jury Instruction No. 44 because, in its current construction, it is more likely to confuse the jury than to aide its analysis. The first paragraph of the proposed instruction repeats, nearly verbatim, a component of the parties' Joint Proposed Jury Instruction No. 45. For the sake of clarity and efficiency, the Court should omit at least that paragraph.

**M.      Objection No. 13: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 47, "Elements of a 1962(d) Violation."**

*Plaintiff's Proposed Jury Instruction No. 47:*

> *In order to prove a violation of Section 1962(d), Navient must prove by a preponderance of the evidence that the Defendant became a member of the alleged conspiracy.*
> *With respect to Count 3 of its Complaint, Navient must prove that Defendants The Law Offices of Jeffrey Lohman, Jeffrey Lohman, Jeremy Branch,*

*Rick Graff, Gregory Trimarche, and/or GST Factoring joined with the other members of the alleged conspiracy in an agreement to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity.*

*To do so, Navient must prove the following:*

*First: A Defendant is a person who conspired to violate Section 1962(c).*

*Second: Another Defendant (or Defendants) understood the nature or unlawful character of that conspiratorial plan.*

*Third: The Defendant agreed to join with others to achieve the objective of the conspiracy. To conspire to conduct the affairs of an enterprise, the Defendant must be aware of the existence and purpose of the enterprise.*

*Fourth: The Defendant agreed that the enterprise would be conducted through a pattern of racketeering activity. This means that the commission of at least two predicate crimes by the conspiracy was contemplated.*

*For the jury to conclude that a Defendant became a member of the alleged conspiracy, it need not determine that he himself committed or agreed to commit the two predicate acts that constitute a substantive RICO offense under § 1962(c). In other words, Navient need not prove an overt act by every member of the conspiracy; instead, it must show that each conspiring Defendant intended to further an endeavor that, if completed, would satisfy all of the elements of Section 1962(c). It suffices that a Defendant adopt the goal of furthering or facilitating the criminal endeavor. A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the Section 1962(c) violation. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.*

*Because, by their very nature, conspiracies are clandestine and covert, they frequently result in little direct evidence of agreement among the conspirators. Hence, conspiracies are generally proven by circumstantial evidence and the context in which the circumstantial evidence is presented. Indeed, a conspiracy may be proven wholly by circumstantial evidence.*

*If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those who you find were members of the conspiracy. One it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the Defendant and the conspiracy. In other words, although the Plaintiff must prove both the existence of a conspiracy and the Defendants' connection to it, that connection need only be slight.*

*Once a person is found by you to be a member of a conspiracy, he is presumed to remain a member and is responsible for all actions taken by all conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that person has withdrawn from the conspiracy.*

**Defendants' Proposed Jury Instruction No. 47:**

*With respect to its RICO conspiracy claim under section 1962(d), Navient must prove by a preponderance of the evidence that Defendants The Law Offices of Jeffrey Lohman, Jeffrey Lohman, Jeremy Branch, Rick Graff, Gregory Trimarche,*

*or GST Factoring agreed to further or facilitate another Defendants' violation of section 1962(c).*

*To do so, Navient must prove the following:*

*First: at least one Defendant violated section 1962(c) as an operator or manager of the enterprise through a pattern of racketeering.*

*Second: Another Defendant (or Defendants) understood the nature or unlawful character of the operator or manager's endeavor.*

*Third: The Defendant (or Defendants) agreed to join with the operator or manager(s) to conduct the affairs of an enterprise. The Defendant (or Defendants) must be aware of the existence and purpose of the enterprise.*

*Fourth: The Defendant (or Defendants) agreed that the enterprise would be conducted through a pattern of racketeering activity. This means that the commission of at least two predicate crimes by the conspiracy was contemplated.*

*For the jury to conclude that a Defendant became a member of the alleged conspiracy, it need not determine that he himself committed or agreed to commit the two predicate acts that constitute a substantive RICO offense under § 1962(c). In other words, Navient need not prove an overt act by every member of the conspiracy; instead, it must show that each conspiring Defendant intended to further an endeavor that, if completed, would satisfy all of the elements of section 1962(c). It suffices that a Defendant adopt the goal of furthering or facilitating the criminal endeavor. A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the section 1962(c) violation. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.*

*If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those who you find were members of the conspiracy. Once a person is found by you to be a member of a conspiracy, he is presumed to remain a member and is responsible for all actions taken by all conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that person has withdrawn from the conspiracy.*

Defendants' Proposed Jury Instruction No. 47 would omit certain sections of Plaintiff's proposed instruction that would aide in the jury's assessment of evidence of the alleged conspiracy in this case. Because Plaintiff's Proposed Jury Instruction No. 47 will more comprehensively assist the jury's consideration of this issue, the Court should adopt Plaintiff's proposal in full.

First, the Fourth Circuit has acknowledged that the distinct features of a conspiracy frequently mean that a conspiracy can be proven only through circumstantial evidence. *United States v. Burgos*, 94 F.3d 849, 857-58 (4th Cir. 1996). Having explained the role of direct and

circumstantial evidence, the Court can further assist the jury's analysis of this specific claim by briefly noting the Fourth Circuit's statement on circumstantial evidence in conspiracy cases. Plaintiff's proposed language draws directly on the wording of the Fourth Circuit and does not risk influencing the jury; rather, it merely notes that "a conspiracy may be proven wholly by circumstantial evidence," a legal conclusion announced in *Burgos*. Joint Proposed Jury Instructions at 67; *see Burgos*, 94 F.3d at 858.

Second, Defendants would omit from the jury instructions a second legal principle set forth in *Burgos*—that although a plaintiff must prove both the existence of a conspiracy and a defendant's connection to it, "that connection need only be slight." Joint Proposed Jury Instructions at 67. Although the Court will have explained the type of conduct that constitutes a violation of § 1962(d), it makes sense for the Court to further note the type of relationship Plaintiff must demonstrate existed between Defendants and the alleged scheme. And, again, Plaintiff's proposed language draws directly upon the Fourth Circuit's decision in *Burgos*, without implying to the jury that Plaintiff will have met this standard with respect to Defendants in this case.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: 18 U.S.C. § 1962(d); *Glass v. Glass*, 321 S.E.2d 69, 74 (Va. 1984); O'Malley 5th ed., § 161:23; *Salinas v. United States*, 522 U.S. 52, 65 (1997); and *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014).

### N.    Objection No. 14: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 49, "RICO: Civil Standing."

***Defendants' Proposed Jury Instruction No. 49:***

> *In order to recover damages under RICO, Navient must have "standing." A plaintiff has standing only if it is the type of victim that was authorized by Congress to bring a civil lawsuit under RICO.*
> *In order to have "standing," Navient must prove by a preponderance of the evidence that:*

1) *It was injured in its business or property*
2) *By reason of Defendant(s) RICO violation(s).*

Plaintiff proposes omitting this proposal because it seeks to put before the jury a threshold argument that this Court has already rejected. "Standing is the threshold inquiry for entry into federal court." *Matthews v. United States*, 917 F. Supp. 1090, 1104 (E.D. Va. 1996). The Lohman Defendants raised their standing argument at the threshold, seeking summary judgment on the theory that NSL lacked standing under § 1964(c). Lohman Mem. at 13-37. The Court concluded that NSL had demonstrated standing in a manner sufficient to proceed with its RICO claims, therefore denying the Lohman Defendants' motion for summary judgment. As that threshold matter has already been resolved, Defendants should not now be able to place it before the jury. The issues before the jury are NSL's proof of its claims and Defendants' proof of their defenses.

### O.   Objection No. 15: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 50, "RICO: Injury by Reason of the RICO Violation."

***Plaintiff's Proposed Jury Instruction No. 50:***

*For Navient to prevail under RICO, it must prove by a preponderance of the evidence that the Defendants' RICO violations were the "proximate cause" of injury to Navient's business or property. Therefore, you must find that Navient suffered an injury to its business or property and that the injury was caused by reason of the Defendants' violation of RICO.*

*The pertinent inquiry in determining the existence of proximate cause is whether the conduct has been so significant and important a cause that the Defendant should be held responsible.*

*A finding that Plaintiff Navient was injured in its business or property because of the Defendants' violation of RICO requires that you find the Plaintiff's damages were caused by the Defendants' alleged mail fraud, wire fraud, or witness tampering. However, to find that injury to Navient's business or property was caused by reason of a Defendant's violation of RICO, you must also find that the injury to Navient was caused by, and was a direct result of, that Defendant's violation of Sections 1962(c) or 1962(d).*

*Therefore, you must find that the commission of the acts of racketeering by that Defendant, or the pattern of racketeering by that Defendant, or the conduct of the affairs of the enterprise through the pattern of racketeering activity by that Defendant, directly resulted in the injury or played a substantial role in producing the injury. If Navient would have incurred the alleged damages regardless of any*

24

*RICO violation by a Defendant, then those damages are not proximately caused by that Defendant's RICO violation.*

**Defendants' Proposed Jury Instruction No. 50:**

*Navient can only recover if, and to the extent that, it has been injured in its business or property by the conduct constituting the RICO violation. Accordingly, Navient must prove by a preponderance of the evidence that: (1) it would not have been injured "but for" Defendants' acts of racketeering; and (2) Defendants' acts of racketeering were also the proximate cause of the plaintiff's injuries. As discussed earlier, the acts of racketeering claimed by Navient are federal mail fraud, federal wire fraud, and witness tampering.*

*In other words, the acts of racketeering activity must themselves cause the injury. A defendant does not violate RICO, and is not liable for damage under RICO, for wrongful conduct that does not constitute an act of racketeering, such as violating the ethical rules of their profession, committing professional negligence, or committing criminal acts that are not acts of racketeering punishable under RICO.*

*Acts of racketeering are the proximate cause of an injury only if there is some direct relationship between the acts and the harm to the plaintiff. The general tendency of the law, in regard to damages at least, is not to go beyond the first step.*

*A plaintiff cannot recover for harm visited upon a third person. Regardless of how foreseeable a plaintiff's injury might have been or even what motive underlaid the conduct that caused the harm, the injury for which a plaintiff may seek damages under RICO cannot be contingent on or derivative of harm suffered by a different party. With regard to witness tampering, the direct victim is the witness who was corruptly persuaded.*

*An injury is not proximately caused by the defendants' conduct where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury or where the chain of causation is fraught with unanswered questions, intricate, or uncertain.*

*A defendant is not liable for injuries caused by the plaintiff's own conduct. For example, a defendant is not liable for injuries caused by the plaintiff's poor business practices. Self-inflicted injuries sever the causal nexus needed to establish standing.*

*In short, a remote, purely contingent, or indirect link between the acts of racketeering and the harm does not establish proximate cause.*

Plaintiffs object to Defendants' Proposed Jury Instruction No. 50 because, like Defendants' Proposed Jury Instruction No. 49, it represents Defendants' attempt to put before the jury the issue of Plaintiff's standing, a threshold matter already decided by this Court. Portions of Defendants' proposed language speak to the standards that should guide the jury's assessment of potential

damages under RICO. However, Defendants attempt to use this instruction to attack NSL's standing by instructing the jury, for example, that "[s]elf-inflicted injuries sever the causal nexus needed to establish standing." Joint Proposed Jury Instructions at 75. As discussed, this Court has already considered and rejected Defendants' arguments on that issue.

In addition, Plaintiff strenuously objects to Defendants' proposed instruction insofar as it would tell the jury that "[w]ith regard to witness tampering, the direct victim is the witness who was corruptly persuaded." Joint Proposed Jury Instructions at 75. The case Defendants have cited for that principle, *Gratz v. Ruggiero*, 2017 WL 2215267 (E.D. Pa. May 19, 2017), is an unpublished, out-of-circuit decision that does not support Defendants' characterization of the law. Defendants' proposed language is also plainly inconsistent with the law. *See, e.g.*, *Donziger*, 974 F.Supp.2d at 595 (finding civil RICO defendant liable where defendant tampered with a witness testifying in separate litigation with plaintiff company).

Plaintiff's Proposed Jury Instruction No. 50, on the other hand, is drawn directly from the instructions issued in *CSX Transp.*, a similar RICO case from this Circuit, and it fairly describes the rules according to which the jury in this case should assess damages for NSL's RICO claims. The Court should therefore adopt Plaintiff's proposed language.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: O'Malley 5th ed., § 161:70; *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992); and *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489 (4th Cir. 2018).

**P.      Objection No. 16: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 51, "RICO: Injury to Business or Property."**

*Plaintiff's Proposed Jury Instruction No. 51:*

In considering the issue of Navient's damages, if any, with respect to the RICO claim, you should assess the amount you find to be justified by a preponderance of the evidence as full, just, and reasonable compensation for all of the damages to the Plaintiff in its business or property, no more and no less.

Under Section 1964(c), Navient may recover only for injury to Navient's business or property. Injury to business may include lost profits and expenses incurred in connection with Defendant's RICO violation and a decrease in the value or worth of the business or property itself. These injuries and expenses can include costs spent in defending fraudulently created lawsuits.

In considering the issue of damages, if any, with respect to the RICO claims, you must assess the amount you find justified by a preponderance of the evidence as full, just, and reasonable compensation for all of the damages to Navient in its business or property. Damages may not be based on speculation because it is only actual damages, what the law calls compensatory damages, that you are to determine.

You should consider the amount of damages, if any, as to each Defendant with respect to each RICO claim separately and independently from the amount of damages, if any, with respect to the other, non-RICO claims. For example, if you determine that damages should be awarded to Navient under its RICO claim, you should award full, just, and reasonable compensation for damages under the RICO claim, without regard to the damages, if any, you might award under any other claim brought by Navient.

*Defendants' Proposed Jury Instruction No. 51:*

The damages claimed by Navient in this lawsuit are injuries to business or property.

Navient, however, can only recover damages that are concrete, ascertainable, and reasonably quantifiable. Speculative damages which are contingent on some future event, lost profits, or unanticipated future expense are not recoverable.

Like all other elements of its claim, Navient must prove its damages by a preponderance of the evidence.

Although money paid by Navient to resolve the underlying claims qualifies as a business or property, a party has no property interest in judicial proceedings, and the expectation of a favorable outcome in litigation is not a property interest protected under RICO.

Plaintiff's Proposed Jury Instruction No. 51 draws directly on the instruction issued in *CSX Transp.*, and it communicates a clear, objective description of the jury's assessment of claims of injury to business or property under RICO.

Defendants' proposed language is both less comprehensive and misleading. While Plaintiff's proposed instruction includes a more complete explanation of the need to discount speculative damages, Defendants propose instructing the jury, "Speculative damages which are contingent on some future event, lost profits, or unanticipated future expense are not recoverable." Joint Proposed Jury Instructions at 77. The parties agree that the jury should not base damages on speculation, but this rule applies to lost profits only insofar as a claimant lacks evidence to guide the jury's calculations. For example, the Fourth Circuit has written, "Damages may not be awarded . . . where an award would be based on an estimate of lost profits which is speculative. The rule barring an award of speculative profits generally precludes damages for lost profits caused by harm done to a new business." *LaVay Corp. v. Dominion Federal Sav. & Loan Ass'n*, 830 F.2d 522, 529 (4th Cir. 1987). But NSL is not a new company, and its evidence of lost profits is not speculative. Accordingly, it would be inappropriate to instruct the jury in this case that lost profits amount to "speculative damages" that cannot be recovered.

In addition, Defendants propose instructing the jury that "[a]lthough money paid by Navient to resolve the underlying claims qualifies as [an injury to] business or property, a party has no property interest in judicial proceedings, and the expectation of a favorable outcome in litigation is not a property interest protected under RICO." Joint Proposed Jury Instructions at 77 (citing *Thomas v. Baca*, 2007 WL 738545, *7 (C.D. Cal. Feb. 28, 2007); *Bachi-Reffitt v. Reffitt*, 2017 WL 5998112, *9 (W.D. Mich. Dec. 4, 2017), *aff'd*, 802 F. App'x 913 (6th Cir. 2020)). But the decisions on which Defendants rely for this proposed language are plainly inapt. First, the

28

Central District of California did note in *Thomas v. Baca* that "there is no 'property interest in federal judicial proceedings,'" 2007 WL 738545 at \*7; however, it did so only because the plaintiff explicitly claimed that "their property interests in federal judicial proceedings were harmed," *id.* at \*6. As NSL has made no such claim—and has instead made specific allegations of monetary harm—it is not necessary to introduce to the jury this abstract characterization of the law. And in *Bachi-Reffitt v. Reffitt*, the Western District of Michigan noted that a favorable litigation outcome is not a protected property interest only because the plaintiff had claimed a property interest in a certain expected divorce settlement. 2017 WL 5998112 at \*9. Here, NSL has not claimed any right to a certain outcome in litigation; rather, its allegations concern (in part) Defendants' activities in the course of litigation. This language—which is derived from unpublished, out-of-circuit decisions—makes sense only in the contexts in which it arose. Divorced from that context, it would serve only to mislead and confuse the jury, and the Court should decline to adopt it.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: O'Malley 5th ed., § 161:90; *CSX Transp., Inc v. Peirce*, 974 F. Supp. 2d 927 (N.D. W. Va. 2013); and *Crowe v. Smith*, 848 F. Supp. 1258, 1264 (W.D. La. 1994).

### Q.     Objection No. 17: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 52, "Elements of Fraud."

*Plaintiff's Proposed Jury Instruction No. 52:*

*In Count 4 of its Complaint, Navient claims that Defendants Jeffrey Lohman, Jeremy Branch, and the Law Offices of Jeffrey Lohman committed fraud by developing a scheme to induce student loan holders to stop making payments, go into default, and to trigger telephone calls from Navient that arguably violated a law against automatic calls, by filing lawsuits without authorization, and other legal papers containing misrepresentations.*
*The essential elements in an action for fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally or knowingly, (4) with intent to mislead, (5) reliance thereon by the party being misled, and (6) resulting damage to the party being misled.*

*An action for fraud may lie where the Defendant knows the statement to be false, makes the statement with reckless indifference as to its truth or falsity and with an intent to deceive. A false representation of material fact can constitute constructive fraud even if the false representation was made innocently or negligently.*

*Reliance on a false representation can be inferred from circumstantial evidence, rather than being proven directly.*

### Defendants' Proposed Jury Instruction No. 52:

*In addition to its RICO claim, Navient also alleges that Defendants Jeffrey Lohman, Jeremy Branch, and the Law Offices of Jeffrey Lohman violated Virginia law by committing fraud. Do not confuse fraud under Virginia law with mail and wire fraud under federal law. I have already instructed you with regard to mail and wire fraud under federal law.*

*To be liable for fraud under Virgina law, Navient must prove by a preponderance of the evidence that Defendants Jeffrey Lohman, Jeremy Branch, and the Law Offices of Jeffrey Lohman: (1) made a false representation, (2) of a material fact, (3) intentionally or knowingly, (4) with intent to mislead, (5) that Navient detrimentally relied on the false statement, and (6) that reliance resulted in damage to Navient.*

*Fraud, however, is not assumed on doubtful evidence, or circumstances of mere suspicion. It must be clearly and distinctly proved. The law never presumes fraud, but the presumption is always in favor of innocence and honesty.*

Plaintiff NSL objects to the final paragraph of Defendants' Proposed Jury Instruction No. 52, as it is both redundant and misleading.

First, Defendants propose instructing the jury that fraud "is not assumed on doubtful evidence, or circumstances of mere suspicion." Joint Proposed Jury Instructions at 79. However, the prior paragraph of Defendants' proposal already specifies that fraud must be shown by a preponderance of the evidence. Noting that doubtful evidence and mere suspicion are insufficient to prove fraud is unnecessarily duplicative.

Second, Defendants would instruct the jury that fraud "must be clearly and distinctly proved." *Id.* But it is not clear how this language clarifies the need to prove fraud by the preponderance of the evidence, and it could lead to the erroneous impression that fraud cannot be proven by circumstantial evidence. *See Flanagan v. Parsons*, 187 S.E. 473, 475 (Va. 1936) ("[I]t

is not necessary that fraud should be expressly shown. It may be proved by circumstantial evidence

. . . .").

For these reasons, the Court should decline to adopt the final paragraph of Defendants'

Proposed Jury Instruction No. 52.

Plaintiff further submits that its proposed instruction is supported by the following

additional authorities: *Owens v. DRS Auto. Fantomworks, Inc*., 288 Va. 489, 497 (2014); O'Malley

5th ed., § 16:08; *Richmond Met. Auth. v. McDevitt St. Bovis, Inc*., 256 Va. 553, 346-47 (1998);

and *Chisolm v. TranSouth Fin. Corp*., 194 F.R.D. 538, 560 n.24 (E.D. Va. 2000).

### R.    Objection No. 18: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 53, "Reliance."

*Defendants' Proposed Instruction No. 53:*

> *Navient bears the burden to prove its reasonable reliance by a preponderance of the evidence. Reliance may not be presumed.*
> *Reliance, however, can be inferred from circumstantial evidence, rather than being proven directly.*
> *Fraud cannot be established in the absence of reasonable or justified reliance.*
> *A plaintiff cannot claim that its reliance was reasonable and justified when it makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial inquiry. A party is charged with the knowledge the investigation reveals, or that would have been revealed had the investigation been pursued diligently to the end. Nor can a party establish reasonable reliance where it had information that would excite the suspicions of a reasonably prudent person.*
> *Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses. However, a general entitlement to rely on a representation made during discovery is not enough to make a party's reliance reasonable in support of a fraud claim.*

Plaintiff objects to Defendants' Proposed Jury Instruction No. 53 because it misstates the

law in a manner that would bias the jury in favor of Defendants. Defendants' proposed instruction

accurately notes that reliance can be inferred from circumstantial evidence rather than proven

directly. *See Chisolm*, 194 F.R.D. at 560 n.24 ("'A transaction may itself and by itself furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of the defendant and even the evidence of witnesses.'" (quoting *Cook v. Hayden*, 31 S.E.2d 625, 627 (Va. 1944)); *Cook*, 31 S.E.2d at 627 (concluding that, in analyzing reliance under common law fraud, "[c]ircumstantial evidence is not only sufficient, but in most cases is the only proof that can be adduced").

However, Defendants' proposed instruction notably omits any acknowledgement of the standard that applies where, as here, a party is forced to incur costs in response to fraudulent activity. As discussed, numerous courts have determined that a plaintiff can recover for legal costs where they have been forced to defend against fraudulent lawsuits. *See, e.g.*, *CSX Transp., Inc v. Peirce*, 974 F. Supp. 2d 927 (N.D. W. Va. 2013) (upholding a RICO verdict based on the predicate crime of mail fraud against a law firm that allegedly inundated a railroad and other entities with lawsuits); *Crowe*, 848 F. Supp. at 1264 (holding that an attorney and alleged principal in a scheme involving the filing of fraudulent lawsuits could be found liable under RICO). And in *CSX Transp. Inc.*, 2012 WL 1598081, the Northern District of West Virginia expressly considered and rejected the reliance standard advanced by the Lohman Defendants here, determining that the plaintiff company properly alleged reliance on the defendant attorneys' representations that their lawsuits "had some good faith basis in fact" and were brought in accordance with applicable rules of civil procedure and professional conduct. *Id.* at *8-9.

Defendants' proposed instruction omits any standard for cases in which a party must mount legal defenses in response to fraudulent lawsuits, which NSL has been required to do in this case. Accordingly, Defendants' proposal would mislead and bias the jury, and the Court should therefore reject it.

**S.     Objection No. 19: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 55, "Elements of Tortious Interference with Contract or Business Expectancy."**

*Plaintiff's Proposed Jury Instruction No. 55:*

*In Count 5 of its Complaint, Navient claims that the Defendants engaged in tortious interference with contract or business expectancy by inducing student loan holders—including ones who were not behind on their payments—to stop making payments on their promissory notes, go into default, and to trigger telephone calls from Navient that arguably violated a law against automatic calls.*

*The essential elements in an action for tortious interference with contract or business expectancy are: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentionally inducing or causing a breach or termination in the relationship or expectancy; and (4) the breach caused damage to the party whose relationship or expectancy has been disrupted. Malice is not required for a showing of tortious interference.*

*Tortious interference may include interference by conduct that is unethical, illegal, or independently tortious, although a plaintiff claiming intentional interference with contract or business expectancy need not allege and prove all elements of liability for an the underlying independent tort.*

*To demonstrate the existence of a business expectancy, Navient must establish expectancy by and between at least two parties based upon something that is a concrete move in that direction.*

*Defendants' Proposed Jury Instruction No. 55:*

*Navient's final claim is that the Defendants engaged in tortious interference with contract or business expectancy by inducing student loan holders—including ones who were not behind on their payments—to stop making payments on their promissory notes, go into default, and to trigger telephone calls from Navient that arguably violated a law against automatic calls.*

*The essential elements in an action for tortious interference with contract or business expectancy are: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentionally inducing or causing a breach or termination in the relationship or expectancy; and (4) the breach caused damage to the party whose relationship or expectancy has been disrupted. Malice is not required for a showing of tortious interference.*

*Tortious interference may include interference by unethical conduct, illegal, or independently tortious, although a plaintiff claiming international interference with contract or business expectancy need not allege and prove all elements of liability for the underlying independent tort.*

*To demonstrate the existence of a business expectancy, Navient must establish expectancy by and between at least two parties based upon something that is a concrete move in that direction.*

*Navient is not a party to the promissory notes between the student loan*

*holders and their lenders. Navient serviced the loans pursuant to a separate contract with the lenders. Because NSL was not a party to the promissory notes, NSL must prove that the defendant(s) acted with the purpose of interfering with NSL's contract between itself and the lenders. In other words, if a defendant induces a student to breach a promissory note with a lender, NSL may be harmed by the action, but NSL is not within the scope of the protection afforded by the claim of tortious interference with contract, unless the defendant intended to affect NSL. Even then NSL cannot recover unless the defendant acted for the purpose of interfering with contract between the lender and NSL.*

The parties have proposed similar instructions with respect to the elements of tortious interference with contract or business expectancy. However, Plaintiff objects to the final paragraph of Defendants' proposed instruction, which advances Defendants' theory that NSL cannot recover for tortious interference because it allegedly was not a party to the promissory notes that student borrowers stopped paying as a result of Defendants' scheme. *See* Joint Proposed Jury Instructions at 84-85.

In particular, Defendant emphasizes that "NSL must prove that defendant(s) acted with the purpose of interfering with NSL's contract between itself and the lenders" and that "[e]ven then NSL cannot recover unless the defendant acted for the purpose of interfering with contract between the lender and NSL." *Id.* But Defendants' proposal improperly downplays the ability of third parties to recover for tortious interference while emphasizing certain issues that can prevent such recovery.

There is no dispute that third parties can recover for tortious interference under Virginia law: "By statute, Virginia allows individuals who are not parties to contracts to pursue actions on those contracts if they are third-party beneficiaries." *RBA Capital, LP v. Anonick*, No. 3:08-cv-494, 2009 WL 960090 (E.D. Va. April 8, 2009); *see also CYS Liquidating Corp. v. Harris Trust and Sav. Bank*, 162 F.3d 929, 933 (7th Cir. 1998) ("[T]he tort of intentional interference with contract is meant to protect the parties (including third-party beneficiaries, assignees, and others

have the rights of the parties) to contracts, rather than persons who might be harmed by a breach of someone else's contract."). And this Court has already noted, earlier in litigation, that "'if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for his example, his employers or suppliers,' can bring a tortious interference claim against A if 'A intend[ed] to affect them.'"   ECF No. 204 at 5-6 (quoting *Durette Brashaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 707 (Va. 2009)).

Indeed, this Court previously addressed an identical argument to that now advanced by the Defendants. In deciding NSL's motion to dismiss the GST Defendants' counterclaim, the Court held that GST could assert a tortious interference claim based on contracts to which it was not a party, observing:

> Although Navient argues that GST can only allege tortious interference with the factoring agreements because those are the only contractual relationships or business expectancies to which GST was or would have been a party, this argument is directly foreclosed by Virginia Supreme Court precedent. Specifically, in *Durette Bradshaw. P.C. v. MRC Consulting, L.C.*, the Virginia Supreme Court explained that "if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for his example, his employers or suppliers," can bring a tortious interference claim against A if "A intend[ed] to affect them." 670 S.E.2d 704, 706 (Va. 2009) (quoting Restatement (Second) of Torts § 766, cmt. p). Therefore, GST can, if it has alleged the requisite intent as part of the third element, bring a tortious interference counterclaim on the basis of the attorney-client agreements in addition to the factoring agreements; however, GST has not alleged the requisite intent, *i.e.*, that Navient interfered with the attorney-client agreements "for the purpose of interfering" with GST's factoring agreements. *Id.*

ECF No. 204 at 5–6.

Further, to prove a financial expectancy in the loans and contracts with which the Defendants interfered, NSL must prove only an expectancy through a concrete move. *Moore v. United Int'l Investigative Servs., Inc.*, 209 F. Supp. 2d 611, 619–20 (E.D. Va. 2002). Defendants' instruction would ignore this authority.

In short, Defendants ask that this Court frame its instruction concerning the elements of tortious interference by including a series of increasingly high hurdles for NSL to clear, when the law does not support such obstacles. The Court should therefore decline to adopt the final paragraph of Defendants' proposed instruction.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: *Chaves v. Johnson*, 335 S.E.2d 97, 102-03 (Va. 1985); and *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987).

    **T.**    **Objection No. 20: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 58, "Punitive Damages."**

***Plaintiff's Proposed Jury Instruction No. 58:***

> *If you find the Defendants liable for fraud or tortious interference, you must determine if the Defendants are also liable for damages above and beyond what might satisfy Navient for its actual losses. These additional damages are often referred to as punitive damages.*
>
> *Punitive or exemplary damages are awarded in situations where mere compensation is not enough and the conduct of the Defendants require an additional motivation not to engage in this type of conduct again—i.e., to punish a wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.*
>
> *If, from a preponderance of the evidence, it appears that Navient is entitled to a verdict for actual or compensatory damages, and if you should further find that the alleged act or omission of the Defendants, if any, which proximately caused actual injury or damage to Navient, was malicious or so willful and wanton as to demonstrate a conscious disregard for the rights of others, then you may add to the award of actual damages such amount as you may unanimously agree to be proper, as punitive and exemplary damages.*
>
> *An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups of categories of which the injured person is a member.*
>
> *An act or a failure to act is "wantonly" done if done in conscious disregard of another person's rights or acting with reckless indifference to the consequences, with the Defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.*
>
> *An act or a failure to act is "oppressively" done if done in a way or manner that injures, damages, or otherwise violates the rights of another person with*

> *unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, disability, or misfortune of another person.*
>      *Whether or not to make any award of punitive and exemplary damages, in addition to actual damages, is a matter exclusively within the province of a jury.*

Defendants propose omitting this instruction. However, if the Court decides to give an instruction regarding punitive damages, Defendants propose the following language:

> *As jurors, you may but are not required to award punitive damages.*
>      *To be entitled to punitive damages, Navient must establish that the defendant's conduct was willful or wanton. Willful and wanton conduct is an action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another. When the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, punitive damages cannot be awarded, and only compensatory damages may be awarded.*

The parties' substantive proposed instructions concerning punitive damages are similar, but Plaintiff's both provides greater detail concerning the jury's consideration of punitive damages and omits any redundant explanation of the standard. First, Plaintiff's proposed instruction explains that punitive damages are reserved for "extraordinary misconduct," including for malicious or willful and wanton activity. Joint Proposed Jury Instructions at 88-89. Plaintiff's rule further defines "malicious" and "wanton" conduct, and it specifies that punitive damages should be granted only if the jury finds a need for damages "above and beyond what might satisfy Navient for its actual losses." *Id.*

Defendants' proposed rule provides less explanation for when punitive damages are appropriate, and the final sentence of Defendants' proposal merely repeats the same instruction in the negative. *Id.* at 89-90. Because Defendants' proposed instruction is both insufficiently detailed and redundant, the Court should reject it and should instead adopt Plaintiff's proposal.

Plaintiff further submits that its proposed instruction is supported by the following additional authorities: *Sit-Set, A.G. v. Universal Jet Exchange, Inc*., 747 F.2d 921, 927-28 (4th Cir. 1984); and *Lucher v. Hildenbrandt*, 794 F. Supp. 581, 583 (E.D. Va. 1992).

    **U.**    **Objection No. 21: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 61, "Definition of 'ATDS.'"**

***Plaintiff's Proposed Jury Instruction No. 61:***

> *Under the TCPA, to qualify as an "automatic telephone dialing system," a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator. In this action, Defendants do not contend that Navient violated the TCPA in the past by using an ATDS.*

***Defendants' Proposed Jury Instruction No. 61:***

> *During the time period that Navient and the Lohman Defendants were litigating and resolving the underlying TCPA claims, Navient claimed its telephone system was not an ATDS. The Lohman Defendants claimed that Navient's telephone system was an ATDS. The law was unsettled, and the definition of an ATDS was the subject of significant litigation in federal courts. Sometimes decision-makers agreed with Navient. Sometimes decision makers agreed with the Lohman Defendants. In any event, the parties had the full and fair opportunity to litigate whether Navient used an ATDS.*

Defendants' Proposed Jury Instruction No. 61 improperly argues Defendants' case under the guise of jury instructions. Defendants' instruction contains factual declarations rather than instruction on the law. Defendants have an opportunity to argue at trial that the definition of an "automatic telephone dialing system" ("ATDS") was unsettled during the period in question; that "[s]ometimes decision makers agreed with the Lohman Defendants"; and that "the parties had the full and fair opportunity to litigate whether Navient used an ATDS." Joint Proposed Jury Instructions at 94. The jury instructions are not a brief; jury instructions should be "objective and free of argument." O'Malley 6th ed., § 100:04. Defendants' proposed argument clearly violates that standard, and the Court should reject it.

38

NSL's instruction is pulled directly from the applicable statute, 47 U.S.C. § 227(a)(1), and the Supreme Court's controlling decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). The Court should issue Plaintiff's proposal, as it would plainly explain to the jury what constitutes an ATDS.

## V. Objection No. 22: Plaintiff NSL objects to Defendants' Proposed Jury Instruction No. 62, "First Amendment Immunity."

***Plaintiff's Proposed Jury Instruction No. 62:***

> *The Noerr-Pennington doctrine safeguards the First Amendment right to petition the government for a redress of grievances by immunizing citizens from the liability that may attend the exercise of that right. Arbitration is part of the adjudicatory process and litigation activity in the context of arbitrations may be protected by the First Amendment.*
>
> *Conduct incidental to the prosecution of a lawsuit may be immune from liability based on the Noerr-Pennington doctrine, but conduct not in a litigation context is not included.*
>
> *However, the First Amendment offers no protection when petitioning activity is a mere sham to cover up an attempt to violate federal law. A "sham" situation involves a party whose activities are not genuinely aimed at procuring favorable relief or who genuinely seek relief but does so through improper means. When purported sham litigation encompasses a series of legal proceedings rather than a singular legal action, you should not focus on any single case. Rather you must conduct a holistic evaluation of whether the administrative and judicial processes have been abused. Corruption of an adjudicative process removes any shield that the First Amendment otherwise would provide. If you conclude that there was a pattern of baseless, repetitive claims, you may conclude that the administrative and judicial processes have been abused.*

***Defendants' Proposed Jury Instruction No. 62:***

> *Defendants Jeffrey Lohman, Jeremy Branch, and the Law Offices of Jeffrey Lohman claim that Navient's claims against them are barred by the First Amendment.*
>
> *Under the First Amendment, a defendant is immune from liability for his/her litigation conduct, unless the defendant's litigation was a "sham."*
>
> *Arbitration is part of the adjudicatory process and litigation activity in the context of arbitrations is protected by the First Amendment. Conduct incidental to the prosecution of a lawsuit, including communications between private parties is also protected by the First Amendment.*
>
> *Successful litigation cannot be characterized as a "sham."*
>
> *Unsuccessful litigation is a "sham" only if:*

1)   *The lawsuit is objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits. "[E]ven litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the baselessness requirement"; and*

2)   *Even if the litigation is objectively baseless, the litigation is only a "sham" if the defendant was also subjectively motivated by an improper purpose.*

   *When considering whether the Lohman Defendants engaged in "sham" litigation, you should not focus on any single case. Rather you must conduct a holistic evaluation of all the litigation activities engaged in by the Lohman Defendants.*

   *Navient must prove by a preponderance of the evidence that Jeffrey Lohman, Jeremy Branch, and the Law Offices of Jeffrey Lohman engaged in "sham" litigation.*

Plaintiff NSL objects to Defendants' proposed instruction for "First Amendment Immunity," because it asserts an incorrect standard for immunity in a case such as this. Defendants accurately state that a defendant can be immune from liability for litigation conduct and that this immunity does not apply in the case of "sham" litigation. *See* Joint Proposed Jury Instructions at 96-97. However, Defendants incorrectly argue that "[s]uccessful litigation cannot be characterized as a 'sham'" and that unsuccessful litigation is a "sham" *only if* "no reasonable litigant could reasonably expect success on the merits." *Id.* at 96 (citing *Professional Real Estate Inv., Inc. v. Columbia Pictures Ind., Inc.*, 508 U.S. 49, 60 (1993) ("*PREI*")).

Although the first part of Defendants' proposal is correct (and shared by the parties), the second part—which relies on the Supreme Court's decision in *PREI*—does not apply here. The Fourth Circuit has explicitly described *PREI* as "ill-fitted to test whether a series of legal proceedings is sham litigation." *Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 364 (4th Cir. 2013). "When a party contends that it is defending a sham lawsuit, it is relatively simple for a judge to decide whether the singular claim it

is presiding over is objectively baseless. But it is an entirely different undertaking to collaterally review [several proceedings] for baselessness." *Id.*

In *Waugh Chapel South*, the Fourth Circuit established a different standard for instances where a series of legal proceedings is alleged to constitute sham litigation, requiring a "holistic" evaluation" of the defendants' litigation activities rather than an examination of individual lawsuits. *Waugh Chapel South*, 728 F.3d at 364 (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). Indeed, Defendants acknowledge that standard near the end of their proposed instruction, seemingly contradicting the earlier sections that would guide jurors to focus on the merits of individual lawsuits. Joint Proposed Jury Instructions at 97. But, critically, the individual case analysis counseled by *PREI*—which Defendants seek to put before the jury— does not seem to have any place in cases involving series of legal proceedings, such as this one.

Plaintiff's proposal properly omits an instruction based upon *PREI* and instead applies the correct standard under *Waugh Chapel South* and *Cal. Motor*. Accordingly, Plaintiff NSL requests that the Court adopt its Proposed Rule 62 and objects to Defendants' rule on the subject.

      **W.**    **Objection No. 23: Plaintiff NSL objects to Defendants' Proposed Jury Verdict Forms.**

Plaintiff objects to several components of Defendants' proposed jury verdict forms.

First, Plaintiff objects to Question No. 13 on Defendants' proposed "Special Verdict Form (RICO)," which concerns Navient's standing to sue under RICO. As discussed, the Court has already ruled on the matter of Plaintiff's standing. It is unnecessary to ask the jury to duplicate the Court's analysis of this threshold issue, and the Court should not include this question on its verdict forms.

Second, Plaintiff objects to Question Nos. 5 to 7 on Defendants' proposed "Special Verdict Form (State Claims)," which asks, "Did [Defendant] tortiously interfere with Navient's contract

to service student loans owned by others?"  Through its jury instructions, the Court will explain to the jury what constitutes tortious interference under Virginia law. Defendants plainly seek to frame this question in a manner that favor their argument as to tortious interference—namely, that Plaintiff cannot recover as a third party to the student borrowers' promissory notes. As shown above, that suggestion is contrary to law. As jury instructions—including jury verdict forms—should be objective and free of argument, Plaintiff objects to Defendants' framing of the questions of Defendants' liability for tortious interference.

## II.      CONCLUSION

For the foregoing reasons, Defendants' proposed instructions should not be submitted to the jury. NSL's proposed instructions, which are well-supported by relevant caselaw and guidance, will substantially assist the jury during its deliberations.


Dated: August 9, 2021                              Respectfully submitted,

                                                   /s/ Jeffrey R. Hamlin
                                                   Jeffrey R. Hamlin (Va. Bar No. 46932)
                                                   George R. Calhoun V (*pro hac vice*)
                                                   IFRAH PLLC
                                                   1717 Pennsylvania Avenue NW
                                                   Suite 650
                                                   Washington, DC 20006-2004
                                                   (202) 524-4140 – Tel.
                                                   (202) 524-4141 – Fax
                                                   jhamlin@ifrahlaw.com
                                                   george@ifrahlaw.com

                                                   *Counsel for Plaintiff Navient Solutions, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2021, I will electronically file Plaintiff Navient Solutions, LLC's Objections to Defendants' Proposed Jury Instructions using the Court's CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

Dated: August 9, 2021      Respectfully submitted,

            /s/ Jeffrey R. Hamlin
            Jeffrey R. Hamlin (Va. Bar No. 46932)
            IFRAH PLLC
            1717 Pennsylvania Avenue NW
            Suite 650
            Washington, DC 20006-2004
            (202) 524-4140 – Tel.
            (202) 524-4141 – Fax
            jhamlin@ifrahlaw.com

            *Counsel for Plaintiff Navient Solutions, LLC*