**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| NAVIENT SOLUTIONS, LLC, | |
| Plaintiff, | |
| v. | |
| THE LAW OFFICES OF JEFFREY LOHMAN, ET AL., | Civil Action No. 1:19-cv-00461 |
| Defendants. | |

**DEFENDANTS JEFFREY LOHMAN AND THE LAW OFFICES OF JEFFREY LOHMAN'S MEMORANDUM IN SUPPORT OF THEIR POST-TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

**I.   THE COURT SHOULD DIRECT ENTRY OF JUDGMENT AS A MATTER OF LAW IN FAVOR OF THE LOHMAN DEFENDANTS** . . . . . . . . . . . . . 4

    A.  Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  The Court Erred When It Denied the Lohman Defendants' Motion for a Directed Verdict; All of Navient's Claims Against the Lohman Defendants Were Barred by the First Amendment; There Was No Evidence or Inference that the Lohman Defendants Engaged in Sham Litigation. . . . . . . . . . . . . . . . . . . . . . . . 5

        1.  **What Constitutes Sham Litigation?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.  **Pursuant to *PREI*, the Lohman Defendants Did Not Engage in Sham Litigation.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.  **Pursuant to *Cal. Motor Transp. Co.*, the Lohman Defendants Did Not Engage in Sham Litigation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            *a.  There was no Evidence that the Lohman Defendants' TCPA Claims Barred or Impeded Navient's Access to any Governmental Process.* . . . . . . . . . . 11

            *b.  The Unrefuted Evidence Established that the Merits of the TCPA Claims Were Very Important to the Lohman Defendants.* . . . . . . . . . . . . . . . . . . 11

            *c.  The Lohman Defendants' TCPA Claims Experienced Significant Success* . . . . . 13

    C.  Even if the Lohman Defendants Were Not Protected by the First Amendment, There Was No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find that the Lohman Defendants Were Liable Under Any of Navient's Claims . . . . . . 16

        1.  **The Lohman Defendants are Entitled to Judgment as a Matter of Law on Navient's Fraud Claim Because Navient Presented no Evidence of Detrimental Reliance.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2.  **The Lohman Defendants are Entitled to Judgment as a Matter of Law on Navient's Tortious Interference Claim.** . . . . . . . . . . . . . . . . . . . . . 18

        3.  **The Lohman Defendants are Entitled to Judgment as a Matter of Law on Navient's RICO claims.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            *a.  Any Marketing Materials Mailed or Wired by the Purposed Enterprise Did Not Proximately Injure Navient.* . . . . . . . . . . . . . . . . . . . . . . . . 20

i

b.  *All of Navient's Damages Were Caused by Settlements Paid to Resolve TCPA Claims Brought by the Lohman Defendants and Those Settlements Were Not the Result of any Racketeering Activity* . . . . . . . . . 21

    i.  **The Lohman Defendants' Litigation Activities Did Not Violate the Mail or Wire Fraud Statutes** . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    ii.  **Even if the Lohman Defendants' Activities Violated the Mail or Wire Fraud Statutes, Navient Was the Direct Cause of Its Own Injuries** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

4.  **As a Matter of Law, Navient Expressly Waived Its Attorneys' Fees and Costs When It Entered Settlement Agreements with the Lohman Defendants' Clients** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**II.  IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL** . . . . . . 28

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

*Cases*

*A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183 (4th Cir. 2002). . . . . . . 6

*Baucom v. DoALL Company*, 844 Fed.Appx. 602 (4th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . 29

*Bentley v. Legent Corp.*, 849 F. Supp. 429, 434 (E.D. Va. 1994),
    *aff'd*, 50 F.3d 6 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) . . . . . . . . . . . . . . . . . . . 6-15

*Chaves v. Johnson*, 335 S.E.2d 97 (Va. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Chevron Corp. v. Donziger*, 974 F. Supp.2d 362 (S.D.N.Y. 2014),
    *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2268 (2017). . . . . . . . . . . . . . 22

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*CSX Transp., Inc. v. Gilkison*, 2012 WL 1598081 (N.D. W. Va. May 3, 2012) . . . . . . . . . . . . . 8

*CSX Transp., Inc. v. Peirce*, 974 F. Supp.2d 927 (N.D. W. Va. 2013). . . . . . . . . . . . . . . . . . . . . 22

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639 (4th Cir. 2002). . . . . . . . . . . . . . . . 29

*DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704 (Va. 2009) . . . . . . . . . . . . . 18

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). . . . . . . . . . . . 6

*Ellis v. Jackson*, 319 F. Supp.3d 23 (D.D.C. 2018), *aff'd*, 850 Fed. Appx. 6 (D.C. Cir. 2021) . . 24

*Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276 (4th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . 30

*Facebook v. Duguid*, 141 S. Ct. 1163 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Firestone v. Galbreath*, 976 F.2d 279 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fontenot v. Taser International, Inc.*, 736 F.3d 318 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . 5

*Fry v. Rand Construction Corp.*, 964 F.3d 239 (4th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gager v. Dell Fin. Serv., LLC*, 727 F.3d 265 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015),
    *cert. denied*, 136 S.Ct. 2451 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999) . . . . . . . . . . . . . . . 17

*Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003) . . . . . . . . . . . . . . . . 6

*In re Hass*, 273 B.R. 45 (Bankr. S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Humira (Adallmumab) Antitrust Litig.*, 465 F. Supp.3d 811 (N.D. Ill. 2020) . . . . . . . . . . 14

*In re REMEC Inc. Sec. Litigit.*, 702 F. Supp.2d 1202 (S.D. Cal. 2010). . . . . . . . . . . . . . . . . . . 29

*Jacovetti Law, P.C. v. Everett*, 2020 WL 5211034 (E.D. Pa. Sept. 1, 2020) . . . . . . . . . . . . . . . 22

*J.D. Edwards & Co. v. Podany*, 168 F.3d 1020 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kaiser Found. Health Plan, Inc. v. Abbott Lab. Inc.,* 552 F.3d 1033 (9th Cir. 2009) . . . . . . . . . 14

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kinetica Partners, LLC v. U.S. Dep't of the Interior*, 505 F. Supp.3d 653 (S.D. Tex. 2020) . . . 24

*Lewis-Gale Med. Ctr., LLC v. Alldredge,* 710 S.E.2d 716 (Va. 2011). . . . . . . . . . . . . . . . . . . . 19

*Malibu Media, LLC v. Doe*, 238 F. Supp.3d 638 (M.D. Pa. 2017) . . . . . . . . . . . . . . . . . . . . 14-15

*Massaro v. Vernitron Corp.*, 559 F. Supp. 1068 (D. Mass. 1983) . . . . . . . . . . . . . . . . . . . . . . . 29

*PNC Bank, N.A. v. Dominion Energy Mgmt., Inc.*, 2018 WL 1768061
    (E.D. Va. April 12, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). . . . 4

*Professional Real Estate Inv., Inc. v. Columbia Pictures Ind., Inc. I*, 508 U.S. 49 (1993). . . . 6-15

*Reyes v. Lincoln Automotive Fin. Serv.*, 861 F.3d 51 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . 12, 15

*Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp.2d 732 (N.D. Ill. 2012) . . . . . . . . . . 14

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489 (4th Cir. 2018). . . . . . 20-21

*Sony Music Entertainment v. Cox Comm., Inc.*, 464 F. Supp.3d 795 (E.D. Va. 2020) . . . . . . . . . 5

*St. Germain v. Howard*, 556 F.3d 261 (5th Cir.), *cert. denied*, 557 U.S. 920 (2009) . . . . . . . . . 22

iv

*SunTrust Bank v. Farrar*, 675 S.E.2d 187 (Va. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Szedlock v. Tenet*, 139 F. Supp.2d 725 (E.D. Va. 2001), *aff'd*, 61 Fed.Appx. 88 (4th Cir. 2003) . 4

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
 207 F.Supp.2d 221 (S.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United Mine Wkrs. of Am. v. Pennington*, 381 U.S. 657 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*USS-POSCO Ind. v. Contra Costa Bldg. & Const. Trades Council, AFL-CIO*,
 31 F.3d 800 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. DynCorp Int'l, LLC*, 253 F. Supp. 3d 89 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . 29

*Waugh Chapel South, LLC v. United Food and Comm. Wrkrs. Union Local 27*,
 728 F.3d 354 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-15

*Wheatley v. Wicomico Cnty.*, 390 F.3d 328 (4th Cir. 2004),
 *cert. denied*, 544 U.S. 1032 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Other Authorities**

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 4, 30

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
 Protection Act of 1991, SoundBite Communications, Inc.*,
 27 FCC Rcd. 15391 (Nov. 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jury Instruction No. 34 – Litigaiton Activities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21-22

*Jury Instruction No. 36 – Definition of "Pattern of Racketeering Activity"* . . . . . . . . . . . . . . . 22

*Jury Instruction No. 40 – RICO: Injury by Reason Of the RICO Violation* . . . . . . . . . . . . . 19, 23

*Jury Instruction No. 43 – Elements of Fraud* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jury Instruction No. 44 – Reliance*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jury Instruction No. 46 – Elements of Tortious Interference with Contract or Business
 Expectancy*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jury Instruction No. 47 – Tortious Interference: Justification and Privilege* . . . . . . . . . . . . . . . 19

*Jury Instruction No. 49 – First Amendment Immunity*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jury Instruction No. 52 - Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

v

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Defendants Jeffrey Lohman

and the Law Offices of Jeffrey Lohman ("the Lohman Defendants") submit this memorandum in

support of their motion that the Court direct entry of judgment as a matter of law in favor of the

Lohman Defendants and against Navient Solutions, LLC ("Navient") or, in the alternative, order

a new trial.[1]

As indicated by the parties' summary judgment motions, this dispute has never hinged

upon disputed facts. (*ECF 325*, *ECF 331*, *ECF 360-1*.) The evidence at trial further established

that there were few – if any – material fact disputes, which is why Navient's case-in-chief

consisted primarily of the Defendants' testimony and the testimony of two corporate witnesses

who had never interacted with the Defendants. Because there were so few fact disputes, the

Lohman Defendants rested their defense after presenting about 40 minutes of testimony from Mr.

Lohman. To the extent there were fact disputes, those disputes related to ancillary issues, such as

the scope of the release language in the settlement agreements.

The resolution of this dispute has always hinged upon the application of undisputed facts

to nuanced and complex legal principles, such as whether the Lohman Defendants engaged in

sham litigation, whether the Lohman Defendants' litigation activities were so corrupt that they

violated the mail or wire fraud statutes, or whether Navient was the cause of its own damages.

Because there were no material fact disputes relating to these wholly dispositive issues, this

matter never should have been submitted to the jury. There was never any reasonable basis by

which a jury could find that the Lohman Defendants engaged in sham litigation, that Lohman

---

[1] The Lohman Defendants reassert and incorporate herein all arguments made in support of
their motion for summary judgment (*ECF 361, 388, 401, 423*) and their motions for directed
verdict made at the close of Navient's case-in-chief on August 12, 2021 (*ECF 517*) and at the
end of all evidence on August 13, 2021 (*ECF 519*).

engaged in corrupt litigation activities, or that the Lohman Defendants' acts of racketeering were the direct cause of Navient's injuries. These purely legal issues should have been resolved by the Court. The Lohman Defendants were entitled to summary judgment, the Lohman Defendants were entitled to a directed verdict, and the Lohman Defendants are now entitled to judgment as a matter of law. Fed. R. Civ. P. 50.

At the hearing held on August 2, 2021, the following exchange occurred between the Court and the Lohman Defendants' counsel:

> THE COURT: … [T]he question is are there smoking guns in this case? I seem to recall that there were some, but to the extent there is evidence that the Lohman defendants were basically conjuring up lawsuits that otherwise wouldn't have to occur, all right, if they know about this background as to how the clients were being sent to them, or if the Lohman defendants were filing lawsuits or arbitration proceedings where the borrower hadn't authorized them to do it, I mean, those are the types of indicia of non- -- inappropriate conduct by the attorneys that would support the kind of thing that the plaintiff is arguing.
>
> MR. GRELL: And I understand that is their position. I simply ask that you keep an open mind because there was no connection -- my clients are TCPA lawyers who got a few referrals from one person in this whole marketing group.[2]
>
> My clients were not sending out fraudulent marketing materials. They were not getting money from the GST people. They were not involved in this at all.
>
> They had one guy, David Mise [sic], that they asked, "Hey, have you got clients that are getting phone calls?"
>
> "Yeah, I've got a bunch of Navient people that are getting phone calls." We had no idea where David Mise [sic] got these referrals.

---

[2] The Lohman Defendants continue to assert that the Court erred when it allowed Navient to present an unpled enterprise to the jury. The enterprise pled by Navient was limited to Defendants and did not include Slaughter and Johanson. (*ECF 100* at ¶¶ 297, 316.) Based on the enterprise pled by Navient and that dictated the parties' discovery efforts, Mize was the only member of the enterprise who referred TCPA cases to the Lohman Firm. Regardless of how many referral attorneys there were, the unrefuted evidence established that the Lohman Defendants did not participate in or have knowledge of the marketing materials used by the marketing affiliates and did not share revenue with GST. The Lohman Defendants restate herein the arguments made in their related motions in limine. (*ECF 454, 462.*)

We had nothing to do with that, and he gave us 100-and-some people that were getting phone calls from Navient, and my guy started meeting with these folks, and he knew Navient's reputation. He knew that they were violators of the TCPA.

He didn't have anything to do with this fraudulent marketing campaign, nothing with any of this.

THE COURT: And then -- if that's the case and if that's the picture you paint, then you're going to walk out of this case, all right?

MR. GRELL: Well, I hope so.

(*ECF 506* at 55-56.)

There were no "smoking guns" presented at trial. There was no evidence that the Lohman Defendants participated in or had knowledge of any of the purportedly fraudulent mailers. There was no evidence that the Lohman Defendants shared revenue with any member of the GST group. There was no evidence that the Lohman Defendants made any false statement to Navient or anyone else. There was no evidence that the Lohman Defendants engaged in any corrupt activity, like bribery, that would rise to the level of a mail or wire fraud violation and obviate their First Amendment protections. Navient argued that the Lohman Defendants filed lawsuits without authorization, but the evidence did not support that inference. Mr. Lohman testified that every client entered a retainer agreement (Ex. 2030) that authorized him to file the TCPA claims. Mr. Lohman testified that every client participated in their respective TCPA claim against Navient. Mr. Lohman testified that every client accepted the benefit of the settlement of their respective TCPA claim against Navient. That testimony remains unrefuted. There was no evidence that the Lohman Defendants engaged in anything remotely resembling sham litigation or racketeering activity. Accordingly, there was no evidence that Navient was injured by reason of the Lohman Defendants' acts of racketeering.

3

The Court must remedy the jury's verdict and enter judgment as a matter of law in favor of the Lohman Defendants. Based on the evidence presented at trial, the Lohman Defendants should "walk out of this case." The jury's verdict resulted from its confusion and misunderstanding of complicated legal doctrines that it was not qualified to assess. Had the Court not directed a verdict in favor of Jeremy Branch, there is little doubt that, in their confusion, the jury would have also held Mr. Branch liable. Just as Mr. Branch "walked out of this case," so too should the remaining Lohman Defendants. Like Mr. Branch's conduct, the conduct of the remaining Lohman Defendants should have been assessed by the Court, not the jury. Now, the Court must correct the jury's error and enter judgment as a matter of law in favor of the Lohman Defendants or, in the alternative, grant the Lohman Defendants a new trial.

## I. THE COURT SHOULD DIRECT ENTRY OF JUDGMENT AS A MATTER OF LAW IN FAVOR OF THE LOHMAN DEFENDANTS.

### A. Standard of Review

If "'there is no legally sufficient evidentiary basis' for the verdict, a motion for judgment as a matter of law must be granted." *Szedlock v. Tenet*, 139 F. Supp.2d 725, 729 (E.D. Va. 2001) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996)), *aff'd*, 61 Fed.Appx. 88 (4th Cir. 2003). A court may grant a Rule 50 motion for judgment as a matter of law if "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Bentley v. Legent Corp.*, 849 F. Supp. 429, 434 (E.D. Va. 1994) (quoting Fed. R. Civ. P. 50(a)), *aff'd*, 50 F.3d 6 (4th Cir. 1995). "[I]f the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof," judgment as a matter of law is properly granted. *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004), *cert. denied*, 544 U.S. 1032 (2005) (internal quotation marks omitted). Even if the moving party has the burden on any

4

issue, if the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party, the court must grant the motion. *Sony Music Entertainment v. Cox Comm., Inc.*, 464 F. Supp.3d 795, 808 (E.D. Va. 2020). "If a verdict in favor of the nonmoving party 'would necessarily be based upon speculation and conjecture,' judgment as a matter of law must be entered in the moving party's favor." *Fry v. Rand Construction Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (quoting *Fontenot v. Taser International, Inc.*, 736 F.3d 318, 332 (4th Cir. 2013)).

    B.  <u>The Court Erred When It Denied the Lohman Defendants' Motion for a Directed Verdict; All of Navient's Claims Against the Lohman Defendants Were Barred by the First Amendment; There Was No Evidence or Inference that the Lohman Defendants Engaged in Sham Litigation.</u>

The jury could not have reached its verdict unless it determined that Navient proved by a preponderance of the evidence that the Lohman Defendants engaged in sham litigation and their litigation activities were not shielded by the First Amendment.[3] (*Jury Instruction No. 49.*) Given the lack of any evidence that the Lohman Defendants engaged in sham litigation, the question of First Amendment immunity never should have been submitted to the jury. Navient failed to submit any evidentiary basis for a reasonable jury to conclude that the Lohman Defendants engaged in

---

[3] The Lohman Defendants restate their objection to the Court's verdict form. Among other things, the verdict form was confusing and prejudicial in that it did not require the jury to affirmatively assess the instructions relating to the Lohman Defendants' affirmative defenses and rule on the Lohman Defendants' affirmative defenses, such as First Amendment immunity, by checking a box on the verdict form. Pursuant to the Court's verdict form, the jury only affirmatively ruled on Navient's claims, which placed undue emphasis on those claims and unfairly downplayed the importance of the Lohman Defendants' affirmative defenses. Moreover, the jury could only impose the affirmative defenses and bar the Lohman Defendants' liability by checking "no" as the response to **all** questions of substantive liability, rather than simply checking "yes" to **one** question regarding the application of First Amendment Immunity. The verdict form also failed to make clear that even if Navient proved its claims, the Lohman Defendants' affirmative defenses barred liability. The verdict form added confusion to an already complex case.

5

sham litigation. Because the jury's verdict is not supported by any reasonable evidentiary basis, the Court must grant judgment as a matter of law in favor of the Lohman Defendants.

### 1.  What Constitutes Sham Litigation?

Two competing standards are used by the courts to determine whether litigation is a sham and not protected by the First Amendment. *See United Mine Wkrs. of Am. v. Pennington*, 381 U.S. 657, 670 (1965) and *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).

Courts most commonly apply the two-part test set forth in *Professional Real Estate Inv., Inc. v. Columbia Pictures Ind., Inc. I* ("*PREI*"), 508 U.S. 49, 60 (1993).  Under the *PREI* standard, a court must first determine whether the litigation was "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Id.* "[E]ven litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the baselessness requirement." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003). Successful litigation cannot be characterized as a sham.  *See A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183, 191 (4th Cir. 2002). A court moves to the second factor only if the litigation was objectively baseless. Even objectively baseless litigation is not a sham unless it was also subjectively motivated by an improper purpose. *PREI*, 508 U.S. at 60-61.

Although the *PREI* standard is the standard most commonly used to assess whether litigation is a sham, the Fourth Circuit considers *PREI* "ill-fitted to test whether a series of legal proceedings is sham litigation." *Waugh Chapel South, LLC v. United Food and Comm. Wrkrs. Union Local 27*, 728 F.3d 354, 363 (4th Cir. 2013). Accordingly, when a party allegedly engages in a series of sham legal proceedings, as opposed to a singular proceeding, the Fourth Circuit applies the Supreme Court's opinion in *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S.

6

508, 513 (1972). *Id.* In *Cal. Motor Transp.*, the parties were competing highway carriers operating in California. A new carrier brought a Clayton Anti-trust claim against existing carriers, alleging that existing carriers conspired to monopolize trade by instituting a series of state and federal proceedings to resist and defeat the new carrier's applications to acquire operating rights. 404 U.S. at 509. In other words, the existing carriers used judicial process to interfere with the new carrier's right to obtain the necessarily administrative approvals to become a competitor. The existing carriers asserted that their litigation activities were protected by the First Amendment. The Supreme Court disagreed and held that the existing carriers engaged in sham litigation. Two factors were key to the Supreme Court's decision: (1) the fact that the existing carriers were using litigation "to bar their competitors from adjudicatory tribunals and to usurp [the] decision-making process" that would enable the new carriers to enter the market, and (2) the existing carriers "instituted the proceedings and actions … with or without probable cause, and regardless of the merits of the cases." *Id.* at 512, 515.

Similarly, in *Waugh*, property developers brought suit against several local unions under the Labor Management Relations Act ("LMRA"). The developers alleged that the unions orchestrated 14 separate legal challenges to force the developers to terminate their contract with a non-union supermarket and replace it with a union supermarket that would serve the resulting development. 728 F.3d at 356. The developers claimed that the unions' litigation conduct constituted an illicit "secondary boycott," prohibited by the LMRA. *Id.* The unions claimed that the First Amendment shielded them from liability. *Id.* at 362. The Fourth Circuit disagreed.

Channeling the Supreme Court's reasoning in *Cal. Motor Transp. Co.*, the Fourth Circuit held that when a "defendant is accused of bringing a whole series of legal proceedings," a court should conduct "a holistic evaluation of whether the 'administrative and judicial processes have

7

been abused.'" *Waugh*, 728 F.3d at 363-364 (quoting *Cal. Motor Transp. Co.*, 404 U.S. at 513). Pursuant to this approach, the court noted that "the vast majority of [the unions'] legal challenges failed demonstrably" and that only one suit "could be called successful." *Id.* at 364. The court further emphasized that the hallmark of sham litigation is one party's abusive use of judicial process to bar or interfere with its opponent's access to governmental review, regardless of the merits of the litigation: "[L]egal challenges need only 'harass and deter' [litigants] in their use of administrative and judicial proceedings so as to deny them '*free and unlimited*' access to those tribunals." *Id.* at 366 (court's emphasis) (quoting *Cal. Motor Transp. Co.*, 404 U.S. at 511)).[4]

Regardless of whether the Court applies the standard set forth in *PREI* or *Cal. Motor Transp. Co.*, there was no evidence that the Lohman Defendants engaged in sham litigation. The First Amendment bars all of Navient's claims against the Lohman Defendants, and they are entitled to judgment as a matter of law.

### 2. Pursuant to *PREI*, the Lohman Defendants Did Not Engage in Sham Litigation.

Because the Lohman Defendants' TCPA claims against Navient were not "objectively baseless," the Lohman Defendants did not engage in sham litigation under the *PREI* standard. 508 U.S. at 60. Throughout trial, the Court repeatedly instructed the jury that, at the time the Lohman Defendants filed the TCPA claims, the TCPA legal standards were uncertain and disputed.[5] Navient won claims. The Lohman Defendants won claims. Given the unsettled nature

---

[4] *See also CSX Transp., Inc. v. Gilkison*, 2012 WL 1598081, *1 (N.D. W. Va. May 3, 2012) (denying motion to dismiss RICO claim against lawyers where they allegedly filed "thousands of asbestos cases without regard to their merit").

[5] On at least three occasions, Navient attempted to solicit witness testimony regarding the U.S. Supreme Court's recent decision in *Facebook v. Duguid*, 141 S. Ct. 1163 (2021), in violation of the Court's pretrial orders.  Regardless of the Court's corrective instructions, the jury likely surmised that there must have been some change in the law due to Navient's improper questions.

of the TCPA during the period in dispute, and the fact that the Lohman Defendants won some of the claims they filed, there can be no evidence or inference that the Lohman Defendants engaged in a pattern of filing baseless and repetitive TCPA claims against Navient.

Moreover, in *Waugh,* the Fourth Circuit held that a holistic approach was required to determine whether a party's filing of serial litigation was sham because the initial court may not detect one sham proceeding if it has "no inkling that the action comprised a possible campaign of sham litigation." 728 F.3d at 364. However, with regard to the 76 TCPA cases brought by the Lohman Defendants against Navient, all of the evidence presented at trial established that Navient notified every adjudicator of the Lohman Defendants' alleged unclean hands and "fraudulent manufacture" of TCPA cases. Beginning with its very first briefs filed in September 2017 until June 2019 (Ex. 2128), Navient informed adjudicator after adjudicator that the Lohman Defendants' TCPA claims constituted a possible campaign of sham litigation. For example, in September 2017, Navient's briefs referred to a U.S. House subcommittee's investigation of whether the TCPA was being utilized by "serial plaintiffs or over-incentivized plaintiff's attorneys" to engage in "litigation abuse" and claimed that the Lohman Defendants had "initiated a flood of arbitration proceedings against NSL for alleged violations of the TCPA." (Ex. 2090 at 7, 9.) To the extent adjudicators awarded damages to the Lohman Defendants' clients or otherwise rejected any contention that the Lohman Defendants TCPA claims were objectively baseless, the evidence is unrefuted that the adjudicators were always aware of Navient's claim that the Lohman Defendants were engaged in a campaign of sham litigation.

Given that the Lohman Defendants' TCPA claims were not "objectively baseless," the *PREI* standard does not require consideration of the second step, i.e., whether the Lohman Defendants were motivated by an improper purpose. Even if it did, there is no evidence that the

9

Lohman Defendants' TCPA claims against Navient were subjectively motivated by an improper purpose. *PREI*, 508 U.S. at 60-61. Again, the unrefuted evidence established that the claims against Navient constituted a small percentage of the total number of TCPA claims litigated by the Lohman Defendants, and all of the Lohman lawyers testified that Navient was treated no differently than any other robocaller. Given that the Lohman Defendants' TCPA claims were not "objectively baseless" and were not subjectively motivated by an improper purpose, no reasonable jury could conclude that the Lohman Defendants engaged in sham litigation under the *PREI* standard.[6]

3. **Pursuant to *Cal. Motor Transp. Co.*, the Lohman Defendants Did Not Engage in Sham Litigation.**

The holistic approach to the determination of sham litigation under *Cal. Motor Transp. Co.* focuses on three critical factors: (a) whether the defendant's lawsuits were serial litigation proceedings that attempted to bar or impede an opponent's access governmental processes; (b) whether the defendant filed the proceedings without regard to their merits, and (c) whether the proceedings' success was insignificant. *See Waugh*, 728 F.3d at 363-67; *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180-183 (3d Cir. 2015), *cert. denied*, 136 S.Ct. 2451 (2016). None of the evidence admitted at trial supports any finding of sham litigation under *Cal. Motor Transp. Co.*

---

[6] Even if Lohman's TCPA claims were baseless – which they were not – the jury was instructed that "baseless litigation activities … are not acts of racketeering" that justify a subsequent RICO claim. (*Jury Instruction No. 34.*)

10

     *a.   There was no Evidence that the Lohman Defendants' TCPA*
        *Claims Barred or Impeded Navient's Access to any Governmental*
        *Process.*

There was no evidence to suggest that the Lohman Defendants' goal was to "harass and deter [Navient] in [its] use of administrative and judicial proceedings so as to deny [it] '*free and unlimited*' access to those tribunals." [7] *Waugh*, 728 F.3d at 366 (court's emphasis).  In fact, there is no evidence that the Lohman Defendants in any way interfered with, delayed, or obstructed Navient's access to any court, regulator, or administrative agency.[8]

     *b.   The Unrefuted Evidence Established that the Merits of the TCPA*
        *Claims Were Very Important to the Lohman Defendants.*

The unrefuted evidence presented at trial established that the Lohman Defendants brought every TCPA case with the expectation that it could be won and that they were very concerned about the merits of every claim. Navient's entire claim is that the Lohman Defendants "manufactured" or "built" TCPA claims by causing borrowers to revoke consent, by recording the revocation, by logging phone calls, by not answering Navient's calls, by not logging onto Navient's website, and many other actions. Every action taken by the Lohman Defendants was designed to strengthen the merits of the TCPA claims. If the Lohman Defendants were

---

[7] The Court should note that *Cal. Motor Transp.* may be applicable only in the context of anticompetitive behavior. *USS-POSCO Ind. v. Contra Costa Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) (stating that *Cal. Motor Transp. Co.* applies to a series of litigation proceedings brought "for the purpose of injuring a market rival")).

[8] There is no dispute that the arbitration clauses were standard provisions in the promissory notes signed by the students. (Ex. 683.) If Navient would have preferred to litigate in federal court, as opposed to arbitration, it could have caused the lenders to remove the arbitration clauses from the promissory notes. When claims were filed in federal court, the unrefuted evidence also established that Navient went so far as to move to compel arbitration. (Exs. 2220 – 2221.) Under *Waugh*, the question is whether the Lohman Defendants sought to bar or impede Navient's access to governmental tribunals. There was no evidence that the Lohman Defendants had any influence over whether the promissory notes included arbitration provisions. Either Navient or the lenders determined whether to include arbitration provisions in the notes.

11

unconcerned with the merits of the TCPA claims, and were merely filing the claims to harass Navient, they would not have undertaken all of the tasks necessary to "build" the claims.

The Lohman Defendants' concern about the merits of the litigation is also reflected in Mr. Lohman's emails. Mr. Lohman said he wanted to "win these cases." (Ex. 48.) When one client said he was receiving calls from Navient and logging them, Mr. Lohman replied "[a]wesome" because these circumstances obviously increased the likelihood of the client's success under the TCPA. (Ex. 253.) In another email, Mr. Lohman said, "Navient just keeps calling." (Ex. 256.) Again, the continued calls increased the likelihood of the TCPA claims' success. Other emails evidence the amount of effort put into the TCPA claims by Mr. Lohman and other lawyers at his firm. (Ex. 606, 613, 688, 691, 704, 715, 719.) Mr. Lohman further testified to the substantial out-of-pocket expenses he incurred to finance expert reports and travel for hearings and depositions. If the Lohman Defendants had no regard for the merits of the TCPA claims, they never would have invested so much money in advancing those claims.

Further, Mr. Lohman testified that the Lohman firm dropped claims that it believed lacked merit. (Ex. 696.) Mr. Lohman also testified that his firm dismissed other claims when the merit of those claims was drawn into question by *Reyes v. Lincoln Automotive Fin. Serv.*, 861 F.3d 51 (2d Cir. 2017). (Ex. 2222.) The only evidence that can reasonably be drawn from this evidence is that the Lohman Defendants were concerned about the merits of the TCPA claims, were constantly trying to "build" stronger cases, were always looking for better ways to improve the cases, and were always trying to increase the likelihood of success in each case. Additionally, when testifying about his considerations and concerns when evaluating each case brought against Navient, Mr. Lohman testified that Navient's practice was to bring a counterclaim for the debt owed by the TCPA claimant. It was important for Mr. Lohman to ensure that not only did the clients' claims

12

have merit, but that the damage award would cover the amount of Navient's counterclaim. Mr. Lohman did not want to leave his clients owing money to Navient. There is no evidence or inference that the Lohman Defendants instituted the TCPA claims without regard to the merits of those claims.[9]

   *c. The Lohman Defendants' TCPA Claims Experienced Significant Success.*

The Lohman Defendants' TCPA claims experienced far more than "insignificant success." *Hanover 3201 Realty, LLC*, 806 F.3d at 182.

The evidence admitted at trial established how the 76 TCPA claims brought by the Lohman Defendants against Navient were resolved. (Exs. 910, 2074, 2076, 2078, 2079, 2082, 2171-2182.)

- 20 of those claims were dismissed voluntarily, with Navient consenting to the dismissal. (Ex. 910, 2033, 2092.)

- 47 of the claims were settled before an award was entered. (Ex. 910, 2171-2182.) Although, on the eve of trial, Navient dropped its damage claim relating to 12 TCPA cases settled by Navient after it filed this action on April 15, 2019, those twelve settlement agreements between Navient and the Lohman Defendants were admitted into evidence. (Exs. 2171-2182.)

---

[9] On the other hand, there is ample evidence that Navient instituted this proceeding without regard to its merits. If Navient had been concerned about the merits of this action, it would not have admitted in its complaint that it did not own the promissory notes that were allegedly interfered with (*ECF 100* at ¶ 39), it would have pled a RICO enterprise that made sense (*id.* at ¶¶ 297, 316), it would have pled only one violation of section 1962(c) rather than two duplicative violations of section 1962(c) (*id.* at ¶¶ 294-334), it would have compiled a CD of admitted exhibits when requested by the jury, it would have bothered to review that CD once it was created by the Lohman Defendants, and most importantly, at some point it would have identified at least one false statement made by the Lohman Defendants to Navient or anyone else.

- 5 of the Lohman Defendants' clients received a favorable arbitration award. (Ex. 2074 (McColgan), Ex. 2076 (Deffenbaugh), Ex. 2078 (H. Lewis), Ex. 2079 (Ibarra), Ex. 2082 (Stringham).) Lewis and Stringham later settled after they received arbitration awards.

- 4 of the TCPA claims resulted in awards in favor of Navient. (Ex. 910).

Accordingly, fifty-two of the TCPA claims brought by the Lohman Defendants were successful. These 52 successes are comprised of the 5 arbitration wins and 47 favorable settlements. Courts have consistently held that, when litigation results in a settlement with substantial value to a party, the litigation cannot be found to be sham litigation. *See In re Humira (Adallmumab) Antitrust Litig.*, 465 F. Supp.3d 811, 833 (N.D. Ill. 2020) (stating that "[w]hen a lawsuit terminates in a settlement that provides substantial value to an antitrust defendant accused of initiating that lawsuit as a sham, that lawsuit is objectively reasonable"); *Malibu Media, LLC v. Doe*, 238 F. Supp.3d 638, 645 (M.D. Pa. 2017) (holding that the defendant did not engage in sham litigation where 73 of the 77 cases were settled); *Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp.2d 732, 743 (N.D. Ill. 2012) (a $200,000 settlement paid by the plaintiff to the defendant in the underlying lawsuit was "fatal to the sham litigation argument"). Over two-thirds (52 out of 76) of the TCPA claims brought by the Lohman Defendants against Navient were successful. This win-loss ratio, without any further consideration, dispels any notion that the Lohman Defendants engaged in sham litigation.[10]

---

[10] *See Waugh*, 728 F.3d at 365 (citing *Kaiser Found. Health Plan, Inc. v. Abbott Lab. Inc.,* 552 F.3d 1033, 1046–47 (9th Cir. 2009) (no sham litigation where plaintiffs "won seven of the seventeen suits" and eight of the ten defeats concerned novel or close questions of law); *POSCO,* 31 F.3d at 811 (no sham litigation where fifteen out of twenty-nine suits succeeded); *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,* 207 F.Supp.2d 221, 224 (S.D.N.Y.2002) (no sham litigation where the court allowed "four of the six asserted patents to proceed beyond summary judgment")).

Moreover, no reasonable juror could presume that the 20 voluntary dismissals entered by the Lohman Defendants and Navient evidenced failure by the Lohman Defendants. At trial, two stipulations of voluntary dismissal were admitted into evidence. (Exs. 2033 and 2192.) These dismissals were without prejudice, signed by Navient's attorneys, and either expressly waived or failed to reserve any right to recover costs and attorneys' fees. (*Id.*) Navient submitted no evidence to dispute that it did not voluntarily consent to any dismissal, demanded dismissal with prejudice, or reserved any rights against the Lohman Defendants. Navient also never disputed the Lohman Defendants' testimony that many of the cases were dismissed because of changes in the law (*Reyes*), changes in the facts (e.g., the client reconsented to receive ATDS calls or left the country), or confusion between Navient and Sallie Mae. (Ex. 2222.) None of the dismissals evidence either the Lohman Defendants' success or failure. *See Malibu Media, LLC*, 238 F. Supp.3d at 645 (stating that voluntary dismissals in serial proceedings did not evidence sham litigation); *In re Hass*, 273 B.R. 45, 57 (Bankr. S.D.N.Y. 2002) (before permitting dismissal, a court must be satisfied that the proceeding is not a sham effort). Accordingly, a reasonable juror would exclude the dismissals from consideration of whether the TCPA claims brought by the Lohman Defendants were successful. When the dismissals are excluded, the Lohman Defendants won 52 out of 56 of the TCPA cases, leaving Navient with only four wins. Serial litigation in which 92.86 percent of the litigated claims were successful indisputably establishes that the Lohman Defendants did not engage in sham serial litigation.

In short, regardless of whether the Court applies the sham litigation standard set forth in *PREI* or in *Cal. Motor Transp. Co.*, these was no evidentiary basis for the jury to find that the Lohman Defendants engaged in sham litigation. The Lohman Defendants are entitled to judgment as a matter of law on all claims brought by Navient.

C. Even if the Lohman Defendants Were Not Protected by the First Amendment, There Was No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find that the Lohman Defendants Were Liable Under Any of Navient's Claims.

Regardless of whether the First Amendment barred all of Navient's claims against the Lohman Defendants, no reasonable jury could have concluded that Navient sustained its burden to prove any of its claims. Navient's claims should not have been submitted to the jury. The Court erred when it failed to grant a directed verdict in the Lohman Defendants' favor and to dismiss Navient's claims against them for fraud, tortious interference, and violating the Racketeer Influenced and Corrupt Organizations ("RICO") Act.

**1. The Lohman Defendants are Entitled to Judgment as a Matter of Law on Navient's Fraud Claim Because Navient Presented no Evidence of Detrimental Reliance.**

In order for the jury to find in favor of Navient on its fraud count, the jury was required to determine that, among other things, Navient "detrimentally relied" on a false statement. (*Jury Instruction No. 43.*) Navient had to prove all elements of its fraud claim by "clear and convincing evidence" (*id.*), but there was no evidence that the Lohman Defendants made a false statement to Navient. Navient did not present the testimony of a single corporate witness who had even communicated with the Lohman Defendants. Likewise, there was no evidence that Navient "detrimentally relied" on any statement made by the Lohman Defendants.

The jury was instructed that "[r]eliance is a belief that a representation is true which causes a person to take action he would not otherwise have taken." (*Jury Instruction No. 44.*) Navient never believed in the "truth" of the Lohman Defendants' TCPA claims. The unrefuted evidence at trial is that Navient considered the claims to be fraudulent throughout the time period at issue. On September 7, 2017, Navient filed a brief stating that a Lohman client instructed Navient to stop calling his cell phone two months before Navient started to call him. (Ex. 2089.)

16

On September 22, 2017, Navient filed another brief notifying an arbitrator of a U.S. House subcommittee hearing on "TCPA litigation abuse … involving serial plaintiffs and over-incentivized plaintiff's attorneys." (Ex. 2090 at 7.) Navient further complained that Mize instructed clients to revoke consent under the TCPA, record the revocation, and log all subsequent calls from Navient. (*Id.* at 8.) Navient also claimed that "[w]ithin a period of two months, [the Lohman Defendants] … initiated a flood of arbitration proceedings against NSL for alleged violations of the TCPA, all involving student loan debtors who were 'counseled' by Mr. Mize." (*Id.* at 9.) According to Navient, "borrowers were induced into default with promises of loan 'negotiation' by the very same attorneys here." (*Id.*) Despite making this argument to the arbitrator, Navient lost the arbitration. (Ex. 2074.) Navient made the same argument in a brief dated November 2, 2017, claiming that Mize and the Lohman Defendants "manufactured" the TCPA claim. (Ex. 2093 at 2.)

Navient's claim that it was unaware of all details of the alleged fraud is immaterial. A plaintiff cannot claim that its reliance was reasonable and justified when it makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial inquiry. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999). A party cannot establish reasonable reliance where it had information that would excite the suspicions of a reasonably prudent person. *PNC Bank, N.A. v. Dominion Energy Mgmt., Inc.*, 2018 WL 1768061, *11 (E.D. Va. April 12, 2018).

Moreover, the unrefuted testimony was that Navient submitted approximately 40 briefs in various arbitrations, arguing that the Lohman Defendants' TCPA claims were fraudulently manufactured. On April 15, 2019, Navient filed its RICO claim against the Lohman Defendants, which demonstrated without any doubt that it was on notice of the Lohman Defendants' alleged

fraud. (*ECF 1*.) Yet, despite its demonstrated knowledge of the fraud, Navient continued to settle the TCPA claims that were the product of this alleged scheme. (Exs. 2171-2182.)

There is no evidence – let alone clear and convincing evidence – that Navient detrimentally relied on anything done by the Lohman Defendants. The Lohman Defendants are entitled to judgment as a matter of law on Navient's fraud claim.

### 2. The Lohman Defendants are Entitled to Judgment as a Matter of Law on Navient's Tortious Interference Claim.

It was undisputed at trial that Navient did not own the promissory notes that were allegedly interfered with by the Lohman Defendants. (Ex. 2191.) Navient was required to prove by a preponderance of the evidence that "the breach caused damage to the party whose relationship or expectancy has been disrupted." (*Jury Instruction No. 46.*) Navient, however, stipulated that the loans "are owned by various trusts or other entities for which NSL is the servicer and authorized agent." (Ex. 2191.) So, Navient had no relationship with the student borrowers who the Lohman Defendants purportedly instructed to default on their loans. The notes also did not confer any expectancy upon Navient. Under the servicing agreements, Navient was merely "an independent contractor," it was not even an agent of the trusts who owned the loans. (Ex. 2013 at § 6.15.)  The evidence at trial was unrefuted. Navient was merely a servicer. (Ex. 2013.) As servicer, Navient was entitled to fees regardless of whether borrowers paid. (*Id.* at 8-9, A-1.) Because NSL was not a party to the loans, NSL must prove that the Lohman Defendants acted with the purpose of interfering with Navient's servicing between itself and the lenders. *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 707 (Va. 2009). Navient presented no evidence that the Lohman Defendants knew of Navient's servicing contract with the lenders, let alone intended to interfere with that contract.

Even if Navient owned the loans, which it did not, the Lohman Defendants are still entitled to judgment as a matter of law on Navient's tortious interference claim. A defendant does not tortiously interfere with a contract where the defendant's conduct was justified, that is, where the defendant was legally entitled to perform acts complained of by the plaintiff. (*Jury Instruction No. 47* (relying on *Lewis-Gale Med. Ctr., LLC v. Alldredge,* 710 S.E.2d 716, 722 (Va. 2011).) "The giving of requested advice" is justified, privileged, and cannot constitute grounds for a claim of tortious interference. *Chaves v. Johnson*, 335 S.E.2d 97, 103 (Va. 1985). The Lohman Defendants lost their privilege only if they acted solely to feather their own nest, without believing that (or caring whether) they were helping their clients, and they caused the clients to break a contract to the detriment of lenders. (*Jury Instruction No. 47* (relying on *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1023 (7th Cir. 1999).) There is no evidence that the Lohman Defendants acted "solely to feather their own nest" and without believing that they were helping their own clients. In fact, the unrefuted evidence is that the Lohman Defendants not only cared about helping their clients but did help their clients. The Lohman Defendants' clients received $1,838,630.84 or an average of $28,728.61 per client. (Ex. 910, 2074, 2076, 2079.) The Lohman Defendants' conduct was justified, and they are entitled to judgment as a matter of law on Navient's tortious interference claim.

### 3. The Lohman Defendants are Entitled to Judgment as a Matter of Law on Navient's RICO claims.

Regardless of thei First Amendment immunity, the Lohman Defendants are also entitled to judgment as a matter of law on Navient's RICO claims because there was no evidence that the acts of mail and wire fraud were the proximate cause of injury to Navient.

In order to render a verdict in favor of Navient, the jury was required to determine that the acts of racketeering were themselves the cause of Navient's injury. (*Jury Instruction No. 40.*)

19

Acts of racketeering are the proximate cause of an injury only if there is some direct relationship between the acts and the harm to the plaintiff. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)). The general tendency of the law, with regard to damages at least, is not to go beyond the first step. *Id.; Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018).

      a. *Any Marketing Materials Mailed or Wired by the Purposed Enterprise Did Not Proximately Injure Navient.*

Even if the Lohman Defendants operated and managed a purported enterprise that distributed false marketing materials to student borrowers – which they did not do – those purportedly false materials did not directly injure Navient. At most, the evidence at trial established that false or deceptive marketing materials were distributed by members of the enterprise to student borrowers. In reliance on these materials, the student borrowers quit paying their loans serviced by Navient, destroyed their credit scores, and paid GST, Mize, Slaughter, and Johanson for non-existent legal services. Drawing all inferences in favor Navient with regard to these purportedly false marketing materials, all of these instances of mail or wire fraud directly injured the students – not Navient. It was the students who were lied to. It was the students whose credit was destroyed when they defaulted on their loans. It was the students who paid money in reliance on the purported fraud. Any injury that Navient sustained was indirect. Navient was only injured to the extent that students enrolled in the debt negotiation program and further decided to pay GST, Mize, Slaughter, and Johanson rather than Navient. However, Navient has never made a demand for such damages. Instead, all of Navient's claims for damages stem from its own decision to continue to robocall some of the borrowers after the borrowers revoked their consent under the TCPA. (Ex. 910.)

20

Even if harm to Navient was foreseeable, Navient's injuries were still indirect and non-recoverable under RICO.

> … [R]egardless of how foreseeable a plaintiff's claimed injury might be or even what motive underlaid the conduct that caused the harm, the injury for which a plaintiff may seek damages under RICO cannot be contingent on or derivative of harm suffered by a different party.

*Slay's Restoration, LLC,* 884 F.3d at 494. Because the purportedly fraudulent marketing materials directly harmed the students, and not Navient, Navient has no standing to recover on the basis of those materials. A plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person stands at too remote a distance to recover under RICO. *Holmes*, 503 U.S. at 268-69.

> b. *All of Navient's Damages Were Caused by Settlements Paid to Resolve TCPA Claims Brought by the Lohman Defendants and Those Settlements Were Not the Result of any Racketeering Activity.*

Knowing that it cannot recover for any harm suffered by the students, Navient did not claim it was damaged by the purportedly fraudulent marketing materials. All of the damages claimed by Navient were the direct result of money paid by Navient to resolve the TCPA litigation brought by the Lohman Defendants against Navient. (Ex. 910.) None of these damages were caused by violations of mail and wire fraud statute. None of these injuries were caused by any defendant. Navient's injuries were caused by Navient's own business decisions.

> i. **The Lohman Defendants' Litigation Activities Did Not Violate the Mail or Wire Fraud Statutes.**

Based on the evidence, no reasonable jury could have found that the Lohman Defendants' litigation activities violated the mail or wire fraud statutes. The jury was instructed that "litigation conduct does not constitute a scheme to defraud" prohibited by the mail and wire fraud statutes unless it was "corrupt activity like bribing a witness or parties." (*Jury Instruction*

21

*No. 34*.) The Court's instruction was well-supported. *See, e.g., Jacovetti Law, P.C. v. Everett*, 2020 WL 5211034, *3 (E.D. Pa. Sept. 1, 2020) (incorrect allegations in a TCPA action did not constitute a scheme to defraud in the "absence of corrupt activity like bribing a witness or parties"); *Kim v. Kimm*, 884 F.3d 98, 103-04 (2d Cir. 2018) (affirming dismissal of RICO complaint because even if the attorney knowingly submitted four fraudulent declarations "intended to persuade the court to rule in favor of" his client, the litigation activities "could not provide a basis for predicate acts under Section 1962(c)"); *CSX Transp., Inc. v. Peirce*, 974 F. Supp.2d 927, 942 (N.D. W. Va. 2013) (the lawyers' litigation activities were corrupt and constituted mail fraud where they had "fraudulently manufactured" medical reports to support their claims that their clients were injured by occupational exposures to asbestos); *Chevron Corp. v. Donziger*, 974 F. Supp.2d 362, 432-33 502-35 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2268 (2017) (an attorney engaged in racketeering by, among other things, bribing an expert witness and a foreign judge to enter judgment against the opposing party); *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir.), *cert. denied*, 557 U.S. 920 (2009) (the attorney's performance of unauthorized work was "at worst [a] violation[] of the rules of professional responsibility" but not an act of racketeering).

There was no evidence that the Lohman Defendants engaged in any type of "corrupt activities" that could possibly constitute a violation of the mail or wire fraud statutes. Based on the evidence presented at trial, the jury could conclude that the Lohman lawyers told potential clients that the firm could only help them if they "fell behind on their payments." (Ex. 47.) However, even assuming that statement is somehow unlawful, it does not rise to the level of corruption necessary to constitute wire fraud, and one statement cannot possibility constitute a pattern of wire or mail fraud. (*Jury Instruction No. 36*.) The TCPA claims brought by the

22

Lohman Defendants were necessarily based on the fact that their clients did not consent to receive ATDS calls on their cell phones, and the Lohman Defendants admittedly advised clients to revoke their consent to receive ATDS calls. But even Mr. Standish testified that a borrower has the right to revoke his/her consent to receive ATDS calls at any time for any reason. *See also, Gager v. Dell Fin. Serv., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) (holding that "the TCPA provides consumers with the right to revoke prior express consent to be contacted on cellular phones by autodialing systems") (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012)). If borrowers had the right to revoke consent to receive ATDS calls, then the Lohman Defendants certainly did not engage in corrupt activity by advising them of that right and helping them to exercise that right. With regard to any other actions taken by the Lohman Defendants, such as recording client revocation calls, logging calls, or advising clients not to answer calls, Navient failed to present any expert testimony or any other evidence to establish that the Lohman Defendants' activities were unethical, improper, or unlawful in anyway, let alone corrupt.

There was no evidentiary basis for the jury to find that the Lohman Defendants engaged in "corrupt activity like bribing a witness or parties." Given that lack of any such evidence, the jury could not reasonably find that the Lohman Defendants violated the mail or wire fraud statutes. Because the Lohman Defendants did not violate the mail or wire fraud statutes, Navient could not have been injured by acts of mail or wire fraud. (*Jury Instruction No. 40.*) Even if jury believed that the Lohman Defendants' TCPA litigation was wrongful in some abstract way, a defendant does not violate the RICO statute, and is not liable for damage under the RICO statute, for wrongful conduct that does not constitute an act of racketeering. (*Id.*) There was no basis for

23

the jury's finding that the amounts paid by Navient to resolve the TCPA claims brought by the Lohman Defendants were the direct result of any act of mail or wire fraud or any violation of section 1962. The Lohman Defendants are entitled to judgment as a matter of law.

### ii. Even if the Lohman Defendants' Activities Violated the Mail or Wire Fraud Statutes, Navient Was the Direct Cause of Its Own Injuries.

The Lohman Defendants are not liable for injuries caused by Navient's own conduct. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019); *see also Kinetica Partners, LLC v. U.S. Dep't of the Interior*, 505 F. Supp.3d 653, 668 (S.D. Tex. 2020) ("[b]ut for" causation will not suffice if a plaintiff's injury is self-inflicted); *Ellis v. Jackson*, 319 F. Supp.3d 23, 32 (D.D.C. 2018), *aff'd*, 850 Fed. Appx. 6 (D.C. Cir. 2021) (self-inflicted injuries sever the causal nexus needed to establish standing"). At trial, the unrefuted evidence established that all of Navient's injuries were self-inflicted.

First, all parties agreed that, after a borrower withdraws consent to receive ATDS calls, any ATDS call to the borrower's cell phone is a violation of the TCPA. Navient argued, however, that based on its interpretation of the law, it never utilized an ATDS, so it could continue to robocall the borrowers even after they revoked consent. Navient chose to run the risk that *its* interpretation of what constituted an ATDS and *its* determination that it did not use an ATDS would be rejected by adjudicators. The jury was repeatedly instructed that, during the period in question, the definition of what constituted an ATDS was uncertain and disputed. Sometimes Navient won that debate. (Ex. 910.) Sometimes the Lohman Defendants won that debate. (Exs. 2074, 2076, 2078, 2079, 2082.) Given the unsettled nature of the law, Navient chose to run the risk of losing the argument that it did not use an ATDS. Nobody forced Navient to run that risk. As Mr. Lohman testified, most creditors simply quit robocalling cell phones after

24

a debtor withdraws their consent. If there are no robocalls to cell phones, then there is no potential liability under the TCPA, no lawsuit, no damages, and – in the context of this case – no subsequent RICO claim to recoup the damages incurred to resolve the TCPA claim. Navient's entire chain of causation in this case depended upon Navient's choice to continue robocalling debtors' cell phones despite the uncertain definition of an ATDS. As the evidence established at trial, the one thing the Lohman Defendants could not "manufacture" were Navient's robocalls to debtors' cell phones. Because Navient chose to robocall debtors' cell phones after they revoked consent, Navient's choice is the sole cause of all damages sought in this case.

Second, Mr. Standish testified that Navient was never duped by the Lohman Defendants' alleged scheme. As noted earlier, Navient filed 40 briefs that described the alleged scheme. It began filing these briefs as early as September 2017. (Exs. 2089, 2090.) Navient continued to settle the Lohman Defendants' TCPA claims even after it brought its complaint in this action. (Exs. 2128, 2171-2182.) No reasonable juror could find that Navient was fraudulently induced to enter into any settlement agreement or that Navient failed to notify the adjudicators of its claim that the Lohman Defendants were fraudulently "manufacturing" the TCPA lawsuits. Mr. Standish testified that Navient settled the claims not because it was fraudulently induced, but because it was cheaper the settle the cases than to defend them. By making this choice, Navient again severed the chain of causation between the Lohman Defendants' litigation activities and the damages it incurred. The jury could only speculate about whether Navient made the right choice, i.e., whether in the absence of Navient's decision to settle, Navient's damages in this case would have been more or less than the damages it claims. Mr. Standish also acknowledged that Navient started to formulate its RICO claim against the Lohman Defendants in 2018. After Navient decided to sue the Lohman Defendants, it lost any incentive to mitigate damages. Any

25

settlement it paid was just additional damages it would seek under RICO. The Lohman

Defendants cannot be held liable for damages that Navient inflicted on itself.

Finally, to the extent Navient settled cases by forgiving loan debt, there is no evidence

that Navient was directly injured when the loans were forgiven. Navient stipulated that it does

not own the loans. (Ex. 2191.) At most, Mr. Standish and Mr. Reinhart testified that Navient has

a residual interest in the trusts that own the loans. This same situation was presented in *Firestone*

*v. Galbreath*, 976 F.2d 279 (6th Cir. 1992), the plaintiffs were the grandchildren from their

grandmother's first marriage. The grandchildren were the beneficiaries of a residual trust created

by her will. *Id.* at 281. The plaintiffs alleged that the family of their grandmother's second

husband looted her estate during her lifetime and thereby defrauded the grandchild of the value

of their residual trust. *Id.* at 282. The court dismissed the grandchildren's RICO claim:

> … The Grandchildren allege that by stealing from their grandmother during her lifetime, the defendants decreased the size of [the grandmother's] estate, and consequently the size of their inheritance. This is only an indirect injury because any harm to the Grandchildren flows merely from the misfortunes visited upon [the grandmother] by the defendants…. Consequently, the Grandchildren lack standing to bring an individual RICO claim, and the district court correctly dismissed it.

*Id.* at 285. Like the Grandchildren in *Galbreath*, NSL erroneously equates "actual monetary loss"

with "direct injury." To the extent the Lohman Defendants caused the borrowers to default, or

caused loans to be forgiven, the "various trusts" -- not Navient -- suffered the direct injury. The

indirect injury to Navient's residual interest does not confer civil standing under RICO.

In short, Navient's choice to continue to robocall borrowers' cell phones after they

revoked consent, and Navient's choice to settle cases rather than litigate the them, were the direct

cause of all damages sought in this case. Because Navient's damages were not caused by reason

of a violation of section 1962, the Lohman Defendants are entitled to judgment as a matter of law

on Navient's RICO claims. At a minimum, the Lohman Defendants are entitled to judgment as a

26

matter of law on Navient's damages arising out of forgiven debt. The trusts – not Navient - were directly injured by the unpaid or forgiven debt.

### 4. As a Matter of Law, Navient Expressly Waived Its Attorneys' Fees and Costs When It Entered Settlement Agreements with the Lohman Defendants' Clients.

A party waives its right to recovery when (a) it had knowledge of the facts basic to the exercise of the right, and (b) intended to relinquish the right. (*Jury Instruction No. 52.*)  When it entered settlement agreements with the Lohman Defendants' clients, Navient waived its right to recover the attorneys' fees it seeks as damages in this action.

Thirty-five[11] of the settlement agreements that resolved the underlying TCPA claims appearing on Navient's damage chart (Ex. 910) included the following provision:

> Each Party shall bear its own costs and attorneys' fees in connection with the Action and this Agreement, and the Parties waive and release any claims they otherwise have or may have had to such costs and attorneys' fees.[12]

There is no dispute that Navient was a party to the settlement agreements. Navient's repeated claim that the Lohman Defendants fraudulently manufactured the TCPA claims demonstrates that, at the time it entered these agreements, Navient had knowledge of the facts basic to a claim

---

[11] Only two settlement agreements did not contain a waiver of fees and costs: Alkazian (Ex. 2152) and Smugala (Ex. 2140).

[12] (Ex. 2144 at ¶ 10 (Anicete); Ex. 2218 at ¶ 9 (Arndts); Ex. 2129 at ¶ 8 (Centrella); Ex. 2138 at ¶ 9 (Chorba); Ex. 2146 at ¶ 10 (Collier); Ex. 2130 at ¶ 9 (Crawford); Ex. 2145 at ¶ 10 (Cummings); Ex. 2151 at ¶ 10 (Fine); Ex. 2142 at ¶ 10 (Frazier); Ex. 2132 at ¶ 10 (Givens); Ex. 2168 at ¶ 12 (Godard); Ex. 2135 at ¶ 10 (Grecco); Ex. 2137 at ¶ 9 (Hernandez); Ex. 2133 at ¶ 10 (Impresso); Ex. 2139 at ¶ 10 (Lam); Ex. 2161 at ¶ 9 (Lewis); Ex. 2148 at ¶ 11 (Lopez); Ex. 2147 at ¶ 8 (Lostaglio); Ex. 2143 at ¶ 11 (Mendoza); Ex. 2166 at ¶ 8 (Murphy); Ex. 2149 at ¶ 10 (Myers); Ex. 2150 at ¶ 10 (Natoli); Ex. 2157 at ¶ 11 (Ozaki); Ex. 2160 at ¶ 10 (Pohl); Ex. 2156 at ¶ 11 (Ramos); Ex. 2154 at ¶ 12 (Santiago); Ex. 2141 at ¶ 10 (Schulz); Ex. 2131 at ¶ 10 (V. Smith); Ex. 2155 at ¶ 9 (C. Smith); Ex. 2163 at ¶ 9 (J. Smith); Ex. 2165 at ¶ 8 (Stringham); Ex. 2169 at ¶ 11 (Wert); Ex. 2159 at ¶ 9 (Whitaker); Ex. 2170 at ¶ 10 (Whitmore); Ex. 2134 at ¶ 10 (Wunderlich).

for sanctions or attorneys' fees against the Lohman Defendants. (Exs. 2089, 2090, 2093, 2128.) The language of the settlement agreements could not more clearly and unambiguously state that "the Parties waive and release any claims they otherwise have or may have had to such costs and attorneys' fees," evidencing that Navient intended to relinquish any right to recover attorneys' fees. Because it was a "Party" to the settlement agreement, no reasonable juror could conclude that the waiver did not apply to Navient.[13]

The total amount of attorneys' fees sought pursuant to these 35 TCPA claims is $899,824.87. There was no reasonable basis for the jury to find that Navient was entitled to recover its attorneys' fees against the Lohman Defendants. The damages awarded by the jury to Navient and against the Lohman Defendants should be remitted by $899,824.87.

## II. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL.

If the Court does not grant judgment as a matter of law in favor of the Lohman Defendants, the Lohman Defendants respectfully request that the Court grant a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A) for many of the reasons set forth above. A new trial may be granted when "1) the verdict is against the clear weight of the evidence, . . . or 3) will result in a miscarriage of justice, even though there may be substantial evidence which

---

[13] The settlement agreements also expressly inured to the benefit of Lohman as an attorney to a Party. (Ex. 2144 at ¶ 15 (Anicete); Ex. 2218 at ¶ 14 (Arndts); Ex. 2129 at ¶ 13 (Centrella); Ex. 2138 at ¶ 15 (Chorba); Ex. 2146 at ¶ 16 (Collier); Ex. 2130 at ¶ 15 (Crawford); Ex. 2145 at ¶ 15 (Cummings); Ex. 2151 at ¶ 16 (Fine); Ex. 2142 at ¶ 15 (Frazier); Ex. 2132 at ¶ 16 (Givens); Ex. 2168 at ¶ 17 (Godard); Ex. 2135 at ¶ 15 (Grecco); Ex. 2137 at ¶ 15 (Hernandez); Ex. 2133 at ¶ 15 (Impresso); Ex. 2139 at ¶ 15 (Lam); Ex. 2161 at ¶ 14 (Lewis); Ex. 2148 at ¶ 17 (Lopez); Ex. 2147 at ¶ 13 (Lostaglio); Ex. 2143 at ¶ 17 (Mendoza); Ex. 2166 at ¶ 13 (Murphy); Ex. 2149 at ¶ 16 (Myers); Ex. 2150 at ¶ 16 (Natoli); Ex. 2157 at ¶ 17 (Ozaki); Ex. 2160 at ¶ 16 (Pohl); Ex. 2156 at ¶ 17 (Ramos); Ex. 2154 at ¶ 17 (Santiago); Ex. 2141 at ¶ 16 (Schulz); Ex. 2131 at ¶ 15 (V. Smith); Ex. 2155 at ¶ 14 (C. Smith); Ex. 2163 at ¶ 14 (J. Smith); Ex. 2165 at ¶ 14 (Stringham); Ex. 2169 at ¶ 16 (Wert); Ex. 2159 at ¶ 14 (Whitaker); Ex. 2170 at ¶ 15 (Whitmore); Ex. 2134 at ¶ 15 (Wunderlich).

would prevent the direction of a verdict." *Baucom v. DoALL Company*, 844 Fed.Appx. 602, 606 (4th Cir. 2021); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 650 (4th Cir. 2002). In the present case, Navient presented a convoluted case at trial which did nothing to establish any liability on behalf of either Mr. Lohman or his law firm. To the contrary, as discussed above, the unrefuted evidence established that the Lohman Defendants engaged in legitimate litigation activity calculated to provide a benefit to their clients. The jury's verdict against the Lohman Defendants has a chilling effect on legitimate consumer protection litigation against large corporations.

The damages awarded by the jury make clear that the jurors were confused about the law and its application to these facts adduced at trial.[14] There is no factual basis for an award to Navient of any of the monetary amounts chosen by the jury, whether it be the $50,000 awarded against each of the individual GST defendants, the $100,000 awarded against Mr. Lohman, the $860,000 awarded against GST, or the $1,416,500 awarded against the Law Offices of Jeffrey Lohman, P.C.[15] The only numbers that were before the jury were $3 million that was argued by

---

[14] This confusion was exacerbated when the Court permitted Plaintiff's rebuttal expert to testify even though the Court conceded that "there was nothing to rebut." Prior to this testimony, there was no "evidence" of the reasonableness of Plaintiff's attorneys' fees. Even after this testimony, there was no such evidence for any of the jurisdictions in which any of the Lohman arbitrations or lawsuits had been filed. As a result, the Court should either strike Plaintiff's claim in its entirety or award a new trial because of this improper testimony.

[15] After the jury began deliberations, it requested further instruction on how to assess the fraudulent intent of a legal entity. The Court erred by failing to provide appropriate guidance to the jury. *See, e.g., United States v. DynCorp Int'l, LLC,* 253 F. Supp. 3d 89, 103 (D.D.C. 2017) (stating that "actual knowledge possessed by individual company employees" or a conclusion that "the company acted recklessly" based on "the actions of employees or [the company's] systems and structure" would be sufficient to establish the corporation's fraudulent intent); *In re REMEC Inc. Sec. Litigit.*, 702 F. Supp.2d 1202, 1259 (S.D. Cal. 2010) (stating that a "corporate defendant's scienter is necessarily derived from its employees…. [W]hen there is no evidence that an individual acted with intent to commit … fraud, the corporate entity is not liable"); *Massaro v. Vernitron Corp.*, 559 F. Supp. 1068, 1077 (D. Mass. 1983) (proof that the corporate

Plaintiff's counsel (which had no evidentiary basis) and the damages chart entered into evidence as Exhibit 910. None of this evidence or even argument supports any of these figures entered by the jury on its verdict forms. *See Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276, 284 (4th Cir. 2021) ("A jury cannot faithfully complete its task when there is no evidence whatsoever of actual harm sufficient to support the damages award"); *SunTrust Bank v. Farrar*, 675 S.E.2d 187, 190-191 (Va. 2009) (plaintiff has "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery'"). As a result, this Court must conclude that the jury failed to follow its instructions and the evidence and must award a new trial unless it enters judgment for Lohman under Rule 50.

Moreover, if the Court does not enter judgment for the Lohman Defendants, the Court should either award a new trial or insist that Plaintiff accept a remittitur in the amount and for the reason stated in Section I.C.4 above.

## CONCLUSION

For all of the forgoing reasons and for all of the reasons set forth in the Lohman Defendants' summary judgment briefs (*ECF 361, 388, 401, 423*) and for all reasons stated at the close of Plaintiff's case-in-chief (*ECF 517*), which are expressly incorporated herein, the Lohman Defendants' motion for judgment as a matter of law should be granted.

---

officers knew the statements were false when they made them was sufficient to establish the corporation's scienter). If the jury had been properly instructed, the jury could not have reasonably entered different damages against the legal entities versus the individual defendants. The jury's nonsensical damage awards evidence the jury's confusion, and the need for a new trial if judgment is not granted as a matter of law.

30

DATED:  September 1, 2021                    Respectfully submitted,

                                           /s/ Thomas F. Urban II
                                           Thomas F. Urban II, VSB No. 40540
                                           FLETCHER, HEALD & HILDRETH, PLC
                                           1300 North 17th Street, Suite 1100
                                           Arlington, VA 22209
                                           (703) 861-5235 FAX (703) 812-0486
                                           Urban@fhhlaw.com

                                           Jeffrey E. Grell (pro hac vice)
                                           GRELL FEIST PLC
                                           825 Nicollet Mall, Suite 625
                                           Minneapolis, MN 55402
                                           (612) 353-5530 -Tel.
                                           jgrell@grellfeist.com

                                           *Counsel for The Law Offices of Jeffrey Lohman, P.C., Jeffrey Lohman, and Jeremy Branch*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, I electronically filed the Memorandum in Support of the Lohman Defendants' Motion for Judgment as a Matter of Law or, in the alternative, New Trial, which will send a notification of such filing (NEF) to the following counsel of record:

Jeffrey R. Hamlin
George R. Calhoun V
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006-2004
jhamlin@ifrahlaw.com
george@ifrahlaw.com

*Counsel for Plaintiff Navient Solutions, LLC*

                                           /s/ Thomas F. Urban II

31