UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Navient Solutions, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>The Law Offices of Jeffrey Lohman, a Professional Corporation; et al.<br><br>                Defendants. | Civil Action No. 1:19-cv-00461 LMB-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF RULE 50 MOTION
FOR JUDGMENT AS A MATTER OF LAW IN A JURY TRIAL**

Defendants GST Factoring, Inc. ("GST"), Gregory Trimarche ("Trimarche"), and Rick Graff ("Graff"), collectively "the GST Defendants," by counsel, pursuant to Rule 50 of the Federal Rules of Civil Procedure, hereby respectfully renew their motion made at the close of Plaintiff's evidence at jury trial, renewed at the close of Defendants' evidence, and renewed at the close of Plaintiff's rebuttal case. The GST Defendants hereby respectfully incorporate by reference all authorities, case law, factual recitations, and arguments set forth in the Lohman Defendants' Memorandum of Law filed in support of their Rule 50 motion.

**I.**    **Standard on Rule 50**

Rule 50(a)(1) of the Federal Rules of Civil Procedure states in relevant part: "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party…." Rule 50(b) states that after trial "the movant may file a renewed motion for judgment as a matter of law…." And pursuant to Rule 50(b)(3) this Court "may direct the entry of judgment as a matter of law."

The Fourth Circuit has consistently held that "[i]f a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). The Fourth Circuit confirmed this at length on August 20, 2021, the very same date the jury in this case was allowed to submit a baseless, incoherent, and inconsistent verdict.

> Rule 50(b) permits a party to bring a renewed motion for judgment as a matter of law after the jury has rendered its verdict. If that motion is denied, the moving party is entitled to assert those same arguments on appeal, Fed. R. Civ. P. 50(e), and our subsequent review is de novo, *Sloas v. CSX Transp., Inc.*, 616 F.3d 380, 392 (4th Cir. 2010). In our analysis, we must view the evidence in the light most favorable to the nonmoving party, *id.*, without weighing it or making any credibility determinations, *Chaudhry v. Gallerizzo*, 174 F.3d 394, 404-05 (4th Cir. 1999). Our task is to determine "whether there was a *legally sufficient evidentiary basis* for a reasonable jury" to render the verdict that it did. *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 113 (4th Cir. 2006) (emphasis added). This requires us to first excise any evidence that was erroneously admitted during trial, because "[i]nadmissible evidence contributes [*12] nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 453-56, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000). If the district court erred in denying judgment as a matter of law, then we have the discretion to (1) "order a new trial," (2) "direct the trial court to determine whether a new trial should be granted," or (3) "direct the entry of judgment" in the moving party's favor. Fed. R. Civ. P. 50(e).

*Sardis v. Overhead Door Corp.*, No. 20-1411, 2021 U.S. App. LEXIS 24960, at *11-12 (4th Cir. Aug. 20, 2021).

Here, the Court did grant the oral Rule 50 directed verdict motion of Defendant Jeremy Branch at the close of Plaintiff's evidence. The Court did so because there was simply no way in which Plaintiff had presented evidence in support of multiple elements of the counts brought against Mr. Branch. However, the Court elected to provisionally deny the same motions brought by every other Defendant, reasoning that having a jury verdict would promote judicial economy by either allowing a natural jury defense verdict or the Fourth Circuit being able to reinstate any

Plaintiff's verdict should they reverse a later granted directed verdict for the defense.  This Court regularly follows this practice, for better or for worse.  *See e.g. Fry v. Rand Constr. Corp.*, 964 F.3d 239, 243 (4th Cir. 2020) (Rule 50 motion was granted after submitting the case to the jury despite grave concerns about the adequacy of the evidence, and affirmed by the Fourth Circuit).

It is difficult to imagine circumstances more obvious than in this case that Rule 50 should, finally, be applied.  The absence of evidence on required elements, and the presence of uncontradicted evidence that renders a Plaintiff's verdict impossible here, was simply overwhelming.  Failing to direct a verdict for the defense in favor of the GST Defendants would be a travesty and subject them to joint and several liability in an amount in excess of $6,619,500.

To be clear, under the RICO statutory scheme, 18 U.S. Code § 1964(c) requires entering judgment "threefold the damages he sustains and the cost of the suit" including attorney's fees. Furthermore, "[e]very circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations." *United States v. Philip Morris USA Inc.*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004).  Here, the damage awards mysteriously found by the jury (and wholly disconnected to the evidence admitted at trial) are $50,000 (Rick Graff) + $50,000 (Greg Trimarche) + $860,000 (GST) + $100,000 (Jeff Lohman) + $1,146,500 (Law Offices of Jeff Lohman) which equals $2,206,500.  That amount threefold is $6,619,500.  So, the stark choice is allowing the baseless verdicts to stand or to grant this motion. Respectfully, the latter is the only rational, supported, and fair result.

The GST Defendants hereby respectfully further incorporate by reference all authorities, case law, factual recitations, and arguments set forth in the Motions for Summary Judgment previously filed by all Defendants.  This case should never have been submitted to a jury.

## II. The Substantive RICO Claim Against the GST Defendants Must be Dismissed

The jury found Greg Trimarche and Rick Graff liable under the substantive RICO count and awarded $50,000 against each of them. The jury also found against GST under this count and awarded $860,000. Rule 50 directed verdict must be granted in favor of defense verdicts for all three Defendants.

The second Count of the Second Amended Complaint relied upon 18 U.S.C. 1962(c) which sets forth that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The uncontradicted evidence at jury trial established that the various Defendants were plainly not an association-in-fact enterprise.

Moreover, even if Defendants were somehow an association-in-fact enterprise the GST Defendants did not conduct the enterprise through a pattern of racketeering activity. As this Court noted: "[t]hese elements are 'demanding' because 'Congress contemplated only a party engaged in widespread fraud would be subject to RICO's serious consequences." (*ECF 204* at 7 (quoting *Goodrow v. Friedman & MacFayen, P.A.*, 2012 WL 6725617, *9 (E.D. Va. Dec. 27, 2012)).

In the form of Jury Instruction No. 19, the Court explained to the jury that Navient had the burden of proving each element of the substantive RICO claim. And in the form of Jury Instruction No. 21, the Court explained to the jury that Navient would have to prove four elements. The evidence at jury trial plainly proved none of the elements.

First, Navient would have to have shown the existence of an association-in-fact enterprise affecting interstate or foreign commerce. In the form of Jury Instruction No. 22, the Court provided the definition of "enterprise." A group would require that the members of the group

share a common purpose.  The evidence at trial showed no such thing.  At the very best, construing any evidence in favor of Navient as the non-moving party, the jury could have only found that there were two or more disparate groups, each with their own agendas and purposes.

Greg Trimarche and Rick Graff of GST testified that their purpose was to give private student loan debtors affordable access to attorneys who may be able to assist them.  That was the only testimony as to their purpose.  They testified to that repeatedly.  No witness testified to the contrary.

Conversely, the GST defendants did not have a purpose to file TCPA claims.  The undisputed testimony was that GST is not a law firm, Rick Graff is not an attorney, and Greg Trimarche is not a debt relief attorney.  The GST Defendants never filed a TCPA claim or suggested that anyone do it.  The testimony was that they did not even know what the TCPA statute was.  And that they never told David Mize about the TCPA.  David Mize testified exactly the same way.  There was no contrary evidence elicited that a jury could rely upon.

And conversely, GST certainly did not have a purpose to defraud Navient.  The only testimony was that the GST Defendants did not even know who Navient was until much later.  Greg Trimarche's testimony was that the GST Defendants never counseled borrowers to stop paying their loans.  And further, his testimony was that GST had no communications with borrowers at all.  There was no contrary evidence elicited that a jury could rely upon.

The second of the three characteristics of an enterprise is that the members of the group have some relation with one another.  This evidence was especially one-sided in favor of the GST Defendants.  The uncontradicted and repeated testimony was that the GST Defendants did not have any relationship with the Lohman Defendants.  Rick Graff testified that he never met Jeff Lohman, that he never spoke with Jeff Lohman, and that he never otherwise communicated with Jeff

5

Lohman. Rick Graff testified that he never communicated with any other attorney in Jeff Lohman's law firm, that he never directed the attorneys in Jeff Lohman's law firm to do anything, and that they never directed him to do anything. Greg Trimarche testified that he never met Jeff Lohman, that he never spoke with Jeff Lohman, and that he never otherwise communicated with Jeff Lohman. Greg Trimarche testified that GST never entered into a factoring agreement with the Lohman Defendants, that GST never entered into any other agreement with the Lohman Defendants, and that GST had no business arrangements with the Lohman Defendants whatsoever. And Greg Trimarche testified that GST never directed any student debtors to sign agreements with the Lohman Defendants, that GST never shared any revenue with the Lohman Defendants, and that the Lohman Defendants never shared any revenue with GST. There was no contrary evidence elicited that a jury could rely upon.

Furthermore, both Jeff Lohman and Jeremy Branch of his law firm testified without contradiction that they have no recollection of any phone calls, emails, or other communication with Greg Trimarche, Rick Graff, or GST. Navient offered no testimony to contradict any of this testimony. And Navient is bound by their uncontradicted testimony. So, there is no enterprise. The very first element of Count II fails.

The second element that Navient had to prove at trial was that each Defendant was associated with, or employed by, the enterprise. As articulated in Jury Instruction No. 23 in relevant part:

> A person cannot be associated with, or employed by, an enterprise, if he or she does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the plaintiff must prove, by a preponderance of the evidence, that the defendant in question was connected to the enterprise in some meaningful way and that the defendant knew of the existence of the enterprise and of the general nature of its activities….

6

The same evidence discussed above that showed that no enterprise ever existed also showed that, even if there was some conceivable enterprise, that the GST Defendants did not know about it. But there was further testimony that demonstrated this lack of knowledge. David Mize was called to testify by video over two days. He testified that GST arranged to have private student loan debtors referred to him as potential clients. Otherwise, his contact with GST was largely limited to arranging for refunds for any student debtor who did not want to move forward with representation.

David Mize testified that GST was not providing legal services to clients. David Mize testified that GST never suggested to him to file TCPA cases. David Mize testified that GST was not a law firm, that the GST Defendants did not tell him how to practice law, and that when a matter was settled for a student debtor client that nothing was even communicated to GST. So, there was no enterprise, and if there was, the GST Defendants did not know about it. Navient elicited no evidence to support this element.

Jury Instruction No. 24 defined what it means to participate in the conduct of the affairs of an enterprise. It stated in relevant part:

> To "participate in the conduct of the enterprise's affairs" requires that a person has conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. To participate, directly or indirectly, in the conduct of the enterprise's affairs, the Defendant must participate in the operation or management of the enterprise itself. A person also participates in the operation of the affairs of the enterprise if he or she has some part in directing those affairs.

Without repeating the points raised above, the question is what was GST's conduct? Greg Trimarche testified that GST entered into agreements with debt relief attorneys. And GST entered into agreements with marketing affiliates. Neither of those agreements are remotely unlawful.

7

The two marketing witnesses, as well as the GST Defendants, all testified that the affiliates were largely marketing for federal student loan borrowers. Many of these companies had existed for years, did their own business, and did their own marketing. Recall that GST's realization was that these affiliates would come across private student loan borrowers who could not benefit from the services of the affiliates. GST had the idea to pay commissions to the affiliates if they would perform an intake and refer the potential client to an attorney who may be able to assist without a large upfront retainer. Nothing about that model is unlawful.

The import is that the affiliates had already been doing their own advertising and marketing, and there was very little evidence that they did any separate marketing for this specific offshoot. And there was no evidence that the GST Defendants were responsible for anything that the affiliates did.

Rick Graff testified that GST did not have any right or ability to control any of the affiliates business operations; that GST did not have any right or ability to approve, reject, or control any of the affiliates' marketing or advertising efforts; and that that he never wrote a script, and that he was never involved in developing a script.

Greg Trimarche testified that the GST defendants did not "prepare" or "approve" any scripts; that the GST Defendants never wrote, prepared, distributed, or approved any deceptive marketing materials; and that GST had no control over any affiliate's marketing or advertising activities. Indeed, Greg Trimarche testified that the debt relief attorneys drafted and approved their own attorney-client agreements and their own FAQs. The consistent and repeated testimony from Greg Trimarche was that when GST was asked about marketing that they always said to stick with whatever the debt relief attorneys approved.

Moreover, Greg Trimarche specifically testified that he was aware of bad actors in the debt relief industry, and "we wanted to distinguish ourselves from them." That is why there was always deference to the language of the debt relief attorneys. That is why there were so many discussions about compliance calls. That is why there was concern about any affiliates *deviating* from what could be accurately represented about the program. If the purpose was to defraud student borrowers, why was so much time and effort spent discussing how to get it right? Furthermore, the testimony of every witness who addressed the subject was that any student borrower who felt they did not understand the program was offered and provided with a refund. How could it benefit anyone to mislead student borrowers on purpose in intake?

Beyond all of the testimony at trial in this regard, Navient's Exhibit 762 are GST's written answers under oath with information provided by both Greg Trimarche and Rick Graff. Page 4 addresses these issues, and pages 5 and 6 address related issues. This is uncontradicted evidence.

Navient's only evidence were a couple of mailers. Those mailers do not reference the GST Defendants. Those mailers do not reference David Mize or the other debt relief attorneys by name. And they certainly did not reference the Lohman Defendants. Indeed, there is nothing from the face of the mailers that is linked to the GST Defendants. And there was no evidence that the GST Defendants wrote, prepared, or approved any mailers much less these particular ones. The mailers also were addressed to students that did not testify at the trial.

Jury Instruction No. 30 stated "As used in the RICO statute, to act 'knowingly' means to act voluntarily and intentionally, not because of mistake or accident. 'Willfully' means that the action was done voluntarily and purposely, with the specific intent to do something the law forbids." Jury Instruction No. 31 begins by stating "In order to establish fraudulent intent on the

9

part of a Defendant, Plaintiff must prove that the particular Defendant knowingly and intentionally attempted to deceive the Plaintiff."

As the Court heard for itself over the course of a week at trial , there was no evidence that the GST Defendants willfully and knowingly participated in a scheme to defraud Navient, a company that they testified without contradiction that they did not know existed. And there was no evidence that the GST Defendants mailed anything themselves or caused anything to be mailed that furthered a scheme that did not exist or that they did not know about.

Pursuant to the closing section of Jury Instruction No. 33, "Plaintiff must prove by a preponderance of the evidence that a Defendant or Defendants specifically intended to deprive Plaintiff of something of value through misrepresentation or similar dishonest conduct, which indeed did cause Plaintiff harm." There was no evidence that the GST Defendants intended to defraud or otherwise deceive Navient. Indeed, the testimony from both Navient witnesses at trial was that they never had any communications with the GST Defendants. No false statement could possibly have been made.

One does not operate or manage an enterprise by "simply provid[ing] goods and services that ultimately benefit the enterprise," and a "defendant can be liable under RICO only if it was "managing or operating the overall group." *Democratic Nat'l Comm. v. Russian Federation*, 392 F. Supp.3d 410, 441 (S.D.N.Y. 2019). The GST Defendants did not conduct the affairs of any enterprise if one ever existed. The GST Defendants did not manage or control the affairs of any enterprise if one ever existed.

Finally, for all of the reasons discussed above, there was literally no evidence at trial that any of the acts or omissions of the GST Defendants could have or did cause any injury to Navient. Even if the jury could have found that the GST Defendant were guilty of some vague misconduct,

10

Navient suffered no damages as a proximate result. The student loans were unsecured. The decision by student debtors to participate in the program to access affordable legal assistance did not injure Navient any more than any other debtor hiring counsel to contest the validity or amount of any debt. And the racketeering activity itself must proximately cause injury to Navient. *See e.g. In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 598 (E.D. Va. 2009). Nothing that the GST Defendants did in their business directly or proximately caused any injury to Navient.

Furthermore, the awards of $50,000 against the individual Defendants are baseless. There were no references to $50,000 in the over 250 exhibits admitted at trial. There were no references to $50,000 in the witness testimony, except for a marketing Defendant who said that he paid that amount to settle this case. The jury had no information as to what counts he faced, what misconduct he allegedly committed, or the value. In no way is $50,000 a remotely rational damage linked to anything that Navient claimed at trial. Nor is the award of $860,000 against GST itself reflective of any evidence at trial.

The only numbers before the jury were in the damages chart admitted as Exhibit 910. None of this evidence or even argument supports any of these figures entered by the jury on their verdict forms. *See Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276, 284 (4th Cir. 2021) ("A jury cannot faithfully complete its task when there is no evidence whatsoever of actual harm sufficient to support the damages award"); *SunTrust Bank v. Farrar*, 277 Va. 546, 554, 675 S.E.2d 187, 190-191 (Va. 2009) (plaintiff has "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery.'")

The second Count of the Second Amended Complaint which relied upon 18 U.S.C. 1962(c) was without any competent or remotely sufficient evidence to support it. No reasonable jury could have determined verdicts against the GST Defendants. The Rule 50 Motion should have been granted at the close of evidence at each stage of jury trial. It must be granted now.

### III.     The Conspiracy RICO Claim Against the GST Defendants Must be Dismissed

The third Count of the Second Amended Complaint relied upon 18 U.S.C. 1962(d) which simply states that "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." As set forth in Jury Instruction No. 38

> First: At least one of the members of the conspiracy violated Section 1962(c). Second: The Defendant at issue understood the unlawful character of the enterprise involved in that violation, and agreed to adopt the goal of furthering that enterprise. Third: The Defendant at issue must be aware of the existence and purpose of that enterprise. Fourth: The Defendant agreed that the enterprise would be conducted through a pattern of racketeering activity. This means that the commission of at least two predicate crimes by the conspiracy was contemplated.

Importantly, Jury Instruction No. 39 stated in relevant part that "A person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one does not thereby become a member."

First, this claim fails as to the GST Defendants because the underlying 18 U.S.C. 1962 (c) claim fails as set forth above. If there is no violation of provisions of subsection (a), (b), or (c), then there can be no conspiracy to violate them.

Second, this claim fails because in order for there to be a conspiracy, there must be an agreement among the conspirators. "To plausibly allege a conspiracy to commit a RICO violation, the plaintiff must allege that the defendant conspired to participate in the RICO enterprise and pattern of criminal activity and had the same criminal objective as the other conspirators." *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 536-37 (D. Md. 2019).

The only testimony was that the GST Defendants had no agreement with anyone else to bring TCPA cases. GST did not know what the TCPA statute was. GST was not a law firm and had no ability to control law firms. And none of the debt relief attorneys ever brought a single TCPA claim. Obviously, there can be no agreement to violate RICO, at minimum, between the GST Defendants and the Lohman Defendants where they do not know one another, and they have never communicated with one another. All of this testimony came in during Navient's case in chief.

The Court gave Jury Instruction No. 14 which stated in relevant part: "The plaintiff called several defendants as adverse witnesses. The plaintiff is bound by as much of the defendants' testimony given as an adverse witness as is clear, logical, reasonable, and uncontradicted." At the trial, Rick Graff, Greg Trimarche, and GST (through Greg Trimarche) were called through their deposition testimony in Navient's case in chief. Virtually nothing they testified to was remotely contradicted by any other evidence in the case.

The third Count of the Second Amended Complaint which relied upon 18 U.S.C. 1962(d) was without any competent or remotely sufficient evidence to support it. No reasonable jury could have determined verdicts against the GST Defendants. The Rule 50 Motion should have been granted at the close of evidence at each stage of jury trial. It must be granted now.

### IV.     Tortious Interference Against GST Must be Dismissed

The animating concept of tortious interference with contract is a third party coming out of the ether to intentionally cause a specific contract between two others to be breached or terminated. "In Virginia, the elements of a claim for tortious interference with contractual relations are ... (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or

13

causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Schaecher v. Bouffault*, 772 S.E.2d 589, 602 (Va. 2015). *See also Duggin v. Adams*, 360 S.E.2d 832, 835 (1987); *Pincione v. Dale*, Civil Action No. 1:11-cv-00367 (AJT/IDD), 2011 U.S. Dist. LEXIS 127016, at *4-5 (E.D. Va. Oct. 19, 2011) (federal trial court applying Virginia law on tortious interference). These elements were provided to the jury in the form of Jury Instruction No. 46.

Here, the jury found for the defense with respect to both Rick Graff and Greg Trimarche. That is, they found neither individual liable for tortious interference. And yet the jury somehow inconsistently found GST liable for tortious interference. Such a finding was impossible under the evidence at trial.

The undisputed and only evidence at jury trial was that Rick Graff and Greg Trimarche were two of the three principals of GST. The third principal was Buddy Sievers, whose name was hardly mentioned in the trial. The testimony by others was that Buddy was elderly and did not use email. There was *no testimony* that GST had any other employees or agents at all.

The jury's first substantive note and question was to seek guidance as to how to separate individuals and businesses. The Court provided a brief response to the effect that a corporation can only act through its employees, agents, directors, or officers. That is a correct statement of Virginia law. *See e.g. Bardach Iron & Steel Co. v. Charleston Port Terminals*, 143 Va. 656, 672, 129 S.E. 687, 692 (1925) ("Corporations can only act through agents….") And where the jury exonerated two of the three principals, there was no evidence about the third principal, and there was no testimony that GST ever had employees, it is impossible for the jury to have followed the law to conclude that GST could be liable. Regardless, this Court can see for itself that there was no evidence presented at trial by which Navient could establish any of the four elements as to GST.

14

The first element of this tort is the existence of a valid contractual relationship or business expectancy. The testimony was that Navient did not own any of the student loans. Indeed, Navient stipulated that the loans "are owned by various trusts or other entities for which NSL is the servicer and authorized agent." (Ex. 2091). This alone is dispositive.

The second element of this tort is knowledge of the relationship or expectancy on the part of the interferer. Here, the uncontradicted testimony from Greg Trimarche offered in Navient's case in chief was that GST had never even heard of Navient. Greg Trimarche testified that GST received none of the student debtors' loan documents or other information pertaining to their cases such that they would not know whether any particular debtor was being serviced by Navient. GST was in business long before the wholly unrelated Lohman Defendants began to file any TCPA claims. And there was absolutely no evidence that any of the GST Defendants knew or could have known the complicated testimony by Troy Standish as to Navient's complex, future, residual interest in loans that they did not own. The jury had no evidence to find in support of this element.

When trying to evade summary judgment on this point, Navient cited to a Fifth Circuit case for a proposition that "all that is necessary is that the tortfeasor know that *some* party or parties had a prospective contractual relationship." *Verkin v. Melroy*, 699 F.2d 729, 733 (5th Cir. 1983). Navient made this argument during the jury trial in the form of suggesting that if one throws a rock then it does not matter if one does not know who specifically one is hitting. But that proposition is not recognized in substantive Virginia law. Indeed, this Court previously cited a Virginia case which states the opposite – that a potential plaintiff is "not within the scope of the protection afforded by this rule, unless A intends to affect them." *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 146, 670 S.E.2d 704, 707 (2009). By necessity that must include

knowing who one intends to be affecting. Tortious interference with contract is an intentional tort. There is no such thing as negligent interference with contract.

The third element of this tort is intentional interference inducing or causing a breach or termination of the relationship or expectancy. There was zero evidence of such intent at the jury trial. On the contrary, the overwhelming and only evidence was the absence of any such intent by GST. Once again, GST did not know Navient existed. GST did not know of the existence of the TCPA statute. No member of GST ever counseled borrowers to stop paying their loans. GST had no specific knowledge over what advice lawyers provided. GST had no involvement whatsoever in any attorneys' evaluation or pursuit of TCPA claims. And GST had no relationship or communication with the Lohman Defendants at any time. All of this wholly uncontradicted testimony made it impossible for the jury to find support for the third element.

The uncontradicted testimony was that GST would not tell any attorney how to handle their cases or give legal advice; that GST had neither the right nor the opportunity to do so; that GST had no involvement in any legal services provided by the law firms to the clients; that GST had no communications with any law firms' clients; that GST had no contact with any of the lenders or loan servicers involved in the clients' cases; that the GST Defendants never filed a TCPA claim against Navient; and that GST never provided legal advice directly to consumers. Given these uncontradicted facts, all of which came into evidence in Navient's case in chief, the only evidence is that there was neither intent nor interference.

The fourth and final element of this tort is resultant damage to the party whose relationship or expectancy has been disrupted. Navient presented no evidence at trial that any act by GST caused Navient to lose a penny. All prior recitations and arguments are incorporated here. And the extensive arguments by the Lohman Defendants on this point are incorporated here.

16

Tortious interference was without any competent or remotely sufficient evidence to support it. No reasonable jury could have determined verdicts against GST, and indeed they did not with respect to Greg Trimarche and Rick Graff individually. The Rule 50 Motion should have been granted at the close of evidence at each stage of jury trial. It must be granted now.

## CONCLUSION

For the foregoing reasons, GST Factoring, Inc., Gregory Trimarche, and Rick Graff each respectfully requests that the Court grant their Rule 50 Motion for a Judgment as a Matter of Law.

DATED:  September 3, 2021                         Respectfully submitted,

                                                  GST FACTORING, INC.
                                                  GREGORY TRIMARCHE
                                                  RICK GRAFF

                                                          /s/ Mikhael D. Charnoff
                                                  Mikhael D. Charnoff, VSB No. 43929
                                                  1010 N. Glebe Road, Suite 310
                                                  Arlington, VA 22201
                                                  Tel: 703-291-6650
                                                  Fax: 703-563-6692
                                                  mike@perrycharnoff.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, I will electronically file the foregoing using the Court's CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record for all parties who have appeared in this action.

                                                  /s/ Mikhael D. Charnoff
                                                  Mikhael D. Charnoff