1415

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
NAVIENT SOLUTIONS, LLC,        .    Civil Action No. 1:19cv461
                               .
             Plaintiff,        .
                               .
      vs.                      .    Alexandria, Virginia
                               .    August 17, 2021
THE LAW OFFICES OF JEFFREY     .    9:52 a.m.
LOHMAN, et al.,                .
                               .
             Defendants.       .
                               .
. . . . . . . . . .            .
```

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

VOLUME VII

<u>APPEARANCES:</u>

FOR THE PLAINTIFF:              GEORGE R. CALHOUN, ESQ.
                                Ifrah PLLC
                                1717 Pennsylvania Avenue, N.W.
                                Suite 650
                                Washington, D.C. 20006

FOR THE LOHMAN DEFENDANTS:      JEFFREY E. GRELL, ESQ.
                                Grell Feist PLC
                                825 Nicollet Mall, Suite 625
                                Minneapolis, MN 55402
                                  and
                                THOMAS F. URBAN, II, ESQ.
                                Fletcher, Heald & Hildreth, PLC
                                1300 N. 17th Street, Suite 1100
                                Arlington, VA 22209

FOR DEFENDANTS GST             MIKHAEL D. CHARNOFF, ESQ.
    FACTORING, INC.;           Perry Charnoff PLLC
    GREGORY TRIMARCHE; AND     1010 N. Glebe Road, Suite 310
    RICK GRAFF:                Arlington, VA 22201

(Pages 1415 - 1443)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1416

1  <u>APPEARANCES</u>:  (Cont'd.)

2  ALSO PRESENT:                JEFFREY LOHMAN, ESQ.

3  OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Third Floor
4                               401 Courthouse Square
                                Alexandria, VA 22314
5                               (703)299-8595

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1417

P R O C E E D I N G S

(Jury out.)

1  THE CLERK:  Civil Action 19-461, Navient Solutions,

2  LLC, versus the Law Offices of Jeffrey Lohman, et al.  Will

3  counsel please note their appearances for the record.

4  MR. CALHOUN:  Good morning.  George Calhoun for the

5  plaintiff.

6  THE COURT:  Good morning.

7  MR. GRELL:  Jeff Grell for the Lohman defendants.

8  THE COURT:  Good morning, Mr. Grell.

9  MR. CHARNOFF:  Good morning, Your Honor.  Mike

10  Charnoff on behalf of GST, Greg Trimarche, and Rick Graff.

11  THE COURT:  All right.  So first of all, do we have a

12  disc, a thumb drive, or both?

13  MR. GRELL:  We have -- after longer than it should

14  have taken, we do have a disc, and Mr. Calhoun and I were

15  talking.  I wanted him to acknowledge that he chose not to

16  review this for the record, but there were some -- we had some

17  discrepancies between the Court's record of what was admitted,

18  and we got it worked out.

19  And then, of course, there's the one stipulation that

20  you read into the record that we, that we didn't -- there was a

21  hard copy, but we didn't have a copy with us last night, so we

22  couldn't scan it, so in that exhibit, I just put a placeholder

23  that says "Only a paper copy is available."

1418

 1        So I don't know what else we could have done with

 2   that, but --

 3        THE COURT:  All right.  I mean, you know, you're

 4   proceeding now at your own risk, all right?  We've had a long

 5   trial.  I'm assuming -- Mr. Calhoun, you can't complain if you

 6   haven't looked at the exhibit.  I'm sure --

 7        MR. CALHOUN:  No, we provided ours; he provided

 8   theirs.

 9        THE COURT:  Okay.

10        MR. CALHOUN:  I looked at the lists.  The lists are

11   good.

12        THE COURT:  That's fine, all right.

13        Do you have a --

14        MR. GRELL:  We gave you a copy of the file that we

15   burned.  That's yes, right?  Say yes.

16        MR. CALHOUN:  Yes.

17        THE COURT:  Mr. Calhoun?

18        MR. GRELL:  Thank you.

19        THE COURT:  All right, all right.  Hopefully it

20   works.

21        You had mentioned last night you were also going to

22   bring a thumb drive just in case.  Do you have one or not?

23        MR. CALHOUN:  I'll have to see -- Tom may have.

24        Tom, do you have a thumb drive with this?

25        MR. URBAN:  No.  No one asked for a thumb drive.

1       THE COURT:  Okay.  Well, I'm going to assume that

2  works.  We were told last night -- unfortunately, they then

3  said, IT later on said they could take either.

4       MR. GRELL:  Well, if we need a thumb drive, we can go

5  back to the office and get it.

6       THE COURT:  All right.  Hopefully this is going to

7  work just fine.  If you'll hand that up to Mr. Hendrick?  And

8  we will keep that as part of the file, obviously, for purposes

9  of the appeal -- any appeal.

10      All right.  Now, in terms of the question that came

11  in last night from the jury, which was, again:  "Could the

12  Court provide any guidance or clarity on how to separate the

13  individual from their business as we deliberate?"

14      And what I intend to do, we've given you Proposed

15  Jury Instruction 55, liability of corporations, and there we've

16  said:  "A corporation is a creation of state law and is

17  considered to be a person."  I mean, that's an absolutely

18  correct statement of the law.  "However, it can only act

19  through its employees, agents, directors, or officers.

20  Therefore, a corporation is responsible for the acts of its

21  employees, agents, directors, and officers as long as the acts

22  of its employees, agents, directors, and officers are performed

23  within the scope of their authority."

24      I mean, that's, you know, an absolute solidly correct

25  statement of the law.  I would also add, however, I'm going to

1420

1    reread to them Jury Instruction No. 3, which reminds them that

2    you should consider and decide this case as a dispute between

3    persons of equal standing in the community, that instruction,

4    and I'm going to also repeat the sentence from Instruction 4:

5    "Each defendant is entitled to your separate consideration."

6           So that's what I intend to tell them.  So I will be

7    giving them a new Instruction 55 to add to their packet and

8    focusing -- I will reread Instruction 3 and that one sentence

9    from 4.  That's how I plan to answer the question.

10          So, Mr. Calhoun, do you have any objection to that?

11          MR. CALHOUN:  No objection, Your Honor.

12          THE COURT:  All right.  Mr. Grell?

13          MR. GRELL:  Yes, Your Honor.  I hate to be the bearer

14   of bad news, but respondeat liability -- respondeat superior

15   liability under RICO is a very, very complicated thing, and

16   moreover, this would work if we were talking about a negligence

17   claim, but intentional torts by nature are not within the scope

18   of authority.

19          When I sent my e-mail this morning, I was talking

20   about the corporate intent idea, the control group.  This is

21   not -- I said state of mind or corporate intent is okay with

22   me.

23          This is not -- this is -- intentional torts are by

24   nature not within the scope of authority.  So the only way this

25   instruction would be accurate is if you also instructed:  And

1421

1   fraud is not within the scope of an employee's authority.

2           So -- or you give a -- you give a standard

3   instruction on corporate intent, state of mind.

4           THE COURT:  Well, you haven't given me one, all

5   right?  I mean, again, this is an opportunity for the counsel

6   to assist the Court.  Last night, I think you said you didn't

7   want any at all, but, I mean, just saying, you know --

8           MR. GRELL:  I get it, Your Honor.  And I thought we

9   were -- I thought we were on the same page when I left, and I

10  looked and I didn't, I didn't --

11          THE COURT:  I can't find one.  I mean --

12          MR. GRELL:  I can't find one either.

13          THE COURT:  Yeah.

14          MR. GRELL:  But I don't think this is appropriate,

15  and I said this morning we would be fine with no instruction.

16  I think this is, this is probably more harm than good,

17  especially on appeal.

18          I mean, we'll object to this.  You obviously are

19  going to rule however you rule, but we will -- we do object to

20  this instruction.

21          THE COURT:  Well, again, I think in some respects,

22  Mr. Calhoun, you've made it more difficult because of --

23  especially because of the RICO statutes in here.

24          But this jury has worked to -- they're all here.

25  They're going to start deliberating early today, and I don't

1422

1    think it's fair to make a jury just struggle with, with legal

2    concepts.

3         This -- what I'm giving them is clear, solid,

4    established, basic legal principles of corporate liability.  I

5    agree there are all kinds of subtleties in the law.  This is

6    not a law school class for them.  They're trying to decide this

7    case.

8         But, Mr. Charnoff, for the record, do you want to say

9    anything?

10        MR. CHARNOFF:  I do, Your Honor.  I do not object to

11   Your Honor rereading the section from Instruction 4.  My

12   position is that's the only appropriate thing to do because

13   anything else deemphasizes other instructions.

14        I mean, the answer is -- the question, the question

15   was basically how do we have clarity between or separation

16   between the individuals and the corporations?  I mean, the

17   answer is still plaintiff has a burden to demonstrate liability

18   with respect to each of those five individual parties.  If they

19   can't figure that out, I'm not trying to make them struggle,

20   but that's, that's the plaintiff's burden.  It's not my job to

21   cure plaintiff's inability or failure to put on the evidence

22   that would make that clear to them.

23        And so -- and I do join Mr. Grell's critique.  You

24   know, within the scope of their authority, every, every cause

25   of action that all of the defendants are facing here, they're

1423

1  all intentional torts.

2        And I think he's correct.  By definition, it's not,

3  you know, unless you've got previous authorization or

4  subsequent ratification, which there was no evidence of and

5  plaintiffs didn't ask for an instruction on that, and Your

6  Honor correctly didn't give the punitive instruction, I think

7  this could only be misleading.  I mean, they're going to say,

8  oh, it's within the scope, you know -- I understand why Your

9  Honor wants to give it.  I understand why you're trying to help

10 the jury.  I think this is going to mislead them in a very

11 specific way, and so I, I object to this instruction.

12       THE COURT:  Well, the only concern I have with the

13 instruction -- and again, we actually took it from -- the Ninth

14 Circuit has an instruction very much -- this is mostly a Ninth

15 Circuit instruction, and it is a correct statement of corporate

16 liability.

17       MR. CHARNOFF:  I don't disagree, Your Honor.  I just

18 don't think it applies here because again, this is not -- this

19 is not a negligence.  This is not the factory accidentally

20 dumped oil into the river, or whatever it is.  You know, these

21 are all intentional acts.

22       And so this is, this is not -- you know, it's true a

23 corporation is a creation of state law.  That's a true

24 statement.  I mean, maybe the first sentence of that is

25 relatively, you know, innocuous, but saying the corporation is

1424

1    responsible for the acts of all of its employees and agents,

2    etc., so long as they're performed within the scope of their

3    authority, that's not true with respect to intentional torts,

4    and every tort they've pled here is an intentional tort.

5        I don't think it's -- I don't think it's a correct

6    statement of law as it applies to our facts and as this case

7    has been pled here.

8        THE COURT:  Okay.  Mr. Calhoun?

9        MR. CALHOUN:  Your Honor, I just want to point out

10   with respect to the RICO claim in particular, overt acts taken

11   in furtherance of a conspiracy do not have to be independently

12   tortious, so if employees of a corporation take acts to further

13   the conspiracy, those acts don't have to be intentional torts

14   in order to further the conspiracy.  They would still be acts

15   within the scope of their employment on behalf of the company.

16       So I do think this is appropriate.  You know, if we

17   were dealing with an employee punches somebody in the face and

18   whether that was or was not within the scope of their

19   authority, I could see the dispute here, but that's, that's not

20   the kind of thing we're talking about.

21       MR. GRELL:  And I would agree with that, Your Honor.

22   I don't think this is an issue with RICO, because you're

23   talking about Lohman being the operator and manager, and he

24   operates and manages this enterprise, his employees, and all of

25   the other people in the enterprise are part of the enterprise.

1425

1     He's only -- this is not a RICO issue in terms of

2     the, in terms of the scope of liability that's in this, in this

3     instruction that you're going to give.  It's about the -- he's

4     alleging effectively that you punch somebody in the face by

5     committing fraud or tortious interference.

6     It's with regard to these common law claims that I

7     think it's -- and I am just concerned that -- it's a very law

8     professor type of thing, the respondeat superior issue under

9     RICO that doesn't really apply here, but it's the two

10    intentional tort claims that I'm more concerned about.

11    THE COURT:  Well, I mean, I recognize the danger here

12    is opening the door to then what do you mean by the scope of

13    their authority?  I mean, that's the only danger that I see

14    with this instruction.

15    So -- all right.  Well, let's get the jury in here.

16    I guess I am going to pull back on this.  I'll just tell them

17    the corporation is a creation of state law and is considered to

18    be a person in the eyes of the law, and remind them about

19    consider each one.  I'll leave off the rest of it.  And if we

20    get another question, however, I may have to do it.

21    MR. CHARNOFF:  Thank you, Your Honor.

22    THE COURT:  While he's bringing the jury in, I will

23    also -- I don't think they told us -- did they tell us

24    yesterday what time they're going to take their mid-morning

25    break?  I don't think they did in their note.

1426

1    MR. CALHOUN:  I think they just said their lunch

2  break at one, Your Honor.

3    THE COURT:  Yeah.  I'll try to clarify if they're

4  going to take a mid-morning break.

5    And you just need to let us know if you're going down

6  to the fourth floor so we know where to get you if there should

7  be a question.  I think we're going to get questions from this

8  jury, so don't be surprised.

9                        (Jury present.)

10    THE COURT:  Well, good morning, ladies and gentlemen.

11  Once again, you've set a record for all being here nice and

12  early, and again, we all appreciate that.

13    Any problems last night?  I hope you-all continued to

14  behave and everyone is feeling well?

15                    (Jurors nodding heads.)

16    THE COURT:  We'll read your question in a second

17  here.

18    First of all, I did want to explain to you that we do

19  have set up downstairs a laptop with a disc that should have

20  all the exhibits except for one, which is the stipulation.

21    MR. GRELL:  2191.

22    THE COURT:  21- --

23    MR. GRELL:  -- -91.

24    THE COURT:  2191.  So that one you only have in

25  paper, all right?  But that's a stipulation.  It's pretty

1427

1   straightforward.  I mean, it's not a long document, so that

2   shouldn't be a problem for you.

3         If you have problems, our IT people or my courtroom

4   deputy, Ms. Guyton, will be down there to make sure you know

5   how to work the machine.  If for any reason you're having

6   technical issues, I think you're learning the procedure.  Knock

7   on the door.  But we do need a note just for purposes of the

8   record.  Anything, if it's too hot, too cold, you need more

9   water, just please put it in a note and have the foreperson or

10  one of the other jurors sign it, all right?  Just so we have a

11  record of interactions with the jury.

12        I wanted you to know, because we did give you jury

13  instructions, you're free to write on those instructions, and

14  if you need more paper, we can get more paper for you, but each

15  of you has a set of the instructions so that you can be

16  following them and making whatever notes you need on them,

17  okay?

18        Now, last night, you gave us a question, and that

19  was:  "Could the Court provide any guidance or clarity on how

20  to separate the individual from their business as we

21  deliberate?"

22        What I'm going to tell you is the following:  A

23  corporation is a creation of state law and is considered to be

24  a person in the eyes of the law.

25        And then I've already given you Instruction No. 3,

1428

1  and I just want to repeat it for you, that you should consider

2  and decide this case as a dispute between persons of equal

3  standing in the community, of equal worth, and holding the same

4  or similar stations in life.

5      A corporation is entitled to the same fair trial as a

6  private individual.  So all persons, including the plaintiff,

7  Navient Solutions, LLC, and defendants, the Law Offices of

8  Jeffrey Lohman, Jeffrey Lohman, Rick Graff, Gregory Trimarche,

9  and GST Factoring, Inc., stand equal before the law and are to

10  be treated as equals.

11      And each defendant -- and so we have five defendants

12  in this case -- is entitled to your separate consideration.

13      So I hope that assists you.  We're often confined by

14  various legal principles as to how we answer your questions,

15  and I'm not sure we always totally understand your questions.

16      So let me see what else we have here.  Oh, good, this

17  is a schedule for today.  So the jury is going to start at ten

18  o'clock, take a mid-morning break between 11:30 and 11:45, the

19  lunch hour of one to two, afternoon break at 3:30, and today

20  you want to end at six.  And that's pretty much the schedule

21  we've been on, so that's fine.

22      And during your lunch hour, are you planning to

23  leave?

24              (Jurors nodding heads.)

25      THE COURT:  Some of you plan to leave the building,

1429

1  which is perfectly all right, good.  If some of you stay in the

2  building, because it may be pouring rain again today, just

3  remember you should not be deliberating, all right?  So when

4  you're on break, you're on break.  Very good.

5          Then, counsel, I think there's nothing further we

6  need to do with the jury.  Hopefully the disc will work, and we

7  will go ahead and recess court to await your decision.  Thank

8  you.

9          (Recess from 10:09 a.m., until 2:02 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1430

<pre>
 1              A F T E R N O O N   S E S S I O N

 2                    (Jury out.)

 3            THE COURT:  Well, as I told you, these jurors read

 4    those instructions and really think about them carefully.  So

 5    the latest question is:  "Is there a legal or common definition

 6    of 'sham' as referenced in Jury Instruction No. 49 that we

 7    should use during deliberations?"

 8            All right, Mr. Grell, that's your instruction.

 9    What's your view?  Because I have a thought.

10            MR. GRELL:  Well, it is an important issue to us, but

11    it was changed from my instruction, so I would urge us to go

12    back to what I suggested in the beginning, which was successful

13    litigation is not sham litigation, which is --

14            THE COURT:  But, you know, that's not the Fourth

15    Circuit's approach.

16            MR. GRELL:  Well --

17            THE COURT:  That, that concept comes from a single

18    case.  I mean, the Fourth -- that Fourth Circuit decision, I

19    think, walks that through.  We're talking about a pattern of

20    litigation here.

21            MR. GRELL:  Well, but let me explain.  So the way

22    that they have laid out their damage claim is it's case by case

23    by case by case.  And the jury could go through and say, okay,

24    this one was successful; this one was not successful.  And they

25    could knock out at least the successful elements of their
</pre>

1431

1    damage claim.

2         If they had litigated this as a pattern that resulted

3    in an, in an aggregate number, then I could see where, yeah,

4    the jury can't look at these on a single-by-single-by-single

5    basis.  But here -- again, it was their decision to try this

6    case the way that they tried it, and they have tried it as

7    here's our damage claim, and it's made up of all of these

8    individual lawsuits.  Okay?

9         And I can see there are benefits to that, but there's

10   also a disadvantage to that, which means the jury can go

11   through and say -- who knows whether they think a settlement is

12   successful or not, but they can at least say, okay, well, this

13   one was successful, this one wasn't successful.  They can

14   decide that fact for themselves.

15        I don't know what they think successful is, but the

16   way it's presented, they should be able to go case by case by

17   case by case and make that determination if they choose to.  So

18   that would be my position on that.

19        THE COURT:  Well, all right.  My inclination in

20   looking again at the Fourth Circuit language would be to tell

21   them that sham litigation is a pattern of litigation that

22   abuses the adjudicatory process, and then the rest of that

23   instruction explains in evaluating that, what you look at, the

24   number of cases that were filed, the number that were won, the

25   number that were lost, the number that were settled.

1432

1        That's exactly what that case says.

2        MR. GRELL:  And I thought -- I didn't object to your

3   final instruction.  I thought it was workable, and I think

4   it's -- that's why I didn't object to it in the end, but I

5   think that we just tell them to go back and read the

6   instruction.  I don't think any further instruction is

7   necessary.

8        THE COURT:  All right.  Let me hear from Mr. Calhoun.

9        MR. CALHOUN:  Your Honor, we wouldn't have any

10  objection to the clarification you just referenced.  I do think

11  adding the language that Mr. Grell suggested would, would not

12  be consistent with *Waugh Chapel* and be inconsistent.  You know,

13  if we just go back and tell them the factors are set out in the

14  instruction and you need to use your own judgment, that's fine,

15  too.

16       THE COURT:  All right.  I think we're going to bring

17  the jury up.  It will take a couple of minutes for them to get

18  up here.  And what I'm going to tell them is rather than

19  defining the word "sham," I'm going to say that sham litigation

20  is a -- would be a pattern of litigation that abuses the

21  adjudicatory process.  In considering whether there has been

22  sham litigation in this case, you should consider -- and I'll

23  go back and rephrase -- repeat the language in No. 49.

24       That means you may consider the total number of

25  arbitration and federal lawsuits the Lohman defendants filed

1433

1    against Navient Solutions; how many of those arbitrations or

2    lawsuits the defendants dismissed, won, or lost; how many of

3    those arbitrations or lawsuits the plaintiff settled; any

4    evidence as to the subjective motivation of the defendants in

5    filing the arbitrations or lawsuits; the objective merits of

6    the arbitrations or lawsuits that were filed; and whether those

7    arbitrations and lawsuits constitute an abuse of the

8    arbitration or judicial processes; as well as any other

9    evidence that they find relevant.

10             I think that's a proper statement of the law and

11   consistent with how the Fourth Circuit looks at the situation.

12             MR. GRELL:  And you were just reading from the

13   original instruction.

14             THE COURT:  Other than adding the -- the first

15   sentence being sham litigation is a pattern of litigation that

16   abuses the adjudicatory process.  In determining whether or

17   not --

18             MR. GRELL:  I, I object to that because again --

19             THE COURT:  But that is the Fourth Circuit's view

20   when you're dealing with more than one piece of litigation.

21             MR. GRELL:  I just -- it's -- look, we have -- our --

22   a very -- an argument that we've made repeatedly is that they

23   failed to sustain a burden of proof, and every time we go back

24   and tell the jury, well, here's a little bit more information,

25   that helps plaintiff here.

1434

1    If they didn't prove their case under the

2  instructions that we hammered out before, before closing and

3  everything else, that's on them.  And we keep, we keep --

4    THE COURT:  Well, look --

5    MR. GRELL:  Every time we give them another

6  instruction, we help the plaintiff, and that's not fair to the

7  defendants.

8    THE COURT:  I don't think it's helping either side.

9  I think it's helping the jury try to struggle with terminology

10 that is difficult.  The word "sham" appears in the part of the

11 instruction of yours that was not changed.  I took out that

12 middle section where you talk about, you know, it's not sham

13 litigation if you win the case, whatever that middle section of

14 it was, but those first two paragraphs were coming from -- were

15 uncontested.

16   And the word "sham" is what is used in the discussion

17 of this immunity, this *Noerr-Pennington* immunity.

18   So these are jurors.  I mean, the word "sham" means

19 something that's disingenuous, that's not what it purports to

20 be, and in this case, I think not to give the jury some

21 assistance is, is wrong, unfair, and it's not prejudicing

22 either side.

23   MR. GRELL:  Well, I think it's a fact issue, and I

24 think we've given them sufficient guidance to decide that fact

25 issue.

1435

1    THE COURT:  All right.

2    MR. GRELL:  And that's my objection, and I'll leave

3 it at that.

4    THE COURT:  All right.  Well, I appreciate that.  But

5 I'm going to have the jury brought up so that I can speak to

6 them about this, all right?

7    THE COURT SECURITY OFFICER:  Yes, Judge.

8    THE COURT:  So once they're here, I'll come back on

9 the bench, all right?  Is there anything else before we bring

10 the jury back in?

11                    (No response.)

12    THE COURT:  No?  All right, we'll recess court to

13 await the jury.

14        (Recess from 2:09 p.m., until 2:14 p.m.)

15                    (Jury present.)

16    THE COURT:  All right, ladies and gentlemen,

17 obviously, you're working very diligently and raising some very

18 astute questions.  You've asked -- the latest question is for

19 us to help you in understanding whether there is a legal or

20 common definition of "sham," as referenced in Jury Instruction

21 No. 49 that you should use during your deliberations.

22    Basically, sham litigation would be a pattern of

23 litigation that abuses the adjudicatory process.  Determining

24 whether or not a pattern of litigation abuses the adjudicatory

25 process, as I said in Instruction No. 49, you have to look at a

1436

1    series of factors, and this would include the total number of

2    arbitration and federal lawsuits -- or federal lawsuits that

3    the Lohman defendants filed against Navient Solutions, LLC; how

4    many of those arbitrations or lawsuits the defendants

5    dismissed, won, or lost; how many of those arbitrations or

6    lawsuits the plaintiff settled; any evidence as to the

7    subjective motivation of the defendants for filing the

8    arbitrations or lawsuits; the objective merits of the

9    arbitrations or lawsuits the defendants filed; whether those

10   arbitrations or lawsuits constituted an abuse of the

11   arbitration or judicial processes; and any other evidence in

12   the record that you find relevant.

13         So that is how you approach the issue of whether or

14   not the pattern of litigation would be considered sham

15   litigation.

16         I hope that that clarifies it.  Basically, it's all

17   there for you in Instruction No. 49, all right?

18         Is the temperature -- you can just nod your heads --

19   is the temperature better now in that room?

20                    (Jurors shaking heads.)

21         THE COURT:  It's still too cold?  Is it still too

22   cold?  Yes?

23         A JUROR:  I think so.

24         THE COURT:  All right, we'll try again.  Again, I

25   warned you at the beginning of the case it's better to have too

1437

1    much air floating through than not enough.  We will try to get

2    it improved for you, but the system in this building is

3    somewhat dependent on the outdoor air, and I've had the same

4    problem in chambers.  There are some days when I have to wear

5    almost a heavy jacket.

6              We want you to be comfortable, and we'll try to get

7    them to ratchet it up another degree or two, all right?  And

8    then if it gets too hot, you know, we'll have them take it

9    down.  But we have to keep the air circulating for your safety.

10   That's the point, all right?

11             Very good.  Anything further for the jury, counsel?

12             MR. GRELL:  No, Your Honor.

13             THE COURT:  No?

14             MR. CALHOUN:  No, Your Honor.

15             MR. CHARNOFF:  No, Your Honor.

16             THE COURT:  All right.  Then we'll recess again to

17   await your decision.

18             (Recess from 2:18 p.m., until 3:09 p.m.)

19                       (Jury out.)

20             THE COURT:  I must say, I love our juries.  The

21   latest question is, and we all missed it:  "Multiple jurors

22   have notes on Exhibit 450, but it is not in the binders or on

23   the disc.  Can we confirm if 450 was allowed into evidence?  If

24   it was, could we have a copy?"

25             Now, because we had to switch courtroom deputies, in

1438

1    fact, 450 was apparently admitted, but for some reason, the

2    right notation was not made in the deputy's notes.  So when

3    Ms. Guyton read the list, my notes don't reflect 450 having

4    been admitted, but it was, in fact, admitted.

5           You-all apparently weren't keeping track of stuff

6    either because it's not on the disc.

7           So is there a 450 that can be retrieved quickly?

8    It's some sort of an e-mail.  I looked up real quickly on your

9    index.

10           MR. CALHOUN:  Your Honor, I have extra copies of my

11    binders in my car, so I could probably go grab it.

12           THE COURT:  All right.  It's not on the disc.

13           MR. CALHOUN:  I mean, I also have it on my laptop.

14    So I think if we have a flash drive or something, I can pull it

15    up on my laptop right now, but --

16           THE COURT:  If it's just one e-mail, it's probably

17    easier just to do it as one piece of paper.

18           MR. URBAN:  No, I was just going to say, I mean, we

19    got the plaintiff's exhibits from them, and 450 was not among

20    them.

21           THE COURT:  No one's at fault.

22           MR. URBAN:  No, no, no.

23           THE COURT:  They worked off of what we had.  The

24    mistake was a notational error by the person who was

25    substituting for Ms. Guyton.  It's no big deal, but it shows

1439

1    you how perceptive this jury is that, I mean, they're keeping

2    such notes.  So for what it's worth, again, they're really

3    going to go through this record carefully.

4              So, Mr. Calhoun, as soon as you get 450 -- what?

5              THE CLERK:  Anneliese has a thumb drive with all of

6    the exhibits on it.

7              THE COURT:  Do you have 450 on your thumb drive?

8              THE COURT REPORTER:  Yes, but it's in my office.

9              THE COURT:  We can probably retrieve yours faster.

10   Can you print it out from that?

11             THE COURT REPORTER:  Yes.

12             THE COURT:  All right.  I'm just going to write back

13   to them on the note -- and we'll give you the note for your

14   records -- "We'll have 450 for you in a few minutes."

15             Is that all right for everybody?

16             MR. GRELL:  Yes.

17             THE COURT:  Yes?  All right, let me do it right now.

18             MR. GRELL:  Your Honor, if we could get a copy of

19   this --

20             THE COURT:  Yep.

21             MR. URBAN:  Your Honor, may I be excused?  I'll just

22   run get my computer, and I can show it to him.

23             THE COURT:  Okay.  But in the meantime, Ms. Thomson

24   is going to go down and make us a copy.

25             MR. URBAN:  Oh, I'm not saying -- just for our

1440

1    purposes so that we can see what it is.  If you'll allow me to

2    be excused?

3            THE COURT:  Yes, you're excused.

4            All right, the note I'm writing back to the jury is:

5    "We'll have Exhibit 450 for you in a few minutes."

6            Any objection to that?

7            MR. CALHOUN:  No, Your Honor.

8            MR. CHARNOFF:  No, Your Honor.

9            THE COURT:  All right.  Well, we'll make a copy of

10   this for you so you have it for your records, all right?

11           We'll recess court to await their decision.

12           (Recess from 3:13 p.m., until 3:47 p.m.)

13                        (Jury out.)

14           THE COURT:  All right, we have another question about

15   exhibits.  This time:  "Multiple jurors have notes on Exhibit

16   28, but it is not in the binders or on the disc.  Can we

17   confirm if Exhibit 28 was allowed into evidence?  If it was,

18   could we have a copy?"

19           None of our records show that 28 is in evidence.

20   Mr. Calhoun, this would have been one of your exhibits.

21           MR. CALHOUN:  Ours did not either.

22           THE COURT:  All right.  So I'm going to tell them

23   it's not in evidence.  That's the answer, okay?

24           Is there any issue?

25           MR. GRELL:  No, Your Honor.

1441

1    MR. URBAN:  No, Your Honor.  Thank you.

2    THE COURT:  All right.  We'll give you a copy of this

3 for your records.

4    And again, it shows you the jury is going to go

5 through, I think, exhibit by exhibit, so I think you can expect

6 to be here tomorrow as well, all right, if not later than that.

7 We'll start getting worried on Friday.

8    Which of you is not -- Mr. Calhoun, you're not

9 available past Friday?  I mean, you have other team members.

10 Somebody else can be here in your place.

11    MR. CALHOUN:  Either I or someone will be here either

12 way.

13    THE COURT:  All right.  Mr. Charnoff, you're across

14 the hall?

15    MR. CHARNOFF:  I will be in trial across the hall.

16    THE COURT:  Well, we can pull you back in if we need

17 you, all right?  I mean, I'll talk to Judge Trenga for you.

18    MR. CHARNOFF:  I appreciate that.

19    THE COURT:  All right.  And, Mr. Grell, how about

20 you?  Or Mr. Urban can be here in your stead.  I mean --

21    MR. GRELL:  I'm here for the duration.

22    THE COURT:  You're here for the duration, all right.

23    Well, maybe they'll get through it, but if they're

24 going exhibit by exhibit, they're going to be here quite a

25 while.

1442

1    All right, we'll get this to you in a second.  We'll

2  recess court.

3    (Recess from 3:49 p.m., until 6:01 p.m.)

4    (Jury present.)

5    THE COURT:  All right, ladies and gentlemen, I know

6  you've had a long day, and we certainly appreciate the care

7  you're exhibiting and the questions you've asked us, so we know

8  you're looking very carefully at the evidence and considering

9  the instructions very carefully.

10    So I know you want to go home tonight, and hopefully

11  there will not be any rain until you get home.  But again, the

12  schedule for tomorrow is the same as today.  The jury is going

13  to start at ten.  Again, we just start by having you come in

14  here just so I can say good morning to you, make sure

15  everything is okay, and then the same mid-morning break at

16  11:30 for 15 minutes, lunch from one to two, an afternoon break

17  at 3:30, and the day will end at six.  That's the plan for

18  tomorrow for scheduling purposes.

19    So, folks, continue, please, to remember my cautions.

20  Don't try to communicate with each other.  Don't conduct any

21  investigation.  I'm sure by this point, some of your family or

22  friends are saying, what are you-all doing?

23    Do not talk to them about what you're doing other

24  than you can say, I'm still on jury duty.

25    And we'll see you back here tomorrow at ten.  But

1443

1    you-all may go, and we'll recess court for the day.

2      (Recess from 6:02 p.m., until 10:00 a.m., August 18, 2021.)

3

4                  CERTIFICATE OF THE REPORTER

5        I certify that the foregoing is a correct transcript of

6    the record of proceedings in the above-entitled matter.

7

8

9                        _____
                              /s/
10                         Anneliese J. Thomson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25