IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NAVIENT SOLUTIONS, LLC,     )
               )
    Plaintiff,      )
               )
  v.           )   19-cv-461 (LMB/WEF)
               )
THE LAW OFFICES OF JEFFREY LOHMAN, )
 et al.,         )
               )
    Defendants.     )

## ORDER

Before the Court are post-trial motions for judgment as a matter of law pursuant to Fed.

R. Civ. P. 50 brought by the only defendants who went to trial in this complex civil RICO

lawsuit, which was brought by plaintiff Navient Solutions, LLC ("plaintiff" or "Navient")

against 18 defendants. The defendants included various lawyers, law firms, marketing entities,

debt-relief businesses, and individual marketers. Nearly all defendants either settled with

Navient or were in default. The defendants who did go to trial were: GST Factoring, Inc.

("GST"), and two of its principals, Greg Trimarche ("Trimarche") and Rick Graff ("Graff")

(collectively the "GST defendants"); and The Law Offices of Jeffrey Lohman, a professional

corporation, and two of the attorneys in that office, Jeffrey Lohman ("Lohman"), who was the

managing attorney, and Jeremy Branch ("Branch"),[1] an attorney in the firm (collectively the

"Lohman defendants").

On August 9, 2021, a jury began hearing this case which involved four claims. All

defendants were alleged to have violated the Racketeer Influenced and Corrupt Organizations

---

[1] At the conclusion of plaintiff's case, the Court granted Branch's Rule 50 Motion.

Act ("RICO") in violation of 18 U.S.C. § 1962(c) (Count II), conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d) (Count III), and tortious interference with contract (Count V). Only the Lohman defendants were alleged to have committed common law fraud (Count IV). After hearing six days of testimony and spending four days deliberating, on August 20, 2021, the jury returned special verdicts against all defendants. The jury awarded Navient $860,000 as to the GST defendants on each of Counts II, III, and V, and $50,000 as to Graff and Trimarche on Counts II and III (finding them not liable for Count IV). As to the Lohman defendants, the jury awarded $1,146,500 to Navient on each of Counts II, III, IV, and V, and $100,000 on all counts as to Jeffrey Lohman. The jury indicated that the damages were not to be cumulative.

Having carefully reviewed the extensive record and being fully mindful and appreciative of the hard work the jury invested in this civil action—which portrayed both the debt collection practices of Navient, the debt reduction industry, law firms, and lawyers in a very negative light—the Court finds, as a matter of law, that the evidence produced by the Lohman defendants established that the TCPA litigation was not sham litigation. Because all of the damages Navient incurred were proximately caused by that litigation, the jury's verdicts must be set aside, not just as to the Lohman defendants, but also as to the GST defendants. Accordingly, defendants' motions will be granted.

## I. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 50(a)(1) states that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party," and after trial, a movant "may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(a)(1). The Fourth Circuit has held that "if the verdict in favor of the

2

non-moving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). Additionally, if the non-moving party "failed to make a showing on an essential element of his case," judgment as a matter of law is proper. Wheatley v. Wicomico Cnty., 390 F.3d 328, 332 (4th Cir. 2004), cert. denied, 544 U.S. 1032 (2005) (internal quotation marks omitted).

### B. Discussion

Although the defendants have raised multiple arguments in their motions, the dispositive one is that the litigation filed under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), which the Lohman defendants brought against Navient either as arbitrations or lawsuits, was legitimate, not sham, litigation, and therefore could not support the RICO, tortious interference with contract, and fraud claims for which the jury found defendants liable.

The TCPA was enacted in 1991 to balance "individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade . . . in a way that protects the privacy of individuals and permits legitimate telemarketing practices." [Dkt. No. 100] at ¶ 45 (quoting Pub. L. No. 102-243 § 2(9), 105 Stat. 2394 (1991)). At the core of the TCPA is a prohibition on the use of automatic telephone dialing systems ("ATDS") without the consent of the recipient. In the 2016-2019 period at issue in this civil action, the specific type of ATDS that violated the TCPA was unclear.[2] To prevent telemarketers and others from violating its restrictions, the TCPA provides for fines of $500 per violation and as much as $1,500 if the violation is knowing or wilfull.

---

[2] The United States Supreme Court has since clarified that statute's applicability in Facebook Inc. v. Duguid, 143 S. Ct. 1163 (2021).

As to defendants' argument that the TCPA litigation filed was not sham litigation, the evidence in the trial showed that between early 2017 and September of 2019, the Lohman defendants filed 61 TCPA cases against Navient.  According to Navient's Damage Summary Exhibit, Pl. Ex. 910,  Navient won four of the arbitrations, 20 were dismissed, and Navient settled 37—some simply with a cash payment, but most with both a cash payment and the borrower's debt being written off.  The total amount of cash paid to borrowers as a result of settlements (or judgments) was $568,225.13, and the total amount of loans written off was $945, 705.11.

Although Navient argues that its decision to settle so many of these cases does not mean they were legitimate, there is no evidence in the trial record that anything in those proceedings was a sham.  Unlike the cases cited by plaintiff in which sham litigation was found, there is no evidence the defendants presented false evidence to any of the tribunals, nor is there evidence that the borrowers whose cases were won or settled did not receive benefits from the litigation. In fact, the vast majority of the successful cases resulted in the borrowers having benefitted by an amount of debt written off.  That the Lohman defendants also received fees for this litigation does not make it sham litigation.

Navient essentially argues that the TCPA cases were artificially manufactured; in that, but for the defendants seeking out borrowers, enticing them with misleading ads to pay the GST defendants to get their loans reduced, then advising borrowers to stop paying their loans so as to trigger collection actions by Navient, and then advising them to withdraw their consent to let Navient call them and keep a record of how many times Navient called them after consent was withdrawn, defendants manufactured the TCPA litigation.  The problem with Navient's argument is that it was Navient's conduct violating the TCPA that caused its damages.  Had

4

Navient abided by the borrowers' revocation of Navient's right to call them, and not made the significant number of calls—sometimes amounting to 48 calls in a week—Navient would not have been vulnerable to the lawsuits which were the cause of its damages. In other words, although the defendants' actions certainly set the stage for the TCPA violations, ultimately Navient's conduct was the proximate cause of its damages.

After the March 2023 hearing on these motions, Navient filed a supplemental letter in which it argued for the first time that it was not only damaged by the TCPA lawsuits, but also by the advice borrowers were given to stop making their loan payments, and that at the least it was entitled to nominal damages. "Here, the evidence was undisputed that, in addition to the legal fees spent defending cases, unpaid loan amounts (i.e., caused by borrowers who stopped paying their loans because of the defendants' instructions) . . . impacted [Navient's] bottom line." [Dkt. No. 564] at 2. As the defendants correctly respond, Navient did not make this claim for damages during the trial, nor did it present any evidence of damages resulting from that advice.

Moreover, there was evidence during the trial that advising a debtor seeking to reduce his debt to stop making payments is, unfortunately, sound advice given the way the debt industry operates. That evidence included the testimony of Brad Moore, the only borrower who testified, albeit by deposition, that from his experience it was necessary for debtors who wanted to renegotiate their loans to stop paying them before a lender would engage with them.

> [M]ost creditors, they will not do any type of negotiation as long as you're still making payments to them and they're getting their money. Most of them that I've ever seen would never even try to do any negotiation because you're making your payments; you're on time. There's nothing to negotiate.

Trial Tr. 52:8-14. Moore's statement was corroborated by a Navient officer who admitted that there are more and easier options to settle a loan with Navient once a borrower has defaulted. See

5

Troy Standish Trial Tr. 803-805. Based on this evidence, which Navient has not refuted, the Lohman defendants' advice to borrowers seeking payments or debt reductions to default on their loans was not unreasonable legal advice and genuinely reflected the unfortunate realities of debt settlement negotiations.

The Court has focused on the Lohman defendants' arguments because the only damages Navient argued at trial, and for which it presented evidence, were directly a result of the TCPA litigation. Because the Court finds that the TCPA litigation was not sham litigation, as a matter of law, there was no legal basis upon which any damages could be awarded to Navient. All four of the causes of action at issue in this civil action have an element that the plaintiff suffered damage as a result of the conduct. Because the evidence did not support this jury's decision to award damages, the defendants' motions [Dkt. Nos. 529, 532] are GRANTED; and it is hereby

ORDERED that the verdicts of the jury be and are VACATED, and it is further

ORDERED that pursuant to Fed. R. Civ. P. 58 judgment be and is entered in favor of defendants GST Factoring, Inc., Gregory Trimarche, Rick Graff, Jeffrey Lohman, and The Law Offices of Jeffrey Lohman.

The Clerk is directed to forward copies of this Order to counsel of record, enter judgment in favor of defendants, and close this civil action.

Entered this 6th day of October, 2023.

Alexandria, Virginia

                                     /s/ _____

Leonie M. Brinkema
United States District Judge